**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | (JUDGE WENDY BEETLESTONE) |
| | : | |
| TEVA PHARMACEUTICALS USA, INC., | : | [ELECTRONICALLY FILED] |
| TEVA PHARMACEUTICAL | : | |
| INDUSTRIES, Ltd., | : | |
| KARE SCHULTZ (as President and CEO | : | |
| Teva Pharmaceuticals Industries, Ltd.) and | : | |
| RON YANIV (as SVP Global Compensation | : | |
| and Benefits) | : | |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TEVA**
**PHARMACEUTICALS USA, INC.'S MOTION TO STRIKE IMMATERIAL,**
**IMPERTINENT AND SCANDALOUS MATTERS FROM PLAINTIFF'S COMPLAINT**

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA"), by and through its undersigned

counsel, hereby files this Memorandum of Law in support of its Motion to Strike Immaterial,

Impertinent and Scandalous Matters from the Complaint filed by Randolph W. Keuch

("Plaintiff" or "Keuch"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or

"Rule") 12(f), and in support thereof, avers as follows.

## I.  FACTUAL BACKGROUND[1]

This case involves Plaintiff's claims of age discrimination in violation of the Age

Discrimination in Employment Act, 29 U.S.C. §621, *et seq*., and the Pennsylvania Human

Relations Act, 43 P.S.  §§ 951 *et seq*.

---

[1] The "facts" as set forth in this section merely summarize relevant allegations in the Complaint for purposes of TUSA's Motion.  TUSA does not admit any of Plaintiff's factual allegations therein.

As brief historical background, in August 2016, Teva Pharmaceutical Industries, Ltd.'[2], ("TPI") acquired Actavis—a generic drug business of Allergan—in a multibillion dollar transaction. The acquisition did not go as planned and resulted in a serious financial downtown for TPI. As a result, in 2017, the CEO of TPI was replaced and newly hired TPI CEO Kåre Schultz, announced that due to the financial position of the company, it would be necessary for TPI to reduce its global workforce by 25%. This decision led to a large reduction in force ("RIF") that continued throughout 2018. Plaintiff's position as Senior Director of Total Rewards was one of the many positions eliminated globally and his employment with TUSA was severed on March 18, 2018.

In his Complaint, Plaintiff asserts that TUSA (along with the other defendants[3]) targeted older workers in its decision of who was to be terminated in connection with this RIF. In addition to pleading facts supporting this theory and in a misguided attempt to paint TUSA in a negative light, Plaintiff alleges completely irrelevant, impertinent and scandalous material. Specifically, Plaintiff asserts:

> 27. Additionally, in early 2017, Teva Worldwide[4] was forced to pay fines to the United States Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") totaling in excess of $520 Million to resolve federal violations of the Foreign Corrupt Practices Act ("FCPA") arising from bribery charges relating to its operations in Russia, the Ukraine and Mexico. Teva's settlement was the largest fine ever paid by a pharmaceutical company over FPCA violations.

---

[2] TUSA is an indirect wholly-owned subsidiary of TPI.
[3] It should be noted that to date, Plaintiff has not effectuated service on any of the other named defendants in this case. This motion is being filed on behalf of TUSA only and does not constitute a response on behalf of any other defendant nor does it constitute an admission that this Court may properly exercise personal jurisdiction over any other defendant.
[4] Despite never being referred to as "Teva Worldwide," Plaintiff defines Teva Pharmaceutical Industries, Ltd. as "Teva Worldwide" in his Complaint.

29. Despite the imposition of these Draconian measures to save costs on the backs of employees and common stock investors, Defendant Schultz received, in addition to his base salary, a Twenty Million Dollar ($20,000,000) cash payment included in his contract and entitlement to a performance-based target incentive bonus of 140% of his annual base salary. These payments led to broadly-based criticism that he canceled the employee bonuses and ordered the reduction of the workforce to increase his own bonus that depended on how much money he could save for Teva.

30. In fact, the median annual pay of Teva's employees was Sixty Four Thousand Eighty-One Dollars ($64,081) compared with Schultz's contractually obligated total compensation in an amount exceeding Twenty Million Dollars.

31. Compensation levels for the other executives that caused the problems for Teva that led to the decision to affect the reductions in the workforce also did not abate. Teva's senior management continued to receive inflated salaries and bonuses. The Actavis deal's engineer, Erez Vigodman who stepped down as CEO in February 2017, continued to receive a salary of One Million Four Hundred Fifty Thousand Dollars ($1.45) for the next several months and a bonus of Two Million Dollars ($2,000,000). Interim CEO Yitzhak Peterburg, who replaced Vigodman, received a salary of Nine Million Two Hundred Thousand Dollars ($9.2 million) for the eight months he served in that capacity.

Compl. at ¶¶ 27, 29, 30 & 31.

## II.  LEGAL ARGUMENT

### A.  STANDARD OF REVIEW

Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). Motions to strike are decided on the pleadings alone.  Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan, No. 10–1036, 2011 WL 4395833, at *3 (E.D. Pa. Aug. 31, 2011).The decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion.

3

*See* Snare & Triest v. Friedman, 169 F. 1, 6 (3d Cir. 1909); BJC Heath System v. Columbia Cas.

Co., 478 F.3d 908, 917 (8th Cir. 2007).  "The purpose of a motion to strike is to clean up the

pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."

McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp.2d 393, 402 (E.D. Pa. 2002).

"Immaterial matter is that which has no essential or important relationship to the claim

for relief.  Impertinent matter consists of statements that do not pertain, and are not necessary, to

the issues in question."  Donnelly v. Commonwealth Fin. Sys., No. 07-CV-1881, 2008 WL

762085, at *4 (M.D. Pa. Mar. 20, 2008) (internal citations omitted).  "There is considerable

overlap between the concepts of 'immaterial' and "impertinent' statements under Rule 12(f)."

*Id*.

### B.  THE COURT SHOULD STRIKE PARAGRAPHS 27, 29, 30 AND 31 IN PLAINTIFF'S COMPLAINT BECAUSE THEY ARE IMMATERIAL, <u>IMPERTINENT AND SCANDALOUS.</u>

#### 1.  The Compensation Levels of TPI Executives Is Irrelevant To TUSA's Decision to Eliminate Plaintiff's Position

Plaintiff alleges that TUSA targeted Plaintiff and other older employees in deciding who

to include in the RIF. Despite this rather simple and narrow focus, Plaintiff nevertheless attempts

to muddy the waters and paint TUSA and its parent company, TPI, in the most negative light by

alleging facts that are wholly irrelevant to his complaint. For example, this case is not about the

salary of various TPI executives at times prior to Plaintiff's termination. Such information has

absolutely no bearing on why TUSA elected to terminate Plaintiff. However, Plaintiff

nevertheless makes multiple references to these compensation levels throughout his Complaint in

an effort to misguidedly connect executive salary to specific workforce reduction decisions.

Compl. at ¶ 29 (stating "Defendant Schultz received, in addition to his base salary, a Twenty

Million Dollar ($20,000,000) cash payment included in his contract and entitlement to a

4

performance-based target incentive bonus of 140% of his annual base salary."); Compl. at ¶ 30 (alleging "compared with Schultz's contractually obligated total compensation in an amount exceeding Twenty Million Dollars."); Compl. at ¶ 31 (asserting "Erez Vigodman who stepped down as CEO in February 2017, continued to receive a salary of One Million Four Hundred Fifty Thousand Dollars ($1.45) for the next several months and a bonus of Two Million Dollars ($2,000,000). Interim CEO Yitzhak Peterburg, who replaced Vigodman, received a salary of Nine Million Two Hundred Thousand Dollars ($9.2 million)").

Plaintiff's objective in including these irrelevant compensation details becomes crystal clear when one considers the allegations contained in paragraph 31. In this Paragraph Plaintiff discusses the compensation received by former Teva executives Erez Vigodman and Yitzhak Peterburg. However, Plaintiff admits that Mr. Vigodman stepped down as CEO in February 2017 and that Mr. Peterburg served as CEO for only eight months following that date—or until approximately November 2017. Plaintiff's employment was terminated months later in March of 2018. It is impertinent to connect Mr. Vigodman's or Mr. Peterburg's 2017 compensation to TUSA's decision to include Plaintiff in a RIF that occurred in 2018. Rather, Plaintiff included these references to confuse the issues and engender anger and ill will towards TUSA and the other defendants. Rule 12(f) exists to remedy these exact situations. See McInerney 244 F. Supp.2d at 402 ("The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.")  Plaintiff wants to show that TUSA and its corporate parent should have considered executive compensation rather than an employee reduction, seconding guessing the reason for the RIF—which is not at all what this case is about.

Molthan v. Temple Univ. of Commonwealth Sys. of Higher Ed., is instructive. 442 F. Supp. 448, 450 (E.D. Pa. 1977). The Plaintiff in Molthan, a blood bank employee, included in his complaint the compensation levels of similarly situated blood bank personnel at other area hospitals. Id. The Molthan plaintiff included these amounts in an attempt to utilize these other employees as comparators. Id. The defendant moved to strike arguing that these allegations were irrelevant as the alleged comparators worked for different employers. Id. The Court agreed that the compensation of other employees was completely irrelevant and granted a rule 12(f) motion to strike the pleadings. Id. The facts in the case *sub judice* present an even more compelling reason to grant the motion to strike than existed in the Molthan case. In Molthan, the Plaintiff's inclusion of the compensation of other employees was at least done in an attempt to further the point of the litigation by asserting that the other hospital employees were arguably comparators. Here, Plaintiff has not, and will not allege that CEOs Mr. Schultz, Mr. Vigodman or Mr. Peterburg are comparators. Rather, this information was included purely to disparage the named defendants and confuse the issues of the case. Courts within this district have granted motions to strike in situations where a plaintiff's allegations are included for such an improper purpose. See Morozin v. Philadelphia Hous. Auth., No. CV 18-2174, 2019 WL 3824228, at *9 (E.D. Pa. Aug. 13, 2019) (finding allegations regarding the conduct of a defendant's counsel in a prior case to be irrelevant and granting motion to strike).

Further, allowing the inclusion of these paragraphs would significantly prejudice TUSA by confusing the issues. This case is not in the least about executive compensation and how TUSA and/or its parent chose to compensate its executives. This case is about whether TUSA targeted older workers, including Plaintiff, in deciding which positions to eliminate. Further, inclusion of these paragraphs has the potential to drastically enlarge the scope of discovery

6

imposing an undue burden and expense on TUSA to defend assertions which have no bearing on the case.

### 2. Any Department of Justice Fine Against TPI has No Relation to TUSA's Decision to Eliminate Plaintiff's Position

In addition to protecting parties from "irrelevant and "impertinent" matter, Rule 12(f) also grants courts with the discretion to strike "scandalous" matter contained in a pleading that does not pertain to the issues at hand. Fed. R. Civ. P. 12(f). An allegation is scandalous when it "'improperly cast[s] a derogatory light on someone, most typically on a party to the action.'" Sullivan v. Warminster Twp., No. 07-4447, 2010 WL 2164520, at *11 (E.D. Pa. May 27, 2010) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed.)).  The allegation "must reflect cruelly upon the defendant's moral character, use repulsive language or detract from the dignity of the court."  Id. (citing Carone v. Whalen, 121 F.R.D. 231, 233 (M.D.Pa. 1988)). Plaintiff's allegations in Paragraph 27 fit squarely within this definition.

In Paragraph 27 Plaintiff references a Department of Justice fine that TPI paid in 2017. Compl. at ¶ 27. Plaintiff goes into considerable detail regarding the amount of the fine, what countries the fine related to and how the fine compared to other settlements paid by different pharmaceutical companies. Plaintiff fails, however, to explain how this fine is relevant to TUSA's termination of Plaintiff's employment following year. This is because there is no connection.

Presumably Plaintiff will argue that such information is "necessary" to establish the reasons that led to the RIF. However, this confuses the issue. This case is not about what led to the RIF, but instead the decisions made when implementing it and specifically who was selected. In fact, Plaintiff does not allege that the decision to engage in a RIF was in and of itself discriminatory. Rather, Plaintiff's claims focus on a point later in the timeline—after the decision

7

to engage in a RIF occurred. Plaintiff's allegations are that TUSA's decision to choose Plaintiff ***as part of*** the RIF was discriminatory. Therefore, what led to the decision to engage in the RIF is impertinent. Certainly, if what led to the decision to engage in the RIF is not relevant, it follows that any fine that TPI was issued over a year before Plaintiff's termination is **entirely** irrelevant to the Complaint. Rather, reference to this fine is only included due to its scandalous nature. The allegation has no place in a case involving claims of age discrimination, and this Court should strike it from the Complaint.  See, e.g., Rose v. Rothrock, No. 08-3884, 2009 WL 1175614, at *7 (E.D. Pa. Apr. 29, 2009), 2009 WL 1175614 at *9 (striking as scandalous specific portions of complaint that contain "extraneous and inflammatory hyperbole").

## III.  CONCLUSION

For the foregoing reasons, Defendant TUSA respectfully requests that the Court grant Defendant TUSA's Fed. R. Civ. P. 12(f) Motion to Strike Complaint Paragraphs 27, 29, 30 &31

01/27/2020 SL1 1624120v3 030421.00713

in their entirety and with prejudice; and grant any such further relief as the Court deems

appropriate.

Respectfully submitted,

STEVENS & LEE, P.C.

By:  /s/ Larry J. Rappoport
     Larry J. Rappoport, Esquire
     Attorney ID No. 26922
     Brandon S. Shemtob, Esquire
     Attorney ID No. 319246
     Stevens & Lee, P.C.
     1818 Market Street, 29th Floor
     Philadelphia, PA  19103
     Telephone:  610-205-6039
     Facsimile:  610-371-7977
     E-mail:  ljr@stevenslee.com

*Attorneys for Defendants Teva Pharmaceuticals USA, Inc.*

Dated:  January 27, 2020

01/27/2020 SL1 1624120v3 030421.00713