IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDOLPH W. KEUCH<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, TEVA PHARMACEUTICAL INDUSTRIES, Ltd., KARE SCHULTZ and RON YANIV | CIVIL ACTION<br>NO. 19-cv-05488 (WB) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S MOTION TO STRIKE PARAGRAPHS 27, 29, 30 AND 31 OF THE COMPLAINT**

In support of his response to the Motion to Strike paragraphs 27, 29, 30 and 31 of the Complaint which was filed by Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA"), Plaintiff Randolph W. Keuch ("Plaintiff" or "Keuch"), by and through his undersigned counsel, submits the following analysis of the applicable law and facts controlling the issues raised in the Motion. Based on this analysis, Plaintiff respectfully submits that Defendant's Motion must be denied in its entirety.

## STATEMENT OF THE CASE

### A.   Procedural History

The present employment class action was instituted by Plaintiff on November 19, 2019 against Defendant Teva USA, Defendant Teva Pharmaceuticals Industries, Ltd. (Teva Worldwide") and two executives employed by Teva Worldwide (hereinafter collectively "Defendants"). Plaintiff, on behalf of himself and the putative class of employees he represents, alleges that Defendants were joint employers and discriminated against him and the class based upon their age when they terminated their employment in conjunction with a broad-based, national and international reduction in force and replaced them with substantially younger

1

individuals in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A § 951 *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*. The Complaint further alleges that the parent corporation of Teva USA, Teva Worldwide and two of its executive officers, Käre Schultz ("Schultz") and Ron Yaniv ("Yaniv") actively aided and abetted the discriminatory actions against the Plaintiff and the class of employees he represents in violation of the PHRA.

Plaintiff successfully served Teva USA. However, counsel for Teva USA refused to accept service on behalf of the three other defendants residing in Israel. As a result, Plaintiff filed a Motion to Serve these remaining defendants in accordance with the applicable federal rules and the controlling provisions of the Hague Convention to which Israel is a signatory. This Motion is presently pending before the Court. Defendant Teva USA has filed no opposition to this pending Motion and its counsel has suggested that it would represent all defendants only upon completed service.

On January 27, 2020, Teva USA filed its answer to Plaintiff's Complaint. In addition to its Answer, Teva USA simultaneously filed the present Motion to Strike four of the Complaint's paragraphs dealing entirely with actions and motivations of the three other unrepresented defendant which underlie the reductions in the workforce that created the basis of Plaintiff's unlawful firings.

B. **Statement of Relevant Facts**

Defendant Teva USA's Motion requests that the Court strike just four of the paragraphs in the seventy-two (72) paragraph class action complaint that appear after the heading **"Historical Facts Leading to the Drastic Workforce Reductions"**:

> 27. Additionally, in early 2017, Teva Worldwide was forced to pay fines to the United States Department of Justice ("DOJ") and the Securities

and Exchange Commission ("SEC") totaling in excess of $520 Million to resolve federal violations of the Foreign Corrupt Practices Act ("FCPA") arising from bribery charges relating to its operations in Russia, the Ukraine and Mexico. Teva's settlement was the largest fine ever paid by a pharmaceutical company over FPCA violations.

29. Despite the imposition of these Draconian measures to save costs on the backs of employees and common stock investors, Defendant Schultz received, in addition to his base salary, a Twenty Million Dollar ($20,000,000) cash payment included in his contract and entitlement to a performance-based target incentive bonus of 140% of his annual base salary. Those payments led to broadly-based criticism that he canceled the employee bonuses and ordered the reduction of the workforce to increase his own bonus that depended on how much money he could save for Teva.

30. In fact, the median annual pay of Teva's employees was Sixty Four Thousand Eighty-One Dollars ($64,081) compared with Schultz's contractually obligated total compensation in an amount exceeding Twenty Million Dollars.

31. Compensation levels for the other executives that caused the problems for Teva that led to the decision to affect the reductions in the workforce also did not abate. Teva's senior management continued to receive inflated salaries and bonuses. The Actavis deal's engineer, Erez Vigodman who stepped down as CEO in February 2017, continued to receive a salary of One Million Four Hundred Fifty Thousand Dollars ($1.45) for the next several months and a bonus of Two Million Dollars ($2,000,000). Interim CEO Yitzhak Peterburg, who replaced Vigodman, received a salary of Nine Million Two Hundred Thousand Dollars ($9.2 million) for the eight months he served in that capacity.

Plaintiffs' Complaint, ¶¶ 27, 29, 30, and 31.[1]

---

[1] Defendant Teva USA conspicuously omitted Paragraph 28 that alleges Plaintiff and other members of the putative class of older workers were discharged throughout the world as part of alleged cost saving measures, a claim supported by the very four paragraphs Teva USA seeks to strike:

> 28. These circumstances led to the hiring of Defendant Schultz as the President and CEO of Teva Worldwide who was faced with the alternatives of cutting costs or rapidly growing revenues. Defendant Schultz chose the former. In December, Teva at Defendant Schultz's direction approved by Teva's Board, suspended dividends on its common stock, ordered that no annual bonus payments be made to employees for the year 2017 and announced a reduction in its employment force of 14,000 people, including 25% of the Teva US workforce.

Plaintiffs' Complaint, ¶ 28.

**LEGAL DISCUSSION**

A.   **Applicable Legal Principles and Standards of Review**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Content is "immaterial" when it "has no essential or important relationship to the claim for relief." *Donnelly v. Commw. Fin. Sys.*, No. 07-1881, 2008 WL 762085, at *4 (M.D. Pa. March 20, 2008), *citing Del. Health Care, Inc. v. MCD Holding Co.*, 893 F.Supp. 1279, 1291–92 (D. Del. 1995). Content is "impertinent" when it does not pertain to the issues raised in the complaint. *Id.*, *citing Cech v. Crescent Hills Coal Co.*, No. 96-2185, 2002 WL 31002883, at *28 (W.D. Pa. July 25, 2002). Scandalous material "improperly casts a derogatory light on someone, most typically on a party to the action." *Id., citing Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988).

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009), *citing Johnson v. Anhorn,* 334 F. Supp.2d 802, 809 (E.D. Pa. 2004). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp.2d 393, 402 (E.D. Pa. 2002). Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause

prejudice to one of the parties, or if the allegations confuse the issues in the case." *River Road Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

Motions to strike are to be decided "on the basis of the pleadings alone." *North Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 159 (E.D. Pa. 1994) (citations omitted). Striking a pleading or a portion of a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." *DeLa Cruz v. Piccari Press*, 521 F. Supp.2d 424, 428 (E.D. Pa. 2007).

### B. The Paragraphs Teva USA Seeks To Strike (¶¶ 27, 29, 30 and 31) Are Not Immaterial, Impertinent Or Scandalous And Should Not be Stricken

In Section B.1. of its brief, Teva USA begins its argument with the statement that the essential factual claim in the Complaint is that "Plaintiff alleges that TUSA targeted Plaintiff and older workers in deciding who to include in the RIF." In doing so, Teva USA essentially admits that the motivations of its parent corporation, Teva Worldwide and two of its executives in taking the complained of actions are relevant to the claims of Plaintiff and the putative class. Moreover, Defendant Teva USA does not suggest that the four targeted paragraphs contain untruthful or inaccurate information, but only proffers (without any factual basis) that they were inserted "in an effort to misguidedly connect executive salary to specific workforce decisions" (Teva USA Memorandum, Section B.1., p. 4) and that "Plaintiff wants to show that TUSA and its corporate parent should have considered executive compensation rather than an employee reduction, second guessing the reason for the RIF" (Teva USA Memorandum, Section B.1., p 5). This argument should be rejected.

Specifically, to prevail, it is axiomatic that Plaintiff will be required to demonstrate that the decision to terminate older workers in lieu of their substantially younger counterparts was intentional. Therefore, Plaintiff's suggestion that the decision to affect terminations of older

workers was tied to personal economic motivations (*i.e.* to permit the payment of large salaries and bonuses to the very executives who were responsible for putting the offending actions into effect) is neither immaterial nor impertinent. To the contrary, because the inclusion of the cited paragraphs deal with motivations by Teva Worldwide and its two top executives who affected the decisions that led to the complained of discriminatory actions, these allegations could not be more relevant. While proving that Teva Worldwide and the two individual Defendants realized personal financial gain from the targeting of older workers is a burden that Plaintiff will be required to bear during the discovery process, these allegations cannot be said to be scandalous or without valid purpose for their inclusion at this juncture in the proceedings.[2] Moreover, Teva Worldwide is alleged to be a joint employer and together with its two top executives is alleged to be an aider and abettor under the applicable provisions of the PHRA. *See* Paragraph 22 of Plaintiff's' Complaint.

      The two cases cited by Teva USA are entirely distinguishable and not dispositive. The circumstances that led the court in *Molthan v. Temple Univ.*, 442 F. Supp. 448 (E.D.Pa 1977) to strike the averments of comparator compensation in companies other than the defendant Temple University was that those allegations could not constitute a basis for liability. Similarly, the conduct of plaintiff's counsel in earlier litigation was properly ruled totally irrelevant to the issues raised by the Plaintiff in *Morozin v. Philadelphia Housing Authority*, Civ. Action No. 18-2174, 2019 WL 3824228 at *9 (E.D. Pa. August 13, 2019).

---

[2] See *Sizer v. Bennett*, Civ. Action No. 17-1591, 2018 WL 3439533 (W.D.Pa July 17, 2018) suggesting that "[d]efendant may seek to exclude this evidence by filing a motion in limine prior to trial" *citing Baily-P.V.S. Oxides, LLC v. S&K Packaging, Inc.*, Civ. Action No. 8-1596, 2009 WL 425605 at *2 (W.D.Pa. Feb. 19, 2009).

Additionally, the allegations of Teva USA that the mere inclusion of those paragraphs will "drastically enlarge the scope of discovery" (Teva USA Memorandum, Section B.1., p. 6. ¶2) or engender confusion as to the relationship between the payment of a $520 Million fine imposed by the SEC on the parent company and the motivations of the defendants in choosing older workers for firing instead of their younger counterparts (Teva USA Memorandum, Section B.2., p.7-8) are mere speculations unsupported by any suggestion of how or why those bald averments are true. It is respectfully suggested that such speculations cannot support the striking of relevant paragraphs in Plaintiffs' Complaint.

Finally, this Court should take note of the case of *Eisai Co, Ltd. v. Teva Pharmaceuticals USA, Inc.*, 629 F. Supp.2d 416 (D. N.J. 2009) in which Teva USA espoused a position completely opposite to that set forth in its Motion to Strike. In *Eisai*. Teva USA successfully argued (and the court adopted) its position that motions to strike are "highly disfavored" and should not be readily granted. In that matter, Teva USA alleged that the plaintiff had "intended to deceive" in the context of its patent application. The district court overruled the decision of the magistrate judge striking Teva USA's affirmative defense based upon the following cogent statement of the relevant standards that control motions to strike paragraphs from a complaint:

> Teva's appeal of the February Order requires this Court to review Magistrate Judge Salas's grant of Eisai's Rule 12(f) motion to strike. Rule 12(f) provides the means to challenge the sufficiency of affirmative defenses. *See Mars Inc. v. JCM Am. Corp.*, No. 05–3165, 2006 WL 1704469, at *3 (D.N.J. Jun. 14, 2006). In deciding a Rule 12(f) motion, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). This standard essentially translates into application of the standards of a Rule 12(b)(6) motion to dismiss, with the understanding that a motion to strike should be granted sparingly. *See Mars*, 2006 WL 1704469, at *4; *see also Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp.2d 353, 356 (D.Del.2009).

Motions to strike are highly disfavored. *See Garlanger v. Verbeke,* 223 F. Supp.2d 596, 609 (D.N.J.2002); *Tonka Corp. v. Rose Art Indus., Inc.,* 836 F. Supp. 200, 217 (D.N.J.1993). Striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice." *Tonka Corp.,* 836 F. Supp. at 217 (quotation and citation omitted). Here, Eisai did not seek to strike Teva's *entire* inequitable conduct defense as "insufficient." Instead, Eisai moved to strike Teva's individual allegations regarding the pattern of non-disclosure of other co-pending applications. In such a situation, courts do not grant motions to strike unless the moving party shows that "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Garlanger,* 223 F. Supp.2d at 609 (D.N.J.2002) (quoting *Tonka Corp.,* 836 F. Supp. at 217); *see also DeLa Cruz v. Piccari Press,* 521 F. Supp.2d 424, 428 (E.D.Pa.2007). "When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." *Del. Health Care, Inc. v. MCD Holding Co.,* 893 F. Supp. 1279, 1292 (D.Del.1995) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 695–96 (2d ed. 1990)). Under the "strict" standard of Rule 12(f), "only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn,* 334 F.Supp.2d 802, 809 (E.D.Pa.2004) (internal quotation and citation omitted).

Furthermore, Rule 12(f) motions often will not be granted where the challenged allegations depend on disputed issues of fact, due to the "practical difficulty of deciding cases without a factual record." *Tonka Corp.,* 836 F. Supp. at 217 (quotation and citation omitted); *see also United States v. Sensient Colors, Inc.,* 580 F.Supp.2d 369, 374 (D.N.J.2008) (noting reluctance of courts to grant Rule 12(f) motions "out of a concern that they often involve a premature evaluation of a defense's merits"). Even if facts are not in dispute, courts should not use a Rule 12(f) motion "to determine disputed and substantial questions of law." *Tonka Corp.,* 836 F.Supp. at 218.

*Esai v. Teva USA*, 629 F. Supp.2d at 424-425.

## CONCLUSION

Based upon the foregoing discussion, it is respectfully submitted that the Motion to Strike paragraphs 27, 29, 30 and 31 of Plaintiffs' Complaint must be denied.

Respectfully submitted

**SPECTOR GADON ROSEN VINCI P.C.**

By: /s/ *Alan Epstein*

Alan B. Epstein, Esquire
Pa. Atty. No. 2346
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8832
(215) 531-9103 (Fax)
aepstein@lawsgr.com
*Counsel for Plaintiff*

Dated:  February 20, 2020