**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | (MAGISTRATE JUDGE TIMOTHY |
| | : | RICE) |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| TEVA PHARMACEUTICAL | : | [ELECTRONICALLY FILED] |
| INDUSTRIES, Ltd., | : | |
| KARE SCHULTZ (as President and CEO | : | |
| Teva Pharmaceuticals Industries, Ltd.) and | : | |
| RON YANIV (as SVP Global Compensation | : | |
| and Benefits) | : | |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TEVA
PHARMACEUTICAL INDUSTRIES LTD., KÅRE SCHULTZ, AND RON YANIV'S
MOTION TO DISMISS DEFENDANTS FROM THIS CASE FOR LACK OF
PERSONAL JURISDICTION, FAILURE TO EFFECTUATE SERVICE ON RON
YANIV AND FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES WITH
<u>RESPECT TO RON YANIV</u>**

STEVENS & LEE, P.C.
Larry J. Rappoport, Esquire
Attorney ID No. 26922
Brandon S. Shemtob, Esquire
Attorney ID No. 319246
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA  19103
Telephone:  610-205-6039
Facsimile:  610-371-7977
E-mail:  ljr@stevenslee.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

    A.    PROCEDURAL HISTORY ...........................................................................1

    B.    EVENTS LEADING TO PLAINTIFF'S TERMINATION ....................................2

    C.    TPI AND TEVA USA ARE SEPARATE AND DISTINCT ENTITIES ................2

    D.    KÅRE SCHULTZ AND RON YANIV ARE NOT PENNSYLVANIA
        RESIDENTS ...............................................................................................4

II.    ARGUMENT .......................................................................................................4

    A.    THE COURT SHOULD DISMISS THE ISRAELI DEFENDANTS
        PURSUANT TO RULE 12(B)(2) BECAUSE THE COURT MAY NOT
        ASSERT PERSONAL JURISDICTION OVER THE ISRAELI
        DEFENDANTS. ...........................................................................................4

        1.    Standards Governing a Motion to Dismiss Under
            Fed. R. Civ. P. 12(b)(2). .....................................................................4

        1.    Governing Law Regarding General Personal Jurisdiction. ...........................6

        2.    There Is No Basis For The Court To Exercise General Jurisdiction
            Over TPI. ...........................................................................................8

            a.    The Court may not exercise general personal jurisdiction over
                TPI because TPI does not have "continuous and systematic"
                contacts with Pennsylvania. ...................................................8

            b.    The Court May Not Exercise General Jurisdiction Over TPI
                Based On The Activities Of Its Subsidiaries. ......................10

        3.    The Court May Not Exercise General Jurisdiction Over Kåre Schultz
            or Ron Yaniv. ...................................................................................13

        4.    Governing Law Regarding Specific Personal Jurisdiction .........................14

        5.    There Is No Basis Upon Which the Court May Exercise Specific
            Jurisdiction Over TPI. ......................................................................16

        6.    There Is No Basis Upon Which the Court May Exercise Specific
            Jurisdiction Over Schultz. .................................................................18

08/21/2020 SL1 1649583v4 030421.00713

**TABLE OF CONTENTS**
**(continued)**

**Page**

   7. There Is No Basis Upon Which the Court May Exercise Specific Jurisdiction Over Yaniv. ...............................................................................23

  B. THE COURT SHOULD DISMISS RON YANIV BECAUSE PLAINTIFF FAILED TO PROPERLY EFFECTUATE SERVICE ON RON YANIV ............23

  C. THE COURT SHOULD DISMISS RON YANIV BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES ........................25

   1. The Legal Standards Under Fed. R. Civ. P. 12(b)(6) Are Well-Settled. ..............................................................................................26

   2. Plaintiff Failed to Exhaust His Administrative Remedies As It Relates To Ron Yaniv .....................................................................................26

III. CONCLUSION.............................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Aggrenox Antitrust Litigation,*
    *94 F. Supp. 3d 224 (D. Conn. 2015)* ..................................................................................9, 12

*Ames v. Whitman's Chocolates, Div. of Pet Inc., No. CIV. A. 91-3271,*
    *1991 WL 281798 (E.D. Pa. Dec. 30, 1991)* ...................................................................... 10-11

*Ashcroft v. Iqbal,*
    *556 U.S. 662, 129 S.Ct. 1937 (2009)* ..................................................................................26

*Baker v. LivaNova PLC,*
    *210 F. Supp. 3d 642 (M.D. Pa. Sept. 29, 2016)* ....................................................................16

*Beckwith v. International Mill Services,*
    *617 F.Supp. 187 (E.D.Pa.1985)* ..........................................................................................10

*Bell Atlantic Corp. v. Twombly,*
    *550 U.S. 544 (2007)* ............................................................................................................26

*BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.,*
    *229 F.3d 254 (3d Cir. 2000)* ...................................................................................... 6, 15-16

*Buck v. Hampton Twp. Sch. Dist.,*
    *452 F.3d 256 (3d Cir. 2006)* ...............................................................................................27

*Burger King Corp. v. Rudzewicz,*
    *471 U.S. 462, 105 S.Ct. 2174 (1985)* ..................................................................................14

*Cerciello v. Canale,*
    *563 F. App'x 924 (3d Cir. 2014)* .........................................................................................21

*Chavez v. Dole Food Co., Inc.,*
    *836 F.3d 205 (3d Cir. 2016)* .................................................................................................7

*In re Chocolate Confectionary Antitrust Litigation,*
    *602 F. Supp. 2d 538 (M.D. Pa. 2009)* ...................................................................................6

*Comerota v. Vickers,*
    *170 F.Supp.2d 484 (M.D.Pa.2001)* .......................................................................................7

*Daimler AG v. Bauman,*
    *571 U.S. 117, 134 S. Ct. 746 (2014)* ................................................................................ 7-8

*Decker v. Dyson*,
  165 Fed. Appx. 951 (3d Cir.2006) .......................................................................7

*Dici v. Com. of Pa.*,
  91 F.3d 542 (3d Cir.1996) ...............................................................................26

*Doe v. Hesketh*,
  15 F. Supp. 3d 586 (E.D. Pa. 2014)....................................................................6

*DuPont v. Slippery Rock Univ. of Pennsylvania, No. 2:11-CV-1435*,
  2012 WL 94548 (W.D.Pa. Jan. 11, 2012) .........................................................27

*El-Hakem v. BJY Inc.*,
  2001 WL 34043760 (D.Or. Aug. 15, 2001)........................................................15

*Farber v. Tennant Truck Lines, Inc.*,
  2015 WL 518254 (E.D. Pa Feb. 9, 2015) ..........................................................13

*Fisher v. Teva PFC SRL*,
  212 F. App'x 72 (3d Cir. 2006)........................................................... 6, 9-10, 17

*Ford Motor Co. v. Edgewood Properties, Inc., No. 06–1278*,
  2011 WL 677331 (D.N.J. Feb. 15, 2011) ..........................................................22

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...........................................................................26

*Glus v. G. C. Murphy Co.*,
  562 F.2d 880 (3d Cir. 1977) ...........................................................................27

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915, 131 S. Ct. 2846 (2011) ..............................................................14

*Gov't Emples. Ins. Co. v. Nealy*,
  262 F. Supp. 3d 153 (E.D. Pa. Jun. 13, 2017) .............................................16, 18

*Hills v. Borough of Colwyn*,
  978 F. Supp. 2d 469 (E.D. Pa. 2013)................................................................28

*Hoffman v. Tyco Int'l, Ltd., No. CIVA 06-2961*,
  2006 WL 3759709 (E.D. Pa. Dec. 18, 2006) .....................................................11

*In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*,
  No. 2:13-MD-02436, 2014 WL 3035791 (E.D. Pa. July 1, 2014).........................22

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
  326 U.S. 310, 66 S. Ct. 154 ......................................................................15, 20

(iv)

*Johnson-Lloyd v. Vocational Rehabilitation Office, Pennsylvania Dep't of Labor*
   *& Indus.*,
   *813 F.Supp. 1120 (E.D. Pa. 1993)* ................................................................24

*KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, No. 08-cv-2201,
   *2010 WL 1047807 (E.D. Pa. Mar. 19, 2010)* ...........................................21

*Kunsak v. Wetzel*, No. 15-1648,
   *2016 WL 6601574 (W.D. Pa. Nov. 7, 2016)* .............................................27

*Kunwar v. Simco*,
   *135 F.Supp.2d 649 (E.D.Pa.2001)* ............................................................26

*Laffey v. Plousis*, No. 05-2796,
   *2008 WL 305289 (D.N.J. Feb. 1, 2008), aff'd, 364 F. App'x 791 (3d Cir.*
   *2010)* ...........................................................................................................24

*Lin v. Pennsylvania Machine Works, Inc.*, No. 97-5407,
   *1998 U.S. Dist. LEXIS 2767 (E.D. Pa. March 3, 1998)* ..........................25

*Lucas v. Gulf & Western Indus., Inc.*,
   *666 F.2d 800 (3d Cir.1981)* .......................................................................11

*Mass. School of Law at Andover, Inc. v. ABA*,
   *855 F. Supp. 108 (E.D.Pa.1994)* ...........................................................7, 13

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,
   *960 F.2d 1217 (3d Cir. 1992)* ......................................................................5

*Merical v. Valor Healthcare, Inc.*, No. CIV.A. 12-1681,
   *2013 WL 5408986 (W.D. Pa. Sept. 25, 2013)* ..........................................21

*Neff v. PKS Holdings, LLC*, No. 5:18-CV-1826,
   *2019 WL 3729568 (E.D. Pa. Aug. 8, 2019)* ................................... *passim*

*O'Connor v. Sandy Lane Hotel Co.*,
   *496 F.3d 312 (3d Cir. 2007)* .......................................................................20

*Oeschle v. Pro-Tech Power, Inc.*,
   *2006 U.S. Dist. LEXIS 10223 (E.D. Pa. Mar. 15, 2006)* ..........................11

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*,
   *484 U.S. 97 (1987)* .....................................................................................23

*Patterson v. City of Philadelphia*, No. CIV.A. 08-2140,
   *2009 WL 1259968 (E.D. Pa. May 1, 2009)* ...............................................25

*Pedro v. City Fitness, LLC*, No. 15-4964,
2018 WL 1566798 (E.D. Pa. Mar. 30, 2018) ...........................................................27

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ...................................................................................26

*Professional Services Group, Inc. v. American Digital Systems, Inc.*,
555 F.Supp. 788 (E.D.Pa.1983) ..............................................................................21

*Reif v. CNA*,
248 F.R.D. 448 (E.D.Pa. 2008) ...............................................................................22

*Rippy v. Pub. Health Mgmt. Corp.*, No. 19-CV-1839-JMY,
2020 WL 832088 (E.D. Pa. Feb. 19, 2020) ...................................................... 27-28

*Ruddy v. U.S. Postal Serv.*,
455 Fed.Appx. 279 (3d Cir. 2011) ...........................................................................27

*Ruiz v. Teva Pharmaceuticals USA, Inc.*, No. 11-005957,
2016 WL 7191453 (Fla. Cir. Ct. Dec. 9, 2016) ................................................. 11-13

*Schafer v. Bd. of Educ.*,
903 F.2d 243 (3d Cir. 1990) ...................................................................................28

*Simpson v. Lifespring, Inc.*,
572 F. Supp. 1251 (E.D. Pa. 1983) ..........................................................................21

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422, 127 S.Ct. 1184 (2007) ........................................................................4

*Stevens v. Meaut*,
264 F.Supp.2d 226 (E.D.Pa.2003) ...........................................................................15

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
735 F.2d 61 (3d Cir. 1984) .......................................................................................5

*Twillie v. Erie Sch. Dist.*, No. 11-165,
2013 WL 4666072 (W.D. Pa. Aug. 30, 2013), aff'd, 575 Fed.Appx. 28 (3d Cir.
2014) ....................................................................................................................27

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*,
75 F.3d 147 (3d Cir. 1996) .......................................................................................5

*Violanti v. Emery Worldwide A-CF Co.*,
847 F. Supp. 1251 (M.D. Pa. 1994) .........................................................................19

*Whitener v. Pliva, Inc., et al.*,
606 Fed. Appx. 762 (5th Cir., Apr. 9, 2015) ..............................................................9

(vi)

*Wright v. Xerox Corp.*,
    *882 F.Supp. 399 (D.N.J.1995)* ...............................................................................15

**State Cases**

*Botwinick v. Credit Exchange, Inc.*,
    *419 Pa. 65, 213 A.2d 349 (Pa. 1965)*.......................................................................11

**Federal Statutes**

28 U.S.C. § 1331 ...........................................................................................................6

Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. .................................1

**State Statutes**

43 P.S. § 962.11 ...........................................................................................................27

43 P.S. §§ 951 *et seq*. ...................................................................................................1

**Rules**

Fed R. Civ. P. 4 ......................................................................................................24, 25

Fed. R. Civ. P. 12(b)(2).........................................................................................4, 22, 29

Fed. R. Civ. P. 12(b)(4)..................................................................................................23

Fed. R. Civ. P. 12(b)(5)..................................................................................................24

Fed. R. Civ. P. 12(b)(6)..................................................................................................26

Rule 26 ..........................................................................................................................22

08/21/2020 SL1 1649583v4 030421.00713

I. **INTRODUCTION**

Defendants Teva Pharmaceutical Industries, Ltd. ("TPI"), Kåre Schultz ("Schultz"), and

Ron Yaniv ("Yaniv" and together with TPI and Schultz the "Israeli Defendants"), by and

through their undersigned counsel, hereby file this Memorandum of Law in support of their

Motion to Dismiss the Complaint against them filed by Randolph W. Keuch ("Plaintiff" or

"Keuch"), pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "Rule") 12(b)(2),

12(b)(4), 12(b)(5), and 12(b)(6) and in support thereof, aver as follows.[1]

This case involves Plaintiff's claims of age discrimination in violation of the Age

Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*., and the Pennsylvania Human

Relations Act, 43 P.S. §§ 951 *et seq*.

A. **PROCEDURAL HISTORY**

On or about November 19, 2019, Plaintiff filed his Complaint in the Eastern District of

Pennsylvania.  On January 27, 2020 Teva Pharmaceuticals USA, Inc. ("Teva USA") filed its

Answer in response to Plaintiff's Complaint.  At that time, Plaintiff had not yet effectuated

service of the Complaint on the Israeli Defendants.  On April 17, 2020, the Court held a status

conference regarding this matter.  At that time, the Court granted Plaintiff's motion to effectuate

service on the Israeli Defendants pursuant to Fed. R. Civ.P. 4(f)(3) and Article 10 of the Hague

Convention.  The Court further directed Plaintiff to file a notice of completion of service with the

Court after all the Israeli Defendants had been served.  The Court explained that following the

filing of such a notice, the Israeli Defendants would have forty-five days to file any Motion to

Dismiss.  On July 7, 2020, Plaintiff filed an Affidavit of Service asserting that service had been

---

[1]  Teva Pharmaceuticals USA, Inc. was served on January 6, 2020 and filed an Answer on January 27, 2020.  Teva Pharmaceuticals USA, Inc. does not challenge the Court's exercise of personal jurisdiction over it in this matter.

08/21/2020 SL1 1649583v4 030421.00713

made on Yaniv.  While Plaintiff has failed to file a notice with the Court stating that all Israeli

Defendants have been served, the Israeli Defendants nevertheless file the instant Motion to

Dismiss.[2]

## B.  EVENTS LEADING TO PLAINTIFF'S TERMINATION

At all times throughout his employment, Plaintiff was employed by Teva USA and

worked at Teva USA's then headquarters located in North Wales, Pennsylvania.[3]  At no point in

time was Plaintiff employed by TPI.

As brief historical background, in August 2016, TPI acquired Actavis—a generic drug

business of Allergan—in a multibillion dollar transaction.  The acquisition did not go as planned

and resulted in a serious financial downtown for TPI.  In 2017, Schultz was named the new CEO

of TPI.  Shortly thereafter, Schultz announced that due to the critical financial position of TPI, it

would be necessary for TPI to immediately reduce the global workforce by 25%.  This decision

led to a large reduction in force ("RIF") that continued throughout 2018 and well into 2019.

Plaintiff's position as Senior Director of Total Rewards was one of the many thousands of

positions eliminated globally and his employment with Teva USA was severed on March 18,

2018.

## C.  TPI AND TEVA USA ARE SEPARATE AND DISTINCT ENTITIES

TPI is a corporation organized and existing under the laws of the State of Israel.  It

maintains its principal place of business in Petach Tikva, Israel.  *See* Affidavit of Doron Herman.

---

[2]  Plaintiff made service on TPI on or about May 19, 2020 and on Schultz on or about May 25, 2020.

[3]  Effective January 1, 2020, Teva USA relocated its headquarters from North Wales, Pennsylvania to Parsippany, New Jersey.

("Herman Aff."), attached as Exhibit A.  TPI is an indirect parent of Teva USA (Herman Aff. at ¶ 3).

TPI and its affiliates, including Teva USA, each observe separate corporate forms (Herman Aff. at ¶ 4).  Each company holds its own board meetings and maintains its books and records separate from those of the other (Herman Aff. at ¶ 4).  Further, the companies have separate corporate headquarters (Herman Aff. at ¶ 4).  TPI and each of its affiliates maintain their own accounts of individual corporate assets and liabilities, and each is well-capitalized. (Herman Aff. at ¶ 5).  Although one entity may from time to time pay the expenses owed by related entities to third parties, those expenses are ultimately allocated to the entity that incurred them (Herman Aff. at ¶ 5).  TPI's affiliates own or lease property in their own names (Herman Aff. at ¶ 6).  TPI does not dominate or control the day to day operations of any subsidiary, including Teva USA (Herman Aff. at ¶ 7).

TPI is not incorporated in Pennsylvania or in any other state of the United States, nor has it qualified to do business in Pennsylvania or anywhere in the United States (Herman Aff. at ¶ 8). TPI has not filed or sought to file Articles of Incorporation or qualifications to do business in Pennsylvania or any other state of the United States at any time (Herman Aff. at ¶ 9).  TPI has no offices or comparable facilities anywhere in the United States, including Pennsylvania, and it has no telephone listings or mailing address in Pennsylvania or anywhere in the United States (Herman Aff. at ¶ 10).  TPI does not have any manufacturing operations in Pennsylvania or elsewhere in the United States, nor does it have any other physical presence in Pennsylvania or elsewhere in the United States (Herman Aff. at ¶ 11).  TPI has not designated any person in Pennsylvania or elsewhere in the United States as its authorized agent for service of process, and it has not filed or indicated its consent to service of process in Pennsylvania or anywhere else in

3

the United States (Herman Aff. at ¶ 12). TPI does not own, lease, possess, or maintain and has

not owned, leased, possessed, or maintained any real or personal property, office, residence, or

place of business in Pennsylvania or any other state of the United States at any time (Herman

Aff. at ¶ 13). TPI does not direct any of its advertising specifically toward residents of

Pennsylvania or any other state of the United States, nor does it advertise in any publications that

are directed primarily toward residents of Pennsylvania or any other state of the United States

(Herman Aff. at ¶ 14). TPI does not and has never employed any employees in Pennsylvania or

any state in the United States (Herman Aff. at ¶ 15).

### D. KÅRE SCHULTZ AND RON YANIV ARE NOT PENNSYLVANIA RESIDENTS

Schultz is the current Chief Executive Officer of TPI. Schultz lives and works in Israel.

Schultz has never been a resident of Pennsylvania nor has he ever been domiciled in

Pennsylvania.

Yaniv is a former TPI employee. Yaniv lives and works in Israel. Yaniv has never been

a resident of Pennsylvania nor has he ever been domiciled in Pennsylvania. Yaniv's active

employment with TPI was terminated on or about December 30, 2017 of as part of the same

RIF.[4] Notably, Yaniv's termination predates Plaintiff's termination by several months.

## II. ARGUMENT

### A. THE COURT SHOULD DISMISS THE ISRAELI DEFENDANTS PURSUANT TO RULE 12(B)(2) BECAUSE THE COURT MAY NOT ASSERT PERSONAL JURISDICTION OVER THE ISRAELI DEFENDANTS.

#### 1. Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2).

The Court must have personal jurisdiction over all named defendants before it can make

any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422,

---

[4] While Yaniv performed no work for TPI after December 30, 2017, he received severance payments until on or around June 30, 2018.

4

430, 127 S.Ct. 1184, 1190 (2007).  Where, as here, a defendant raises as a defense the court's

lack of personal jurisdiction in a 12(b)(2) motion, the plaintiff bears the burden of proof to show

by a preponderance of the evidence that the Court may properly assert personal jurisdiction over

the defendant or in this case the defendants.  *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,

960 F.2d 1217, 1223 (3d Cir. 1992).  To do so, the plaintiff must establish with reasonable

particularity sufficient contacts between the defendants and the forum state.  *Id*.  Resolution of a

motion to dismiss for lack of personal jurisdiction inherently requires resolution of factual issues

outside the pleadings, and once this defense has been raised, the plaintiff is required to sustain

his burden of proof to establish jurisdictional facts through sworn affidavits or other competent

evidence. *Time Share Vacation Club v. Atl. Resorts, Ltd*., 735 F.2d 61 (3d Cir. 1984).  Plaintiffs

may not rely on bare pleadings alone, but must respond with actual proofs, not mere allegations

to defeat a motion to dismiss for lack of personal jurisdiction.  *See Id*.

Because Pennsylvania's long-arm statute indicates that its reach coincides with the limits

placed on the states by the federal Constitution, the Court must look to the federal constitutional

limits of the due process clause of the Fourteenth Amendment doctrine to determine whether a

non-resident defendants are susceptible to personal jurisdiction in Pennsylvania.  *Vetrotex*

*Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).  A two part

test defines the due process limit to the exercise of personal jurisdiction and requires that a

plaintiff show both:  (1) that the defendants have made constitutionally sufficient "minimum

contacts" with the forum state, and that (2) if sufficient "minimum contacts" are shown, the

exercise of personal jurisdiction would comport with "traditional notions of fair play and

substantial justice."  *Id.*

In cases in which a federal district court has federal question jurisdiction over a matter pursuant to 28 U.S.C. § 1331, personal jurisdiction over a foreign defendant "when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258–59 (3d Cir. 2000).

Personal jurisdiction may be either general or specific in nature and the test utilized to determine whether general jurisdiction is appropriate depends on whether the defendant is an individual or a corporation. *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 75 (3d Cir. 2006). Further, a jurisdictional analysis must be specific to each defendant. *Doe v. Hesketh*, 15 F. Supp. 3d 586, 592 (E.D. Pa. 2014) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 n.1 (3d Cir. 2004)). Therefore, a plaintiff is required to show that each defendant moving to dismiss has sufficient contacts with the forum state, even should their corporate family collectively have the necessary contacts. *In re Chocolate Confectionary Antitrust Litigation*, 602 F. Supp. 2d 538, 559 n.17 (M.D. Pa. 2009).

Plaintiff does not state in the Complaint whether his assertion is that the Court may exercise general or specific jurisdiction over the Israeli Defendants. Accordingly, the Israeli Defendants shall address both potential avenues below and explain why the Court should not exercise personal jurisdiction over any of the Israeli Defendants under either analysis.

## 1.  Governing Law Regarding General Personal Jurisdiction

To show general jurisdiction over a corporation, the plaintiff must prove that the defendant corporation's contacts with the forum are "continuous and systematic" and a central part of the defendant's business. *Fisher*, 212 F. App'x at 75 (3d Cir. 2006). The contacts need not arise out of or be related to the plaintiff's cause of action. *Id*. However, as the Supreme

6

Court has held, only in exceptional cases will general jurisdiction over a corporation be found in a forum other than its formal place of incorporation or principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 761 (2014). The contacts must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Id*. at 761, quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011); *see also Daimler AG* 134 S. Ct. at 762 ("A corporation that operates in many places can scarcely be deemed at home for purposes of general jurisdiction in all of them; otherwise, "at home" would be synonymous with "doing business" tests framed before specific jurisdiction evolved in the United States.") Therefore, it is extremely difficult to establish general jurisdiction over a corporate defendant in a forum aside from its place of incorporation or principal place of business. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (finding no general jurisdiction over Chiquita Brands International in Delaware where it was not incorporated there, did not maintain an office there, and did not supervise its business there).

General jurisdiction over an individual defendant is based on the individual's presence or domicile in Pennsylvania when served or on the individual's consent to jurisdiction. *Mass. School of Law at Andover, Inc. v. ABA*, 855 F. Supp. 108, 111 (E.D.Pa.1994); *see also Comerota v. Vickers*, 170 F.Supp.2d 484, 487 (M.D.Pa.2001) ("To assert general jurisdiction in Pennsylvania over an individual, a plaintiff bears the burden of proving the individual's presence or domicile in the Commonwealth at the time of service, or the individual's consent to suit." (citing 42 Pa. Cons. Stat. § 5301(a)(1))); *accord Decker v. Dyson*, 165 Fed. Appx. 951, 953 (3d Cir.2006) ("Under Pennsylvania law, general jurisdiction arises over an individual, non-corporate defendant if the person's domicile or presence was in the state at the time of service of process, or there was consent to suit.").

2.  **There Is No Basis For The Court To Exercise General Jurisdiction Over TPI.**

    a.  **The Court may not exercise general personal jurisdiction over TPI because TPI does not have "continuous and systematic" contacts with Pennsylvania.**

In *Daimler*, the Supreme Court held that the proper consideration when determining general jurisdiction is whether the defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State."  134 S.Ct. at 761 (quoting *Goodyear*, 131 S.Ct. at 2851 (alteration in original).  As such, "it is the exceptional case in which a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation subject to general jurisdiction in that State."  *Daimler*, 134 S.Ct. at 761, n. 19.

Here, far from being "continuous and systematic," TPI's activities in Pennsylvania – indeed, in the entire United States -- are virtually nonexistent.  TPI is and always has been an Israeli corporation headquartered in Israel (Herman Aff. at ¶ 2).  TPI is not incorporated in Pennsylvania or in any other state of the United States, nor has it qualified to do business in Pennsylvania or anywhere else in the United States (Herman Aff. at ¶ 8).  TPI has not filed or sought to file Articles of Incorporation or qualifications to do business in Pennsylvania or in any other state of the United States at any time (Herman Aff. at ¶ 9).  TPI has no branch office or comparable facilities anywhere in the United States, including, in particular, Pennsylvania, and it has no telephone listings or mailing address in Pennsylvania or elsewhere in the United States (Herman Aff. at ¶ 10).  TPI does not have any manufacturing or other operations in Pennsylvania or elsewhere in the United States, nor does it have any other physical presence in Pennsylvania or elsewhere in the United States (Herman Aff. at ¶ 11).  TPI has not designated any person residing in Pennsylvania or elsewhere in the United States as its authorized agent for service of

8

process, and it has not filed or indicated its consent to service of process in Pennsylvania or anywhere else in the United States (Herman Aff. at ¶ 12). TPI does not own, lease, possess, or maintain and has not owned, leased, possessed, or maintained any real or personal property, office, residence, or place of business in Pennsylvania or any other state of the United States at any time (Herman Aff. at ¶ 13). TPI does not direct any of its advertising specifically toward residents of Pennsylvania or any other state of the United States, nor does it advertise in any publications that are directed primarily toward residents of Pennsylvania or any other state of the United States (Herman Aff. at ¶ 14). TPI does not and has never employed any employees in Pennsylvania or the United States of America (Herman Aff. at ¶ 15). In short, TPI has almost no connection to the Commonwealth of Pennsylvania, and certainly not a "continuous and systematic" presence that would justify the assertion of general jurisdiction over it.

Importantly, whether TPI is subject to general personal jurisdiction in the United States is not a novel question. Rather, courts in the Third Circuit and elsewhere in the United States have routinely held that TPI lacks continuous and systematic contacts that would justify the exercise of general jurisdiction. *See*, *e.g.*, *Fisher*, 212 Fed. Appx. at 75-76 (affirming district court's grant of motion to dismiss TPI for lack of personal jurisdiction and holding that TPI's distribution agreement with a New Jersey distributor, FDA approvals to market to the United States in general, and employee visits to the United States a few times per year "do not constitute continuous and systematic contacts with New Jersey.") (quotation omitted); *In re Aggrenox Antitrust Litigation*, 94 F. Supp. 3d 224, 256-57 (D. Conn. 2015) ("[N]one of the complaints plead facts even close to a plausible claim of general jurisdiction over TPI . . . The broad general contacts that the plaintiffs describe do not rise to the very high 'essentially at home' standard for general jurisdiction . . ."); *Whitener v. Pliva, Inc., et al.*, 606 Fed. Appx. 762, 765 (5th Cir.,

Apr. 9, 2015) (noting that it is an "exceptional case" in which a foreign company may be subject to general jurisdiction, and holding that "[n]othing in the record shows that Teva [Israel]'s contacts with Louisiana are continuous and systematic enough to make this such an exceptional case."); (quotations and citations omitted); *Hosain-Bhuiyan v. Barr Labs., Inc.*, No. 17 CV 114 (VB), 2017 WL 4122621, at *3 (S.D.N.Y. Sept. 14, 2017) (dismissing TPI from lawsuit for lack of personal jurisdiction after finding that TPI is incorporated under the laws of the State of Israel, where it maintains its principal place of business.").

As in those cases, TPI has no affiliations with Pennsylvania that even approach the "continuous and systematic" standard.  Therefore, the Court may not exercise general jurisdiction over TPI.

### b.   The Court May Not Exercise General Jurisdiction Over TPI Based On The Activities Of Its Subsidiaries.

The activities of a parent company are imputed to the subsidiary only if the subsidiary is the parent's agent or alter ego so that the "independence of the separate corporate entities was disregarded." *Fisher*, 212 F. App'x at 76 (quoting *Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 806 (3d Cir.1981)).  A finding of general jurisdiction over a parent corporation based on the activities of its subsidiary will only exist where "the parent corporation exercises such a degree of control that (1) the subsidiary is its alter ego or agent, (2) the subsidiary is its mere instrumentality, or (3) the corporations function as one integrated enterprise."  *Ames v. Whitman's Chocolates, Div. of Pet Inc.*, No. CIV. A. 91-3271, 1991 WL 281798, at *3 (E.D. Pa. Dec. 30, 1991); *see also Beckwith v. International Mill Services*, 617 F.Supp. 187 (E.D.Pa.1985).

Generally, a foreign corporation's ownership of the stock of a subsidiary doing business in the forum state is not enough to establish general jurisdiction over the foreign parent.  Factors that courts will consider include "whether the subsidiary corporation played any part in the

transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Ames,* 1991 WL 281798, at *3; *see also Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805–06 (3d Cir. 1981) *abrogated by EF Operating Corp. v. Am. Bldgs.,* 993 F.2d 1046 (3d Cir. 1993).

"When it applies, [a plaintiff] may use the alter ego doctrine to secure jurisdiction over nonresident corporations upon a finding that either the 'dominant' or 'subservient' corporation does business within the state." *Oeschle v. Pro-Tech Power, Inc.,* 2006 U.S. Dist. LEXIS 10223, at *12 (E.D. Pa. Mar. 15, 2006) (citation omitted); *see also, Botwinick v. Credit Exchange, Inc.,* 419 Pa. 65, 213 A.2d 349 (Pa. 1965).

To find general jurisdiction over a parent corporation based on an alter ego theory, the plaintiff must show "that the degree of control exercised by the parent is greater than normally associated with common ownership and directorship.'" *Hoffman v. Tyco Int'l, Ltd*., No. CIVA 06-2961, 2006 WL 3759709, at *3–4 (E.D. Pa. Dec. 18, 2006) quoting *Action Mfg.,* 375 F.Supp.2d at 422 (citations omitted). Among the factors to consider under the alter ego test are: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Hoffman*, 2006 WL 3759709, at *3–4.

Consistent with these standards and TPI's lack of activity in the United States and lack of control over its subsidiaries, courts throughout the United States have held that TPI is not subject to general jurisdiction in the United States solely by virtue of its subsidiaries' activities. For example, in *Ruiz v. Teva Pharmaceuticals USA, Inc.*, No. 11-005957, 2016 WL 7191453, (Fla.

11

Cir. Ct. Dec. 9, 2016), the plaintiff submitted emails and communications between employees of TPI and Teva USA as purported evidence that TPI was so intertwined with Teva USA that it was appropriate for the court to assert personal jurisdiction over TPI based on Teva USA's activities in Florida. *Id* at *3. The court rejected that argument, holding that the emails "demonstrate nothing more than an ordinary, typical parent-subsidiary relationship." *Id*. After noting that the threshold for establishing personal jurisdiction over a parent through the actions of its subsidiary "is a high bar," the court held: "Plaintiff failed to prove the day-to-day operational control that is required to support imputing . . . Teva USA's actions and contacts to Teva [Israel] for purposes of finding long-arm jurisdiction for the specific cause of action alleged here." *Id*. at *4.

In *In re Aggrenox Antitrust Litigation*, the District of Connecticut rejected the plaintiff's assertion that "the conduct of Teva USA and Barr should be attributed to TPI either because the latter is successor to the antitrust conspiracy or because it controls its American subsidiaries." 94 F. Supp. 3d at 257. The court held: "Those arguments do not appear to correspond to a plausible factual foundation in the pleadings, and without more facts, the prospects for repleading either a veil-piercing theory or a successor-in interest theory do not seem bright." *Id*. It further held: "Limited jurisdictional discovery of TPI is not appropriate because the plaintiffs failed to make a prima facie case for personal jurisdiction." *Id*.

Likewise, in *City of Chicago v. Purdue Pharma L.P., et al.*, No. 14 C 4361, 2015 WL 2208423 (N.D. Ill., May 8, 2015), the plaintiff alleged that the Northern District of Illinois could assert personal jurisdiction over TPI because one of its wholly-owned subsidiaries, Cephalon, Inc. ("Cephalon") regularly performs business in Illinois. *Id*. at *7. The plaintiff's evidence in support of that assertion was that: (1) TPI and Cephalon had combined their sales forces; (2) a pharmaceutical industry newsletter stated that TPI implemented a series of price increases for

Cephalon products; (3) websites for certain Cephalon products display TPI's logo but Cephalon's copyright; (4) TPI's website touts certain pharmaceutical products that are, in reality, products of Cephalon; and (5) TPI's SEC filings include information about Cephalon.  *Id*.  The court granted TPI's motion to dismiss for lack of personal jurisdiction, holding:  "These facts are not sufficient to suggest that Teva [Israel] controls Cephalon to such a degree that Cephalon's contacts with Illinois can be imputed to Teva [Israel]."  *Id*.

The same reasoning applies here, where Plaintiff has not, and cannot, make a showing that TPI exercises day-to-day control over any subsidiary that has continuous and systematic contacts with Pennsylvania.  Therefore, this Court may not assert general jurisdiction over TPI.

### 3.  The Court May Not Exercise General Jurisdiction Over Kåre Schultz or Ron Yaniv.

As previously explained, the general jurisdiction analysis for an individual defendant is considerably different from that of a corporation.  General jurisdiction over an individual defendant is based on the individual's presence or domicile in Pennsylvania when served or on the individual's consent to jurisdiction."  *Mass. School of Law at Andover, Inc. v. ABA*, 855 F.Supp. 108, 111 (E.D.Pa.1994).  Explained differently, general jurisdiction over a nonresident individual is only proper where:  (1) the individual lives in Pennsylvania; (2) the individual was served in Pennsylvania; or (3) the individual has consented to suit in Pennsylvania.  *See Farber v. Tennant Truck Lines, Inc.,* 2015 WL 518254 *11-12 (E.D. Pa Feb. 9, 2015).

None of the three permitted avenues to establish general personal jurisdiction over Schultz or Yaniv exist.  Rather, both Schultz and Yaniv are Israeli residents—not Pennsylvania or even United States residents.  Second, Schultz was served in Israel and Plaintiff has attempted

to serve Yaniv in Israel.[5]  In fact, Plaintiff sought approval from the Court to effectuate service

on both of these defendants in Israel—not in Pennsylvania.  Lastly, neither Schultz nor Yaniv

consent to the jurisdiction of this Court.  Therefore, this Court may not assert general jurisdiction

over either Schultz or Yaniv.

### 4.  Governing Law Regarding Specific Personal Jurisdiction

Understanding that Plaintiff cannot establish general jurisdiction over any of the Israeli

Defendants, we next turn to specific personal jurisdiction.  To establish specific jurisdiction, a

plaintiff must show: (1) sufficient minimum contacts with the forum state; (2) a nexus

connecting the claims to the defendant's contacts, and if the first two conditions are satisfied,

(3) consistency with traditional notions of fair play and substantial justice.  *Neff v. PKS Holdings,*

*LLC,* No. 5:18-CV-1826, 2019 WL 3729568, at *4 (E.D. Pa. Aug. 8, 2019).  Specific jurisdiction

"depends on an affiliation between the forum and the underlying controversy, principally,

activity or an occurrence that takes place in the forum State and is therefore subject to the State's

regulation."  *Goodyear*, 564 U.S. at 919 (alterations, internal quotation marks, and citation

omitted).  The exercise of specific jurisdiction rests on in-state activity that "gave rise to the

episode in suit."  *Id*. at 923 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment*

*Comp. & Placement*, 326 U.S. 310, 317, 66 S. Ct. 154, 154).  To assess whether a defendant has

had sufficient contacts with the forum state, the Court must determine whether "the defendant's

conduct and connection with the forum State are such that he should reasonably anticipate being

haled into court there."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174

(1985) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559

(1980)).

---

[5]  As discussed herein, Plaintiff has failed to properly effectuate service on Yaniv.

Additionally, "In an intentional tort[6] case, in order to determine if personal jurisdiction exists, the plaintiff must allege facts sufficient to meet the 'effects test' established by the Supreme Court in *Calder v. Jones* ... for determining personal jurisdiction over non-resident defendants who allegedly commit torts outside the forum." *Stevens v. Meaut*, 264 F.Supp.2d 226, 239 (E.D.Pa.2003) (citing *Calder*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804). The Third Circuit has interpreted the *Calder* effects test to require a plaintiff to show the following in order to establish personal jurisdiction over a defendant: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Lastly, even if a court decides that a defendant purposefully established minimum contacts within the forum state, the court may still deny personal jurisdiction if these contacts considered in light of other factors would not comport with traditional notions of fair play and substantial justice. *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 260 (3d Cir. 2000); s*ee also Int'l Shoe Co.,* 326 U.S. at 320. Therefore, in appropriate cases, courts may consider: (1) the burden placed on the defendant, (2) the interest of the forum state in adjudicating the dispute, (3) the interest of the plaintiff in obtaining effective and convenient relief, (4) the interest of the interstate judicial system interest in securing the most efficient resolution of disputes, and (5) the interest shared by several states in advancing fundamental

---

[6] Although originally applied in torts cases, the "effects test" promulgated in *Calder* has been applied in cases involving "statutory, civil rights tort[s]." *Wright v. Xerox Corp*., 882 F.Supp. 399, 406 (D.N.J.1995) (applying the "effects test" in a case involving alleged violations of New Jersey's Law Against Discrimination ("NJLAD")); *see also El-Hakem v. BJY Inc.,* 2001 WL 34043760, at *3 & n. 1 (D.Or. Aug. 15, 2001) ("Plaintiff's race discrimination claim and wage claims are more similar to tort claims than contract claims. The Court, therefore, analyzes the question of purposeful availment using the tort standard." (applying the *Calder* effects test) (citation omitted)).

substantial social policies.  *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 260 (3d Cir. 2000).  Therefore, the "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities."  *BP Chemicals Ltd.,* 229 F.3d at 260) (quoting *Burger King Corp.,* 471 U.S. at 462).

### 5. There Is No Basis Upon Which the Court May Exercise Specific Jurisdiction Over TPI.

Plaintiff's Complaint fails to allege any facts establishing that TPI is subject to personal jurisdiction in Pennsylvania.  Instead, Plaintiff's Complaint simply asserts that TPI's CEO announced that there would be a 25% global reduction in force, impacting Israel, Europe, North America, and the rest of the world where TPI and its subsidiaries have operations.  However, this announcement and the resulting decision to terminate various employees (including Plaintiff) does not establish or even allege any particular contact with Pennsylvania.  Rather, the Complaint itself concedes that the reductions were to occur on a "global" basis.  Complaint at ¶40.  This is insufficient to show that TPI had minimum contacts with Pennsylvania.  As Courts within this district have explained, such broad and conclusory allegations cannot support a finding that personal jurisdiction is proper.  *See Gov't Emples. Ins. Co. v. Nealy*, 262 F. Supp. 3d 153, 162 (E.D. Pa. Jun. 13, 2017) (quoting *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007) (explaining that in order to establish personal jurisdiction, "the plaintiff must allege 'specific facts'—not vague or conclusory assertions."); *Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 651 (M.D. Pa. Sept. 29, 2016) ("[w]holly conclusory arguments do not provide a basis for personal jurisdiction.").

A recent decision within this district is particularly instructive.  *Neff v. PKS Holdings, LLC*, No. 5:18-CV-1826, 2019 WL 3729568, at *6 (E.D. Pa. Aug. 8, 2019).  In *Neff*, the Plaintiff

16

alleged that she was terminated in retaliation for her whistleblowing activity and brought claims against her employer, various corporate executives and the parent corporation of her employer. In finding that the court lacked personal jurisdiction over the parent corporation, the Court explained that the Complaint failed to allege that the parent was an alter ego of the subsidiary, lacked independence from the subsidiary, or that the subsidiary was established to conduct activities that the parent would have had to perform. *Id.* Here, Plaintiff does not (and cannot credibly) allege that TPI is an alter ego of Teva USA or that the two entities "lacked sufficient independence" from one another. Furthermore, there is no evidence that Teva USA was either established for, or is engaged in, activities that, but for the existence of Teva USA, TPI would have to undertake itself. Rather, and as discussed at length herein, TPI and each of its affiliates (including Teva USA) are separate and distinct corporations. Each, maintain their own accounts of individual corporate assets and liabilities, and each is well-capitalized. (Herman Aff. at ¶ 5).

Moreover, even if there were a basis for the court to exercise personal jurisdiction over TPI, doing so would be unreasonable and would offend traditional notions of fair play and substantial justice. Specifically, the burden on TPI of having to defend a lawsuit in the United States which is located over 5,000 miles away would be great. In fact, the Third Circuit has reached this exact conclusion regarding this same defendant. *Fisher*, 212 F. App'x at 77 (recognizing that the burden on TPI to defend a lawsuit in New Jersey would be "great" and the exercise of jurisdiction over TPI would be "unreasonable.") Accordingly, because Plaintiff has failed to establish that this Court can exercise either general or specific jurisdiction over TPI, the court must dismiss TPI.

### 6.  There Is No Basis Upon Which the Court May Exercise Specific Jurisdiction Over Schultz.

Plaintiff's attempt to assert specific personal jurisdiction over Schultz similarly fails. First, Plaintiff fails to make any allegations in his Complaint that would support a finding of personal jurisdiction over Schultz.  For example, he does not assert that Schultz traveled to Pennsylvania or had any contacts whatsoever with Pennsylvania.  In fact, with the exception of noting that Plaintiff resides and worked in Pennsylvania the term "Pennsylvania" does not appear elsewhere in the Complaint.

Second, Plaintiff's only allegations against Schultz are that upon becoming CEO of TPI in 2017 he made a cost cutting decision to reduce global headcount by 25%.  In conclusory fashion, Plaintiff goes on to assert that Schultz "directed and actively aided and abetted the discriminatory actions that led to the termination of employment of Plaintiff and other employees over the age of forty (40)."  However, Plaintiff offers no further allegations or details regarding Schultz's involvement—let alone allegations that would give rise to this Court's ability to exercise personal jurisdiction over Schultz.  These conclusory assertions are insufficient to support a finding of personal jurisdiction.  *See Gov't Emples. Ins. Co. v. Nealy*, 262 F. Supp. 3d 153, 162 (E.D. Pa. Jun. 13, 2017) (explaining that in order to establish personal jurisdiction, "the plaintiff must allege 'specific facts'—not vague or conclusory assertions.")[7]

Third, caselaw in this Circuit supports the conclusion that personal jurisdiction over Schultz is improper.  Again, the *Neff* case is instructive.  2019 WL 3729568, at *8.  In *Neff*, the plaintiff asserted that the court had personal jurisdiction over the chief executive officer of her

---

[7] Plaintiff's assertion that Schultz specifically targeted him suffers from a serious timing issue.  Schultz became the CEO of TPI in September of 2017.  Plaintiff concedes that the announcement to reduce the global headcount occurred in late 2017.  It stretches the bounds of reasonableness that Schultz, after becoming CEO of one of the world's largest companies would be able to identify Plaintiff (who worked for a subsidiary company over 5,000 miles away) and discriminatorily target him for termination within a few months of taking the job.

employer.  The Court disagreed and found that even though the company's CEO had participated in conference calls with the plaintiff on the phone (while the plaintiff was in Pennsylvania) and in one instance had "ended" plaintiff's participation in a call, the court nevertheless lacked jurisdiction over the CEO.  *Id*.  The court explained that the CEO's actions were insufficient to establish minimum contacts with Pennsylvania because the CEO did not "expressly aim" any discriminatory conduct toward Pennsylvania.  For example, there were no allegations that the CEO contacted plaintiff in Pennsylvania to terminate her or that he made any discriminatory comments towards plaintiff in Pennsylvania.  *Id.*[8]

Similarly in *Jaipaul v. Pliant Corp*., an Eastern District of Pennsylvania court refused to exercise personal jurisdiction over an individual defendant from Illinois accused of violating the PHRA No. 07-cv-4031, 2008 WL 2746291 at *5 (E.D. Pa. July 14, 2008).  In *Jaipaul*, the court found that jurisdiction would be improper because the individual defendant did not "expressly aim" any discriminatory conduct toward Pennsylvania.  *Id*.  Importantly, the court explained that it was insufficient that the individual defendant knew that the plaintiff lived and worked in Pennsylvania and had even communicated with the plaintiff while she was in Pennsylvania.  *Id*. Rather, what was important was the fact that the plaintiff did not allege that the communications directed toward Pennsylvania included any discriminatory conduct.  Because there was no evidence that the individual defendant "aimed" discriminatory conduct toward Pennsylvania, the court dismissed the individual defendant for lack of personal jurisdiction.  *See also Violanti v.*

---

[8]  Admittedly, in *Neff* the Court did find that one of the individually named defendants had sufficient minimum contacts to support a finding of personal jurisdiction.  However, this specific individual defendant had called the plaintiff in Pennsylvania and terminated her employment.  *Neff,* 2019 WL 3729568, at *10.  Here, there is no assertion that Schultz contacted Plaintiff to terminate his employment.  Additionally, the analysis in the instant case is a step further removed then what was discussed in *Neff*.  Rather, in *Neff* the executive in question worked for the same company as plaintiff.  Here, Plaintiff is asking the court to assert jurisdiction over the CEO of his employer's parent company.

*Emery Worldwide A-CF Co.*, 847 F. Supp. 1251, 1256 (M.D. Pa. 1994) (holding "The only asserted basis for the existence of jurisdiction over [the individual defendants] is their alleged complicity in violating the PHRA by terminating plaintiff's employment on the basis of his age. That is plainly insufficient to establish the requisite minimum contacts with this jurisdiction.")

Here, there are no allegations that Schultz selected anyone in specific for termination or was individually responsible for communicating such decision to any employee in Pennsylvania (or anywhere in the world for that matter). This is especially true concerning Plaintiff, where the Complaint fails to contain even a single allegation that Schultz had personally met or spoken to Plaintiff. Additionally, there are no specific allegations that Schultz directed or aimed any discriminatory conduct toward Pennsylvania or made any discriminatory comments in Pennsylvania. The mere fact that Schultz was the CEO of the ***parent company*** for which Plaintiff worked for and made a global decision to reduce headcount falls well short of the necessary conduct to support a finding that Schultz "aimed" any conduct at Pennsylvania.

Next, even if the court were to find that Schultz had minimum contacts with Pennsylvania, in order for personal jurisdiction to attach the exercise of such jurisdiction must comport with traditional notions of fair play and substantial justice. *Int'l Shoe Co.,* 326 U.S. at 316. To determine whether the exercise of jurisdiction would be consistent with notions of fair play, a court must consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

Here, Schultz as the CEO of TPI makes decisions on a daily basis affecting employees located in approximately 60 countries across the globe.[9]  To subject him to jurisdiction in each location in which an employee is terminated would result in him being subjected to jurisdiction in nearly every state in America as well as in most countries across the globe.  Courts have consistently held that such unlimited jurisdiction does not comport with notions of due process. *See Merical v. Valor Healthcare, Inc*., No. CIV.A. 12-1681, 2013 WL 5408986, at *5 (W.D. Pa. Sept. 25, 2013) (recognizing that the exercise of personal jurisdiction over a company's director of human resources would result in the human resources director being subjected to jurisdiction in nearly every state that the company does business and holding that such a result does not comport with the notions of due process.); *Simpson v. Lifespring, Inc.*, 572 F. Supp. 1251, 1253 (E.D. Pa. 1983) (finding that to subject the defendant to personal jurisdiction as a result of actions taken in his corporate capacity would "force him to defend himself in every forum where [the corporation] conducts its operations" and would "distort[ ] the due process limits of personal jurisdiction"); *Professional Services Group, Inc. v. American Digital Systems, Inc*., 555 F.Supp. 788, 792 (E.D.Pa.1983) (determining the court did not have jurisdiction over an

---

[9]  There is an additional case-specific issue the Court must consider during its personal jurisdiction analysis.  When asked to exercise jurisdiction over a corporate officer in his or her individual capacity for corporate acts, courts of appeals often apply the so-called "corporate shield" doctrine.  *See, Cerciello v. Canale, 563 F. App'x 924, 927 (3d Cir. 2014) ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011).  That doctrine will sometimes protect corporate officers who are sued in their individual capacity for purportedly corporate acts.  *Id*. Admittedly, the "corporate shield" doctrine does not protect a corporate officer who was personally involved in the corporation's tortious conduct.  To tell if this tortious conduct exception applies, the Court should consider (1) the officer's role in the corporation; (2) the nature and quality of the officer's contacts with the forum; and (3) the extent and nature of the officer's personal participation in the tortious conduct.  *Cf. KDH Elec. Sys., Inc. v. Curtis Tech. Ltd*., No. 08-cv-2201, 2010 WL 1047807, at *7 (E.D. Pa. Mar. 19, 2010).  As discussed herein, Schultz had no role in the specific selection of Plaintiff for termination.  While Schultz made the initial decision to reduce employee headcount he did not play an active role in the selection of who would be terminated as he could hardly be expected to make such decisions given his role within the organization.

individual defendant because to exercise personal jurisdiction would force the individual defendant to defend himself in every forum where the company operates).[10]

Additionally, the burden on Schultz, an Israeli resident, to defend himself against litigation in Pennsylvania would be great. Not only is Schultz located over 5,000 miles away from Pennsylvania but he is also the CEO of a Fortune 500 company on the front lines of battling the COVID-19 global pandemic. Hauling Schultz into court in Pennsylvania to defend against a case in which he has no personal knowledge of the facts would be an extremely heavy and inappropriate burden.

Such a heavy burden, however, would not fall on Plaintiff should this Court find that it does not have jurisdiction over Schultz. Rather, Plaintiff would still be able to adjudicate this dispute. Plaintiff has already named Teva USA—his actual employer—in this lawsuit and Teva USA has filed an answer in which it has not contested personal jurisdiction. Teva USA is fully solvent and able to pay any judgment awarded to Plaintiff in connection with this case.

Accordingly, this Court must dismiss Schultz because this Court does not have either general or specific jurisdiction over Schultz.

---

[10] Courts within this circuit have shown a willingness to protect high-ranking corporate executives where the high-ranking corporate executive lacks specific firsthand knowledge of the facts of the case. This protection has been referred to as the "apex doctrine." This doctrine relates to the Rule 26 mandate for courts to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2) (C). "Depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute." Simply stated, the apex doctrine applies when those at the top of the company, i.e. men and women at the "apex," really don't have personal knowledge about what is going on with the product, or its marketing, or its financing or really anything else that might be of interest to the plaintiffs, or the attorneys, or the jury, or the court. Specifically, courts in this circuit consider two factors when deciding if the deposition of a high-ranking corporate officer or executive is appropriate: 1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and 2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods. *See, e.g., Ford Motor Co. v. Edgewood Properties, Inc*., No. 06–1278, 2011 WL 677331, at *2 (D.N.J. Feb. 15, 2011); *Reif v. CNA*, 248 F.R.D. 448, 451 (E.D.Pa. 2008); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig*., No. 2:13-MD-02436, 2014 WL 3035791, at *2–3 (E.D. Pa. July 1, 2014). The reasoning behind the apex doctrine is applicable to the instant matter, as Schultz has no specific knowledge relating to Plaintiff's selection.

### 7. There Is No Basis Upon Which the Court May Exercise Specific Jurisdiction Over Yaniv.

Similar to Schultz, there is no basis upon which this Court can exercise specific jurisdiction over Yaniv. First, there are no allegations that Yaniv directed any conduct toward Pennsylvania. Second, Yaniv has only visited Pennsylvania a few times in his life with his last visit occurring before any announcement of a RIF. (Yaniv Dec. at ¶¶ 4-5)[11]. Third, Yaniv had absolutely no involvement in selecting Plaintiff to be included in the RIF. (Yaniv Dec. at ¶ 9). In fact, Yaniv was informed on or about October 2017, that his own employment with TPI would be terminated as a result of the RIF. (Yaniv Dec. at ¶ 7). For context, this is multiple months before Plaintiff was informed that he would be terminated and five months prior to Plaintiff's employment actually ending. Further, Yaniv was not involved in selecting anyone to be included in the RIF. (Yaniv Dec. at ¶ 12). Accordingly, there is insufficient evidence to support the conclusion that Yaniv has aimed any discriminatory conduct toward Pennsylvania and thus he is not subject to the jurisdiction of this Court.

### B. THE COURT SHOULD DISMISS RON YANIV BECAUSE PLAINTIFF FAILED TO PROPERLY EFFECTUATE SERVICE ON RON YANIV

Even if this Court were to determine that it has personal jurisdiction over Yaniv based on minimum contacts, the Complaint nevertheless must be dismissed as it relates to Yaniv due to Plaintiff's failure to properly effectuate service on Yaniv. Rules 12(b)(4) and 12(b)(5) respectively govern Defendant's motion to dismiss for insufficient process and for insufficient service of pleadings. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Fed. Civ. P. 12(b)(4), a party

---

[11] A Copy of Ron Yaniv's declaration is attached hereto as Exhibit B.

08/21/2020 SL1 1649583v4 030421.00713

may file a motion asserting insufficient process as a defense.  Additionally, under

Fed. R. Civ. P. 12(b)(5), a party may file a motion asserting insufficient service of process as a

defense.  "When a party moves to dismiss under Rule 12(b)(5), the party making the service has

the burden of demonstrating its validity."  *Laffey v. Plousis*, No. 05-2796, 2008 WL 305289, at

*3 (D.N.J. Feb. 1, 2008), aff'd, 364 F. App'x 791 (3d Cir. 2010).  Fed R. Civ. P. 4 establishes the

procedural requirements that must be met for proper service under Fed. R. Civ. P. 12(b)(4) and

12(b)(5).

 Here, because Yaniv is an Israeli resident, Plaintiff moved this Court for permission to

serve Yaniv via mail with a signed receipt.  The Court granted this request.  Notwithstanding

this, Plaintiff failed to actually serve Yaniv in Israel.  Instead the following events occurred.

First, Plaintiff attempted to serve Yaniv by sending a copy of the complaint to TPI in Israel.

Counsel for TPI instructed Plaintiff's counsel that Yaniv no longer worked at TPI and therefore

service of process at Mr. Yaniv's former employer was insufficient.  Implicitly agreeing that

service was not properly made because it had been sent to Yaniv's former employer, Plaintiff

tried again to serve Yaniv.  On his second attempt, Plaintiff attempted to make service at an

Israeli company named "Compvision."  Yaniv, however, does not work for Compvision.  Again,

counsel for TPI reached out to opposing counsel to advise them of this fact and to provide

Plaintiff with yet another opportunity to serve Yaniv properly.  However, this time Plaintiff took

a contrary position and informed defense counsel that Plaintiff believed that Plaintiff properly

effectuated service on Yaniv.

 Service at a defendant's prior place of employment is not proper service.  *See Johnson-*
*Lloyd v. Vocational Rehabilitation Office, Pennsylvania Dep't of Labor & Indus.*, 813 F.Supp.

1120, 1125 (E.D. Pa. 1993) (holding that service to defendant's former place of business is not

proper under federal or Pennsylvania law); *Patterson v. City of Philadelphia*, No. CIV.A. 08-2140, 2009 WL 1259968, at *7 (E.D. Pa. May 1, 2009) (finding service improper because "At the time of attempted service, the DA's office was not, and had not been for two years, the office or usual place of business" of the individual defendant).

Further, it is *telling* that when Plaintiff was initially advised that service on Yaniv was improper because he was no longer a TPI employee, Plaintiff implicitly agreed and began the endeavor of looking to effectuate service on Yaniv elsewhere. Yet, when advised the second time, that Yaniv had not been properly served, Plaintiff took an entirely different view of his obligations. What appears to be happening is Plaintiff is frustrated with his own inability to properly serve Yaniv and therefore is attempting to place the burden on Yaniv to accept bad service. However, Plaintiff's frustration does not excuse the Federal Rules of Civil Procedure. Instead, the Court is "bound by the rules of service, no matter how technical they may seem. As without proper service, the court does not obtain personal jurisdiction over a defendant, and the case may not proceed to judgment." *Lin v. Pennsylvania Machine Works, Inc.,* No. 97-5407, 1998 U.S. Dist. LEXIS 2767 (E.D. Pa. March 3, 1998) (*citing Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565, 568 (3d Cir. 1996)). Because Yaniv did not work for Compvision at the time of the attempted service, delivery to Compvision was insufficient to serve process on Yaniv under Federal Rule of Civil Procedure 4(f) or Pennsylvania Rules of Civil Procedure 424. Thus, Yaniv respectfully requests this Honorable Court to dismiss the instant Complaint due to Plaintiff's failure to properly serve him in accordance with Fed. R. Civ. P. 4(f) or Pa. R. Civ. P. 404.

## C. THE COURT SHOULD DISMISS RON YANIV BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

Even if this Court were to determine that: (a) Yaniv had sufficient minimum contacts to support the exercise of personal jurisdiction over him and (b) that Plaintiff had properly

effectuated service on Yaniv; Plaintiff's Complaint against Yaniv nevertheless must be dismissed as Plaintiff failed to exhaust his administrative remedies as related to Yaniv.

### 1. The Legal Standards Under Fed. R. Civ. P. 12(b)(6) Are Well-Settled.

To survive a 12(b)(6) motion to dismiss, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In deciding a motion to dismiss, the Court must disregard any legal conclusions set forth in a plaintiff's complaint." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009), the Court held that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). Furthermore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

### 2. Plaintiff Failed to Exhaust His Administrative Remedies As It Relates To Ron Yaniv

Plaintiff purports to sue Yaniv under Section 955(e) of the PHRA, which provides for individual liability. *Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir.1996). Section 955(e) forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ..." 43 Pa. Con. Stat. § 955(e).

Before filing suit under the PHRA, a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the Pennsylvania Human Relations Commission ("PHRC") or EEOC. *See Kunwar v.*

*Simco*, 135 F.Supp.2d 649, 653 (E.D.Pa.2001); 43 Pa. Cons.Stat. Ann. § 962.11.  This

administrative "[c]omplaint must name the individual(s) alleged to have violated the PHRA."

*DuPont v. Slippery Rock Univ. of Pennsylvania*, No. 2:11-CV-1435, 2012 WL 94548, at *3

(W.D.Pa. Jan. 11, 2012) (citing 43 Pa.C.S. § 959(a)).  "Courts have found that the individuals do

not have to be named in the caption of the case and that just mentioning the individuals in the

body of the Complaint gives the individuals the requisite notice so that judicial relief may be

sought under the PHRA."  *Id.* (citation omitted).  "The purpose of requiring an aggrieved party to

resort first to the EEOC is twofold: to give notice to the charged party and provide an avenue for

voluntary compliance without resort to litigation."  *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 887

(3d Cir. 1977).

Courts within this district have routinely dismissed an individual defendant where the

plaintiff failed to name the defendant in the preceding EEOC/PHRC Charge.  *See Kunsak v.*

*Wetzel*, No. 15-1648, 2016 WL 6601574, at *5 (W.D. Pa. Nov. 7, 2016) (the charge of

discrimination "must name the individual(s) alleged to have violated the PHRA."); *Pedro v. City*

*Fitness, LLC*, No. 15-4964, 2018 WL 1566798, at *10 (E.D. Pa. Mar. 30, 2018) (dismissing

individual defendants who were not named in the charge); *Rippy v. Pub. Health Mgmt. Corp.*,

No. 19-CV-1839-JMY, 2020 WL 832088, at *6 (E.D. Pa. Feb. 19, 2020) (dismissing individual

defendant not named in the EEOC Charge).

Here a review of Plaintiff's EEOC Charge conclusively demonstrates that Plaintiff failed

to name Ron Yaniv in either the caption or anywhere in the body of the EEOC Charge.[12]  There

---

[12]  Attached as Exhibit C is a copy of Plaintiff's EEOC Charge. In attaching this document, Defendants note that
Courts have determined that it is permissible to review an EEOC charge when considering a motion to dismiss a
claim for failure to exhaust administrative remedies. *See, e.g., Ruddy v. U.S. Postal Serv.*, 455 Fed.Appx. 279, 283
(3d Cir. 2011) (holding that the district court "properly relied on [the plaintiff's] EEOC file ... which is integral to
his claim" when deciding the defendant's motion to dismiss); *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260
(3d Cir. 2006) (considering the plaintiff's formal EEOC charge in determining whether the plaintiff satisfied Title
VII's statutory exhaustion requirement); *Twillie v. Erie Sch. Dist.,* No. 11-165, 2013 WL 4666072, at *5 n.3 (W.D.

is absolutely no excuse for this omission as Plaintiff alleges in his federal lawsuit that Yaniv was Plaintiff's immediate supervisor and thus Plaintiff certainly knew his identity and could have easily included him in his EEOC Charge.  He simply failed to do so.

Admittedly, there is a narrow exception to the "named respondent rule" discussed above. This exception applies only where the unnamed party received notice and when there is a shared commonality of interest with the named party."  *Schafer v. Bd. of Educ.*, 903 F.2d 243, 252 (3d Cir. 1990).

This exception, however, is not applicable in the instant matter.  First, there is no evidence that Yaniv was ever made aware of Plaintiff's EEOC Charge when it was filed. Second, even if he was aware of the EEOC Charge, there is no reason that Yaniv would have believed that the Charge implicated him in his individual capacity.  Especially because Yaniv's employment had been terminated before Plaintiff's employment was terminated.  Third, Plaintiff's EEOC Complaint was filed **<u>nearly six months</u>** after Yaniv's active employment with TPI ended.  Fourth, there are no allegations in the complaint to support a conclusion that there is a commonality of interest between Yaniv, a former employee, and any of the named defendants of the EEOC Charge.  *See Rippy*, 2020 WL 832088, at *6 (dismissing defendant who was plaintiff's supervisor where plaintiff failed to name supervisor in EEOC charge and explaining that exception was not applicable because no evidence of commonality of interest was alleged); *Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 478 (E.D. Pa. 2013) (finding exception to named respondent rule did not apply where Board members were not discussed individually in EEOC Charge and holding that even though the Board members knew of the EEOC Charge, they

---

Pa. Aug. 30, 2013), aff'd, 575 Fed.Appx. 28 (3d Cir. 2014) ("The Court may properly consider documents from administrative proceedings before the EEOC in considering a motion to dismiss federal claims of employment discrimination.").

would have no reason to expect that they were being sued in their individual capacity as "the difference between an official capacity suit and an individual capacity suit is not a trivial one."). Accordingly, Plaintiff's PHRA allegations against Yaniv must be dismissed.  Because these allegations are the only allegations against Yaniv, Yaniv must be dismissed from this matter.

## III.  **CONCLUSION**

For the foregoing reasons, the Israeli Defendants respectfully requests that the Court grant their Motion to Dismiss in accordance Fed. R. Civ. P. 12(b)(2), (4), (5) and (6) and dismiss the Complaint against them with prejudice; and grant any such further relief as the Court deems appropriate.

Respectfully submitted,

STEVENS & LEE, P.C.


By:  */s/ Larry J. Rappoport*
Larry J. Rappoport, Esquire
Attorney ID No. 26922
Brandon S. Shemtob, Esquire
Attorney ID No. 319246
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA  19103
Telephone:  610-205-6039
Facsimile:  610-371-7977
E-mail:  ljr@stevenslee.com
E-mail:  bss@stevenslee.com

*Attorneys for Defendants*

Dated:  August 21, 2020