**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RANDOLPH KEUCH

V.

TEVA PHARMACEUTICALS USA, INC.,
TEVA PARMACEUTICAL INDUSTRIES,
Ltd., RON YANIV and KÄRE SCHULTZ

CIVIL ACTION NO.   19-cv-05488

**PLAINTIFF RANDOLPH KEUCH'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Randolph Keuch ("Plaintiff" or "Keuch"), files this Memorandum in Opposition

to the Motion to Dismiss filed by Defendants Teva Pharmaceuticals Industries, Ltd. ("Teva

Worldwide") and Käre Schultz ("Schultz")(collectively, the remaining "Israeli Defendants")[1]

seeking dismissal of the Plaintiff's claims against them pursuant to the Age Discrimination in

Employment Act, 29 U.S.C. §621 *et seq.* (the "ADEA") and the Pennsylvania Human Relations

Act, 43 P.S. §951 *et seq* (the "PHRA"). The Israeli Defendants do not challenge Plaintiff's

claims on the merits. Rather, they move to dismiss this action against them for lack of personal

jurisdiction and argue that the Court lacks specific jurisdiction over them because they do not

satisfy the minimum contacts with the relevant forum under the Pennsylvania Long Arm Statute

42 Pa. Consol. Stat. Ann. §5322.[2] The Israeli Defendants also contend that personal jurisdiction

is barred by the Due Process Clause of the Fifth Amendment to the United States Constitution.

---

[1] Defendant Ron Yaniv also argues that he is entitled to dismissal pursuant to F.R.C.P. 12(b)(4), (5), and
(6).  Because resolution of Yaniv's claim that he was not properly served would require factual discovery
that would impede the progress of the case, and because he has averred in an affidavit that he is no longer
employed by TPI, Keuch does not oppose the dismissal of all claims against Yaniv.

[2] The Israeli Defendants also argue that this Court lacks general jurisdiction.  Because Plaintiff does not
contend that Defendants are subject to the general jurisdiction of the Court, but rather claim only that
specific jurisdiction attaches so as to bring them into the Court for all purposes relating to the claims
against them, Plaintiff will not address this argument.

However, fatal to their position, the Israeli Defendants do not address Plaintiff's jurisdictional contention that Teva Worldwide is his joint employer and that Schultz aided and abetted the discriminatory actions of Teva Worldwide which are allegations clearly set forth in Plaintiff's Complaint and must be accepted as true by the Court at this stage of the litigation. Specifically, Teva Worldwide is averred to be the joint employer of Plaintiff and of the proposed class members located here in Pennsylvania as well as throughout the United States and worldwide, thereby establishing personal jurisdiction under both Pennsylvania and federal law. *See* Plaintiff's Complaint ("Cmpl"), attached as Exhibit "A", at ¶18.  Moreover, the Israeli Defendants' motion does not address the Court's personal jurisdiction over them under the controlling long-arm statute or the PHRA.  Undoubtedly, that silence is deafening in a case where the plaintiff proposes a nation-wide class of similarly-situated joint employees of joint employer Teva Worldwide and complains that Schultz, the CEO of that Company, aided and abetted that discrimination because he personally directed Teva Worldwide's policy of age discrimination which, in violation of the Pennsylvania Human Relations Act, injured Plaintiff in Pennsylvania.

Accepting these allegations in Plaintiff's Complaint as true and resolving any factual conflicts in Plaintiff's favor, Plaintiff has established a *prima facie* case that (1) Teva Worldwide is his joint employer subject to specific personal jurisdiction in Pennsylvania based on his allegation of age discrimination, and (2) Schultz is subject to specific personal jurisdiction in Pennsylvania for aiding and abetting that discrimination.  Therefore, it is respectfully submitted that the Israel Defendants' Motion to Dismiss based upon lack of personal jurisdiction must be denied.

## STATEMENT OF THE QUESTIONS INVOLVED

1.      Does Teva Worldwide's joint employment of Plaintiff in Pennsylvania, and similarly situated employees or joint employees of Teva Worldwide and Teva US in Pennsylvania, subject it to personal jurisdiction under the Pennsylvania long-arm statute?

*Suggested Answer: Yes.*

2.      Does Schultz's actions in aiding and abetting the age discriminatory actions of Teva Worldwide and Teva US against Plaintiff as well as against similarly situated employees or joint employees of Teva Worldwide and Teva US in Pennsylvania, subject him to personal jurisdiction under the Pennsylvania long-arm statute?

*Suggested Answer: Yes.*

In the alternative,

3.      Does Teva Worldwide's joint employment of Plaintiff and similarly situated employees or joint employees of Teva Worldwide and Teva US in Pennsylvania subject it to personal jurisdiction under federal law?

*Suggested Answer: Yes.*

## STATEMENT OF THE CASE

### A.      Procedural History

As applicable herein, Plaintiff instituted his claims by the filing of a Complaint against his joint employers Teva US and Teva Worldwide and the CEO of Teva Worldwide, Schultz, on November 19, 2019.  Following the parties' consent, the matter was referred to U.S. Magistrate Timothy R. Rice to conduct all proceedings in accordance with 28 U.S.C. 636(c), Teva US answered the Complaint setting forth denials and affirmative defenses.  Following the grant of Plaintiff's Motion to Serve Teva Worldwide and Schultz in Israel and Plaintiff's affecting

service in accordance with that grant, the Israeli Defendants, Teva Worldwide and Schultz, filed the present Motion to Dismiss.

      B.      **Controlling Statement of Facts**

It is asserted that Plaintiff has adequately pled allegations of age discrimination in employment in violation of the ADEA and the PHRA.  The relevant and controlling jurisdictional facts are as follows:

- Teva Worldwide, along with Teva Pharmaceuticals USA, Inc. ("Teva US"), failed to properly evaluate Plaintiff's performance and the performance of other older employees for retention during a broad reduction of force of employees of Teva US and Teva Worldwide, ordered by and implemented at the direction of Teva Worldwide and Schultz. Cmpl. ¶2.

- Teva Worldwide intentionally discriminated against Keuch in Pennsylvania and against other employees over the age of 40, by selecting those older employees for termination based on their age during a substantial reduction in its global labor force.  Those actions of Teva Worldwide and Teva US were aided and abetted by Schultz. Cmpl. ¶ 23.

- In the course of his employment, Plaintiff routinely performed services for Teva Worldwide as a part of his regular responsibilities for Teva US:

  - Developed and launched a global recognition program for Teva Worldwide;

  - Developed a global long-term incentive plan for biologics;

  - Developed and implemented pay alignment strategies for Canada, as well as the United States;

Cmpl. ¶ 16.

- In addition, Plaintiff directly performed services for and at the direction of Teva

Worldwide when he successfully integrated three (3) major acquisitions in the Americas Region

(Rimsa-Mexico, Actavis-Global, and Anda-US). *Id*. ¶¶ 16, 34.

- As is evidenced in the scope of Plaintiff's extra-territorial duties reflected in his work

assignments, Teva Worldwide was the joint employer of Plaintiff and of all those similarly-

situated persons employed by Teva US, its wholly-owned subsidiary. Cmpl. ¶¶18, 22.

- Schultz, the President and CEO of Teva Worldwide, directed and actively aided and

abetted the discriminatory actions that led to the termination of Plaintiff and other better-

qualified employees in the United States over the age of forty (40) years.  Cmpl. ¶¶ 20, 24.

- The discriminatory bias of Teva Worldwide toward Keuch and the class is shown by its

changes to the 2010 Stock Plan to disfavor older workers like Plaintiff who were reaching

retirement age, and its changes in the age of retirement policy. Cmpl. ¶¶ 36, 37.

- In 2017, at Schultz's personal direction, Teva Worldwide primarily targeted employees

of Teva US when it adopted a reduction in force policy by which most of the firings were to

occur in the United States. Cmpl. ¶ 40.  The reduction in force program was a centralized

initiative of Teva Worldwide, planned in detail by the parent entity, and Keuch was directly

involved in Teva Worldwide's plans to implement its reduction in force plans across all its

subsidiaries.  His task was to propose local reductions did not violate local law.  Cmpl. ¶ 41.

Given that international assignment, he even offered to physically relocate to Israel so that his

residence would correspond to the international responsibilities he had been assigned on behalf

of Teva Worldwide.  *Id*.

- Plaintiff, an employee of Teva US, was replaced by a much younger subordinate,

Eduardo Nasi ("Nasi"), employed by Teva Worldwide in Weston, Florida. Cmpl. ¶¶ 3, 44.

Nasi was nominally employed by Teva Worldwide, but he was actually a direct report to

Plaintiff who was nominally employed by Teva US. Cmpl. ¶ 44. [3]

### DISCUSSION OF CONTROLLING LEGAL PRINCIPLES

#### A.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court may dismiss a suit for lack

of personal jurisdiction.  "To survive a motion to dismiss in the absence of jurisdictional

discovery, plaintiffs need only make a prima facie showing of   jurisdiction." *Nuance Commc'ns,*

*Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010); *Mellon Bank (East) PFSF,*

*Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992).  A plaintiff "presents a prima facie

case for the exercise of personal jurisdiction by establishing with reasonable particularity

sufficient contacts between the defendant and the forum state." Mellon, 960 F.2d at 1223 (3d

Cir.1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to

have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales,*

*Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

#### B.     As the Joint Employer of Plaintiff and Other Members of the Putative
#### Class, This Court Has Specific Personal Jurisdiction Over The
#### Israeli Defendants Under The Pennsylvania Long-Arm Statute

To defeat a motion to dismiss under Fed. R. Civ. P. 12(b)(2), a plaintiff must only make a

*prima facie* case that a defendant is subject to personal jurisdiction in the forum, and all

questions of fact are to be resolved in the plaintiff's favor. *Shuker v. Smith & Nephew, PLC*, 885

F.3d 760, 780 (3d Cir. 2018).  The specific jurisdiction inquiry focuses on the relationship of the

---

[3] Regarding the management of personnel, the distinctions between Teva US and Teva Worldwide were illusory as Plaintiff consistently wore two hats and was, in practice, a management employee of both.

litigation to the defendant's contacts with the forum where the matter is brought. *Walden v.*

*Fiore*, 571 U.S. 277, 284 (2014).  To establish personal jurisdiction over a non-resident

defendant, a plaintiff must show both that the state long-arm statute applies and that the

requirements of due process are satisfied. *See IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d

Cir.1998); Kraus *v. Alcatel-Lucent*, 441 F.Supp.3d 68, 72 (E.D. Pa. 2020).  Since the

Pennsylvania long-arm statute, 42 Pa.C.S.A. § 5322(b), permits Pennsylvania courts to exercise

personal jurisdiction to the constitutional limits, the jurisdictional inquiry turns on whether the

exercise of personal jurisdiction complies with constitutional due process. *See Vetrotex*

*Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir.1996);

*Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Pennsylvania's long-arm statute, 42 Pa.

C. S.A. § 5322(b), authorizes Pennsylvania courts to exercise personal jurisdiction over

nonresident defendants to the constitutional limits of the due process clause of the fourteenth

amendment.").

> 1. **Plaintiff's Complaint Sets Forth A *Prima Facie* Case That Teva Worldwide Engaged In Forum Activities In The United States As "Joint Employer" Of Plaintiff And Of The Class Of Older American Employee Victims Of Its Discriminatory Policies And Schultz Had Contacts As An Aider And Abettor Of That Age Discrimination**

First, a plaintiff must demonstrate that the defendant has sufficient "minimum contacts"

with Pennsylvania. *Guardi v. Desai*, 151 F. Supp.2d 555, 559 (E.D. Pa. 2001); *see also Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). A defendant establishes minimum contacts

with the forum state through affirmative acts directed at residents of the forum, *i.e.* there must be

some act by which the defendant purposefully avails him or herself of the privilege of

conducting activities within the forum state, thus invoking the benefits and protections of its

laws. *See Burger King*, 471 U.S. at 474–75. Minimum contacts are established where

"defendant's conduct and connection are such that [defendants] should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474. Under this test, a court may properly assert specific jurisdiction, even if the defendant's contacts are isolated and sporadic, so long as the cause of action arises out of these contacts; indeed even a " 'substantial connection' with a forum arising out of a 'single act can support jurisdiction.'" *Id*. at 1297 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).

Plaintiff made a *prima facie* case that the Israeli Defendants purposefully directed their activities at residents of the United States when (1) Teva Worldwide acted as the joint employer of Plaintiff and similarly situated employees comprising the putative class, and (2) when Schultz aided and abetted its discriminatory scheme to reduce its force by discriminating against Keuch and other older employees.

### a.   A "Joint Employer" May Be Liable For Discriminatory Actions Against an Averred Employee

Plaintiff has brought this action under pursuant to the applicable provisions of the ADEA and the PHRA.  Here, Plaintiff – an "insider" who is highly knowledgeable regarding Teva Worldwide's employment practices – has pled that Teva Worldwide was his joint employer, and he has alleged facts supporting that contention. See Cmpl. ¶18.

In *NLRB v. Browning–Ferris Industries of Pennsylvania*, a case arising under the National Labor Relations Act ("NLRA"), the Third Circuit explained that a joint employment relationship may exist when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." 691 F.2d 1117, 1123 (3d Cir.1982). The Third Circuit concluded that "where two or more employers exert significant control over the same employees – where from the evidence it can be shown that they share or

8

co-determine those matters governing essential terms and conditions of employment – they constitute 'joint employers' within the meaning of the NLRA." *Id*. at 1124 (internal citations omitted).

In *Graves v. Lowery*, the Third Circuit extended the "joint employer" theory of liability to the Title VII context. 117 F.3d 723, 727 (3d Cir.1997).  As explained in *Myers v. Garfield & Johnson Enterprises, Inc*., 679 F. Supp.2d 598, 607–08 (E.D. Pa.2010),  the joint employer analysis in Title VII cases focuses on three factors including "[a]uthority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours." "No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." *Id*. at 608 (citations omitted); *see also In re Enter. Rent–A–Car Wage & Hour Employment Practices Litig*., 683 F.3d 462, 467 (3d Cir.2012)(finding that the district court need not "decide that every factor weighs against joint employment"). Further, the employee's beliefs and expectations are also relevant in determining whether there is joint employer status. *Graves*, 117 F.3d at 727–29.  "Direct control" over the employee is required in order to find that a joint employment relationship exists in Title VII actions, as opposed to Fair Labor Standards Act cases where indirect control suffices. *Washington v. ABM Janitorial Servs.*, 2013 WL 6047494, at *5 (E.D. Pa. Nov. 15, 2013).[4]

---

[4] On a related alternative theory, the "single employer" doctrine, a plaintiff successfully invoked the single employer doctrine where the court found that an employee of a subsidiary could be characterized as an employee of the parent where the parent was regularly and intimately involved with business decisions of the subsidiary, particularly with regard to the management of personnel.  *Berkowitz v. Allied Stores of Penn–Ohio, Inc.,* 541 F. Supp. 1209, 1213–14 (E.D.Pa.1982).  In *Perry v. Manocherian,* 675 F. Supp. 1417, 1426 (S.D.N.Y.1987), the Court found the doctrine applicable where the two entities had common management and employees hired to work for one entity were in practice used by the other just as Keuch was, in practice, a common manager for both Teva US and Teva Worldwide, and he was in practice sued by both without distinction. Additionally, in *Harris v. New York Times,* No. 90 Civ. 5235, 1993 WL 42773, at *12 (S.D.N.Y. Feb. 9, 1993), the record established that the president of a subsidiary, originally an employee of the parent, "shuttled back and forth" between the parent and its subsidiaries on a number of occasions. Again, as an executive employee, Keuch did the same.  It was also determined that the

Ultimately, the determination of whether a defendant is a "joint employer" under Title VII requires careful consideration of all the circumstances surrounding the work relationship. *In re Enter. Rent–A–Car.,* 683 F.3d at 469 ("[D]istrict courts should not be confined to 'narrow legalistic definitions' and must instead consider all the relevant evidence, including evidence that does not fall neatly within one of the above factors.")(citations omitted).  For that reason, courts in this district have held that plausible joint employment claims should not be dismissed before the plaintiff has had an opportunity to take discovery.  *See Graves*, 117 F.3d at 729 (declining to speculate as to whether the plaintiffs could ultimately prevail under a joint employer theory, but finding that the employment relationship between the plaintiffs and the potential joint employer was "sufficiently ambiguous" such that the plaintiffs' claim "should not have been dismissed at the pleading stage."); *Myers*, 679 F. Supp.2d at 611 (denying the defendant's motion to dismiss the plaintiff's Title VII and PHRA claims brought pursuant to a joint employer theory of liability because plaintiff had not yet had the opportunity to conduct discovery); *Washington v. ABM Janitorial Servs.*, Civ. A. No. 11–6462, 2013 WL 6047494, at *2 (E.D. Pa. Nov. 15, 2013)(ordering 3 months discovery on joint employer claim); *Hicks v. Brown Family Shoprite Inc. of Cheltenham*, Civ. A. No. 08–5830, 2009 WL 3055393, at *2 (E.D. Pa. Sept. 24, 2009) (denying motion to dismiss where "the court cannot say that Shoprite exercised no control over the plaintiff. No 'careful factual inquiry' has yet taken place.")

---

parent had "input" into the practices and policies of the subsidiary with respect to compensation, benefits, and job grading levels. *Id.* at *12. Among other labor relations connections, a vice president of the parent met on occasion with executives of the subsidiary to discuss the hiring and promotion of black workers. *Id.*  Similarly, Plaintiff alleges in his Complaint that Teva Worldwide directly controlled Teva US's discriminatory policy for reducing the size of the workforce.

        **b.**        **An Aider and Abettor of Discrimination May be Liable for Violation of the Pennsylvania Human Relations Act.**

The PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice...." 43 Pa. Cons. Stat. Ann. § 955(e). Plaintiff alleges that Schultz violated Section 955(e) by discriminating against older employees.  While §955(e) extends liability to any individual who aids and abets the alleged discrimination, "only supervisory employees, not co-workers, can be held liable under § 955(e)," based on the theory that only supervisory employees "can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." *Carlton v. City of Phila.*, Civ. A. No. 03–1620.2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004).

        **c.**        **Plaintiff Has Pled Sufficient Jurisdictional Facts Supporting Teva Worldwide's Status As His Joint Employer, and Schultz's Status As An Aider And Abettor In Teva Worldwide's Imposition Of A Policy Of Age Discrimination On Teva Subsidiaries**

    Plaintiff has pled, with facially plausible supporting allegations, the jurisdictional facts that he was jointly employed by Teva Worldwide as well as by Teva US, and that Teva Worldwide implemented and managed the discriminatory policy complained of affecting Teva US employees.  He has also pled that Schultz aided and abetted Teva Worldwide's discriminatory strategy for reductions in force.  Simply stated, Plaintiff made a prima facie case that the Israeli Defendants purposefully directed their activities at residents of Pennsylvania when Teva Worldwide acted as the joint employer of Plaintiff and similarly situated employees, and when Schultz aided and abetted its discriminatory scheme to reduce its force by discriminating against Plaintiff and other older employees.

### 2.   The Exercise Of Pennsylvania Long-Arm Jurisdiction Over The Israeli Defendants Is Reasonable and Fair

Once Plaintiff establishes that minimum contacts exist, a defendant bears a heavy burden to show an absence of fairness or justice since the defendant must present a compelling case that the presence of other considerations would render jurisdiction unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).  In this part of the analysis, a court may examine factors, often called "fairness factors," from *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1908). These factors include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id*.

### a.   Keuch Has Satisfied the Fairness Factors

As to due process factor one, this case does not represent "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp*., 21 F.3d 1558, 1568 (Fed. Cir. 1994).  Teva Worldwide has not shown that participating in this litigation would be "so gravely difficult and inconvenient" that it would be at a "severe disadvantage" when compared to Plaintiff or the putative class members he seeks to represent.  *Burger King Corp*., 471 U.S. at 478.  Indeed, the Israeli Defendants have not established any significant burden here, where Teva Worldwide's fellow defendant and wholly-owned subsidiary, Teva US, is located in the forum. *See Boston Sci. Corp. v. Micro-Tech Endoscopy USA Inc*., Civ. A. No. 18-1869, 2020 WL 229993, at *8 (D. Del. Jan. 15, 2020) (a foreign parent company which is a co-defendant of a

wholly-owned subsidiary located in the forum did not show significant burdens in litigating in

the forum).  Teva Worldwide and Schultz already share litigation counsel with Teva US which

has not challenged personal jurisdiction.  In general, the saliency of the burden factor has

diminished as "progress in communications and transportation has made the defense of a lawsuit

in a foreign tribunal less burdensome." *Synthes*, 563 F.3d at 1299 (citation omitted).  The burden

on Teva Worldwide "is not sufficiently compelling to outweigh" Plaintiff's and the United

States' interests in enforcing age discrimination laws enacted to protect older American

employees.

As to the second and third factors – the forum's interest in adjudicating the dispute and

the plaintiff's interest in obtaining convenient relief for himself and the class – the language of

the PHRA suggests the forum's interest.  The "Findings and Declaration of Policy" section of the

PHRA states, in part:

> Such discrimination foments domestic strife and unrest, threatens the rights and
> privileges of the inhabitants of the Commonwealth, ... deprives large segments of the
> population of the Commonwealth of earnings necessary to maintain decent standards of
> living, ... thereby threatening the peace, health, safety and general welfare of the
> Commonwealth and its inhabitants.

43 P.S. § 952(a). Likewise, Congress enacted age discrimination laws authorizing collective

actions where the claims of discrimination are claimed to have affected all employees.

Plaintiff's complaint alleges widespread, intentional age discrimination against Pennsylvania

employees, and it proposes a class of similarly-situated employees who were victimized by their

joint employer, Teva Worldwide, and its aider and abettor, Schultz.  To say that Plaintiff has a

claim against Teva US, and so does not require the presence of Teva Worldwide and Schultz,

completely misses the point of Plaintiff's claims against the Israeli Defendants since Plaintiff

has, in fact, pled that Teva Worldwide was his joint employer, it committed violations of the

13

ADEA by imposing a global policy of accomplishing a reduction in force by age discrimination, and Schultz aided and abetted that well-pled misconduct.

Taking those allegations as true – and it is hard to imagine a witness better situated than Keuch to testify on the facts of this subject – it cannot be reasonably doubted that the forum and Plaintiff have strong interests in adjudicating the joint employer and aider and abettor claims against the Israeli Defendants.  That interest in obtaining effective and convenient relief, as well as by the United States' "substantial interest" in enforcing federal anti-discrimination laws, will outweigh the scofflaw Israeli Defendants' interest in not being held responsible under by the laws they have violated and attempting to shift sole liability for their actions to the subsidiary, Teva US, whose employment practices they actively controlled and managed.

With regard to factors four and five, Defendants have not elucidated why, if Teva Worldwide and Schultz were required to face suit here, this would cause a potential "clash of substantive social policies between competing fora" or lead to an inefficient resolution to this controversy. *Synthes*, 563 F.3d at 1300. In short, "this is not one of those 'rare cases' in which minimum requirements inherent in the concept of 'fair play and substantial justice' [ ] defeat the reasonableness of [personal] jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Id*. (quotation marks and citation omitted).

### b.      The Israeli Defendants Could Reasonably Foresee Being Haled Into Court in Pennsylvania

Notwithstanding the specific factors, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp.*, 105 S.Ct. at 2183. Teva Worldwide and Schultz could certainly foresee being haled into court in the United States. Teva Worldwide "cannot profess complete ignorance of the judicial system of the United

States." *Beverly Hills*, 21 F.3d at 1569. It was fully aware of the possibility of litigation like this when it implemented its policy of a huge reduction in force by discriminating against older American workers. As related in the Complaint, Plaintiff had been charged with developing policies to accomplish Teva Worldwide's payroll reduction targets – mostly by terminations in the United States and Canada – *without* violating local law. The point of that assigned mission was to comply with local law. Contrary to his proposals made to his joint employer Teva Worldwide and under Schultz's specific direction, Teva Worldwide then changed course, set aside the policies tailored to local law compliance, commenced a program of terminating older employees and replacing them with much younger and less qualified employees, including and, of course, Plaintiff, who had sought to ensure legal compliance. Thus, Teva Worldwide has purposefully availed itself of the privilege of conducting activities within Pennsylvania, thereby invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 105 S.Ct. 2174, 2184 (1985) ("[W]here the defendant 'deliberately' has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.").

      **C.**    **This Court Has Specific Personal Jurisdiction Over The Israeli Defendants Under The Federal Law**

Federal Rule of Civil Procedure 4(k)(2) provides that personal jurisdiction exists when (1) the plaintiff's claim arises out of federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with Due Process. *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 Fed.Appx. 449, 455 (3d Cir.2004); *Skold v. Galderma Labs., L.P.*, 99 F.Supp.3d 585, 603 (E.D. Pa. 2015).

"The federal long-arm statute sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of U.S. law, but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003); *see also Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009) (stating that Rule 4(k)(2)'s purpose is to ensure that there is a U.S. forum when sufficient contacts with the nation are present).  Under this paradigm, "a court may exercise specific personal jurisdiction over a defendant where the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *Skold v. Galderma Labs., L.P.*, 99 F. Supp.3d 585, 602–03 (E.D. Pa. 2015).  The forum, for purposes of Rule 4(k)(2), is the United States. *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir. 2000).

### 1.  Plaintiff's Claim Arises out of Federal Law

The first prong of personal jurisdiction over Teva Worldwide based on the federal long-arm statute is satisfied.  A claim for age discrimination in employment under the ADEA arises out of federal law.  29 U.S.C. § 621, *et seq*.  As the aiding and abetting claim against Schultz arises under state law, the Pennsylvania Human Relations Act, 43 P.S. § 955(e), federal law does not create personal jurisdiction over him, but he remains subject to the jurisdiction of this Court under the state long arm statute as set forth above . *See Fritz v. Westmoreland Cty.*, 2020 WL 3510817, at *6 (W.D. Pa. June 29, 2020).

### 2.     The Israeli Defendants Have Not Named Another State
### In Which Suit Could Proceed

Regarding the second prong, in order to defeat jurisdiction, the defendant must "name

some other state in which the suit could proceed." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d

1403, 1415 (Fed. Cir. 2009) (quotations omitted).  Teva Worldwide has not named such a state.

Indeed, to do so would apparently contradict Teva Worldwide's representations to the Court that

it lacks continuous and systematic contacts with any jurisdiction in the United States.  *See*

Motion at p. 9.    Based on the information that is readily available to Plaintiff and his counsel,

the defendant is not subject to suit in the courts of general jurisdiction of any state if it is not

subject to suit in Pennsylvania. *See United States v. Swiss Am. Bank, Ltd*., 191 F.3d 30, 41 (1st

Cir. 1999) (discussing the burden of proving the "negation requirement" of Rule 4(k)(2)).

### 3.   The Exercise Of Federal Long-Arm Jurisdiction Over The Israeli
### Defendants Is Reasonable and Fair

Regarding the third prong, the Due Process analysis is identical to that performed in the

specific jurisdiction context that the Israeli Defendants address in their Motion except that Rule

4(k)(2) contemplates a defendant's contacts with the entire United States, as opposed to the state

in which the district court sits. *BP Chemicals Ltd.*, 229 F.3d at 258. For specific jurisdiction

analysis under Rule 4(k)(2), the same five fairness factors are "whether: (1) the defendant

purposefully directed its activities at residents of the United States, (2) the claim arises out of or

relates to the defendant's activities with the United States, and (3) assertion of personal

jurisdiction is reasonable and fair."  *Synthes*, 563 F.3d at 1297-99.

The argument above sets forth the basis for the contentions by Plaintiff relating the third

prong under the federal long-arm statute.  Specifically, Teva Worldwide engaged in forum

activities in the United States as "joint employer" of Plaintiff and of the class of older American

employee victims of its discriminatory policies.  The instant claims of age discrimination by a joint employer arise out of or relate to its activities within the United States.  Plaintiff's age discrimination claims are also premised on unlawful terminations of American employees in the United States due to decisions made by Teva Worldwide acting in its capacity as a joint employer of the American employees.  Accordingly, his Court's exercise of its jurisdiction against the Israeli Defendants comports with fair play and substantial justice.

**D.    The Court Should Allow Jurisdictional Discovery In The Alternative And An Amendment Of The Complaint If Necessary**

Although Plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997). If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992), the plaintiff's right to conduct jurisdictional discovery should be sustained.

Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction. A court should grant jurisdictional discovery unless "the plaintiff's claim is clearly frivolous." *Neopart Transit, LLC v. CBM N.A., Inc.*, 314 F.Supp.3d 628, 645–46, 2018 WL 2966148, at *11 (E.D. Pa. 2018); *see also In re Automotive Refinishing Paint Antitrust Litigation*, Civ. A. No. 1426 2002 WL 31261330, at *9 (E.D. Pa. July 31, 2002) (denying motion to dismiss and permitting jurisdictional discovery where plaintiff made a "threshold prima facie showing of personal jurisdiction over Defendants"); *W. Africa Trading & Shipping Co., et al. v. London Int'l Group, et al.*, 968 F. Supp. 996, 1001 (D.N.J.1997) (denying defendant's motion to

dismiss where the plaintiffs' "request for jurisdictional discovery is critical to the determination

of whether [the court can] exercise personal jurisdiction over the defendant."); *Centralized*

*Health Systems, Inc. v. Cambridge Medical Instruments, Inc.*, Civ. A. No. 89–3322, 1989 WL

136277, at *1 (E.D. Pa. Nov.8, 1989) (holding motion to dismiss in abeyance to permit party to

take discovery on jurisdiction where distribution arrangement might satisfy minimum contacts).

## CONCLUSION

For the reasons stated above, it is respectfully urged that the Israeli Defendants' Motion

to Dismiss must be denied.

**SPECTOR GADON ROSEN VINCI P.C.**

By: *Alan Epstein*

Alan B. Epstein, Esq.  (Pa. Atty. I.D. 2346)
Jennifer M. Chalal, Esq.  (Pa. Atty. I.D. 77841)
Bruce Bellingham, Esq. (Pa. Atty. I.D.  83503
1635 Market Street, Seventh Floor
Philadelphia, PA  19103
(215) 241-8832
aepstein@sgrvlaw.com
jchalal@sgrvlaw.com
bbellingham@sgrvlaw.com
*Attorneys for Plaintiff*

Dated:  October 5, 2020