**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RANDOLPH W. KEUCH** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **No. 19-CV-05488** |
| **TEVA PHARMACEUTICALS USA, INC.** | : | |
| **And TEVA PHARMECEUTICALS** | : | |
| **INDUSTRIES, Ltd.** | : | |
| **Defendants** | : | |

**AMENDED COMPLAINT**
**Jury Trial Demanded**

## INTRODUCTION

1. Plaintiff Randolph W. Keuch ("Keuch" or "Named Plaintiff") files this Complaint on his own behalf, and on behalf of all similarly situated employees of Teva Pharmaceuticals USA, Inc. ("Teva US") and Teva Pharmaceuticals Industries, Ltd. ("Teva Global") (collectively "Teva" or "Defendants") pursuant to the applicable provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 *et seq.*

2. The claims of Keuch and the putative class that he represents are properly and adequately based upon the failure of Defendants to properly evaluate Plaintiff's performance and the performance of other older employees for retention during a broad reduction of force of individuals employed by Teva US and Teva Global.

3. The Plaintiff brings this action to remedy past and ongoing discrimination within Teva affected by and at the direction of Teva Global CEO Käre Schultz ("Schultz") generally as

it relates to the decision to eliminate 14,000 positions and employees and Teva Global Integrated Management head Tal Zorman ("Zorman") within that process as it relates to the decision to select Keuch for termination and replace him with a substantially younger but far less credentialed and less qualified individual who was previously Plaintiff's direct report but employed by Teva Global.

**JURISDICTION**

4. Jurisdiction is invoked pursuant to 28 U.S.C. §1331 and 28 U.S.C. §626(c), each of which provide for original jurisdiction of Keuch's claims arising under the laws of the United States and over other actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

5. Pursuant to Rule 5.1.1 of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania that prohibits the averment of specific monetary damages, Plaintiff avers only that the amount in controversy for Keuch exceeds the jurisdictional amount for arbitration of One Hundred Fifty Thousand Dollars ($150,000) exclusive of interest and costs in accordance with the Local Rules of the District Court.

6. Keuch, individually and on behalf of the putative class, has exhausted all administrative remedies and has taken all other steps necessary to bring this class action before this Court, having filed a timely class-based Charge of age-based discrimination in employment with the Equal Employment Opportunity Commission [EEOC Charge No. 530-208-04759] which was cross-filed with the PHRC and having received the requisite Notice of Suit Rights within 90 days of the time the original Complaint was filed in this Court.

VENUE

7. All actions regarding the termination of Keuch complained of herein occurred

within the jurisdiction of this Court and involve Defendants, individually and collectively that regularly do business within its jurisdictional limits.

8. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §§1391(b) and 1391(c).

## THE PARTIES

**The Plaintiff, Randolph W. Keuch**

9. Keuch was born on May 27, 1954 and is currently 65 years of age.

10. Plaintiff was employed by Teva as Senior Director of Total Rewards (compensation and benefits) for the Americas and from the inception of his employment in January 2014 worked at the U.S. Headquarters at 1090 Horsham Road, North Wales, Pennsylvania.

11. At all times applicable to the present Complaint, Keuch is and has been an "employee" of Teva as that term is defined in the applicable federal and state anti-discrimination statutes.

12. Keuch is a nationally recognized leader in compensation and benefits.

13. Prior to becoming employed by Teva in January 2014, Keuch was employed by: the H.J. Heinz Company (V.P. Total Rewards, 2005-2013); The Hartford (AVP, Compensation-P&C Division, 2004-2005); Pfizer, Inc. (Corporate Director, Strategic Rewards and Director, Pfizer Consumer Group Compensation, 1998-2004); and SmithKline Beecham (Corporate Director, Compensation Strategy and Director, Human Resource Planning, Systems and Compensation,1994-1998).

14. Plaintiff's educational background also demonstrates excellence in his chosen profession. Plaintiff received both a Bachelor of Science degree (BS, Industrial and

Organizational Psychology, with Honors and Thesis) and a Master of Science degree (MS, Applied Psychology) from the Stevens Institute of Technology. Plaintiff also completed courses and programs in Human Resource Management (George Mason University) and Leadership (Harvard University).

15. While employed by Teva, Keuch led the Total Rewards Center for the Americas providing subject matter expertise for and cutting-edge solutions to all facets of total rewards issues and with his team achieved, *inter alia*, the following notable results for Teva:

- Secured recognition in 2016 and 2017 by NBGH and *Fortune Magazine* as one of Best Employers for Healthy Lifestyles
- Successfully integrated three (3) major acquisitions in the Americas Region (Rimsa-Mexico, Actavis-Global, and Anda-US)
- Developed and launched a global recognition program for Teva
- As a U.S. issuer, contributed to SEC proxy aspect for U.S.-based NEOs
- Developed a global long-term incentive plan for Biologics
- Developed and launched an innovative Total Rewards Portal for all U.S. and Canadian employees
- Developed and implemented a rolling three-year benefits strategy for Teva U.S. that saved over $30,000,000 in 2015, 2016 and 2017 while driving employee knowledge and positive perspective on their benefits to levels that are twenty percent (20%) above the norm for high performing companies
- Developed and implemented pay alignment strategies for the U.S. and Canada resulting in a significant decline in turnover and improved new hire acceptance ratios

- Designed and approved all sales compensation programs and contests within the region
- Implemented the Willis Towers Watson Global Grading System and their REWARD tool throughout the region

16. Keuch is a Certified Executive Compensation Professional and has received honors and held positions in connection with his chosen profession, *inter alia*, as follows:

- Recipient of the American Compensation Association Lifetime Achievement Award
- Service on the Board of Directors for the National Business Group on Health (2010-2014)
- Service on the Customer Advisory Board for Fidelity Investments (2009-2013)
- Chair of the Executive Compensation Advisory Board for WorldAtWork (2008-2011)
- Adjunct Professor at Trenton State University.

**Defendants**

17. Defendant, Teva Global is an Israeli publicly held (NYSE) multinational pharmaceutical company headquartered in Petah Tikva, Israel. It specializes primarily in generic medicines, but its other business interests include active pharmaceutical ingredients and proprietary pharmaceuticals.

18. It is the largest generic drug manufacturer in the world, leveraging its portfolio of more than 1800 molecules to produce a wide range of generic products in every therapeutic area; it is one of the fifteen (15) largest pharmaceutical companies Global.

19. In its latest annual report, Teva Global celebrates its combined strength of all of its operations stating:

> We are a global pharmaceutical company, committed to helping patients around the world to access affordable medicines and benefit from innovations to improve their health. Our mission is to be a global leader in generics, specialty medicines and biopharmaceuticals, improving the lives of patients. We operate Global, with headquarters in Israel and a significant presence in the United States, Europe and many other markets around the world. Our key strengths include our world-leading generic medicines expertise and portfolio, focused specialty medicines portfolio and global infrastructure and scale.

20. Teva Global further suggests its controls over the individual operations in many countries as a positive asset in its overall operational success:

> Each business segment manages our entire product portfolio in its region, including generics, specialty and over-the-counter ("OTC") products. This structure enables strong alignment and integration between operations, commercial regions, R&D and our global marketing and portfolio function, optimizing our product lifecycle across therapeutic areas.

21. Simply put, Teva operates its varied interests globally through its published global work force over 41,000 employees in 60 countries around the world, with full time employees in North America (7,752), Europe (19,004); International Markets (excluding Israel) (9,579); Israel (4,843) for a total (excluding contractors) of 41,177.

22. In the year 2018 that it made the dramatic employment terminations that included Plaintiff Keuch, Teva boasted assets of over Sixty Billion Dollars ($60,683,000,000).

23. At all times applicable to the present Complaint, Defendant Teva Global, due to its total controls regarding employment policies and procedures, was the joint employer of those persons titularly employed and paid by its wholly-owned subsidiary, Teva US, including the Plaintiff Keuch.

24. Equally governing liability in the present case, at all time applicable to the present Complaint, Defendant Teva US was the joint employer of Keuch and the putative members of

the class as defined herein of nearly 8000 persons and employed nearly 8,000 people in the United States.

25. Kåre Schultz became the President and CEO of Teva Global in 2017, and at all time relevant to the present Complaint, directed the discriminatory actions that led to the termination of employment of Plaintiff Keuch and other employees operating in the United States who were over the age of forty (40) years.

26. Tal Zorman, a high-level management employee of Teva Global, was directly responsible for and actually selected Plaintiff Keuch for discharge in 2018. In so doing, she was at all time hereto carrying out the discriminatory directives of Kåre Schultz which led to the termination of the employment of Plaintiff Keuch.

**All Defendants**

27. At all times applicable to this Complaint of discrimination, Defendants Teva Global and Teva US were jointly the employer of the Plaintiff as that term is defined in the controlling applicable federal and state anti-discrimination laws cited herein.

28. It is averred that Defendants Teva Global and Teva US, acting in concert, have affected the intentional discrimination against the Plaintiff Keuch and other employees over the age of 40 employed by Defendants in the intentional selection of older employees for termination based on their age during the substantial reduction in its global labor force, including that in the United States first announced in November 2017. Those actions of both Corporate Defendants against the putative class of employees cited herein and Plaintiff Keuch were affected by Schultz and Zorman in violation of the applicable terms of the controlling state and federal statutes.

## STATEMENT OF APPLICABLE FACTS

**Historical Events Leading to the Drastic Workforce Reductions**

29. In August 2016, Teva Global completed its $40.5 billion acquisition of Allergan's generic drug business Actavis, requiring Teva to take out extensive loans. Further regulatory demands saw Teva sell some of Actavis' most profitable and low-competition products, reducing much of the acquired company's profitability.

30. At the same time, consolidation of buyers and greater regulatory fast-tracking of generics for Teva's competitors hurt Teva's cash flow both by sending generic drug prices plummeting and by leading to approval of generic versions of Teva's two-decade-long main revenue producing, brand name multiple sclerosis drug, Copaxone.

31. Resulting consecutive quarters of lowered financial outlook and diminished reported and forecasted revenues casted doubts in the marketplace of Teva's ability to adequately carry the debt load caused by the above circumstances, leading to lowered credit ratings, negative views from investors and stocks spiraling down to a fifteen-year low.

32. Additionally, in early 2017, Teva Global was forced to pay fines to the United States Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") totaling in excess of $520 Million to resolve federal violations of the Foreign Corrupt Practices Act ("FCPA") arising from bribery charges relating to its operations in Russia, the Ukraine and Mexico. Teva's settlement was the largest fine ever paid by a pharmaceutical company over FPCA violations.

33. These circumstances led to the hiring of Schultz as the President and CEO of Teva Global who was faced with the alternatives of cutting costs or rapidly growing revenues. Defendant Schultz chose the former. In December, Teva, at Defendant Schultz's direction

approved by Teva's Board, suspended dividends on its common stock, ordered that no annual bonus payments be made to employees for the year 2017 and announced a reduction in its employment force of 14,000 people, including 25% of the Teva US workforce.

34. Despite the imposition of these Draconian measures to save costs on the backs of employees and common stock investors, Schultz received, in addition to his base salary, a Twenty Million Dollar ($20,000,000) cash payment included in his contract and entitlement to a performance-based target incentive bonus of 140% of his annual base salary. Those payments led to broadly-based criticism that he canceled the employee bonuses and ordered the reduction of the workforce to increase his own bonus that depended on how much money he could save for Teva.

35. In fact, the median annual pay of Teva's employees was Sixty-Four Thousand Eighty-One Dollars ($64,081) compared with Schultz's contractually obligated total compensation in an amount exceeding Twenty Million Dollars.

36. Compensation levels for the other executives that caused the problems for Teva that led to the decision to affect the reductions in the workforce also did not abate. Teva's senior management continued to receive inflated salaries and bonuses. The Actavis deal's engineer, Erez Vigodman who stepped down as CEO in February 2017, continued to receive a salary of One Million Four Hundred Fifty Thousand Dollars ($1.45) for the next several months and a bonus of Two Million Dollars ($2,000,000). Interim CEO Yitzhak Peterburg, who replaced Vigodman, received a salary of Nine Million Two Hundred Thousand Dollars ($9.2 million) for the eight months he served in that capacity.

**Historical Perspective of Plaintiff's Employment Experience**

37. Over the entire course of his employment, Plaintiff Keuch met or exceeded the expectations and goals set by his supervisors., who, from the inception of his employment were employees of Teva Global residing in Israel. Additionally, throughout his employment, Plaintiff Keuch was requited to adhere to the mandates of Teva Global policies and procedures.

38. In 2015, prior to Schultz's hiring, Plaintiff Keuch received a significant increase in base salary and a $60,000 retention bonus in recognition of his value to the Company and to prevent him from accepting employment elsewhere.

39. From the time of his employment until his discharge from Teva employment, the Americas Region had added approximately 6000 employees in the United States, Canada, Puerto Rico and Latin America due to the Actavis acquisition, another 600 from Teva's acquiring Anda, and approximately 1000 more in Mexico from the acquisition of Rimsa.

40. Plaintiff Keuch was always considered a valuable managerial asset and his leadership permitted Teva US to experience properly planned and lawful long-range compensation and benefits savings equaling tens of millions of dollars.

41. However, evidencing a clear age-related bias, Teva implemented compensation policies that disfavored older workers like Plaintiff who were reaching retirement age. That systemic unlawful approach was reflected in unannounced changes in the Teva 2015 Stock Plan that also revised the 2010 Plan by conditioning full vesting on ten years of service when the employee reaches 65 years (five years more than the earlier plan versions that previous set the bar at age 65 plus 5 years of service).

42. Age bias was also evidenced in the raising of the age of retirement in the 2010 and 2015 equity plans to age 55 for those employees who had fifteen (15) or more years of

service as compared to the previous policy of the rule of 70 that permitted retirement at any combination of age and service that equaled 70. Moreover, that policy-change also negatively impacted the equity compensation of older employees.

43. In addition, Teva initiated a punitive severance plan in 2017 that reduced all severance paid to US employees by Teva by the amount of unemployment compensation benefits that they were lawfully entitled to, once again creating savings by taking income away from employees. While employees who were age 62 or older were exempt from this deduction, US Teva leadership espoused the belief that those over age 62 would no longer be employable and could not properly apply for unemployment compensation benefits, and therefore, the exemption should not be honored.

44. Plaintiff Keuch additionally witnessed an age bias in the form of age bias in the hiring of employees. An example of that discriminatory animus was the rejection by Senior Vice President of Human Resources, Daniel Lawler, of a candidate working as a contractor based upon his clearly discriminatory view that at her more advanced age she did not have ”long term potential”.

**Plaintiff's Selection for Firing**

45. Based upon the calamitous circumstances caused by executive mismanagement, in November 2017, Schultz announced the intention to fire up to 25% of its global workforce and halt all 2017 bonuses as part of the streamlining plan aimed at countering the poor financial results described above, with most of the international firings expected to be in the United States as opposed to the company's European sites.

46. As part of the effort to meet the financial needs of Teva, in December 2017, Plaintiff Keuch was asked to and outlined several alternate proposals that would meet the needs

of Teva and not break the laws of the countries and states where Total Rewards employees were employed. Plaintiff Keuch also volunteered to be relocated to the Israeli headquarters to help plan cost saving measures that would reduce employee headcounts to levels that were existent at the time Plaintiff was hired.

47. The suggested proposals made by Plaintiff Keuch were not addressed, and instead, on January 2, 2018, Plaintiff was advised that his employment would be terminated without any opportunity to accept a demotion to a position that would be retained.

48. The decision to terminate Plaintiff Keuch and to retain a substantially younger, less qualified employee Eduardo Nasi in his place was made by Tal Zorman, a high-level management employee employed by Teva Global in concert with other age-based employment terminations of Teva US employees affected by other Teva Global managers as part of the Teva reduction in force strategy. Zorman had only just been installed as the Head of Integrated Talent Management, replacing Ron Yaniv, Plaintiff's previous direct supervisor who was also employed by Teva Global.

49. Plaintiff's termination became effective March 18, 2018.

50. Plaintiff was replaced by Mr. Nasi, a South American direct report of the Plaintiff who was and is 27 years younger than the Plaintiff and had substantially less experience and ability than Plaintiff to lead a diverse Total Rewards.

51. The age-based animus that led to Mr. Nasi's employment in Plaintiff's position is further evidenced by the fact that it did not affect any monetary savings for Teva. Simply stated, age was the motivating and determinative factor in the decision to promote Mr. Nasi and fire Plaintiff.

52. At the time that his employment was terminated, Plaintiff was compensated at a salary of $286,000 with cash and equity bonus targets of 30% and 40% respectively. Plaintiff was also provided healthcare benefits in the amount of $2,196.54 per month.

53. As a direct result of the improper and unlawful actions of the Defendants, Plaintiff has suffered and will continue to suffer losses of compensation and benefits. More specifically based on his intended age, Plaintiff's losses will exceed millions of dollars and Plaintiff will lose retirement benefits and suffer a loss of net worth over his anticipated lifetime equaling more than $13 million.

**Class Allegations**

55. Plaintiff files this Complaint of Discrimination for all individuals over the age of forty years who have been terminated as a result of the discriminatory practices of Teva Global and Teva US.

55. The claims of those persons who share the same denial of rights with the Plaintiff share a commonality of interest, fact and law and arise from the same policies and practices that caused the termination of the employment of the Plaintiff.

56. The investigation required to fully explore the unlawful actions of the Defendants will not be increased if the issues raised by the actions against the Plaintiff are expanded to review the systemic nature of Defendants' discrimination against all workers over the age of forty who have been affected by their collective discriminatory actions, policies and practices.

57. Plaintiff Keuch seeks certification of a class of older workers under the terms and requirements of Rules 23(a)( l) (2) (3)and (4) fo the Federal Rules of Civil Procedure.

58. The applicable class is defined as:

Older workers over the age of forty (40) years employed by Defendant

> Teva in the United States who have suffered termination from January 1, 2017 to date.

59. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the class definition should be narrowed, expanded , or otherwise modified.

60. The class as defined above is so numerous that joinder would be impracticable and the number is far greater than can be feasibly addressed through joinder.

61. There are questions of law and fact common to the class, including the systemic discharge of persons over the age of forty employed by the Defendants in the United States.

62. Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

63. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendants and the relief sought within the Class and any subclass is common to the members of each.

64. The Defendant Teva has acted and/ or failed to take action generally applicable to the class, making appropriate declaratory and injunctive relief with respect to the Plaintiff and the class as a whole appropriate.

65. The policies and practices of Defendant Teva discriminate against persons in the protected class, violate the employment discrimination statute and ordinance at issue and

thereby permit the award of monetary damages, injunctive relief, and other equitable remedies on a class-wide basis are warranted.

66. The class members are entitled to injunctive relief to end the Defendants' common, uniform, and / or unfair personnel policies and practices that discriminate on the basis of a protected traits enumerated herein.

67. The class members have been damaged and are entitled to relief including the recovery of damages as a result of the Defendants" common, uniform, and unfair discriminatory personnel policies and practices. Moreover, the sophisticated computerized payroll and personnel data will make calculation of damages for specific class members relatively simple and the propriety and amount of punitive damages are issues common to the class.

68. The named Plaintiff can and will fairly and adequately represent and protect the interests of the members of the class without conflict with potential class members.

69. The Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

70. Further, the prosecution of separate actions by individual members of the class: (1) would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class, or (2) would substantially impair or impede the interests of the other members of the class to protect their interests.

**Statement Of Legal Liability**

71. At all times applicable to this Complaint, Plaintiff Keuch was and is an older worker entitled to the full protections provided to older similarly situated employees over the

age of 40 years, by the terms of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq.

72. The actions of the Defendants, in causing the aforesaid losses based upon their discrimination against Plaintiff Keuch and other older workers similarly situated employed by Defendants in the United States, while treating younger, similarly situated employees better, constitute unlawful violations of the provisions of the ADEA and the PHRA.

73. The unlawful actions of the Defendants constitute a continuing unlawful systemic pattern and practice of discrimination against older employees, in the terms and conditions of their employment, including decisions relating discharge, including constituting discrimination against the named Plaintiff specifically.

74. The actions of the Defendants have been and continue to be willful and deliberate against older workers and were affected in deliberate indifference to the rights of the Plaintiff Keuch and other similarly situated persons employed by Defendants and were affected in willful discrimination against Plaintiff Keuch individually.

## COUNT I
## Violations of the Age Discrimination in Employment Act

75. Plaintiff repeats and re-alleges the averments made in the paragraphs above as though fully set forth herein.

76. The Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq., in that they discriminated against Plaintiff Keuch and members of the defined class on account of their age.

**COUNT II**

**Violations of the Pennsylvania Human Relations Act**

77. Plaintiff Keuch repeats and re-alleges the averments made in the paragraphs above as though fully set forth herein.

78. The Defendants violated the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq., in that they discriminated against Plaintiff Keuch and or aided and abetted discrimination against him and members of the defined class on account of their age.

**RELIEF SOUGHT**

WHEREFORE, as a direct result of the unlawful actions of the Defendants, it is submitted that Plaintiff Keuch is entitled to and seeks the following relief:

(a) appropriate injunctive and monetary relief in an appropriate amount for Plaintiff Keuch and each member of the class of employees over the age of 40 who he represents;

(b) a monetary award to Plaintiff Keuch and to the members of the class of employees over the age of 40 who he represents in an amount equal to: (i) any losses they have suffered and will suffer as a result of the unlawful actions of Defendant; and (ii) any losses Plaintiff Keuch will suffer as a result of his separation from his employment with the Defendant employers;

(c) a monetary award for compensatory damages for emotional distress and humiliation suffered by Plaintiff for the discrimination affected against him by the Defendants, as well as that suffered by any member of the class of employees over the age of 40 who he represents, in an appropriate amount for each member of the class;

(d) a monetary award for liquidated damages as allowed

under the ADEA in an appropriate amount for Plaintiff Keuch and each member of the class who he represents; and

(e) the award of reasonable attorneys' fees and the costs associated with the pursuit of this Complaint.

Respectfully submitted,

By: /s/ *Alan B. Epstein*

Alan B. Epstein, Esquire (02346)
Jennifer Myers Chalal, Esquire (77841)
SPECTOR, GADON ROSEN VINCI P.C.
Seven Penn Center
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
(215) 241-8832/8817
aepstein@sgrvlaw.com
jchalal@sgrvlaw.com

*Attorneys for Plaintiff,*
*Randolph W. Keuch*

March 15, 2021