IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDOLPH W. KEUCH, :<br>:  Plaintiff, :<br>:<br>v. :<br>:<br>TEVA PHARMACEUTICALS USA, INC., :<br>And TEVA PHARMACEUTICAL :<br>INDUSTRIES, Ltd., :<br>:<br>Defendants. : | CASE NO. 2:19-CV-05488<br><br>(JUDGE JOHN M. GALLAGHER)<br><br>(Electronically Filed) |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") and Defendant Teva Pharmaceutical Industries, Ltd. ("TPI" and together with TUSA the "Defendants" or "Teva"), submit this Statement of Undisputed Material Facts in Support of its Motion For Summary Judgment on all counts of Plaintiff's Complaint.

1. Teva is a global pharmaceutical company, marketing products from a wide range of therapeutic areas including, but not limited to, analgesic, anti-infective, cardiovascular, oncology, dermatological and anti-inflammatory, both branded and generic.  **Nasi Dep., 79:25-80:15 at Joint Appx.-0351-52.**

2. TUSA is a wholly-owned, indirect, subsidiary of TPI. **Nasi Dep., 79:17-21 at Joint Appx.-0351.**

3. Mr. Keuch was born on May 27, 1954. **Keuch Dep., 8:11 at Joint Appx.-0315.**

4. In January of 2014, TUSA hired Mr. Keuch to be the Senior Director of Total Rewards for the Americas. **TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.**

5. Total Rewards is part of Teva's Human Resources organization and is largely responsible for making sure employees are properly compensated and provided benefits. **Keuch Dep., 62:1-7 at Joint Appx.-0320.**

6. In this role, Mr. Keuch was responsible for designing and overseeing compensation and benefits policy for Defendants' employees in the United States, Canada, Mexico, and various countries in Latin America. **Nasi Dep., 82:9-14 at Joint Appx.-0353.**

7. In order to properly compensate individuals across its platform, Defendants utilize a numerical grading scale to determine the salary range for each employee. **Nasi Dep., 82:15-83:4 at Joint Appx.-0353-54.**

8. This scale begins at Labor Grade 1 and goes to Labor Grade 22. **Nasi Dep., 82:15-83:4 at Joint Appx.-0353-54.**

9. When Mr. Keuch was hired as the Head of Total Rewards-Americas he was graded as a Labor Grade 17. **Keuch Dep., 142:1-4 at Joint Appx.-0333.**

10. Mr. Keuch retained this Labor Grade designation throughout his Teva employment and his last base salary was approximately $285,000. **TEVA000768 (Vitman Email) at Joint Appx.-0207**.

11. In addition to the numerical Labor Grade designations, Defendants also associate titles with each position. **Nasi Dep., 83:5-15 at Joint Appx.-0354.**

12. For example, Labor Grade 15 is associated with "Director" level positions, Labor Grades 16 and 17 are associated with "Senior Director" level positions, Labor Grade 18 is associated with "Vice President" level positions and Labor Grade 19 and 20 are associated with "Senior Vice President" positions. **Nasi Dep., 83:5-15 at Joint Appx.-0354.**

13. As Mr. Keuch was a Labor Grade 17, he held the "Senior Director" title. **TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.**

14. During the relevant portions of Mr. Keuch's employment, the Total Rewards global functions were managed by Ron Yaniv (Labor Grade 19—Senior Vice President) whose offices were in Israel where TPI is headquartered. **Keuch Dep., 142:18-143:6 at Joint Appx.-0333-34.**

15. Reporting to Mr. Yaniv were four different Senior Directors—each of whom were designated as Labor Grade 17 and had responsibility for the following four geographic areas—(1) Americas (Mr. Keuch); (2) Europe; (3) Asia-Pacific; and (4) Israel. **Keuch Dep., 142:18-143:6 at Joint Appx.-0333-34.**

16. In turn, Mr. Keuch had three direct reports: (1) Eduardo Nasi (Director—Labor Grade 15), the Head of Total Rewards for Latin America; (2) Miriam Weinstein, the Head of Compensation, North America (Labor Grade 15); and (3) Diane Rohach, the Head of Benefits, Americas (Labor Grade 15). **Keuch Dep., 142:18-143:6 at Joint Appx.-0333-34.**

17. When TUSA hired Mr. Keuch in 2014, he was offered a salary of $250,000 per year. **TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.**

18. Mr. Keuch was provided a signing bonus of $50,000 that would be paid to him one year after his start date. **TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.**

19. In addition, Mr. Keuch was eligible to receive bonuses and participate in other incentive plans. **TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.**

20. In August 2015, approximately a year and a half after Mr. Keuch began employment at TUSA, Mr. Keuch received a job offer to leave TUSA to join a different company. **Keuch Dep., 75:1-77:23 at Joint Appx.-0321-323.**

21. Mr. Keuch leveraged this offer to negotiate a higher salary at TUSA. **Keuch Dep., 75:1-77:23 at Joint Appx.-0321-323.**

22. As a result, on August 6, 2015, TUSA provided Mr. Keuch with a base salary increase and retention bonus. **Keuch Dep., 75:1-77:23 at Joint Appx.- 0321-323; KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.**

23. Specifically, TUSA increased Mr. Keuch's salary to $280,000 and provided him with a $60,000 retention bonus. **KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.**

24. The retention bonus, however, was paid in two installments. **KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.**

25. Each installment was $30,000 and contingent on Mr. Keuch remaining employed at TUSA on the two benchmark dates. **KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.**

26. The first benchmark date was August 6, 2016 and the second a year later was August 6, 2017. **KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.**

27. Mr. Keuch received both of these retention payments. **KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16; Keuch Dep., 147:17-20 at Joint Appx.-0337.**

28. At this same time, Mr. Keuch expressed to Mr. Yaniv (his boss) that he believed that his position, was improperly graded and should be upgraded to a Labor Grade 18 which would make him a Vice President. **Keuch Dep., 141:20-145:7 at Joint Appx.-0332-0336; KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.**

29. Mr. Yaniv explained to Mr. Keuch that he would look into the matter, but ultimately was not able to have the position re-evaluated. **Keuch Dep., 141:20-145:7 at Joint Appx.-0332-0336; KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.**

30. In early 2017, Defendants faced the realistic possibility of bankruptcy. **Nasi Dep., 83:16-85:4 at Joint Appx.-0354-56.**

31. The company's stock price had fallen. **Keuch Dep., 122, 23-123:5 at Joint Appx.-0330-31.**

32. On or about November 1, 2017, TPI hired Kare Schultz to become CEO and President. Mr. Schultz inherited the onerous task of addressing Defendants' massive financial crisis. **Amended Complaint (ECF #32) at ¶33; Sabag Dep., 17:9-18:10 at Joint Appx.-0302-303; TEVA00242-258 (Teva Announcement Dec. 14, 2017 & Teva PPT Dec. 14, 2017) at Joint Appx.-0143-59.**

33. In early December of 2017, Mr. Schultz announced that Defendants would be engaging in a large scale, global corporate restructuring which resulted in the sale or closure of many of its operating facilities throughout the world, consolidation of offices, and the reduction of its headcount by at least 25% across the globe. **Amended Complaint (ECF #32) at ¶33; Sabag Dep., 17:9-18:10 at Joint Appx.-0302-303; TEVA00242-258 (Teva Announcement Dec. 14, 2017 & Teva PPT Dec. 14, 2017) at Joint Appx.-0143-59.**

34. This reduction, however, would not be borne equally by each department. **Zorman Dep., 18:10-20:12 at Joint Appx.-0277-0279.**

35. Certain departments such as Human Resources had a target reduction of 50% whereas some production based departments had lesser reduction targets. **Zorman Dep., 18:10-20:12 at Joint Appx.-0277-79.**

36. Throughout 2017, Mark Sabag was a member of TPI's executive leadership team and the global head of Human Resources. **Sabag Dep., 17:20-18:10 at Joint Appx.-0302-03.**

37. Mr. Sabag, along with the Chief Financial Officer, designed a plan as to how Defendants' global workforce was to be restructured. **Sabag Dep., 17:20-18:10 at Joint Appx.-0302-03.**

38. Once it was determined that Mr. Sabag's department (Human Resources) would have a 50% targeted reduction, Mr. Sabag began to effectuate this goal. **Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.**

39. Mr. Sabag testified that the Human Resources department would be instrumental in carrying out and leading the restructuring process. **Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.**

40. Mr. Sabag testified that he felt a duty to make the reductions within the Human Resources department as quickly as possible so that his department could get back to business to help guide the other departments through the restructuring process. **Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.**

41. Mr. Sabag reviewed his direct reports and merged a number of global functions to eliminate several leadership roles within the Human Resources department. **Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.**

42. Once he had determined the proper structure of the leaner Human Resources organization, he determined that Tal Zorman would lead the segment of Human Resources that was responsible, in part, for overseeing the global Total Rewards function. **Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.**

43. A consequence of Mr. Sabag's restructuring decision was that it resulted in the elimination of Mr. Yaniv's position (Mr. Keuch's boss) as well as the position of other high

ranking TPI Vice Presidents. **Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04; 29:20-31 at Joint Appx.-0305; TEVA000113-115 (Mark Sabag Update Email) at Joint Appx.-0067-69.**

44. Mr. Sabag eliminated the roles of Moshe Netzer (Senior Vice President, HRBP Growth Markets, 27 years of experience with the Company) and Raffi Hirsch (Senior Vice President, HRBP Global Specialty Medicines, 21 years of experience with the Company). **Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04; 29:20-31 at Joint Appx.-0305; TEVA000113-115 (Mark Sabag Update Email) at Joint Appx.-0067-69.**

45. Upon being selected to lead the global Total Rewards function, Ms. Zorman immediately became responsible for making reductions to her newly inherited organization as directed by Mr. Sabag. **Zorman Dep., 19:18-20:2 at Joint Appx.-0278-79.**

46. Ms. Zorman was responsible for reducing the headcount within her new organization by 50%. **Zorman Dep., 19:18-20:212 at Joint Appx.-0278-79.**

47. As part of the restructuring, the geographic reporting structures were reorganized. **Zorman Dep., 24:6-25:5 at Joint Appx.-0280-81; 50:19-51:11 at Joint Appx.-0283-0284.**

48. Latin America was removed from the Americas and placed in the "Growth Markets" division. **Zorman Dep., 50:19-51:11 at Joint Appx.-0284-85.**

49. Moving forward there would be three (not four) Regional Heads of Total Rewards. There would be a head for North America, another for Europe, and one for "Growth Markets"—which now encompassed Asia, Israel, Latin America, and India. **Zorman Dep., 24:6-25:5 at Joint Appx.-0280-81; 50:19-51:11 at Joint Appx.-0283-84.**

50. Ms. Zorman began her task of reaching the 50% reduction goal by first determining the structure of the organization. **Zorman Dep., 27:15-24 at Joint Appx.-0282.**

51. Once completed, Ms. Zorman turned to determining which individuals would best fit in the new structure. **Zorman Dep., 27:15-24 at Joint Appx.-0282.**

52. In early December 2017, Ms. Zorman explained to Mr. Keuch that a 50% reduction to headcount would be necessary in the North America Total Rewards organization. **Keuch Dep., 152:1-14 at Joint Appx.-0338.**

53. Ms. Zorman asked Mr. Keuch to prepare a report outlining the bare bones recommendation for his team. **Keuch Dep., 152:1-14 at Joint Appx.-0338.**

54. On December 14, 2017, Mr. Keuch sent Ms. Zorman an email in which he stated:

> Attached is a deck that provides my bare bones recommendation for my team. I have included options that suggest elimination of my position or Miriam's position. I strongly urge you not to make any leadership changes in Q1, as there is much work for the team to perform and the risks are very high. I also ask that you consult with Legal to validate the risks and our exposure. An error on our 401k could result in disqualification of the entire plan, which has $1.2 billion in assets, so disqualification will result in the loss of huge tax benefits to Teva. If a leadership change (job elimination) is needed, better to do this in Q2 when work has transitioned to HR Ops & Services, and the organization has stabilized. This is not a personal request nor is it made out of concern for having my position eliminated. Rather, it is a business decision as to how much risk Teva is willing to take by moving too quickly or having inexperienced people in key decision-making roles.

**KEUCH000050-78 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0217-45.**

55. As an attachment to this email, Mr. Keuch provided a PowerPoint presentation where he outlined three options for how Defendants could achieve the 50% reduction in the Total Rewards North America organization. **KEUCH000050-78 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0217-45; Keuch Dep., 173:25-175:18 at Joint Appx.-0340-42.**

56. In the first of the three options, Mr. Keuch proposed eliminating his own role. **KEUCH000058 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0225; Keuch Dep., 173:25-175:18 at Joint Appx.-0340-42.**

57. In the other two options, Mr. Keuch proposed that he be retained as Head of Total Rewards North America with a far smaller staff. **KEUCH000056-58 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0223-25; Keuch Dep., 173:25-175:18 at Joint Appx.-0340-41.**

58. Mr. Keuch candidly expressed in the PowerPoint presentation that if leadership level roles needed to be cut, Diane Rohach and not himself should be considered the most valuable leader. **KEUCH000057 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0224.**

59. Mr. Keuch concluded that that the remaining staff lacked the expertise to handle benefits without Ms. Rohach making her continued employment essential. **KEUCH000057 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0224.**

60. Mr. Keuch also stated with some equivocation that he was "probably the next most valuable leader." **KEUCH000057 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0224.**

61. Because the new organization would not include Latin America—Mr. Nasi is not mentioned in the PowerPoint presentation. **Keuch Dep., 155:5-12 at Joint Appx.-0339.**

62. Ms. Zorman thanked Mr. Keuch for his proposals and began to evaluate her options. **KEUCH000050 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0217.**

63. Ultimately, Ms. Zorman decided that the new Head of Total Rewards for North America should have less responsibility than the Head of Total Rewards for Americas had.  **Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.**

64. The new organizational head would not be responsible for Latin America. **Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.**

65. The workforce in North America would be substantially smaller after the RIF was complete. **Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.**

66. The position would be more of an operational leader as opposed to a strategic or design based leader.  **Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.**

67. Given Teva's financial footing it was not in a position to be expanding or designing new benefits.  **Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.**

68. The new leader's main objective would be to operationally maintain the benefits already offered. **Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.**

69. Ms. Zorman determined that the new Head of Total Rewards for North America should be a Director level position and be graded as a Labor Grade 15.  **Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.**

70. As Mr. Keuch was a Senior Director, Labor Grade 17, Ms. Zorman determined that Mr. Keuch was overqualified for the reduced role. **Zorman Dep., 85:11-86:17 at Joint Appx.-0296-97.**

71. Ms. Zorman began to consider who should fill this Director level, Labor Grade 15 role. **Zorman Dep., 60:3-9 at Joint Appx.-0287.**

72. She considered the professional experience, leadership, and management capabilities of various individuals who had been a part of the previous organization lead by Mr. Keuch. **Zorman Dep., 60:3-9 at Joint Appx.-0287.**

73. Ms. Zorman identified Mr. Nasi to become the next Head of Total Rewards for North America. **Zorman Dep., 60:3-9 at Joint Appx.-0287.**

74. In making this decision, Ms. Zorman interviewed Mr. Nasi, spoke with Mr. Nasi's supervisor in Latin America, considered his prior performance reviews, and consistently received positive references regarding Mr. Nasi's professional and leadership maturity. **Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88.**

75. Ms. Zorman also discussed the matter with her colleague, Daniel Lawlor, who was the head of Human Resources for North America and received the required approval from Mr. Sabag. **Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88.**

76. Once Ms. Zorman made this decision and it was approved, she contacted Mr. Nasi to discuss the new role and gauge his interest. Ms. Zorman explained to Mr. Nasi that the role would be reduced in scope from what Mr. Keuch had been responsible for, would not include Latin America, and would have approximately half the amount of direct reports. **Zorman Dep., 51:12-15 at Joint Appx.-0284.**

77. Ms. Zorman also explained that Mr. Nasi would need to relocate from Florida to the Northeast, however, Ms. Zorman was unable to provide Mr. Nasi with a specific location at that time because Defendants were still determining where the North American headquarters would be located (later determined to be Parsippany, New Jersey). **Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88; Nasi Dep., 39:1-15 at Joint Appx.-0350.**

78. Ms. Zorman also informed Mr. Nasi that the position would be a Labor Grade 15 and be at the Director level.  **Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88.**

79. There was no plan at this time to alter Mr. Nasi's compensation which was $168,895.  **Zorman Dep., 52:1-24 at Joint Appx.-0285; 83:6-84:10 at Joint Appx.-0294-95.**

80. Mr. Nasi, after consulting with his wife, verbally accepted the offer. **Nasi Dep., 30:17-31:3 at Joint Appx.-0348-49.**

81. Ms. Zorman's decision to eliminate Mr. Keuch's position and to elevate Mr. Nasi was not based on Mr. Keuch's job performance which was generally satisfactory.  **Zorman Dep., 27:15-24 at Joint Appx.-0282.**

82. Ms. Zorman eliminated the Senior Director, Labor Grade 17 position because the newly restructured organization, which would serve far fewer employees in an operational rather than strategic manner, did not justify a Labor Grade 17 for its leader.  **Zorman Dep., 51:5-11 at Joint Appx.-0284; 85:4-22 at Joint Appx.-0296.**

83. At the time in which Ms. Zorman made this decision, she did not know or inquire about the respective ages of Mr. Nasi or Mr. Keuch.  **Zorman Dep., 60:23-61:3-5 at Joint Appx.-0287-88.**

84. Ms. Zorman made the same decision for Europe.  **Zorman Dep., 80:8-82:15 at Joint Appx.-0291-93.**

85. Ms. Zorman chose to eliminate the then Head of Total Rewards for Europe, a Senior Director, Labor Grade 17, and replace him with one of his direct reports, a Director at Labor Grade 15.  **Zorman Dep., 80:8-82:15 at Joint Appx.-0291-93.**

86. Her view was that regional leaders could operate at the Director level and that she would have responsibility for any strategic or policy decisions that previously had been made by Labor Grade 17 Directors. **Zorman Dep., 80:8-82:15 at Joint Appx.-0291-93.**

87. On January 2, 2018, Ms. Zorman contacted Mr. Keuch by phone to notify him that his position had been eliminated. **Keuch Dep., 36:2-12 at Joint Appx.-0317.**

88. Ms. Zorman thanked Mr. Keuch for his service to Teva and asked Mr. Keuch to continue working for a few months to help with the transition of Mr. Nasi into the new role. **Keuch Dep., 192:16-20 at Joint Appx.-0344.**

89. Mr. Keuch agreed to do so and his last day of work at TUSA was on or about February 18, 2018. **Keuch Dep., 39:1-6 at Joint Appx.-0318.**

90. Mr. Keuch continued to be paid by TUSA until March 18, 2018. **Keuch Dep., 191:23-192:2 at Joint Appx.-0343-44.**

91. At the time of his separation, Mr. Keuch was offered a severance package that was conditioned on his execution of a release (as were all the separation agreements). **Keuch Dep., 34:1-9 at Joint Appx.-0316; TEVA00172-188 (Keuch Unsigned Separation Agreement) at Joint Appx.-0126-42.**

92. Mr. Keuch declined to sign the separation agreement and thus did not receive any severance payments. **Keuch Dep., 34:1-9 at Joint Appx.-0316.**

93. Following Mr. Keuch's separation of employment and at a later stage of the restructuring, Defendants engaged in a site consolidation in the United States. **Zorman Dep., 53:1-18 at Joint Appx.-0286.**

94. This resulted in the relocation of TUSA's headquarters from North Wales, Pennsylvania to Parsippany, New Jersey. **Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90.**

95. This site consolidation created additional complexities and work for Mr. Nasi as the Head of Total Rewards, North America. **Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96.**

96. A retention and relocation package was offered to Mr. Nasi and effective March 28, 2018, Mr. Nasi's position was elevated from a Labor Grade 15, Director to a Labor Grade 16, Senior Director. **Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96.**

97. Mr. Nasi's salary was increased to approximately $195,000. **Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96; TEVA000768 (Vitman Email) at Joint Appx.-0207.**

98. Notably, even following this change, Mr. Nasi was still a Labor Grade below Mr. Keuch's Labor Grade (i.e., 16 vs 17), and earning less than Mr. Keuch had been earning (i.e., $195,000 vs. $285,000). **Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96: TEVA000768 (Vitman Email) at Joint Appx.-0207.**

99. A similar decision was later made in Europe where the Director who was retained following the RIF was upgraded to a Labor Grade 16 and provided with the title "Senior Director." **Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96.**

                                          Respectfully submitted,

                                          **STEVENS & LEE, P.C.**

Dated:  June 21, 2022                   By:  */s/ Larry J. Rappoport*
                                                  Larry J. Rappoport, Esquire
                                                  Brandon S. Shemtob, Esquire
                                                  STEVENS & LEE
                                                  A PA Professional Corporation
                                                  1500 Market Street, East Tower, St.1800
                                                  Philadelphia, PA 19102
                                                  Phone: (215) 496-3839
                                                  Fax: (610) 371-7977
                                                  larry.rappoport@stevenslee.com
                                                  brandon.shemtob@stevenslee.com

                                                  *Attorneys for Defendants*