**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (JUDGE JOHN M. GALLAGHER) |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| And TEVA PHARMACEUTICAL | : | (Electronically Filed) |
| INDUSTRIES, Ltd., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF SUMMARY JUDGMENT**

**STEVENS & LEE, P.C.**

Dated:  June 21, 2022

By: */s/ Larry J. Rappoport*
    Larry J. Rappoport, Esquire
    Brandon S. Shemtob, Esquire
    STEVENS & LEE
    A PA Professional Corporation
    1500 Market Street, East Tower, St.1800
    Philadelphia, PA 19102
    Phone: (215) 496-3839
    Fax: (610) 371-7977
    larry.rappoport@stevenslee.com
    brandon.shemtob@stevenslee.com

    *Attorneys for Defendants*

## TABLE OF CONTENTS

I.    PROCEDURAL HISTORY AND INTRODUCTION.........................................................5

II.   FACTS ......................................................................................................................6

    A.   TUSA Hires Plaintiff as Head of Total Rewards–Americas Prior to His
        60th Birthday...........................................................................................................6

    B.   Defendants Announce and Implement a Large Reduction in Force. ..........................8

    C.   Ms. Zorman Restructures the Total Rewards Organization. ....................................10

III.  SUMMARY OF ARGUMENT .................................................................................15

IV.   ARGUMENT ..........................................................................................................16

    A.   The Court Should Grant Summary Judgment for Defendants on Mr. Keuch's
        Claims of Age Discrimination (Counts I and II). ...................................................16

        1.   Defendants Had a Legitimate, Non Discriminatory Reason to Terminate
             Mr. Keuch's Employment—the RIF. .................................................................18

        2.   Plaintiff Has Not Adduced Evidence Sufficient to Demonstrate Pretext............19

V.    CONCLUSION........................................................................................................29

06/21/2022 SL1 1786480v6 030421.00713

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. PetSmart, Inc.*,
    512 F.Supp.2d 288 (E.D. Pa. June 4, 2007)............................................................................28

*Andersen v. Mack Trucks, Inc.*,
    118 F.Supp.3d 723 (E.D. Pa. July 30, 2015) .........................................................16,20,23,28

*Carson v. Bethlehem Steel Corp.*,
    82 F.3d 157 (7th Cir. 1996) ........................................................................................................23

*Colwell v. Rite Aid Corp.*,
    602 F.3d 495 (3d Cir. 2010)........................................................................................................15

*Davis v. Pittsburgh Pub. Schs.*,
    930 F.Supp.2d 570 (W.D. Pa. 2013)..........................................................................................23

*Evanoski v. United Parcel Serv., Inc.*,
    571 F.App'x 92 (3d Cir. 2014) ..................................................................................................15

*Ezold v. Wolf, Block, Schorr & Solis–Cohen*,
    983 F.2d 509 (3d Cir. 1992)...................................................................................................25,27

*Fletcher v. Lucent Techs., Inc.*,
    Civ. A. No. 02-3941 (JAG), 2005 WL 2373191 (D.N.J. Sept. 27, 2005), *aff'd*,
    207 F.App'x 135 (3d Cir. 2006) ................................................................................................29

*Fowle v. C & C Cola*,
    868 F.2d 59 (3d Cir. 1989).........................................................................................................23

*Frost v. PetSmart, Inc.*,
    Civ A. No. 05-6759, 2007 WL 602990 (E.D. Pa. Feb. 26, 2007) ...........................................28

*Fuentes v. Perskie*,
    32 F.3d 759 (3d Cir. 1994).........................................................................................................16

*Gottschall v. Reading Eagle Co.*,
    Civ. A. No. 11-5361, 2013 WL 961266 (E.D. Pa. Mar. 12, 2013)....................................15,20

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167, 129 S.Ct. 2343 (2009).......................................................................................18

*Healy v. N.Y. Life Ins. Co.*,
    860 F.2d 1209 (3d Cir. 1988).....................................................................................................29

06/21/2022 SL1 1786480v6 030421.00713

*Jones v. Sch. Dist. of Phila.*,
   198 F.3d 403 (3d Cir. 1999).................................................................................20

*Keller v. Orix Credit All., Inc.*,
   130 F.3d 1101 (3d Cir. 1997)..............................................................................16

*Kelly v. Drexel Univ.*,
   94 F.3d 102 (3d Cir. 1996)..................................................................................18

*McGrath v. Lumbermens Merch. Corp.*,
   851 F.Supp.2d 855 (E.D. Pa. Mar. 20, 2012) ..................................................26,27

*Monaco v. Am. Gen. Assurance Co.*,
   359 F.3d 296 (3d Cir. 2004)..............................................................................15,21

*Muhammad v. Sills Cummis & Gross P.C.*,
   621 F.App'x 96 (3d Cir. 2015) ..........................................................................18,20

*O'Connell v. Associated Wholesalers, Inc.*,
   558 F.App'x 286 (3d Cir. 2014) ....................................................................21,25,27

*Tourtellotte v. Eli Lilly & Co.*,
   Civ. A. No. 09-0774, 2013 WL 1628607 (E.D. Pa. Apr. 16, 2013) .......................16

*Vasbinder v. Sec'y Dep't of Veterans Affs.*,
   487 F.App'x 746 (3d Cir. 2012) .........................................................................15

## Federal Statutes

Age Discrimination in Employment Act, § 29 U.S.C. 621, *et seq.* ...................................... passim

## State Statutes

Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*......................................................4, 15

## I.  PROCEDURAL HISTORY AND INTRODUCTION[1]

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") and Defendant Teva Pharmaceutical Industries, Ltd. ("TPI" and together with TUSA the "Defendants" or "Teva"), submit this Memorandum of Law in Support of their Motion for Summary Judgment on all counts of Plaintiff's Complaint.

This case follows a large scale and unprecedented corporate restructuring that was announced in December 2017, which included but was not limited to a substantial global reduction in force, of employees throughout the Teva family of companies, including both TPI and TUSA (the "RIF"). At that time, Defendants were in a precarious financial position—where bankruptcy was a legitimate, short-term concern—and needed to take drastic measures. As a result, TPI's newly appointed CEO directed that the total global headcount be reduced by twenty-five percent (*i.e.*, over fourteen thousand employees) across approximately sixty countries where Teva had employees. These reductions impacted virtually every department in Defendants' worldwide operations with some departments being affected at a higher rate than others. For example, many corporate support functions (including Human Resources where Total Rewards was included) had headcount goal reductions of fifty percent. Plaintiff Randolph Keuch ("Mr. Keuch") was selected to be included in the RIF. Mr. Keuch contends that his inclusion in the RIF violated the Age Discrimination in Employment Act ("ADEA"), § 29 U.S.C. 621, *et seq*. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*.[2]

---

[1]   On June 9, 2022 the Court granted Defendants' Uncontested Motion to exceed the page limit outlined in Judge Gallagher's policies and procedures and to submit a brief not to exceed 30 pages. (ECF #49).

[2]   Mr. Keuch filed an initial complaint (the "Initial Complaint") on November 19, 2019 (ECF #1). In his Initial Complaint, Mr. Keuch named Ron Yaniv and Kare Schultz as co-defendants. On August 21, 2020, Defendants filed a Partial Motion to Dismiss Ron Yaniv and Kare Schultz from the Action for lack of personal jurisdiction.(ECF #25). The Court agreed with Defendants' position and on November 23, 2020 dismissed Ron Yaniv and Kare

Mr. Keuch filed his two-count Amended Complaint (the "Complaint") on March 15, 2021. (ECF #32). The parties exchanged written discovery and obtained deposition testimony. During the course of discovery, Mr. Keuch agreed that there was insufficient evidence to support the class and collective based allegations contained in the Complaint. Accordingly, on November 17, 2021, the parties entered into a stipulation, approved by the Court, in which Mr. Keuch voluntarily dismissed, with prejudice, all class or collective based claims against the Defendants arising out of the allegations contained in the Complaint. The parties thus agreed and stipulated that the matter would proceed as a single plaintiff case. (ECF #40).

Discovery closed on April 15, 2022. As described below, the facts in this case establish that Defendants are entitled to summary judgment on both counts in Mr. Keuch's Complaint. Accordingly, this Court should grant Defendants' Motion and dismiss this case, in its entirety, with prejudice.

## II. FACTS

### A. TUSA Hires Plaintiff as Head of Total Rewards–Americas Prior to His 60th Birthday.

Teva is a global pharmaceutical company, marketing products from a wide range of therapeutic areas including, but not limited to, analgesic, anti-infective, cardiovascular, oncology, dermatological and anti-inflammatory, both branded and generic. SMF[3] at ¶1. TUSA is a wholly-owned, indirect subsidiary of TPI. SMF at ¶2.

Mr. Keuch was born on May 27, 1954. SMF at ¶3. In January of 2014, just months before Mr. Keuch's 60th birthday, TUSA hired Mr. Keuch to be the Senior Director of Total Rewards

---

Schultz from the case. (ECF #30). On March 15, 2021 Plaintiff filed the Amended Complaint that is the subject of the instant motion. (ECF #32).

[3] All references to "SMF" refer to Defendants Statement of Undisputed Material Facts which is being filed contemporaneously with this Brief.

6

for the Americas. SMF at ¶4. Total Rewards is part of Teva's Human Resources organization and is largely responsible for making sure employees are properly compensated and provided benefits. SMF at ¶5. In this role, Mr. Keuch was responsible for designing and overseeing compensation and benefits policy for Defendants' employees in the United States, Canada, and various countries in Latin America. SMF at ¶6.

In order to properly compensate individuals across its platform, Defendants utilize a numerical grading scale to determine the salary range for each employee. SMF at ¶7. This scale begins at Labor Grade 1 and goes to Labor Grade 22. SMF at ¶8. When Mr. Keuch was hired as the Head of Total Rewards-Americas he was graded as a Labor Grade 17. SMF at ¶9. Mr. Keuch retained this Labor Grade designation throughout his Teva employment and his last base salary was approximately $285,000. SMF at ¶10. In addition to the numerical Labor Grade designations, Defendants also associate titles with each position. SMF at ¶11. For example, Labor Grade 15 is associated with "Director" level positions, Labor Grades 16 and 17 are associated with "Senior Director" level positions, Labor Grade 18 is associated with "Vice President" level positions and Labor Grades 19 and 20 are associated with "Senior Vice President" positions. SMF at ¶12. As Mr. Keuch was a Labor Grade 17, he held the "Senior Director" title. SMF at ¶13.

During the relevant portions of Mr. Keuch's employment, the Total Rewards global functions were managed by Ron Yaniv (Labor Grade 19—Senior Vice President) whose offices were in Israel where TPI is headquartered. SMF at ¶14. Reporting to Mr. Yaniv were four different Senior Directors—each of whom were designated as Labor Grade 17 and had responsibility for the following four geographic areas—(1) Americas (Mr. Keuch); (2) Europe; (3) Asia-Pacific; and (4) Israel. SMF at ¶15. In turn, Mr. Keuch had three direct reports:  (1)

7

Eduardo Nasi (Director—Labor Grade 15), the Head of Total Rewards for Latin America; (2) Miriam Weinstein, the Head of Compensation, North America (Labor Grade 15); and (3) Diane Rohach, the Head of Benefits, Americas (Labor Grade 15). SMF at ¶16.

When TUSA hired Mr. Keuch in 2014, he was offered a compensation package of $250,000 per year. SMF at ¶17. Mr. Keuch was provided a signing bonus of $50,000 that would be paid to him one year after his start date. SMF at ¶18. In addition, Mr. Keuch was eligible to receive bonuses and participate in other incentive plans. SMF at ¶19. In August 2015, approximately a year and a half after Mr. Keuch began employment at TUSA, Mr. Keuch received a job offer to leave TUSA to join a different company. SMF at ¶20. Mr. Keuch leveraged this offer to negotiate a higher salary at TUSA. SMF at ¶21. As a result, on August 6, 2015, TUSA provided Mr. Keuch with a base salary increase and retention bonus. SMF at ¶22. Specifically, TUSA increased Mr. Keuch's salary to $280,000 and provided him with a $60,000 retention bonus. SMF at ¶23. The retention bonus was to be paid in two installments. SMF at ¶24. Each installment was $30,000 and contingent on Mr. Keuch remaining employed at TUSA on the two benchmark dates. SMF at ¶25. The first benchmark date was August 6, 2016 and the second a year later on August 6, 2017. SMF at ¶26. Mr. Keuch received both of these retention payments. SMF at ¶27. At this same time, Mr. Keuch expressed to Mr. Yaniv (his boss) that he believed that his position, was improperly graded and should be upgraded to a Labor Grade 18 which would make him a Vice President. SMF at ¶28. Mr. Yaniv explained to Mr. Keuch that he would look into the matter, but ultimately was not able to have the position re-evaluated. SMF at ¶29.

**B.  Defendants Announce and Implement a Large Reduction in Force.**

In early 2017, Defendants faced the realistic prospect of bankruptcy. SMF at ¶30. The company's stock price had fallen precipitously and it became clear that new leadership was

8

necessary to reverse course. SMF at ¶31. On or about November 1, 2017, TPI hired Kare Schultz to become CEO and President. SMF at ¶32. Mr. Schultz inherited the onerous task of addressing Defendants' massive financial crisis. SMF at ¶32. In early December of 2017, Mr. Schultz announced that Defendants would be engaging in a large scale, global corporate restructuring which resulted in the sale or closure of many of its operating facilities throughout the world, consolidation of offices, and the dramatic reduction of its headcount by at least 25% across the globe. SMF at ¶33. This reduction, however, would not be borne equally by each department. SMF at ¶34. For example, certain departments such as Human Resources had a target reduction of 50% whereas some production based departments had lesser reduction targets. SMF at ¶35.

Throughout 2017, Mark Sabag was a member of TPI's executive leadership team and the global head of Human Resources. SMF at ¶36. Mr. Sabag, along with the Chief Financial Officer, designed a detailed plan as to how Defendants' global workforce was to be restructured. SMF at ¶37. Once it was determined that Mr. Sabag's department (Human Resources) would have a 50% targeted reduction, Mr. Sabag moved quickly to effectuate this goal. SMF at ¶38. As Mr. Sabag testified, the Human Resources department would be instrumental in carrying out and leading the restructuring process. SMF at ¶39. As such, he felt a duty to make the reductions within the Human Resources department as quickly as possible so that his department could get back to business to help guide the other departments through the restructuring process. SMF at ¶40.

Mr. Sabag began reviewing his direct reports and merged a number of global functions to eliminate several leadership roles within the Human Resources department. SMF at ¶41. Once he had determined the proper structure of the leaner Human Resources organization, he determined that Tal Zorman would lead the segment of Human Resources that was responsible, in part, for

overseeing the global Total Rewards function. SMF at ¶42. A necessary consequence of Mr. Sabag's restructuring decision was that it resulted in the elimination of Mr. Yaniv's position (Mr. Keuch's boss) as well as the position of other high ranking TPI Vice Presidents. SMF at ¶43. Specifically, Mr. Sabag eliminated the roles of Moshe Netzer (Senior Vice President, HRBP Growth Markets, 27 years of experience with the Company) and Raffi Hirsch (Senior Vice President, HRBP Global Specialty Medicines, 21 years of experience with the Company). SMF at ¶44.

### C. Ms. Zorman Restructures the Total Rewards Organization.

Upon being selected to lead the global Total Rewards function, Ms. Zorman immediately became responsible for making reductions to her newly inherited organization as directed by Mr. Sabag. SMF at ¶45. Ms. Zorman was responsible for reducing the headcount within her new organization by 50%. SMF at ¶46. As part of the restructuring, the geographic reporting structures were reorganized. SMF at ¶47. Latin America was removed from the Americas and placed in the "Growth Markets" division. SMF at ¶48. Moving forward there would be three (not four) Regional Heads of Total Rewards. SMF at ¶49. There would be a head for North America, another for Europe, and one for "Growth Markets"—which now encompassed Asia, Israel, Latin America, and India. SMF at ¶49.

Ms. Zorman began her task of reaching the 50% reduction goal by first determining the structure of the organization (*i.e.*, what grade level positions would be needed and which functions these positions would be responsible for). SMF at ¶50. Once completed, Ms. Zorman turned to determining which individuals would best fit in the new structure. SMF at ¶51.

In early December 2017, Ms. Zorman explained to Mr. Keuch that a 50% reduction to headcount would be necessary in the North America Total Rewards organization. SMF at ¶52. In furtherance of this goal, Ms. Zorman asked Mr. Keuch to prepare a report outlining the bare

10

bones recommendation for his team. SMF at ¶53. On December 14, 2017, Mr. Keuch sent

Ms. Zorman an email in which he stated:

> Attached is a deck that provides my bare bones recommendation for my team. I have included options that suggest elimination of my position or Miriam's position. I strongly urge you not to make any leadership changes in Q1, as there is much work for the team to perform and the risks are very high. I also ask that you consult with Legal to validate the risks and our exposure. An error on our 401k could result in disqualification of the entire plan, which has $1.2 billion in assets, so disqualification will result in the loss of huge tax benefits to Teva. If a leadership change (job elimination) is needed, better to do this in Q2 when work has transitioned to HR Ops & Services, and the organization has stabilized. This is not a personal request nor is it made out of concern for having my position eliminated. Rather, it is a business decision as to how much risk Teva is willing to take by moving too quickly or having inexperienced people in key decision-making roles. (Emphasis added).

SMF at ¶54.

As an attachment to this email, Mr. Keuch provided a PowerPoint presentation where he

outlined three options for how Defendants could achieve the 50% reduction in the Total Rewards

North America organization. SMF at ¶55. In the first of the three options, Mr. Keuch proposed

eliminating his own role. SMF at ¶56. In the other two options, Mr. Keuch proposed that he be

retained as Head of Total Rewards North America with a far smaller staff. SMF at ¶57.

Mr. Keuch candidly expressed in the PowerPoint presentation that if leadership level roles

needed to be cut, Diane Rohach[4] and not himself should be considered the most valuable leader.

SMF at ¶58. Mr. Keuch concluded that that the remaining staff lacked the expertise to handle

benefits without Ms. Rohach making her continued employment essential. SMF at ¶59.

Mr. Keuch also stated with some equivocation that he was "probably the next most valuable

---

[4]    Sadly, Ms. Rohach passed away on April 28, 2021.

leader." SMF at ¶60. Because the new organization would not include Latin America—Mr. Nasi is not mentioned in the PowerPoint presentation. SMF at ¶61.

Ms. Zorman thanked Mr. Keuch for his proposals and began to evaluate her options. SMF at ¶62. Ultimately, Ms. Zorman decided that the new Head of Total Rewards for North America should have far less responsibility when compared to what Mr. Keuch had as Head of Total Rewards for the Americas. SMF at ¶63. First, the new organizational head would not be responsible for Latin America. SMF at ¶64. Second, the workforce in North America would be substantially smaller after the RIF was completed. SMF at ¶65. Finally, the position would be far more of an operational leader as opposed to a strategic or design based leader, like Mr. Keuch had been at Teva. SMF at ¶66. After all, given Teva's financial footing it was likely not in a position to be expanding or designing new benefits in the near future. SMF at ¶67. Rather, the new leader's main objective would be to operationally maintain the benefits already offered. SMF at ¶68. Accordingly, Ms. Zorman determined that the new Head of Total Rewards for North America should be a Director level position and be graded as a Labor Grade 15. SMF at ¶69. As Mr. Keuch was a Senior Director, Labor Grade 17 and had represented he should be considered as a Vice President Labor Grade 18, Ms. Zorman determined that it was obvious that Mr. Keuch was overqualified for the reduced role. SMF at ¶70.

Ms. Zorman next began to consider who should fill this Director level, Labor Grade 15 role. SMF at ¶71. She considered the professional experience, leadership, and management capabilities of various individuals who had been a part of the previous organization lead by Mr. Keuch. SMF at ¶72. Ms. Zorman identified Mr. Nasi to become the next Head of Total Rewards for North America. SMF at ¶73. In making this decision, Ms. Zorman interviewed Mr. Nasi, spoke with Mr. Nasi's supervisor in Latin America, considered his prior performance

12

reviews, and consistently received positive references regarding Mr. Nasi's professional and leadership maturity. SMF at ¶74. Ms. Zorman also discussed the matter with her colleague, Daniel Lawlor, who was the head of Human Resources for North America and received the required approval from Mr. Sabag. SMF at ¶75. Once Ms. Zorman made this decision and it was approved, she contacted Mr. Nasi to discuss the new role and gauge his interest. SMF at ¶76. Ms. Zorman explained to Mr. Nasi that the role would be reduced in scope from what Mr. Keuch had been responsible for, would not include Latin America, and would have approximately half the number of direct reports. SMF at ¶76. Ms. Zorman also explained that Mr. Nasi would need to relocate from Florida to the Northeast, however, Ms. Zorman was unable to provide Mr. Nasi with a specific location at that time because Defendants were still determining where the North American headquarters would be located (later determined to be Parsippany, New Jersey). SMF at ¶77. Ms. Zorman also informed Mr. Nasi that his position would remain a Labor Grade 15 and be at the Director level. SMF at ¶78. There was no plan at this time to alter Mr. Nasi's compensation which was $168,895. SMF at ¶79. Mr. Nasi, after consulting with his wife, verbally accepted the offer. SMF at ¶80.

Ms. Zorman's decision to eliminate Mr. Keuch's position and to elevate Mr. Nasi was not based on Mr. Keuch's job performance which was generally satisfactory. SMF at ¶81. Rather, Ms. Zorman eliminated the Senior Director, Labor Grade 17 position because the newly restructured organization, which would serve far fewer employees in an operational rather than strategic manner, did not justify a Labor Grade 17 for its leader. SMF at ¶82. At the time in which Ms. Zorman made this decision, she did not know or inquire about the respective ages of Mr. Nasi or Mr. Keuch. SMF at ¶83. Ms. Zorman made the same decision for Europe. SMF at ¶84. Ms. Zorman chose to eliminate the then Head of Total Rewards for Europe, a Senior

Director, Labor Grade 17, and replace him with one of his direct reports, a Director at Labor Grade 15. SMF at ¶85. Her view was that regional leaders could operate at the Director level and that she would have responsibility for any strategic or policy decisions that previously been made by Labor Grade 17 Senior Directors. SMF at ¶86.

On January 2, 2018, Ms. Zorman contacted Mr. Keuch by phone to notify him that his position had been eliminated. SMF at ¶87. Ms. Zorman thanked Mr. Keuch for his service to Teva and asked Mr. Keuch to continue working for a few months to help with the transition of Mr. Nasi into the new role. SMF at ¶88. Mr. Keuch agreed to do so and his last day of work at TUSA was on February 18, 2018. SMF at ¶89. Mr. Keuch continued to be paid by TUSA until March 18, 2018. SMF at ¶90. At the time of his separation, Mr. Keuch was offered a severance package that was conditioned on his execution of a release (as were all the separation agreements). SMF at ¶91. Mr. Keuch declined to sign the separation agreement and thus did not receive any severance payments. SMF at ¶92.

Following Mr. Keuch's separation of employment and at a later stage of the restructuring, Defendants engaged in a site consolidation in the United States. SMF at ¶93. This resulted in the relocation of TUSA's headquarters from North Wales, Pennsylvania (which Teva closed) to Parsippany, New Jersey. SMF at ¶94. This site consolidation created additional complexities and work for Mr. Nasi as the Head of Total Rewards, North America. SMF at ¶95. As such, a retention and relocation package was required for hundreds of employees who would be relocated. SMF at ¶96. Accordingly, effective March 28, 2018, Mr. Nasi's position was elevated from a Labor Grade 15, Director to a Labor Grade 16, Senior Director. SMF at ¶96. As a result, Mr. Nasi's salary was increased to approximately $195,000. SMF at ¶97. Notably, even following this change, Mr. Nasi was still a Labor Grade below Mr. Keuch's Labor Grade (i.e., 16

v. 17), and earning far less than Mr. Keuch had been earning ($195,000 v. $285,000). SMF at ¶98. A similar decision was later made in Europe where the Director who was retained following the RIF was upgraded to a Labor Grade 16 and provided with the title "Senior Director." SMF at ¶99.

## III.  SUMMARY OF ARGUMENT

Mr. Keuch's claim of age discrimination fails because he is unable to point to any admissible evidence in the record to demonstrate that Defendants' decision to eliminate his role as part of the RIF had anything whatsoever to do with his age. Rather, the record establishes that Defendants hired Mr. Keuch at 59 and a half years old so age obviously didn't matter to Teva. Defendants structured Mr. Keuch's initial offer in a way to incentivize him to stay for at least one year. A year and a half later, when Mr. Keuch was 61, Mr. Keuch threatened to leave his job at TUSA to work at a different company. In response, Defendants provided Mr. Keuch with a raise and a retention bonus structured to keep him a TUSA employee at least until August 6, 2017 (several months after Mr. Keuch's 63rd birthday).

Unfortunately, later in 2017 while Mr. Keuch was still age 63, Defendants were faced with a financial crisis that required they take the drastic steps described to stave off bankruptcy. The newly appointed CEO directed the aforementioned massive and unprecedented RIF take place as soon as possible to save Teva. Mr. Keuch's position was included in the RIF. While Mr. Keuch asserts that his inclusion in the RIF was discriminatory, he is unable to point to sufficient evidence to support his contention.

## IV.  ARGUMENT[5]

### A.  The Court Should Grant Summary Judgment for Defendants on Mr. Keuch's Claims of Age Discrimination (Counts I and II).

Defendants are entitled to summary judgment on Mr. Keuch's age discrimination claims under the ADEA and PHRA, both of which are subject to the *McDonnell Douglas* burden-shifting approach. *Evanoski v. United Parcel Serv., Inc.*, 571 F.App'x 92, 95 (3d Cir. 2014).[6] Mr. Keuch must first establish a *prima facie* case of discrimination by showing that: (1) he is forty years of age or older; (2) he suffered an adverse employment action; (3) he was qualified for the position in question; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Vasbinder v. Sec'y Dep't of Veterans Affs.*, 487 F.App'x 746, 649 (3d Cir. 2012). In the context of a reduction in force, in order to satisfy the fourth element, a plaintiff must show that the employer retained a sufficiently younger similarly situated employee. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 301 (3d Cir. 2004). Mr. Keuch identifies Mr. Nasi in that regard.

Once Mr. Keuch makes a *prima facie* showing of discrimination, a burden of production (not persuasion) shifts to Defendants to articulate a legitimate, non-discriminatory reason for any adverse employment action. *Evanoski*, 571 F.App'x at 95. Mr. Keuch must then demonstrate that Defendants' proffered reasons are a pretext for discrimination. *Id.* Mr. Keuch may show pretext by producing evidence from which a factfinder could reasonably either:  (1) disbelieve the

---

[5] Teva presumes the Court is familiar with the well-established standards for granting summary judgment and, therefore, omits them from this brief.

[6]  The PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently. The PHRA provisions here present no such difference, and therefore should be interpreted coextensively with Mr. Keuch's ADEA claim. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010); *Gottschall v. Reading Eagle Co.*, Civ. A. No. 11-5361, 2013 WL 961266, at *3 (E.D. Pa. Mar. 12, 2013).

employer's stated legitimate reason for its actions, or (2) believe that an invidious discriminatory motive was more likely than not the motivating or determinative cause of the actions. *Andersen v. Mack Trucks, Inc.*, 118 F.Supp.3d 723, 740 (E.D. Pa. July 30, 2015) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)), *aff'd* 647 F.App'x 130 (3d Cir. 2016). With respect to the first method for establishing pretext, the Third Circuit has held that a plaintiff:

> cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.

*Fuentes*, 32 F.3d at 765. As the Third Circuit further stated, "[i]n simpler terms, he must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). It is not a matter of whether "the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." *Id.* (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)). With respect to the second method of proving pretext, a plaintiff must "provide evidence that allows the fact finder to infer that discrimination was the 'but-for' cause of the employer's adverse decision." *Andersen*, 118 F.Supp.3d at 741 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S.Ct. 2343, 2350 (2009)). Mr. Keuch retains the ultimate burden of persuasion at all times. *Tourtellotte v. Eli Lilly & Co.*, Civ. A. No. 09-0774, 2013 WL 1628607, at *5 (E.D. Pa. Apr. 16, 2013).

1.  **Defendants Had a Legitimate, Non Discriminatory Reason to Terminate Mr. Keuch's Employment—the RIF.**

Assuming without necessarily conceding that Mr. Keuch can satisfy his *prima facie* case, a burden of production shifts to Defendants to articulate a legitimate, non-discriminatory reason for terminating Mr. Keuch's employment. Defendants have met this burden.

In the winter of 2017, Defendants were in a dire financial position which necessitated the reduction of one-quarter of its global workforce. This affected thousands of employees covering all aspects of Defendants' business. SMF at ¶¶30-32. With respect to the Total Rewards department in specific, Ms. Zorman was tasked with reducing the headcount by half and redesigning that organization. SMF at ¶¶35, 38, 46. The new organizational head would no longer be responsible for Latin America, would lead a considerably smaller organization (50% reduction), and the position would be more operational than strategic. SMF at ¶66. This shift in mindset was because the Company's financial predicament meant that it would likely not be creating new benefits, but rather, attempting to process and maintain the benefits already offered. Desperate times called for desperate measures.

In designing her new organization, Ms. Zorman sought input from Mr. Keuch. When asked, Mr. Keuch conceded that Ms. Rohach, not himself, was the most valuable member to the department suggesting, or at least implying, he was dispensable. Mr. Keuch also provided Ms. Zorman with a PowerPoint presentation that outlined ways to reach the 50% reduction target. In the first of the options that Mr. Keuch proposed, his own role would be eliminated with his employment terminated. Mr. Keuch himself recognized a Total Rewards organization absent himself. SMF at ¶¶54-60.

Ms. Zorman took Mr. Keuch's recommendations under advisement and ultimately determined that the new Head of Total Rewards for North America did not need to be a Labor

18

Grade 17, Senior Director but rather should be a lower, Director level position. Furthermore, because of the decrease in responsibilities and headcount, the role would be a Labor Grade 15. SMF at ¶¶63-69.

At the time Mr. Keuch was a Senior Director, Labor Grade 17. Furthermore, Mr. Keuch had repeatedly expressed a belief that his role was under-graded and that he really was functioning as a high Labor Grade 18 level reserved for vice presidents. Because Ms. Zorman was looking for someone to fit the reduced in scope Labor Grade 15 position, Ms. Zorman concluded that it was obvious that Mr. Keuch was overqualified for the position. SMF at ¶28, 70. As a result, Mr. Keuch's employment was severed in connection with the RIF. SMF at ¶87. Courts in this circuit have routinely found that a reduction in force is sufficient justification in and of itself to satisfy the employer's burden of production under *McDonnell Douglas*. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (refusing to examine whether a managerial decision to reduce a workforce was economically appropriate); *Muhammad v. Sills Cummis & Gross P.C.*, 621 F.App'x 96, 100 (3d Cir. 2015) (recognizing a reduction in force as a legitimate nondiscriminatory reason for terminating plaintiff).

### 2. Plaintiff Has Not Adduced Evidence Sufficient to Demonstrate Pretext.

The burden thus shifts back to Mr. Keuch who must point to evidence in the record that would cause a reasonable person to either disbelieve Defendants' stated legitimate reason or believe that discrimination was the 'but-for' cause of the Defendants' decision. Mr. Keuch falls far short of this standard. *See Gross*, 557 U.S. at 176, 129 S.Ct. at 2350.

#### a. The Retention of Mr. Nasi Does Not Evidence Age Bias.

Mr. Keuch's primary argument in support of his contention that age was the determinative factor in the elimination of his role is that Defendants elected to retain Mr. Nasi rather than him. According to Mr. Keuch, Mr. Nasi is less qualified than he and was selected

only because Mr. Nasi is younger than Mr. Keuch. Mr. Keuch further contends that Defendants

manipulated the labor grading system to prevent him from being considered for the restructured

role. Mr. Keuch believes that the restructured Head of Total Rewards North America was always

expected to be a Labor Grade 16 position and that Defendants initially identified it as a Labor

Grade 15 position to justify not considering Mr. Keuch for the role. Mr. Keuch asserts that by

making the restructured role two Labor Grades below his current role, Defendants were

attempting to preclude him from consideration as a Teva policy allowed for the consideration of

a single Labor Grade demotion but not a two Labor Grade level demotion. In support of this

belief, Mr. Keuch's concludes that following his separation from the company, the role was

upgraded to a Labor Grade 16.

Mr. Keuch, however, has been unable to adduce any evidence to support his contentions,

which is not surprising as his assertions are patently false. Most telling, Mr. Keuch conceded at

his deposition that this theory of age discrimination was supported by nothing more than his own

speculation.

> **Question**: You had an expectation that at some point in time, [Mr. Nasi] would be evaluated as a Labor Grade 16?
>
> **Answer**:  I felt that the labor grading system was basically administer -- manipulated to basically get rid of me.
>
> **Question**:  Can you explain your answer?
>
> **Answer**:  It's quite simple. If you run that job through the grading system, you would not come up -- have come up with a 15. But by making it a 15, it was a two-grade reduction, which gave Teva much more clarity that I – I wouldn't accept the two-grade deduction and maybe more of a legitimate claim, but then once I was gone, they moved it to a 16. It seems a little bit deceptive.
>
> **Question**:  Are you speculating or did someone share with you that that was in fact the scheme?
>
> **Answer**:  A little -- I'm speculating.

> **Question**: You have no real evidence to support your speculation, do you?
>
> **Answer**: I think if you ran the system, you would find that it was not being used accurately, that it was being manipulated to get whatever senior leadership wanted to get out of it at least in the HR organization.

Keuch Dep., 200:24-201:24 at Joint Appx.-0345-46. Mr. Keuch concedes that he only has speculation to support this theory. There is no evidence that the system that Mr. Keuch references was considered by Ms. Zorman in deciding in 2017 to proceed with directors of a Labor Grade 15 rather than senior directors at a Labor Grade 16. Plaintiff's speculation or conclusory beliefs are insufficient to withstand summary judgment. *See Gottschall*, 2013 WL 961266, at *6 ("Unfounded personal beliefs and conjecture…are legally insufficient to support a finding of pretext, and even a bad or inaccurate reason for termination is not a violation of the ADEA unless it is discriminatory."); *Muhammad*, 621 F.App'x at 100 (holding plaintiff's "unsupported, conclusory statement" that his employer's reason for including him in a reduction in force was discriminatory did not satisfy his burden of demonstrating pretext); *see, e.g.*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999) (concluding that beliefs without factual support are insufficient to show a pretext for discrimination). Moreover, Mr. Keuch's argument is nothing more than a recitation of his *prima facie* case—that Defendants retained a younger individual over him. This too is insufficient to withstand summary judgment as a plaintiff "cannot simply rely on the facts that support [his] *prima facie* case to rebut [Defendants'] articulated reason, and assert that [Defendants'] intent is a question of fact that must be determined by a jury." *See Andersen*, 118 F.Supp.3d at 741.

Even accepting Mr. Keuch's argument as true and assuming that Defendants knew that the restructured Head of Total Rewards North America might ultimately become a Labor Grade 16 position, there was no affirmative duty for Defendants to demote Mr. Keuch and award him that position. In fact, Defendants intended not to demote employees especially as was the

case here where another candidate was qualified to assume a reduced role as was the case here. Demotions of any kind were highly disfavored through the process, although permitted. Zorman Dep., 85:11-86:17 at Joint Appx.-0296-97.

A recent case before the Third Circuit is particularly instructive on this point. In *O'Connell v. Associated Wholesalers, Inc.*, 558 F.App'x 286, 292 (3d Cir. 2014), the plaintiff argued that his employer did not consider "offering [him] continued employment or a position at a reduced salary." In rejecting this argument, the Third Circuit explained: "to the extent plaintiff is arguing that he should have been retained over younger or less experienced employees, we have rejected the argument that the law requires the 'bumping' of lower-level sufficiently younger employees in order to retain protected workers." *Monaco*, 359 F.3d at 306 n.13 (recognizing that the ADEA is not a "bumping" statute). Thus, regardless of whether the restructured role was a Labor Grade 15 or a Labor Grade 16 as it later became, the fact remains that it was a reduction from the Labor Grade 17 position that Mr. Keuch had occupied and two to three Labor Grades below what Mr. Keuch believed his pre-RIF role should have been graded as. SMF at ¶18. Mr. Keuch was not someone that Defendants felt needed to be retained whether the position was a Labor Grade 15 or 16. Not because of his age, but because he was not the preferred candidate for the newly structured position. SMF at ¶¶63-69.

Mr. Keuch's theory that the company artificially manipulated the labor grading system to prevent him from being considered for the restructured role is simply too farfetched for any reasonable fact finder to accept. For starters, Defendants were in the midst of a massive financial crisis that necessitated quick decisions with unprecedented reductions. Defendants simply did not have the time to scrutinize each Labor Grade associated with every position in real time. SMF at ¶¶30-35. Additionally, Ms. Zorman's decision to make the North American Head of Total

Rewards a Labor Grade 15 was consistent with her decision to make the European Head of Total Rewards a Labor Grade 15 position. SMF at ¶¶84-85. Thus, for Mr. Keuch's theory to be correct, Defendants would have had to decide to not only manipulate the North American grade level but the European grade level (*i.e.*, Defendants would have had to orchestrate a multipart scheme across the globe) just to target a single employee, Mr. Keuch, amongst the thousands of layoffs that were happening rapidly across the globe. Simply put, this is fantastical and no reasonable fact finder could believe this is what occurred.

Mr. Keuch's argument also completely ignores the timeline of events leading up to the elimination of his role. TUSA hired Mr. Keuch when Mr. Keuch was 59 and a half years old. SMF at ¶4. TUSA structured Mr. Keuch's offer package to incentivize him to stay for at least a year by making his signing bonus contingent on his continued employment. Then, Mr. Keuch at age 61, threatened to leave TUSA for a different company. Certainly, if Defendants harbored any age bias towards Mr. Keuch, they could have happily let him voluntarily leave his employment. Instead, TUSA provided Mr. Keuch with a retention bonus intended to incentivize him to stay with the company for the next two years (or until Mr. Keuch was age 63). SMF at ¶¶17-27. That same year, while Mr. Keuch was still age 63, Defendants were faced with a financial crisis necessitating a massive RIF. To say that Defendants discriminated against Mr. Keuch in the face of this timeline of events is simply disingenuous. This is especially true in light of the fact that when asked for his recommendation on how to restructure the department, Mr. Keuch conceded that he was not the most valuable employee on his team and provided a restructuring option that terminated his job and eliminated his own role. SMF at ¶¶54-60.

Mr. Keuch's real gripe with Defendants is that he does not agree with their business decision. He believes that Mr. Nasi was not sufficiently qualified to be Head of Total Rewards

06/21/2022 SL1 1786480v6 030421.00713

for North America and that Defendants should have retained him rather than Mr. Nasi. He

believes this so fervently that the only conceivable explanation that he has for why Defendants

did not retain him is that Defendants must have discriminated against him. This belief became

evident throughout his deposition. Mr. Keuch testified:

> **Question:** Did you have an opinion as to how they came to select
> Mr. Nasi?
>
> **Answer**: Other than his age and he was a male, no.
>
> **Question:** Okay. So it was your opinion that him being a male and him
> being whatever age he was, were to *(sic)* contributing factors to his
> selection?
>
> **Answer**: Yes.
>
> **Question**: And what's basis of that opinion?
>
> **Answer**: The fact that he's a male and he was much younger than I was.
> And I was being terminated because of my age.

Keuch Dep., 42:13-25 at Joint Appx.-0319. Mr. Keuch's conclusory allegations and

disagreement with Defendants business decisions, however, are insufficient to withstand

summary judgment. *See Andersen*, 118 F.Supp.3d at 742 (granting summary judgment on ADEA

claim where plaintiff's allegations of age discrimination amounted to "mere challenges to

Defendants' business decisions concerning the RIF and [did] not show that the decision to

terminate [p]laintiff was motivated by age discrimination."); *Fowle v. C & C Cola*, 868 F.2d 59,

65–67 (3d Cir. 1989) (stating that an employee's subjective opinion of his or her own

performance is not relevant to employment discrimination cases); *Davis v. Pittsburgh Pub. Schs.*,

930 F.Supp.2d 570, 601 (W.D. Pa. 2013) ("[T]he court is neither permitted to get involved in the

subjective business decisions of the employer, nor set its own employment standards for the

employer, unless there is evidence of discrimination."); *Carson*, 82 F.3d 159 ("The question is

not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination.]").

All told, even talented, valued employees lose positions during a RIF. Teva was required to make tough decisions not just in Total Rewards but across the global organization. Only Mr. Keuch has challenged its decision making. Teva had no legal obligation to retain Mr. Keuch. Its honest belief was that it could operate at the regional level with Directors. Ms. Zorman believed that Mr. Nasi was best able to handle the new role. It had no legal obligation to demote Mr. Keuch two levels (at first) and put him in an operational role when it had Mr. Nasi. This is especially true where the financial realities for Teva during such an economically devastating time necessitated saving every penny possible. The evidence clearly demonstrates that even following Mr. Nasi's elevation to a Labor Grade 16 he was still earning far less than Mr. Keuch had been earning at the time of Mr. Keuch's termination (compare $285,000 per year for Mr. Keuch vs. $195,000 per year for Mr. Nasi), not to mention bonus structure difference. SMF at ¶98.

### b. Comments Allegedly Made By Mr. Lawlor Are a Complete Red Herring.

Mr. Keuch is likely to argue that comments made by Mr. Lawlor evidence an age bias on behalf of Defendants. This argument is a red herring and must be ignored. According to Mr. Keuch, Mr. Lawlor made two comments that Mr. Keuch perceived as evidencing an age bias. First, Mr. Keuch asserts that Mr. Lawlor stated that a contractor (i.e., Rose Riccioli) did not possess enough "long term potential" to be hired by TUSA. Second, Mr. Keuch asserts that when discussing changes to be made to a Teva severance plan, Mr. Lawlor stated: "You know, I I don't -- I don't want to have those employees over age 62 to have to suffer the humiliation and embarrassment of applying for–for unemployment. They should simply retire as they probably will not find another job."

25

Even assuming that these comments were made, which Defendants deny, Mr. Keuch does not even assert that either of these comments were directed at him. *See* Plaintiff's Response to Interrogatories at Joint Appx.-0032-41. Mr. Keuch also does not allege that these comments had anything to do with the RIF or the attendant elimination of his role. In addition, while Mr. Lawlor was asked his opinion regarding the elimination of Mr. Keuch's role, he was the not the ultimate decision maker—Ms. Zorman was. SMF at ¶85. Mr. Keuch has not alleged that Ms. Zorman ever made an age-related comment. *See* Plaintiff's Response to Interrogatories at Joint Appx.-0032-41. As the Third Circuit has repeatedly held, "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *See O'Connell*, 558 F.App'x at 292 (refusing to give significant weight and granting summary judgment to employer in ADEA lawsuit where age related comment was made seven months prior to plaintiff's termination and comment was unrelated to termination decision); *see Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 545 (3d Cir. 1992).

Assuming arguendo that Mr. Lawlor's alleged statements are even relevant, some context is necessary to determine whether they even evidence age bias. The first comment attributed to Mr. Lawlor is that he questioned whether an applicant for employment possessed sufficient "long term potential." The statement was allegedly made in the third quarter of 2017 (roughly 3 to 6 months prior to Mr. Keuch's job being eliminated). Keuch Dep., 112:3-17 at Joint Appx.-0327. At that time, TUSA had an open position within the Total Rewards department. The company was considering candidates to fill the opening and Mr. Keuch alleges that he thought Rose Riccioli would be a good fit. At that time, Ms. Riccioli was contracting with but not an employee of TUSA. Mr. Keuch contends that when he proposed Ms. Riccioli as a candidate to Mr. Lawlor,

Mr. Lawlor: "asked me if she had long term potential and asked me if she could fill my position in the near future."  In response, Mr. Keuch admits that he stated, "I basically told him that she could clearly aspire to be the director of compensation, so she could succeed Miriam [Weinstein]. As far as my role, she would need a lot of training and development to be brought up on, you know, the international aspects of my position and some of the details in the benefits area." Keuch Dep., 109:19-113:21 at Joint Appx.-0324-28.

Taking the entirety of the conversation into consideration, it is clear that Mr. Lawlor's comment had nothing to do whatsoever with her age. It was centered on whether Ms. Riccioli possessed the skill and ability to have upward mobility within the organization (*i.e.*, her long term potential). In response to this inquiry, Mr. Keuch admittedly inferred to Mr. Lawlor that he thought Ms. Riccioli was capped in her ability to progress based on her lack of international experience and lack of experience in the benefits field. Additionally, Mr. Keuch went on to concede that Mr. Lawlor never inquired about or even knew Ms. Riccioli's age:

> **Question**: Would you agree with me that there was no communication that you were a part of where Mr. Lawlor inquired about her age or was advised what her age was?
>
> **Answer**: To the best of my knowledge, no he did not inquire about her age.

Keuch Dep., 120:10-15 at Joint Appx.-0329.

The alleged statement attributed to Mr. Lawlor—inquiring into whether Ms. Riccioli possessed "long term potential" is strikingly similar to a statement made in *McGrath v. Lumbermens Merch. Corp*., 851 F.Supp.2d 855, 863 (E.D. Pa. Mar. 20, 2012). In *McGrath*, the plaintiff sued his prior employer under the ADEA and alleged that his inclusion in a reduction in force was discriminatory. *Id.* In support of his assertion, the plaintiff argued that his supervisor had once stated that he was not sure about the long term potential of a different employee. *Id.* In

finding that the statement was not evidence of age-bias, the District Court noted that the statement had no connection to the plaintiff's termination and was temporally removed from the decision to include the plaintiff in the reduction in force. *Id.* Like *McGrath*, the statement attributed to Mr. Lawlor was made months before any reduction in force was announced and had absolutely nothing to do with Mr. Keuch. Accordingly, its probative value is null.

Mr. Keuch next asserts that Mr. Lawlor made a comment relating to a proposed change being considered for TUSA's severance plan which exempted employees over the age of 62 from applying for unemployment benefits in order to collect severance pay. As an initial matter, Mr. Lawlor and Defendants adamantly deny that such a statement was made. Even if made for purposes of this motion, however, Mr. Keuch testified that the statement was made in the context of Mr. Lawlor advocating for an exemption for those individuals over the age of 62. Mr. Keuch further conceded that the exemption that Mr. Lawlor was advocating for would benefit those over the age of 62—not harm them. Despite this admission, Mr. Keuch inexplicably asserts that Mr. Lawlor's comments demonstrate that he disfavored older workers. Nevertheless, in Mr. Keuch's response to Defendants' Interrogatories, he avers that the comment was made in January of 2018 and thus *after* the decision to eliminate Mr. Keuch's position had occurred. *See* Plaintiff's Response to Interrogatories at Joint Appx.-0034. Furthermore, the statement has absolutely nothing to do with the inclusion of Mr. Keuch in the RIF or the RIF in and of itself. Plainly put, this is the epitome of a stray remark made by a non-decision maker. Thus, even if such a comment was made, it would be of no probative value. *See O'Connell*, 558 F.App'x at 292; *see Ezold*, 983 F.2d at 545.

### c. *Ms. Zorman—the Decisionmaker—is also in the Protected Class.*

Also weakening any potential inference of discrimination, is the fact that Ms. Zorman, the decisionmaker in determining that Mr. Keuch's position be eliminated, is herself age

protected and thus is in the same protected class as Mr. Keuch. In fact, even if Mr. Keuch argued

to expand the decision making circle to include Mr. Sabag and Mr. Lawlor, all three of these

individuals are over the age of forty. Zorman Dep., 8:5-7 at Joint Appx.-0276; Sabag Dep., 4:22-

23 at Joint Appx.-0301; Lawlor Dep., 5:11-13 at Joint Appx.-0310. Their collective membership

in the protected class weakens Mr. Keuch's argument that age bias factored into the decision

making process. *See Allen v. PetSmart, Inc.*, 512 F.Supp.2d 288, 295 (E.D. Pa. June 4, 2007)

(granting summary judgment for employer on an ADEA claim where "many of the individuals

involved in the decision to terminate [plaintiff] were also members of the protected age class at

the time of the termination decision"; noting "the inference of discrimination is therefore less

since the decisionmaker was a member of the same protected class as the plaintiff") (quoting

*Ziegler v. Del. Cty. Daily Times*, 128 F.Supp.2d 790, 811 n.47 (E.D. Pa. Feb. 5, 2001) (finding

inference of age discrimination weakened because the decisionmaker was 53 when he terminated

60 year old plaintiff's employment)); *Frost v. PetSmart, Inc.*, Civ A. No. 05-6759, 2007 WL

602990, at *8 (E.D. Pa. Feb. 26, 2007) (same).

The evidence shows that Mr. Keuch was hired as a Senior Director while nearly 60. Teva

then provided him with multiple incentives to stay. Mr. Keuch was not let go until the most dire

of situations necessitated a 25% reduction of Teva's global workforce and 50% of his own

organization. Mr. Keuch cannot establish age discrimination without evidence to show that

discrimination was the "but for" basis for his termination. He fails to make this showing.

## V.  CONCLUSION

In sum, Mr. Keuch has not demonstrated any "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in Defendants' proffered legitimate reasons for

its actions such that a reasonable factfinder could rationally find them unworthy of credence.

Moreover, Mr. Keuch has not adduced evidence that age was the but-for cause of the decision to

06/21/2022 SL1 1786480v6 030421.00713

eliminate his role. As the Court in *Andersen*, recognized "Defendants retain discretion to terminate employees as part of a RIF so long as there is no discriminatory animus." *Id.* at 743. The "essence of a [reduction-in-force] is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1220 (3d Cir. 1988). Unfortunately, Mr. Keuch—who likely would have remained employed at TUSA in more prosperous times—was caught in the RIF. While this may be unfortunate, it is not unlawful. *See Fletcher v. Lucent Techs., Inc.*, Civ. A. No. 02-3941 (JAG), 2005 WL 2373191, at *7 (D.N.J. Sept. 27, 2005), *aff'd*, 207 F.App'x 135 (3d Cir. 2006) ("Considerations such as strong performance evaluations, and a long history of employment with a company cannot protect even competent employees from a RIF . . . an employee's opinion of her own contributions, in terms of performance, time and dedication, to a company is insufficient to create a genuine issue as to whether the company's grounds for terminating the employee are a pretext for unlawful discrimination."). For the foregoing reasons, the Court should grant summary judgment for Defendants on each count of the Complaint.

Respectfully submitted,

**STEVENS & LEE, P.C.**

Dated:  June 21, 2022

By: */s/ Larry J. Rappoport*
Larry J. Rappoport, Esquire
Brandon S. Shemtob, Esquire
STEVENS & LEE
A PA Professional Corporation
1500 Market Street, East Tower, St.1800
Philadelphia, PA 19102
Phone: (215) 496-3839
Fax: (610) 371-7977
larry.rappoport@stevenslee.com
brandon.shemtob@stevenslee.com

*Attorneys for Defendants*