IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

RANDOLPH W. KEUCH
        Plaintiff,                      :     CIVIL ACTION
     v.                                              :
TEVA PHARMACEUTICALS USA, INC.,    :     CASE NO. 2:19-CV-05488 (JMG)
And TEVA PHARMACEUTICAL
INDUSTRIES, Ltd.,
        Defendants.

---

# PLAINTIFF, RANDOLPH W. KEUCH'S BRIEF IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RESPECTFULLY SUBMITTED

Alan B. Epstein, Esquire
Jennifer Myers Chalal, Esquire
SPECTOR GADON ROSEN VINCI P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
(215) 241-8888

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

STATEMENT OF DISPOSITIVE MATERIAL FACTS ....................................................4

DISCUSSION OF LAW AND FACTS CONTROLLING THE DENIAL OF
DEFENDANTS" MOTION FOR SUMMARY JUDGMENT ............................................5

    A.    Summary Judgment Standard..................................................................................5

    B.    Controlling Age Discrimination Standards ............................................................6

    C.    Defendants Have Failed To Meet The Heavy Burden To Establish
         They Are Entitled To Summary Judgment .............................................................8

        1.  A *Prima Facie* Case of Discrimination Has Been Established......................10

        2.  Defendants Have Not Established A Non-Discriminatory Basis for Their Actions......10

        3.  Plaintiff Has Demonstrated That The Reasons For His Termination Are
           Pretextual And Unworthy Of Belief..............................................................11

CONCLUSION...................................................................................................................16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDOLPH W. KEUCH<br>        Plaintiff,<br>    v.<br>TEVA PHARMACEUTICALS USA, INC.,<br>And TEVA PHARMACEUTICAL<br>INDUSTRIES, Ltd.,<br>        Defendants. | CIVIL ACTION<br><br>CASE NO. 2:19-CV-05488 (JMG) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Randolph W. Keuch ("Keuch"), submits this Memorandum of Law in Support of his Response to Defendants' Motion For Summary Judgment:

## INTRODUCTION

This is an age discrimination action pursuant to the applicable provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 et seq. Plaintiff filed this action against Teva Pharmaceuticals USA, Inc. (hereinafter "TUSA") and Teva Pharmaceuticals Industries, Ltd. (hereinafter "TPI") (collectively "Defendants" or "Teva") based upon Defendants' failure to properly evaluate Plaintiff's performance for retention during a broad reduction of force of employees of Teva while retaining a substantially younger but less credentialed and qualified individual who was one of Plaintiff's direct reports before Plaintiff was terminated from his employment with Teva to take over his job responsibilities.

Plaintiff Keuch was born on May 27, 1954 and is currently 68 years of age. (Plaintiff's Statement of Material Facts in Support of his Response to Defendants' Motion for Summary

1

Judgment ("Pl.SMF"), ¶ 6. He was last employed by Teva as Senior Director of Total Rewards (compensation and benefits) for the Americas. (Pl.SMF, ¶ 8). Plaintiff is an accomplished professional and nationally recognized leader in compensation and benefits. (Pl.SMF, ¶ 11). His education, degrees, industry-wide credentials and extensive employment history demonstrate his impressive qualifications and acumen in his chosen profession. (Pl.SMF, ¶¶ 12-13, 17) While employed by Teva, Plaintiff led the Total Rewards Center for the Americas, providing subject matter expertise for and cutting-edge solutions to all facets of total rewards issues which led to a multitude of notable results for Teva. (Pl.SMF, ¶ 15).

Defendant, TPI is an Israeli, publicly held (NYSE), multinational pharmaceutical company headquartered in Petah Tikva, Israel. While it specializes primarily in generic medicine, its other business interests include active pharmaceutical ingredients and proprietary pharmaceuticals. It is the largest generic drug manufacturer in the world and one of the fifteen (15) largest pharmaceutical companies worldwide. (Pl.SMF, ¶¶ 18-20) Teva's total revenue in 2018 was nearly nineteen billion dollars ($18,854,000,000). (JA 0838) Collectively with its wholly owned subsidiary, Teva employed before its reduction in force nearly 60,000 people around the world. ((Pl.SMF, ¶ 21)

In a series of events involving loans to make purchases of other companies, regulatory demands causing Teva to sell its most profitable and low-competition products, greater regulatory fast-tracking of generics for Teva's competitors, the companies standing in the investment community was challenged greater regulatory fast-tracking of generics for Teva's competitors, and approval of generic versions of Teva's two-decade-long main revenue producing, brand name multiple sclerosis drug, Copaxone, all led to lowered credit ratings, negative views from investors and its stock spiraling down to a fifteen year low. Additionally, in

2

early 2017, TPI was forced to pay fines to the United States Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") totaling in excess of $520 million to resolve federal violations of the Foreign Corrupt Practices Act ("FCPA") arising from bribery charges relating to its operations in Russia, the Ukraine. and Mexico. Teva's settlement was the largest fine ever paid by a pharmaceutical company over FPCA violations. (Pl.SMF, ¶¶ 22-26).

These circumstances led to the hiring of Kåre Schultz as the President and CEO of TPI who was faced with creating an immediate strategy to bolster investor confidence and thereby raise the price of Teva stock. (Pl.SMF, ¶¶27, 29). Schultz chose dramatic actions that would sooth the investment community and meet those goals. (Pl.SMF, ¶ 30). At Schultz's direction and with the approval of Teva's Board, Teva suspended dividends on its common stock, ordered that no annual bonus payments be made to employees for the year 2017 and announced a reduction in its employment force of 14,000 people, including 25% of the Teva US workforce. (Pl.SMF, ¶ 31) These actions were not really based on Teva's economic condition as evidenced by Schultz receiving a five-year contract, promises of tens of millions of dollars salary and benefits depending on his ability to raise the stock price, Twenty Million Dollar ($20,000,000) cash sign-on payment and entitlement to a performance-based target incentive bonus of 140% of his annual base salary. (Pl.SMF, ¶ 32)

Compensation levels for the other executives that caused the problems for Teva that led to the decision to affect the reductions in the workforce also did not abate. Teva's senior management continued to receive inflated salaries and bonuses in the millions of dollars. (Pl.SMF, ¶ 33). All of that spending was affected while the median annual pay of Teva's employees was $64,081. (Pl.SMF, ¶ 33).

As part of these circumstances and the ordered and largely ill-planned reduction in force quickly put into place to impress the investment community. Plaintiff, a sterling performer and valued high level management throughout his employment by Teva (Pl.SMF, ¶ 34-36), was chosen as one of the many victims of the apparent greed of the company leaders, in an effort by Teva to plan for the future (Pl.SMF, ¶ 51) by terminating older employees in keeping with its North American Human Resources head who demonstrated age-based biases against older employees. (Pl.SMF, ¶¶ 36-40).

As part of the reduction in force, on January 2, 2018, Plaintiff was advised that his employment would be terminated without any opportunity to accept a demotion to resume his position that would be retained and he was replaced by a lower level direct report of his who had substantially less experience and less ability and was twenty-seven (27) years younger (date of birth: 7/22/1980). (Pl.SMF,¶ 48) Simply stated, age was the motivating and determinative factor in the decision to promote Mr. Nasi and fire Plaintiff. *See* age-based distribution tables demonstrating the termination greater number of older protected employees over the age of 40 years as compared to their younger counterparts. (Pl.SMF, ¶ 49-50)

## **STATEMENT OF DISPOSITIVE MATERIAL FACTS**

The facts upon which Plaintiff relies upon for the denial of the Motion for Summary Judgment presented are fully set forth in the Plaintiff's Responses to the Defendants' Statement of Material Facts and his own Statement of Material Facts that are incorporated as though fully set forth herein. As required by the Courts protocols, each of the facts set forth in Plaintiff's Statement of Material Facts are established by full citations to documents, deposition testimony and Plaintiff's Affidavit.

# DISCUSSION OF LAW AND FACTS CONTROLLING
# THE DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

To prevail on a summary judgment motion, "the movant must show that 'there is no genuine issue as to **any** material fact and that the moving party is entitled to a judgment as a matter of law.'" *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)). While "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be **no *genuine* issue of *material* fact**." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "A genuine issue is only present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).

The movant bears the initial burden of identifying those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256. "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (internal citation omitted).

"[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on summary judgment. *Anderson*, 477 U.S. at 255. The summary judgment standard "is applied with added rigor in employment discrimination cases," *Stewart v. Rutgers Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (quoting *Robinson v. PPG Indus. Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994)), and "any doubts as to the existence of genuine issues of fact" must be resolved against the moving party. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981). It has long been recognized that "summary judgment is to be used sparingly in employment discrimination cases," *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008).

B. **Controlling Age Discrimination Standards**

Plaintiff brings his claims for age discrimination under the ADEA and the PHRA.[1] The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also* 43 Pa. C.S. § 955(a). Because Plaintiff herein largely relies on circumstantial evidence, the burden-shifting framework established

---

[1] Because Plaintiff's age discrimination claims are analyzed under similar legal frameworks and are based upon the same evidence, they will be considered together. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (discrimination claims under Title VII, the ADA, the ADEA, and the PHRA are interpreted co-extensively).

6

by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

Under the first step of the *McDonnell Douglas* framework, the employee bears the burden of establishing a *prima facie* case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). "[T]he burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action." *Id.* (first alteration added) (quoting *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009)). In the third and final step, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id.*

"The elements of a *prima facie* case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis*, 808 F.3d at 644.

The employer's burden of proffering a legitimate non-discriminatory reason for its conduct is "relatively light" and "is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton*, 707 F.3d at 426. "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.' " *Id.* (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

To show that Defendant's explanation is pretextual, Plaintiff need not proffer affirmative evidence of discrimination. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). But

7

Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff's evidence falls into the first category: reasonable disbelief. "In order to raise sufficient disbelief, the evidence must indicate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *Willis*, 808 F.3d at 644-45 (citing *Fuentes*, 32 F.3d at 765). This standard requires the non-movant to "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz*, 412 F.3d at 467.

While in the context of reductions in force, a company has the right to exercise reasonable judgment, it is important to note that unlike other federal laws that initially did not permit a trial by jury, the United States Congress created a cause of action with a right to demand a trial by a jury of peers and not have the fact of discrimination determined by a federal judge. When he introduced the amendment that became an integral part of the ADEA, Senator Edward Kennedy asserted that jury trials were an essential element of the new law that protected individual employees against discrimination based on that individual's age:

> [J]uries are more likely to be open to the issues which may have been raised by the plaintiffs…The jury may be more neutral in such circumstances.

Cong. Rec. S34318 (October 19, 1977). Although Senator Kennedy's concern does not trump a federal court's obligation to resolve the legal issues presented on a Motion for Summary Judgment in accordance with the principals set forth above, it is respectfully urged that his words should inspire caution when a federal District Court undertakes to determine issues that like here

8

rely on credibility and the difficult narrow issues of the weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons.

### C. Defendants' Have Failed To Meet The Heavy Burden To Establish They Are Entitled to Summary Judgment

Utilizing a magician's technique of misdirection, a salesman's gloss by omitting material facts and a politician's meandering propensities to view facts through the thin veil of populist expression, the Defendants make failing proffers and arguments to support their conclusion that the selection of Plaintiff for employment termination nothing "whatsoever to do to do with his age" (Defendants' Memorandum in Support of Summary Judgment ("Defendants' Memorandum"), p. 15): More specifically, without conceding that Plaintiff can satisfy his prima facie case and not even mentioning the dramatic age difference of 27 years between Plaintiff and the man who assumed his job duties, Defendants argue that they "were in a dire financial position which necessitated desperate measures" without even presenting truly undisputable facts. Defendants' Memorandum, p.18.

Defendants also suggest that the non-discriminatory reason for giving Eduardo Nasi Plaintiff's job responsibilities was that the job involved reduced responsibilities that an employee with no background or knowledge of American and Canadian could handle and that Plaintiff was overqualified for the position. However, the decision to do so on the basis of two ten-minute discussions with a non-supervising man with a noted age bias was sufficient to support the action. A review the evidentiary records demonstrates an overwhelming evidence of implausible explanations for the choice to replace Plaintiff in his position with a less qualified and substantially younger man,

Last, Defendants' suggest that the selection of a 37 year old man over an employee 27 years his senior is allowable since "bumping" is not mandated under the law. However, Plaintiff

was not at any time suggesting he had bumping rights to stay because he should be allowed to displace an employee lower in the eschaton of corporate structure or asking to bump Eduardo Nasi from his job. Rather, Plaintiff is only suggesting that Teva's actions in placing Mr. Nasi in his position evidence discrimination on the basis of age in light of the minimal review of the respective qualifications of Plaintiff and Mr. Nasi, the clear reasons given for his replacing Plaintiff.

It is respectfully suggested that each of these proffered bases is a clearly not a proper cause for summary disposition and Defendants' Motion must be denied.

### 1. A Prima *Facie Case* of Discrimination Has been Established

Plaintiff has undoubtedly presented a *prima facie* case of discrimination. First, he is 68 years old and was 64 at the time he was discharged. He was clearly qualified and a productive employee. He suffered adverse action because he was discharged from his job duties and replaced with a less qualified thirty-seven (37) year old man to perform those duties. These circumstances are more than sufficient to create an inference of age discrimination and the non-concession of the Defendants on this issue without any explanation is simply disingenuous and should be rejected.

### 2. Defendants Have Not Established a Non-Discriminatory Basis For Their Decisions and Actions

Defendants again suggest that the reason Eduardo Nasi was chosen for retention and that Plaintiff was not offered the position was because he was overqualified for the very position that he held since the inception of his employment and only explained by Tal Zorman's undefined view that Plaintiff would not be happy in assuming a role that was below his qualification and prior job title. That position has no evidentiary basis and should be rejected in the consideration of whether the Defendant has satisfied the light burden of going forward with evidence of a non-

discriminatory reason for its decision to terminate the employment of Plaintiff. Further, contrary to Defendants' suggestion, Plaintiff has not posited that the reduction in force should not have been undertaken. Instead, Plaintiff has only proffered evidence that it was not undertaken for a reasonable company protection, i.e. the satisfaction of investor confidence and not financial savings or bankruptcy protection since the evidence demonstrates substantial payments were made to its new executives demonstrated the falsity of its argument.

### 3. Plaintiff Has Demonstrated That The Reasons For His Termination Are Pretextual And Unworthy Of Belief

Even if the Court determines that Defendants have satisfied the burden of production, Plaintiff is still provided "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Defendants were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253; *Josey v. John R. Hollingsworth Corp*, 996 F.2d 632 (3rd Cir. 1993). At this stage, to survive a motion for summary judgment, Plaintiff must point to some evidence, direct or circumstantial, from which the fact finder could either: (1) "disbelieve the employer's articulated legitimate reasons," finding them to be post hoc fabrications or otherwise not really motivating the employment action; [i.e., "to cast substantial doubt upon the employer's proffered reasons"] or (2) "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. *See also Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3rd Cir. 1995).[2] A plaintiff who seeks to prove pretext through the first method outlined in *Fuentes* must show "not

---

[2] Plaintiff must prove her age discrimination claim pursuant to a "but-for" causation. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009). Although this is a heightened standard, the analysis of Plaintiff's age discrimination still will proceed under the *McDonnell Douglas* framework which was not altered by *Gross*. *Palmer v. Britton Industries, Inc.* 662 Fed. Appx. 147, 152 (3d Cir. 2016)

merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance,* 130 F.3d 1101, 1109 (3d Cir.1997). To do this, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes,* 32 F.3d at 765 (internal citations omitted). Alternatively, if seeking to prove pretext through the second method outlined in *Fuentes* and demonstrate that age was a motivating or determinative factor in the employment decision, Plaintiff may show that Defendants had previously discriminated against him, that Defendants discriminated against other persons within his protected class, or that Defendants have treated similarly situated persons not within the protected class more favorably. *Id. See also Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644-45 (3d Cir.1998).

Additionally, in satisfying this burden, Plaintiff is not required to produce direct proof that the true or real reason for the employer's action was intentional discrimination. The Third Circuit, sitting en banc, in *Sheridan v. E. I. Dupont,* 100 F.3d 1061, 1066 (3d Cir. 1996) specifically observed the disbelief of the employer's proffered explanation coupled with the proofs adduced to support the plaintiff's *prima facie* case was sufficient to sustain plaintiff's ultimate burden:

> In deciding the "ultimate question" of whether the employer unlawfully discriminated, the [United States Supreme] Court [in *St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)*] stated in the following oft-quoted passage that "[t]he fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional

12

> discrimination." [*Hicks, 509 U.S. at 511*]. The Court
> explained that "rejection of the defendant's proffered
> reasons, will *permit* the trier of fact to infer the ultimate
> fact of intentional discrimination," and continued: "the
> Court of Appeals was correct when it noted that, upon such
> rejection, '[n]o additional proof of discrimination is
> required.'" *Id.* (emphasis in the original) (*quoting Hicks*,
> 970 F.2d at 493).

*Sheridan*, 100 F.3d at pp. 1066-1067. *See also Fuentes*, 32 F.3d at 764 (to discredit the employer's articulated reason, the plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond her *prima facie* case). Ultimately, in determining whether Plaintiff has satisfied his burden, this Court must look to the "totality of the evidence" as opposed to the "strength of each individual argument." *Bray v. Marriott Hotels*, 110 F.3d 986, 991 (3d Cir. 1997)(recognizing that "a discrimination analysis must concentrate not on individual incidents, but on the overall scenario").

Applying this standard, the primary reason given by Tal Zorman for selecting Mr. Nasi for retention over Plaintiff was her very brief discussions with Daniel Lawler who did not supervise either individual and was the target of evidence that he had engaged in age bias previously in several instances. Mr. Lawler's influence over Ms. Zorman's decision and his noted age-discriminatory actions, raise series issues of culpability. Given the evidence set forth by Plaintiff regarding Mr. Lawler's discriminatory animus regarding older workers, a finding that age motived the decision is warranted under the "cat's paw" theory of liability.

Under the "cat's paw" theory of liability, an employer will be held liable if those persons exhibiting discriminatory animus influenced or participated in the ultimate decision to terminate, even if those persons were not the formal decision-makers. *McKenna v. City of Philadelphia*, 649 F.3d 171, 177–78 (3d Cir.2011) *cert. denied*, —U.S. —, 132 S.Ct. 1918, 182 L.Ed.2d 773

13

(2012). ("A 'cat's paw' or 'subordinate bias' theory of liability is 'one in which [the plaintiff seeks] to hold his employer liable for the animus of a non-decisionmaker.' "). In the context of summary judgment, "a plaintiff advancing a cat's paw theory based on alleged retaliatory or discriminatory animus of a non-decisionmaker must establish that there is a genuine issue of material fact as to (1) the animus of the subordinate, and (2) whether the subordinate's animus translated into retaliatory actions that caused the decisionmaker to take adverse employment action." *Chase v. Frontier Communications Corporation*, 361 F.Supp.3d 423, 448 (M.D. Pa. 2019) (citing Thomas v. Berry Plastics Corp., 803 F.3d 510, 515 (10th Cir. 2015)).

In *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265 (3d Cir.2001), the Third Circuit applied the "cat's paw" theory in the context of an ADEA and concluded that "a rational jury could find that [the ultimate decision-maker] did not make his decision in a vacuum. *Abramson*, 260 F.3d at 285-86. The Abramson Court recognized, "[u]nder our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate." *Id.* at 286 (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir.1995) (stating in ADEA case that if plaintiff's supervisor participated in decision to terminate him, even though president of company formally terminated him, evidence of supervisor's age-related animus would be relevant in determining if there was discriminatory motive at play)). *See also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)("If the employee can demonstrate that others had influence or leverage over the official decisionmaker ... it is proper to impute their discriminatory attitudes to the formal decisionmaker."); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000) (stating that "discriminatory comments ... made by ... those in a position to influence the decisionmaker" can be evidence of pretext). As the Third Circuit in *Roebuck v. Drexel University*, 852 F.2d 715, 727 (3d Cir. 1988) noted, "it is

plainly permissible for a jury to conclude that an evaluation at any level, if based on discrimination, influenced the decision-making process and thus allowed discrimination to infect the ultimate decision."

Additionally, there are weaknesses in the basis proffered for selecting Plaintiff for termination which could easily be rejected by a jury. Specifically, Ms, Zorman had no personal knowledge regarding the professional standing of either Mr. Nasi or Plaintiff, had not reviewed their respective backgrounds and did not express any ability to judge how they would perform in the challenges arena of a substantial reduction of employees in the United States and Canada. (Pl.SMF, ¶¶ 42-43). Likewise, given all of the money spent in transitioning Mr. Nasi into to this position, there really was no cost-savings in the decision. (Pl.SMF, ¶66). The purported concern regarding demoting Plaintiff is also implausible given Ms. Zorman promoted Mr. Nasi and increased his grade level within months after terminating Plaintiff. (Pl.SMF, ¶63). Further, the reasons given in the spotlight of Mr. Sabag's overriding goal of planning for the future denotes that he was sending a message that the company's "future success" should be placed in the hands of persons like himself, Ms. Tal and others mentioned in their presentations that were in their thirties, forties and even fifties. [3]

Ultimately, the issue of pretext is necessarily an issue of fact as well as credibility and intent. As the court in *Jalil* found, summary judgment is inappropriate where the Defendant's intent has been called into question because the issue of intent is within the sole discretion of the fact finder. *Jalil v. Avdel Corp.*, 873 F.2d at 701, 707 (3d Cir. 1989). Given that Plaintiff has

---

[3] It should be noted that Teva has a recent history of proffering unsuccessful arguments in other recent age discrimination claims before this court similar to those provide herein and lost summary judgment arguments in brought by Teva employees Brian McManus (Decision, Joint Appendix 0704-0720) and Stephen Middlebrooks (Decision, Joint Appendix, 0421-40).

produced an inordinate amount of evidence to establish pretext and that pretext is clearly an issue for the jury's consideration, it should not be ruled upon as a matter of law and it is respectfully suggested that summary judgment must be denied with respect to Plaintiff's age discrimination claims.

## CONCLUSION

For the reasons cited herein and based upon the well documented statement of undisputed facts.

**SPECTOR GADON ROSEN VINCI P.C.**

By: /s/ *Alan Epstein*

Alan B. Epstein, Esquire (Pa. I.D. No. 2346)
Jennifer Myers Chalal, Esquire (Pa. I.D. No. 77841)
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888/(215) 241-8844 (Fax)
aepstein@lawsgr.com
jchalal@sgrvlaw.com
*Counsel for Plaintiff*

Dated:  August 16, 2022