**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

RANDOLPH W. KEUCH                              :
                Plaintiff,                :        CIVIL ACTION
      v.                                        :
TEVA PHARMACEUTICALS USA, INC.,     :        CASE NO. 2:19-CV-05488 (JMG)
And TEVA PHARMACEUTICAL              :
INDUSTRIES, Ltd.,                             :
                Defendants.           :

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS
IN SUPPORT OF ITS RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON ALL COUNTS OF PLAINTIFF'S COMPLAINT**

Plaintiff, Randolph W. Keuch ("Keuch" or "Plaintiff"), submits this Response to

Defendants' Statement of Undisputed Material Facts in support their Motion For Summary

Judgment on all counts of Plaintiff's Complaint as follows:

1.      Teva is a global pharmaceutical company, marketing products from a wide

range of therapeutic areas including, but not limited to, analgesic, anti-infective,

cardiovascular, oncology, dermatological and anti-inflammatory, both branded and generic.

Nasi Dep., 79:25-80:15 at Joint Appx.-0351-52.

**RESPONSE:**  Admitted.

2.      TUSA is a wholly-owned, subsidiary of TPI. Nasi Dep., 79:17-21 at Joint

Appx.-0351.

**RESPONSE:**  Admitted.

3.      Mr. Keuch was born on May 27, 1954. Keuch Dep., 8:11 at Joint Appx.-0315.

**RESPONSE:**  Admitted

4.      In January of 2014, TUSA hired Mr. Keuch to be the Senior Director of Total Rewards for the Americas. TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.

**RESPONSE:**   Admitted.

5.      Total Rewards is part of Teva's Human Resources organization and is largely responsible for making sure employees are properly compensated and provided benefits. Keuch Dep., 62:1-7 at Joint Appx.-0320.

**RESPONSE:**   Admitted

6.      In this role, Mr. Keuch was responsible for designing and overseeing compensation and benefits policy for Defendants' employees in the United States, Canada, Mexico, and various countries in Latin America. Nasi Dep., 82:9-14 at Joint Appx.-0353.

**RESPONSE:**   Admitted

7.      In order to properly compensate individuals across its platform, Defendants utilize a numerical grading scale to determine the salary range for each employee. Nasi Dep., 82:15-83:4 at Joint Appx.-0353-54.

**RESPONSE:**   Denied.  While it is admitted that at all times applicable to the present matter that the Defendants maintained a numerical job grading system effectively ranging from 1-23 (1 being the lowest job grade and 23 being the highest), the cited portions of the Nasi Deposition do not support the statement that the number assigned to an employee's job classification was affected or maintained to properly compensate employees.

8.      This scale begins at Labor Grade 1 and goes to Labor Grade 22. Nasi Dep., 82:15-83:4 at Joint Appx.-0353-54.

**RESPONSE:**    Denied as stated.  While it is admitted that at all times applicable to the present matter that the Defendants maintained a numerical job grading system effectively

2

ranging from 1-20 in the United States (1 being the lowest job grade and 23 being the highest globally), the cited portions of the Nasi Deposition suggests that the United States Total Rewards group manages compensation and benefits for labor grades 1-20. Nasi Dep., 83:3-4.

9.      When Mr. Keuch was hired as the Head of Total Rewards-Americas he was graded as a Labor Grade 17. Keuch Dep., 142:1-4 at Joint Appx.-0333.

**RESPONSE:**   Admitted.

10.     Mr. Keuch retained this Labor Grade designation throughout his Teva employment and his last base salary was approximately $285,000. TEVA000768 (Vitman Email) at Joint Appx.-0207.

**RESPONSE:**   Admitted.

11.     In addition to the numerical Labor Grade designations, Defendants also associate titles with each position. Nasi Dep., 83:5-15 at Joint Appx.-0354.

**RESPONSE:**   Admitted

12.     For example, Labor Grade 15 is associated with "Director" level positions, Labor Grades 16 and 17 are associated with "Senior Director" level positions, Labor Grade 18 is associated with "Vice President" level positions and Labor Grade 19 and 20 are associated with "Senior Vice President" positions. Nasi Dep., 83:5-15 at Joint Appx.-0354.

**RESPONSE:**   Admitted.

13.     As Mr. Keuch was a Labor Grade 17, he held the "Senior Director" title. TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.

**RESPONSE:**   Admitted.

14.     During the relevant portions of Mr. Keuch's employment, the Total Rewards global functions were managed by Ron Yaniv (Labor Grade 19 - Senior Vice President) whose offices were in Israel where TPI is headquartered. Keuch Dep., 142:18-143:6 at Joint Appx.-0333-34.

**RESPONSE:**   Admitted.

15.     Reporting to Mr. Yaniv were four different Senior Directors—each of whom were designated as Labor Grade 17 and had responsibility for the following four geographic areas— (1) Americas (Mr. Keuch); (2) Europe; (3) Asia-Pacific; and (4) Israel. Keuch Dep., 142:18-143:6 at Joint Appx.-0333-34.

**RESPONSE:**   Admitted.

16.     In turn, Mr. Keuch had three direct reports: (1) Eduardo Nasi (Director—Labor Grade 15), the Head of Total Rewards for Latin America; (2) Miriam Weinstein, the Head of Compensation, North America (Labor Grade 15); and (3) Diane Rohach, the Head of Benefits, Americas (Labor Grade 15). Keuch Dep., 142:18-143:6 at Joint Appx.-0333-34.

**RESPONSE:**   Denied as stated.  While the Labor Grades set forth in this paragraph are correct, the cited portions of the record do not support the admitted facts stated in this paragraph.

17.     When TUSA hired Mr. Keuch in 2014, he was offered a salary of $250,000 per year. TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.

**RESPONSE:**   Admitted

18.      Mr. Keuch was provided a signing bonus of $50,000 that would be paid to him one year after his start date. TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.

**RESPONSE:**   Admitted.

19.     In addition, Mr. Keuch was eligible to receive bonuses and participate in other incentive plans. TEVA000047-49 (Keuch Offer Letter) at Joint Appx.-0059-61.

**RESPONSE:**  Admitted.

20.     In August 2015, approximately a year and a half after Mr. Keuch began employment at TUSA, Mr. Keuch received a job offer to leave TUSA to join a different company. Keuch Dep., 75:1-77:23 at Joint Appx.-0321-323.

**RESPONSE:**  Denied as stated. While it is admitted that Mr. Keuch was offered a global vice-president job at age 62 from another company while employed at TUSA, the cited portions of the record do not support the other statements in this paragraph, and they are denied.

21.     Mr. Keuch leveraged this offer to negotiate a higher salary at TUSA. Keuch Dep., 75:1-77:23 at Joint Appx.-0321-323.

**RESPONSE:**  Denied. It is denied that Mr. Keuch leveraged the job offer he received "to negotiate a higher salary." To the contrary, his then boss, Ron Yaniv did not want Mr. Keuch to leave because he valued Mr. Keuch's "expertise, skill set", promised and gave him an increase in salary and a retention bonus and would look into an upgrade in his position. Keuch Dep., 75:1-77:23 at Joint Appx.-0321-323.

22.     As a result, on August 6, 2015, TUSA provided Mr. Keuch with a base salary increase and retention bonus. Keuch Dep., 75:1-77:23 at Joint Appx.- 0321-323; KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.

**RESPONSE:**  Denied as stated.  It is denied that Mr. Keuch received an increase in salary and retention bonus "as a result of" any suggested leveraging by him set forth in the preceding paragraph. To the contrary, it is averred and therefore admitted that on August 6,

2015, "to encourage [his] continued employment with TEVA", he was provided with a retention

offer that included: a $23,000 raise in salary from $257,000 to $280,000; a promise to review a

potential promotion to a Global Grade 18 Vice-Presidency; and a retention bonus of $60,000.

KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215

     23.     Specifically, TUSA increased Mr. Keuch's salary to $280,000 and provided him

with a $60,000 retention bonus. KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-

0215-16.

**RESPONSE:**  Admitted.

     24.     The retention bonus, however, was paid in two installments. KEUCH000028-29

(Keuch Retention Bonus) at Joint Appx.-0215-16.

**RESPONSE:**  Admitted.

     25.     Each installment was $30,000 and contingent on Mr. Keuch remaining employed

at TUSA on the two benchmark dates. KEUCH000028-29 (Keuch Retention Bonus) at Joint

Appx.-0215-16.

**RESPONSE:**  Admitted.  The August 6, 2015 letter further conditioned the payments on

Plaintiff not being promoted to Vice President.

     26.     The first benchmark date was August 6, 2016 and the second a year later was

August 6, 2017. KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.

**RESPONSE:**  Admitted.

     27.     Mr. Keuch received both of these retention payments. KEUCH000028-29

(Keuch Retention Bonus) at Joint Appx.-0215-16; Keuch Dep., 147:17-20 at Joint Appx.-0337.

**RESPONSE:**  Admitted.  It is further asserted that those payments were made because he was still employed on each benchmark date and had not been promoted to the position of Vice President.

28.     At this same time, Mr. Keuch expressed to Mr. Yaniv (his boss) that he believed that his position, was improperly graded and should be upgraded to a Labor Grade 18 which would make him a Vice President. Keuch Dep., 141:20-145:7 at Joint Appx.-0332-0336; KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.

**RESPONSE:**  Denied. It is denied that the conversation regarding the upgrading in his position was initiated in 2015 in connection with the letter dated August 6, 2015.  Plaintiff's testimony at the cited portions of the record was that the discussion took place "around 2016" and was based upon the fact that Plaintiff's "job responsibilities had grown substantially [by reason of] acquisitions".  Keuch Dep., 141:20-145:7 at Joint Appx.-0332-0336

29.     Mr. Yaniv explained to Mr. Keuch that he would look into the matter, but ultimately was not able to have the position re-evaluated. Keuch Dep., 141:20-145:7 at Joint Appx.-0332-0336; KEUCH000028-29 (Keuch Retention Bonus) at Joint Appx.-0215-16.

**RESPONSE:**  Denied.  The statements made in this paragraph are the result of a confusion of what was said in the letter dated August 6, 2015 and one or two the conversations in 2016.  It is admitted that Plaintiff did not receive the discussed promotion to Vice President.

30.     In early 2017, Defendants faced the realistic possibility of bankruptcy. Nasi Dep., 83:16-85:4 at Joint Appx.-0354-56.

**RESPONSE:**  Denied. The cited testimony of Eduardo Nasi revealed that concerns surrounding the loss of the Company's CEO in March 2016 and that no discussions

reductions in force until Käre Schultz joined the company in late 2017 and that pressure

from the Israeli government was forcing restructuring. It is further asserted that Mr. Nasi

only heard rumors of economic distress and bankruptcy and Defendants have offered no

other proof of those "rumors".   Nasi Dep., 83:16-85:4 at Joint Appx.-0354-56.

31.     The company's stock price had fallen. Keuch Dep., 122, 23-123:5 at Joint Appx.-

0330-31.

**RESPONSE:**  Admitted.

32.     On or about November 1, 2017, TPI hired Kare Schultz to become CEO and

President. Mr. Schultz inherited the onerous task of addressing Defendants' massive financial

crisis. Amended Complaint (ECF #32) at ¶33; Sabag Dep., 17:9-18:10 at Joint Appx.-0302-303;

TEVA00242-258 (Teva Announcement Dec. 14, 2017 & Teva PPT Dec. 14, 2017) at Joint

Appx.-0143-59.

**RESPONSE:**  Denied.  While it is admitted that Mr. Schultz became the CEO of TPI on

November 1, 2017**,** it is denied that the company was in the throws of a "massive financial

crisis". It is averred to the contrary that Mr. Schultz was hired to assert actions that were

causing a drop in investor confidence and to contain a drain on stock prices that was fueling

shareholder and debtor insecurities.  Amended 2017 10K at Joint Appx- 0778-1057.

33.     In early December of 2017, Mr. Schultz announced that Defendants would be

engaging in a large scale, global corporate restructuring which resulted in the sale or closure of

many of its operating facilities throughout the world, consolidation of offices, and the reduction

of its headcount by at least 25% across the globe. Amended Complaint (ECF #32) at ¶33; Sabag

Dep., 17:9-18:10 at Joint Appx.-0302-303; TEVA00242-258 (Teva Announcement Dec. 14,

2017 & Teva PPT Dec. 14, 2017) at Joint Appx.-0143-59.

**RESPONSE:**   Denied.  It is denied that the company ills were caused by a financial crisis.
It is averred to the contrary that Mr. Schultz's actions were intended to quell hired to  a drop
in investor confidence and to contain a drain on stock prices that was fueling shareholder
and debtor insecurities. Amended 2017 10K at Joint Appx- 0778-1057.

  34. This reduction would not be borne equally by each department. Zorman Dep.,
18:10-20:12 at Joint Appx.-0277-0279.

**RESPONSE:**   Denied. It is not understood by the Defendants statement that "[t]his
reduction would not be born equally by each department" or on what basis that statement
was made.  It is asserted to the contrary, that the reductions made at the direction of Tal
Zorman, including the termination of Plaintiff were made to position the company with
leadership who could evolve corporate governance in the future and therefore, was fueled by
an age-based animus. Sabag Dep., 34-37 at Joint Appx – 1168.  It is further denied that the
headcount drop was ordered not to be borne equally by each department.

  35. Certain departments such as Human Resources had a target reduction of 50%
whereas some production based departments had lesser reduction targets. Zorman Dep., 18:10-
20:12 at Joint Appx.-0277-79.

**RESPONSE:**   Denied.  This statement is not supported by the cited testimony of Tal
Zorman and has no relevance to the issue of age discrimination that led to Plaintiff's
termination.

  36. Throughout 2017, Mark Sabag was a member of TPI's executive leadership team
and the global head of Human Resources. Sabag Dep., 17:20-18:10 at Joint Appx.-0302-03.

**RESPONSE:**   Admitted

37.     Mr. Sabag, along with the Chief Financial Officer, designed a plan as to how

Defendants' global workforce was to be restructured. Sabag Dep., 17:20-18:10 at Joint Appx.-

0302-03.

**RESPONSE:**  Denied.  The cited testimony of Mr. Sabag reflected that he and the CFO of

TPI "built a detailed plan on how that [the restructuring was] going to be cascaded in terms

of goals to the entire organization".  He also admitted that he did not make the decisions

who got what roles in the restructuring process.  Sabag Dep., 18, 36-37 at Joint Appx – 303,

1168

38.     Once it was determined that Mr. Sabag's department (Human Resources) would

have a 50% targeted reduction, Mr. Sabag began to effectuate this goal. Sabag Dep., 18:21-19:19

at Joint Appx.-0303-04.

**RESPONSE:**   Denied. Contrary to admitted directive of Kare Schultz to cut headcount by

25%,  the testimony of Mr. Sabag only states that "like any other function, HR got the target

of 50 percent reduction in workforce as part of this restructuring".   Further the cited

testimony only evidenced his decision to "merge" several leadership roles and he "came to

the conclusion that the best person that can do the job moving forward is Tal Zorman."

Sabag Dep., 18:19-19:19 at Joint Appx.-0303-04.

39.     Mr. Sabag testified that the Human Resources department would be instrumental

in carrying out and leading the restructuring process. Sabag Dep., 18:21-19:19 at Joint Appx.-

0303-04.

**RESPONSE:**   Denied.  It is denied that Mr. Sabag testified as stated in the cited portions of

his deposition or that even his testimony could be so construed.

40.     Mr. Sabag testified that he felt a duty to make the reductions within the Human Resources department as quickly as possible so that his department could get back to business to help guide the other departments through the restructuring process. Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.

**RESPONSE:**   Denied as stated.  It is denied that Mr. Sabag testified as stated in the cited portions of his deposition or that even his testimony could be so construed.

41,     Mr. Sabag reviewed his direct reports and merged a number of global functions to eliminate several leadership roles within the Human Resources department. Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.

**RESPONSE:**   Denied as stated.  The cited testimony of Mr. Sabag only supports that he decided to reduce his leadership team in half, to merge global functions into one global function and eliminate leadership roles "to maintain this 50 percent target." Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.  It is further clear that Mr. Sabag in the cited testimony was only speaking about TPI leadership and not specifying any fifty percent reduction in the TUSA Total Rewards Group.

42.     Once he had determined the proper structure of the leaner Human Resources organization, he determined that Tal Zorman would lead the segment of Human Resources that was responsible, in part, for overseeing the global Total Rewards function. Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04.

**RESPONSE:**   Admitted.

43.     A consequence of Mr. Sabag's restructuring decision was that it resulted in the elimination of Mr. Yaniv's position (Mr. Keuch's boss) as well as the position of other high

ranking TPI Vice Presidents. Sabag Dep., 18:21-19:19 at Joint Appx.-0303-04; 29:20-31 at

Joint Appx.-0305; TEVA000113-115 (Mark Sabag Update Email) at Joint Appx.-0067-69.

**RESPONSE:**   Denied.  The cited testimony does not support the statements made in this

paragraph, and the Sabag memo titled "Global HR Leadership Team Updates"

(TEVA000113-115 (Mark Sabag Update Email) at Joint Appx.-0067-69) only states in

relevant part that "HR for North America will be led by Daniel Lawler" and Tal Zorman

will lead Integrated Talent Management, combining Talent Management, Talent Acquisition

and Mobility and Development, and Total Rewards.

44.    Mr. Sabag eliminated the roles of Moshe Netzer (Senior Vice President, HRBP

Growth Markets, 27 years of experience with the Company) and Raffi Hirsch (Senior Vice

President, HRBP Global Specialty Medicines, 21 years of experience with the Company). Sabag

Dep., 18:21-19:19 at Joint Appx.-0303-04; 29:20-31 at Joint Appx.-0305; TEVA000113-115

(Mark Sabag Update Email) at Joint Appx.-0067-69.

**RESPONSE:**   Admitted.  It is asserted that the elimination of these longtime and older

employees, including Mr. Yaniv whose last day was to be December 31, 2017, is further

evidence that the terminations devised and affected by TPI and TUSA were made with

intended age-based animus.

45.    Upon being selected to lead the global Total Rewards function, Ms. Zorman

immediately became responsible for making reductions to her newly inherited organization

as directed by Mr. Sabag. Zorman Dep., 19:18-20:2 at Joint Appx.-0278-79.

**RESPONSE:**   Denied.  The cited portions of Ms. Zorman's testimony only relates that she

once she received the "nomination of Global Talent Rewards—Global Talent

Management—I had to come up with the structure and to meet on average 50 percent"
adding, without explanation that "on Total Rewards the target was 50 percent."

46.    Ms. Zorman was responsible for reducing the headcount within her new
organization by 50%. Zorman Dep., 19:18-20:212 at Joint Appx.-0278-79.

**RESPONSE:**  Admitted.

47.    As part of the restructuring, the geographic reporting structures
were reorganized. Zorman Dep., 24:6-25:5 at Joint Appx.-0280-81; 50:19-51:11 at Joint Appx.-
0283-0284.

**RESPONSE:**  Admitted.

48.    Latin America was removed from the Americas and placed in the "Growth
Markets" division. Zorman Dep., 50:19-51:11 at Joint Appx.-0284-85.

**RESPONSE:**  Admitted.

49.    Moving forward there would be three (not four) Regional Heads of Total
Rewards. There would be a head for North America, another for Europe, and one for
"Growth Markets"—which now encompassed Asia, Israel, Latin America, and India.
Zorman Dep., 24:6-25:5 at Joint Appx.-0280-81; 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE:**  Admitted.

50.    Ms. Zorman began her task of reaching the 50% reduction goal by first
determining the structure of the organization. Zorman Dep., 27:15-24 at Joint Appx.-0282.

**RESPONSE:**  Admitted.

51.    Once completed, Ms. Zorman turned to determining which individuals would
best fit in the new structure. Zorman Dep., 27:15-24 at Joint Appx.-0282.

**RESPONSE:**  Denied as stated.  The cited testimony only states that they then looked at qualifications.  Unquestionably, Plaintiff had the most qualifications for retention.  Affidavit of Plaintiff, ¶¶ 7-9, 11-12, 62-67 at Joint Appx. 1265-1266, 1274-1275.

52.     In early December 2017, Ms. Zorman explained to Mr. Keuch that a 50% reduction to headcount would be necessary in the North America Total Rewards organization. Keuch Dep., 152:1-14 at Joint Appx.-0338.

**RESPONSE:**  Denied.  In the cited testimony, Mr. Keuch responded that he was not aware in early December that a 50% reduction would be necessary, but he told to put together some options to reduce staff by 50%.

53.     Ms. Zorman asked Mr. Keuch to prepare a report outlining the bare bones recommendation for his team. Keuch Dep., 152:1-14 at Joint Appx.-0338.

**RESPONSE:**  Denied as stated. Plaintiff was only asked to put together some options to reduce his staff by 50%. Keuch Dep., 152:10-14 at Joint Appx.-0338.

54.     On December 14, 2017, Mr. Keuch sent Ms. Zorman an email in which he stated:

> Attached is a deck that provides my bare bones recommendation for my team. I have included options that suggest elimination of my position or Miriam's position. I strongly urge you not to make any leadership changes in Ql, as there is much work for the team to perform and the risks are very high. I also ask that you consult with Legal to validate the risks and our exposure. An error on our 401k could result in disqualification of the entire plan, which has $1.2 billion in assets, so disqualification will result in the loss of huge tax benefits to Teva. If a leadership change (job elimination) is needed, better to do this in Q2 when work has transitioned to HR Ops & Services, and the organization has stabilized. This is not a personal request nor is it made out of concern for having my position eliminated. Rather, it is a business decision as to how much risk Teva is willing to take by moving too quickly or having inexperienced people in key decision-making roles.

KEUCH000050-78 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0217-45.

**RESPONSE**:  Admitted.

55.     As an attachment to this email, Mr. Keuch provided a PowerPoint presentation where he outlined three options for how Defendants could achieve the 50% reduction in the Total Rewards North America organization. KEUCH000050-78 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0217-45; Keuch Dep., 173:25-175:18 at Joint Appx.-0340-42.

**RESPONSE**:  Admitted.

56.     In the first of the three options, Mr. Keuch proposed eliminating his own role. KEUCH000058 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0225; Keuch Dep., 173:25-175:18 at Joint Appx.-0340-42.

**RESPONSE**:  Denied as stated. Plaintiff did suggest the elimination of his titled position and that of one of his direct reports, but did not suggest that he should be terminated from other employment with Teva.   Keuch Dep., 175 at Joint Appx. – 0342, Affidavit of Plaintiff, ¶ 54, at Joint Appx. – 1272.

57.     In the other two options, Mr. Keuch proposed that he be retained as Head of Total Rewards North America with a far smaller staff. KEUCH000056-58 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0223-25; Keuch Dep., 173:25-175:18 at Joint Appx.-0340-41.

**RESPONSE**:  Admitted.

58.     Mr. Keuch candidly expressed in the PowerPoint presentation that if leadership level roles needed to be cut, Diane Rohach and not himself should be considered the most valuable leader. KEUCH000057 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0224.

**RESPONSE:**  Denied as stated.  The document is a writing that speaks for itself and the Defendants' characterization of that document is denied. In further response, again Plaintiff did not suggest that he should be terminated as a Teva employee.

59.    Mr. Keuch concluded that that the remaining staff lacked the expertise to handle benefits without Ms. Rohach making her continued employment essential. KEUCH000057 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0224.

**RESPONSE:**  Admitted.

60.    Mr. Keuch also stated with some equivocation that he was "probably the next most valuable leader." KEUCH000057 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0224.

**RESPONSE:** Admitted.

61.    Because the new organization would not include Latin America—Mr. Nasi is not mentioned in the PowerPoint presentation. Keuch Dep., 155:5-12 at Joint Appx.-0339.

**RESPONSE:**  Denied as stated.  Plaintiff admits only that Mr. Nasi was not on his list because the job would no longer have responsibilities for Latin America. Keuch Dep., 155:6-21 at Joint Appx.-0339

62.    Ms. Zorman thanked Mr. Keuch for his proposals and began to evaluate her options. KEUCH000050 (Keuch Dec. 14, 2017 Email and Attachments) at Joint Appx.-0217.

**RESPONSE:**  Denied.  Her response was a mere thank you. Keuch Dep., 175-176 at Joint Appx.-1247

63.     Ultimately, Ms. Zorman decided that the new Head of Total Rewards for North America should have less responsibility than the Head of Total Rewards for Americas had. Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE**:  Denied.  The cited testimony does not include any reference to or any suggestion that the new Head of Total Rewards for North America having less responsibility

64.     The new organizational head would not be responsible for Latin America. Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE**:  Admitted.

65.     The workforce in North America would be substantially smaller after the RIF was complete. Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE**:  Denied.  The cited testimony does not include any statement that the workforce in North America would be substantially smaller.

66.     The position would be more of an operational leader as opposed to a strategic or design based leader. Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE**:  Denied as stated.  While Tal Zorman made the statement that she envisioned the role would be very operational and tactic, and not strategic and design oriented, that view was not defined or explained.

67.     Given Teva's financial footing it was not in a position to be expanding or designing new benefits. Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE**:  Denied.  The cited testimony of Ms. Zorman did not equate any change in the position to financial footing or discuss the expansion or designing of new benefits.

68.     The new leader's main objective would be to operationally maintain the benefits already offered. Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE:** Denied.  The cited testimony of Ms. Zorman did not suggest that the main objective  of the role or suggest that the new leader's main objective would be confined to operationally manage benefits.

69.    Ms. Zorman determined that the new Head of Total Rewards for North America should be a Director level position and be graded as a Labor Grade 15. Zorman Dep., 50:19-51:11 at Joint Appx.-0283-84.

**RESPONSE:**  Denied.  While Eduardo Nasi was initially installed as labor grade 15, just weeks later, Ms. Zorman made him a Senior Director labor grade 16.  Keuch Dep., 189 at Joint Appx.-1247, 1250; Nasi Dep., 48:25-49:1 at Joint Appx. – 1156; Zorman Dep., 84:1-5 at Joint Appx.-0295.

70.    As Mr. Keuch was a Senior Director, Labor Grade 17, Ms. Zorman determined that Mr. Keuch was overqualified for the reduced role. Zorman Dep., 85:11-86:17 at Joint Appx.-0296-97.

**RESPONSE:**  Denied.  In her cited testimony, Ms. Zorman did not use the term "overqualified" but rather posited her position on unexplained "reduced scope" that she felt would be "demotivating".  Zorman Dep., 86: 6-12 at Joint Appx.-0297.

71.    Ms. Zorman began to consider who should fill this Director level, Labor Grade 15 role. Zorman Dep., 60:3-9 at Joint Appx.-0287.

**RESPONSE:**  Denied. By December 21, 2017, Ms. Zorman had determined that the role would go to Eduardo Nasi, citing his "professional experience, as well as the leadership and management capabilities that she admitted elsewhere in her testimony she had not reviewed or discussed.  Zorman Dep., 45:12-20, 60:3-9, at Joint Appx.-0287, 1175.

72.     She considered the professional experience, leadership, and management capabilities of various individuals who had been a part of the previous organization lead by Mr. Keuch. Zorman Dep., 60:3-9 at Joint Appx.-0287.

**RESPONSE:**  Denied.  There is no reference in her cited testimony to consideration of other individuals.

73.     Ms. Zorman identified Mr. Nasi to become the next Head of Total Rewards for North America. Zorman Dep., 60:3-9 at Joint Appx.-0287.

**RESPONSE:**  Admitted.

74.     In making this decision, Ms. Zorman interviewed Mr. Nasi, spoke with Mr. Nasi's supervisor in Latin America, considered his prior performance reviews, and consistently received positive references regarding Mr. Nasi's professional and leadership maturity. Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88.

**RESPONSE:**  Denied.  The referenced testimony did not include any discussion of an interview of Eduardo Nazi or Mr. Nasi's prior reviews.

75.     Ms. Zorman also discussed the matter with her colleague, Daniel Lawlor, who was the head of Human Resources for North America and received the required approval from Mr. Sabag. Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88.

**RESPONSE:**  Denied. While Mr. Zorman did state she spoke with Daniel Lawler, her cited testimony is devoid of a reference to Ms. Sabag.

76.     Once Ms. Zorman made this decision and it was approved, she contacted Mr. Nasi to discuss the new role and gauge his interest. Ms. Zorman explained to Mr. Nasi that the role would be reduced in scope from what Mr. Keuch had been responsible for, would

not include Latin America, and would have approximately half the amount of direct reports. Zorman Dep., 51:12-15 at Joint Appx.-0284.

**RESPONSE:** Denied. The cited testimony of Ms. Zorman did not suggest Mr. Nazi's role would be reduced or suggest he would have half the direct reports.

77.    Ms. Zorman also explained that Mr. Nasi would need to relocate from Florida to the Northeast, however, Ms. Zorman was unable to provide Mr. Nasi with a specific location at that time because Defendants were still determining where the North American headquarters would be located (later determined to be Parsippany, New Jersey). Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88; Nasi Dep., 39:1-15 at Joint Appx.-0350.

**RESPONSE:** Denied. The cited testimony of Ms. Zorman does not reflect any relocation discussion. Mr. Nasi's testimony does reflect he knew he would have to relocate from Florida to company headquarters but does not support he had that conversation with Ms. Zorman.

78.    Ms. Zorman also informed Mr. Nasi that the position would be a Labor Grade 15 and be at the Director level. Zorman Dep., 60:3-61:22 at Joint Appx.-0287-88.

**RESPONSE:** Denied. The cited testimony does not reflect any statement to Mr. Nasi that the position would be a labor grade 15 position or would be at the Director level.

79.    There was no plan at this time to alter Mr. Nasi's compensation which was $168,895. Zorman Dep., 52:1-24 at Joint Appx.-0285; 83:6-84:10 at Joint Appx.-0294-95.

**RESPONSE:** Denied. The cited testimony does not include any discussion of Mr. Nazi's then present compensation. It only reflects that that there was no discussion about what he would receive for making the move from Florida

80.    Mr. Nasi, after consulting with his wife, verbally accepted the offer. **Nasi Dep.**, 30:1731:3 at Joint Appx.-0348-49.

**RESPONSE**:  Admitted.

81.    Ms. Zorman's decision to eliminate Mr. Keuch's position and to elevate Mr. Nasi was not based on Mr. Keuch's job performance which was generally satisfactory. Zorman Dep., 27:15-24 at Joint Appx.-0282.

**RESPONSE**:  Denied.  While it is admitted that Plaintiff consistently meet or exceeded all expectations of him as reflected in his performance reviews, the cited testimony of Ms. Zorman does not reflect what the basis of her decisions about Plaintiff was.

82.    Ms. Zorman eliminated the Senior Director, Labor Grade 17 position because the newly restructured organization, which would serve far fewer employees in an operational rather than strategic manner, did not justify a Labor Grade 17 for its leader. Zorman Dep., 51:5-11 at Joint Appx.-0284; 85:4-22 at Joint Appx.-0296.

**RESPONSE**:  Denied.  The cited testimony of Ms. Zorman does not reflect that she based her decision on the newly restructured organization having few employees in an operational rather than strategic manner or that the role did not justify a Labor Grade 17 as its leader.

83.    At the time in which Ms. Zorman made this decision, she did not know or inquire about the respective ages of Mr. Nasi or Mr. Keuch. Zorman Dep., 60:23-61:3-5 at Joint Appx.-0287-88.

**RESPONSE**:  Denied as stated. While Ms. Zorman said she did not know their ages, she did admit that she saw Mr. Keuch's CV which reflected that he had been employed at high level positions since 1988 (when Mr. Nazi who was born in 1980 was eight years old. Zorman Dep., 61:16-62 at Joint Appx.-0288., 1179

84.     Ms. Zorman made the same decision for Europe.

**RESPONSE:**  Denied. Ms. Zorman's testimony was only that she eliminated the role of Senior Director in Europe (the smallest of all markets) and that she took an unexplained "similar" action for in the European sector. Zorman Dep., 80:8-22 at Joint Appx.- 1181.

85.     Ms. Zorman chose to eliminate the then Head of Total Rewards for Europe, a Senior Director, Labor Grade 17, and replace him with one of his direct reports, a Director at Labor Grade 15. Zorman Dep., 80:8-82:15 at Joint Appx.-0291-93.

**RESPONSE:** Denied.  Ms. Zorman's testimony does not reflect that the Senior Director for Europe was a labor grade 17 or was replaced by one of his direct reports who was a labor grade 15.  Zorman Dep., 80:8-22 at Joint Appx.- 1181.

86.     Her view was that regional leaders could operate at the Director level and that she would have responsibility for any strategic or policy decisions that previously had been made by Labor Grade 17 Directors. Zorman Dep., 82:12 - 15 at Joint Appx.-0291-93.

**RESPONSE:** Denied.  The cited testimony of Ms. Zorman only suggests that she would be responsible for strategy and design. Zorman Dep., 80:8-22 at Joint Appx.- 1182.

87.     On January 2, 2018, Ms. Zorman contacted Mr. Keuch by phone to notify him that his position had been eliminated. Keuch Dep., 36:2-12 at Joint Appx.-0317.

**RESPONSE:**  Admitted.

88.     Ms. Zorman thanked Mr. Keuch for his service to Teva and asked Mr. Keuch to continue working for a few months to help with the transition of Mr. Nasi into the new role. Keuch Dep., 192:16-20 at Joint Appx.-0344.

**RESPONSE:**  Admitted.

89.     Mr. Keuch agreed to do so and his last day of work at TUSA was on or about February 18, 2018. Keuch Dep., 39:1-6 at Joint Appx.-0318.

**RESPONSE:**  Admitted.

90.     Mr. Keuch continued to be paid by TUSA until March 18, 2018. Keuch Dep., 191:23192:2 at Joint Appx.-0343-44.

**RESPONSE:**  Admitted.

91.     At the time of his separation, Mr. Keuch was offered a severance package that was conditioned on his execution of a release (as were all the separation agreements). Keuch Dep., 34:1-9 at Joint Appx.-0316; TEVA00172-188 (Keuch Unsigned Separation Agreement) at Joint Appx.-0126-42.

**RESPONSE:**  Admitted.

92.     Mr. Keuch declined to sign the separation agreement and thus did not receive any severance payments. Keuch Dep., 34:1-9 at Joint Appx.-0316.

**RESPONSE:**  Admitted.

93.     Following Mr. Keuch's separation of employment and at a later stage of the restructuring, Defendants engaged in a site consolidation in the United States. Zorman Dep., 53:1-18 at Joint Appx.-0286.

**RESPONSE:**  Admitted.

94.     This resulted in the relocation of TUSA's headquarters from North Wales, Pennsylvania to Parsippany, New Jersey. Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90.

**RESPONSE:**  Admitted.

95.     This site consolidation created additional complexities and work for Mr. Nasi as the Head of Total Rewards, North America. Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:285:3 at Joint Appx.-0294-96.

**RESPONSE:**  Denied.  The cited testimony does not reflect that the complexity for moving the headquarters from eastern Pennsylvania to Parsipany (less than 100 miles away) would increase the workload for the head of compensation and benefits.

96.     A retention and relocation package was offered to Mr. Nasi and effective March 28, 2018, Mr. Nasi's position was elevated from a Labor Grade 15, Director to a Labor Grade 16, Senior Director. Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96.

**RESPONSE:**  Denied as stated.  While the cited testimony does reflect the promotion, it does not state that any retention bonus was paid or that Mr. Nasi was offered a relocation package.

97.     Mr. Nasi's salary was increased to approximately $195,000. Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96; TEVA000768 (Vitman Email) at Joint Appx.-0207.

**RESPONSE:**  Admitted.

98.     Notably, even following this change, Mr. Nasi was still a Labor Grade below Mr. Keuch's Labor Grade (i.e., 16 vs 17), and earning less than Mr. Keuch had been earning (i.e., $195,000 vs. $285,000). Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96: TEVA000768 (Vitman Email) at Joint Appx.-0207.

**RESPONSE:**  Admitted.

99.    A similar decision was later made in Europe where the Director who was retained following the RIF was upgraded to a Labor Grade 16 and provided with the title "Senior Director." Zorman Dep., 78:6-79:4 at Joint Appx.-0289-90; 83:2-85:3 at Joint Appx.-0294-96.

**RESPONSE:**  Denied.  The cited testimony does not reflect the changes to title in the European sector of Total Rewards.

**SPECTOR GADON ROSEN VINCI P.C.**

By: /s/ *Alan Epstein*

Alan B. Epstein, Esquire (Pa. I.D. No. 2346)
Jennifer Myers Chalal, Esquire (Pa. I.D. No. 77841)
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888/(215) 241-8844 (Fax)
aepstein@lawsgr.com
jchalal@sgrvlaw.com
*Counsel for Plaintiff*

Dated:  August 16, 2022