IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (JUDGE JOHN M. GALLAGHER) |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| And TEVA PHARMACEUTICAL | : | (Electronically Filed) |
| INDUSTRIES, Ltd., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF SUMMARY JUDGMENT**

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") and Defendant Teva Pharmaceutical Industries, Ltd. ("TPI" and together with TUSA the "Defendants" or "Teva"), submit this Reply Brief in further support of their Motion for Summary Judgment.

**I. PLAINTIFF ATTEMPTS TO CONFUSE THE RECORD REGARDING TEVA'S FINANCIAL STATUS.**

In his Response Brief, Plaintiff spends much time quibbling over Teva's financial status as it relates to the fall of 2017 suggesting that his judgment as to whether a global restructuring was necessary deserves more credence than the judgment of Teva's global senior management. For example, Plaintiff rejects Defendants' assertion that the Company was "in a dire financial position which necessitated desperate measures." Pl. Resp. Br. 9. Yet, Plaintiff contradicts himself as he also swears in an affidavit that:

- Teva's $40.5 billion acquisition of Actavis required the Company to take out extensive loans.

- Following the acquisition, Teva was forced to sell some of Actavis's most profitable products which "reduced much of the acquired company's profitability."

1

- Teva suffered "consecutive quarters of lowered financial outlook and diminished reported and forecasted revenues casted doubts in the marketplace of Teva's ability to adequately carry the debt load."

- These circumstances led "to lowered credit ratings, negative views from investors and stocks spiraling down to a fifteen-year low."

Pl. Aff. ¶¶18-22, Joint Appx.-1267.  Accordingly, the record is clear that Teva's financial situation was tenuous at best (and dire at worst) in the third quarter of 2017 leading up to the announcement of the reduction in force ("RIF") that ultimately resulted in the layoff of thousands of employees, including Mr. Keuch.  There is no issue as to whether a RIF was justified under the circumstances; the issue is whether his selection was because of Mr. Keuch's age; i.e., but for his being 64 in 2018, he would not have been selected.

After putting aside the waste of time discussing the immaterial issue of Teva's dubious finances in 2017 and 2018, Plaintiff actually acknowledges an issue material to this case, i.e., that he has "not posited that the reduction in force should not have been undertaken."  Pl. Resp. Br. 11.  By making this admission, Plaintiff concedes that a reduction in force was appropriate. As articulated in Defendants' initial brief, Courts in this circuit have routinely found that a reduction in force is sufficient justification in and of itself to satisfy the employer's burden of production under *McDonnell Douglas*.  *See Muhammad v. Sills Cummis & Gross P.C.*, 621 F. App'x 96, 100 (3d Cir. 2015) (recognizing a reduction in force as a legitimate nondiscriminatory reason for terminating plaintiff).

## II. PLAINTIFF'S RELIANCE ON A CAT'S PAW THEORY OF LIABILITY IS WITHOUT MERIT.

Plaintiff asserts in his Response Brief an argument never pled - a Hail Mary - that Defendants should be held liable using a "cat's paw" theory of liability.  In doing so, Plaintiff

2

admits that the ultimate decision maker, Tal Zorman, did not have any discriminatory age animus of her own against Plaintiff. Instead, Plaintiff attempts to point to Daniel Lawlor as the "boogeyman" who influenced Ms. Zorman's decision by injecting his own alleged age bias into the equation. Plaintiff's new theory of liability fails both as a matter of fact and law. To assert a successful cat's paw claim, a Plaintiff must satisfy the following two elements: "(1) a supervisor who is not the ultimate decision [to] 'perform[ ] an act motivated by [discriminatory] animus that is intended ... to cause an adverse employment action,' and (2) 'that act [must be] a proximate cause of the ultimate employment action.'" *Macknet v. Univ. of Pennsylvania*, No. CV 15-5321, 2017 WL 4102829, at *5 (E.D. Pa. Sept. 14, 2017), aff'd, 738 F. App'x 52 (3d Cir. 2018).

**A. Discriminatory Animus:**

With respect to animus, the case law relied upon by the Plaintiff demonstrates that the animus needed to support a cat's paw liability claim must be particularized to the Plaintiff. For example, Plaintiff relies heavily on *Abramson v. William Paterson College of New Jersey.*, 260 F.3d 265 (3d Cir. 2001). However, in *Abramson* one of the Orthodox Jewish plaintiff's supervisors had "started to scream that she was tired of hearing about [plaintiff] and her [Jewish] holidays ... [which] were ... personal private issues and that she did not want them mentioned at the scheduling meetings", and another one of the plaintiff's supervisors had "screamed at [the plaintiff], saying that if the [plaintiff] would not run a conference for her on Friday night and Saturday night [Sabbath nights], nothing [plaintiff] did would have any value." *Abramson*, 260 F.3d at 269. Similarly, in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), the facts demonstrated a clear discriminatory animus directed towards the Plaintiff. Specifically, in *Staub*, one of the plaintiff's supervisors informed a co-worker that the plaintiff's "military duty had been a drain on the department" and wanted help "get[ting] rid of him", and another one of the plaintiff's supervisors referred to the plaintiff's military obligations as "a bunch of smoking and

3

joking and a waste of taxpayers' money." *Staub*, 131 S.Ct. at 1189. With this direct animus in mind, the Court found the employer liable under a cat's paw theory.

Here, there is not even an allegation that Mr. Lawlor made any comments or took any actions against Plaintiff individually to reflect his purported age bias. Instead, Plaintiff merely asserts that Mr. Lawlor had at some point exhibited a general bias against older workers. This general bias, unrelated at all to Mr. Keuch, is entirely distinguishable from the cases relied upon by Plaintiff to support a cat's paw theory of liability. Moreover, for the reasons detailed in Defendants' initial Brief in Support of Summary Judgment, the allegations contained in Plaintiff's Complaint and Responsive Brief are simply insufficient to demonstrate any discriminatory bias on the part of Mr. Lawlor. See also *Patel v. Shinseki*, 984 F. Supp. 2d 461, 477 (W.D. Pa. 2013) (granting summary judgment after finding no cat's paw liability where the record was devoid of any indication that the alleged supervisors exhibited discriminatory animus based on the plaintiff's age and explaining that "workplace strife" between the supervisor and the plaintiff was insufficient to support liability).

### B. Proximate Cause:

In addition to demonstrating discriminatory animus, which Plaintiff fails to do, Plaintiff must show a proximate cause between the discriminatory animus and the ultimate decision to terminate the plaintiff. In a cat's paw analysis, proximate cause requires, "some direct relation between the injury asserted and the injurious conduct alleged" and excludes links that are "remote, purely contingent, or indirect." *Staub*, 562 U.S. at 419, 131 S.Ct. 1186 (internal quotation marks omitted). As the *Staub* court explained, proximate cause will not exist when the employer does not rely on the "supervisor's biased report" in taking the ultimate adverse action. *Id*. at 421, 131 S.Ct. 1186 (noting that it "is necessary in any case of cat's-paw liability" that "the

independent investigation rel[y] on facts provided by the biased supervisor"). *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015).

In the instant matter, there is no allegation or credited evidence that Mr. Lawlor expressed any age bias comments to Ms. Zorman as she was making her decision regarding which employees should be retained. Rather, the uncontradicted evidence demonstrates that as part of Ms. Zorman's decision making process she consulted with Mr. Lawlor and Mr. Sabag, both of whom shared with Ms. Zorman that while Mr. Keuch's performance was generally good, that he had some challenges when collaborating with others. Zorman, Dep., 35:20-36:3 at Joint Appx.-1277-1279. There is not a scintilla of evidence, nor even an allegation in the record, that Mr. Lawlor told Ms. Zorman not to retain Plaintiff because of his age or injected any age related bias into the process. Rather, Plaintiff contends, without any record evidence other than his self-serving statements, that Mr. Lawlor has an alleged history of making age biased comments and decisions that, therefore, taint everything he says and does. Plaintiff's self-serving statements are not evidence and cannot (and do not) demonstrate the proximate cause needed using a cat's paw theory of liability. *See Law v. Harrisburg Area Cmty. Coll.*, No. 1:19-CV-02007, 2021 WL 3472409, at *13 (M.D. Pa. Aug. 6, 2021) (rejecting cat's paw theory of liability at summary judgment stage and disagreeing with plaintiff's argument that a prior ageist comment made by a supervisor "infected" the decision making process).

Next, Mr. Lawlor's alleged age bias was not the proximate cause for Plaintiff's termination. Rather, the proximate cause(s) were the Company's dubious finances and its, need to make drastic reductions to its headcount to cut expenses, as well as the judgment of Ms. Zorman as to who would be the best candidate for the reduced in scope technical Total Rewards role upon the elimination of Plaintiff's broad, strategic Total Rewards role.

Ms. Zorman testified that her decision making process was to first determine what the structure of the 50% reduced Total Rewards organization and then analyze who would be best to fill the remaining roles. In making her decision, she asked Plaintiff for his recommendation for how Total Rewards could function as a bare bones organization. In response, Plaintiff prepared and provided to Ms. Zorman a detailed PowerPoint presentation setting forth three options – the first of which included the elimination of Plaintiff's own role. SMF at ¶55. Plaintiff asserts in his Response Brief and Affidavit that this proposal to self-eliminate did not mean that he was proposing he be terminated. Rather, Plaintiff argues that this proposal actually meant he would be moved to a more "elevated" position. However, this assertion directly contradicts his deposition testimony where he stated:

> **Question**: So there were at least three scenarios that you painted for Ms. Zorman to choose from?
> **Answer**: That is correct.
> **Question**: Okay. And in all of the scenarios, Rohach stays on?
> **Answer**: That is correct.
> **Question**: And in one of the scenarios, you leave?
> **Answer**: That is correct.

Joint Appx-0342. Therefore it is clear in the record that even Plaintiff knows that he proposed the elimination of his own role in said PowerPoint presentation. Accordingly, it was (1) Plaintiff's own suggestion that his role be eliminated; (2) Ms. Zorman's belief that the reduced role could be filled with a less experienced and lower compensated employee; and (3) the information Ms. Zorman received regarding Mr. Nasi's skill and ability that led her to select Mr. Nasi for the Labor Grade 15 role. Mr. Lawlor had nothing to do with Plaintiff's inclusion in the RIF.

### III. PLAINTIFF'S TRUE GRIPE IS WITH DEFENDANTS' BUSINESS DECISION.

In a last-ditch effort, Plaintiff argues that Mr. Sabag's statement in a company message that it was planning for "future success" is sonmehow evidence of age bias. This argument is

6

farfetched, unpersuasive, and untethered to the record evidence in this case. The reality is that companies routinely discuss and contemplate the future and doing so has absolutely no connection to age bias. In fact, a basic Google search demonstrates the following S&P 500 Company slogans[1]: (1) Alcoa Inc: Inventing the future since 1888; (2) Lincoln National: Hello Future; (3) Level 3 Communications: Building a Better Future; (4) Northrop Grumman Corp.; Defining the future; (5) Philip Morris International: Looks To The Future.

Plaintiff next argues that Teva's business decision to retain Mr. Nasi rather than Mr. Keuch is pretextual because Teva necessarily spent a substantial sum of money transitioning Mr. Nasi into the new role. First and foremost, in support of this self-serving proposition ,Plaintiff cites only to his own affidavit, which is woefully insufficient under Rule 56(e) of the Federal Rules of Civil Procedure. That rule sets forth the folllowing three requirements for an acceptable affidavit. It "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). The Third Circuit has emphasized that "the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985) (internal citations omitted). Plaintiff's Affidavit in support of this proposition reads:

> Because of the substantial raise he received after he took over my job duties and title, the frequent travel requirements that caused him as my replacement to travel to the company headquarters in Pennsylvania twice a month from his home in Florida so I could train him and the costly relocation costs in having him move his residence and family from Southern Florida to a home near the company's headquarters, his insertion as the Senior Director of North American Total Rewards, my old position taking

---

[1] https://copywritingcourse.com/company-slogans/

>over all my job duties, was more costly to Teva than keeping me in that same position.

Pl. Aff. ¶71. This statement fails all three of Rule 56(c)(4)'s requirements. It fails to set forth facts to demonstrate how Plaintiff would have personal knowledge of these events and is riddled with opinion. Furthermore, it provides no detail regarding the alleged travel or relocation costs. Instead, this self-serving, conclusory statement should be ignored pursuant to Rule 56(c)(4).[2]

Next, Plaintiff concedes that even following Mr. Nasi's elevation to a Labor Grade 16, Mr. Nasi was still making $90,000 less (not including a lower bonus and equity target that Keuch had as a Labor Grade 17) than Plaintiff had been making. Pl. Res. SMF at 98. Thus, even if Plaintiff's argument were to be accepted at face value and the travel costs and relocation costs equaled $90,000 that would simply mean that in year one Teva did not realize any savings from retaining Mr. Nasi. What Plaintiff fails to discuss or realize is that labor costs are not a snapshot in time but accrue on a continuum. Rather, that $90,000 difference is a per year figure that over the last five years has resulted in savings nearing a half a million dollars.

Lastly, Plaintiff attempts to argue that statistical evidence supports his argument of pretext. In support of this he points to an Older Workers Benefits Protection Act notice provided to employees in proposed severance agreements surrounding the RIF. However, this half-baked argument is entirely deficient. As courts in this Circuit have recognized, the usefulness of statistical evidence depends on all of the surrounding facts and circumstances and are prone to manipulation. Understanding this, courts have been most hesitant to rely on such undeveloped

---

[2] While much of Plaintiff's Affidavit is objectionable, for purposes of this Reply Brief and Plaintiff's Response to Plaintiff's Counterstatement of Material Facts, Defendants choose to focus only on those items that were particularly egregious and which may have an effect on the Court's ruling on Defendants' Summary Judgment Motion. In doing so, Defendants respectfully request that the record reflect Defendants' overall objection to Plaintiff's Affidavit and preserve their right to challenge the substance and admissibility of the assertions contained therein should this matter proceed to trial.

statistical arguments. *See Dowling v. Citizens Bank*, No. 05–914, 2007 WL 2752178, at *9 (W.D.Pa. Sept. 19, 2007) (quoting *Cameron v. Infoconsulting Int'l LLC*, No. 04–4365, 2006 WL 1450842, *10–11 (E.D.Pa. May 23, 2006)) ("statistical evidence [i]s not probative [where the] plaintiff[']s [r]aw numerical comparisons" are "not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period"; even less persuasive is plaintiff who "do[es] not even go so far as to offer raw number comparisons, but [instead] offer [s] ... subjective observations" because "personal beliefs, conjecture and speculation are insufficient to support an inference" of discrimination) (citations and internal quotations omitted); *see also Gottschall v. Reading Eagle Co.*, No. CIV.A. 11-5361, 2013 WL 961266, at *5 (E.D. Pa. Mar. 12, 2013) (holding "in the absence of expert statistical analysis as to the significance of what appears to be a two percent differential between the lay-off rate of the protected class and the representative percentage of that class in the workforce, the Court cannot infer that employees were terminated disproportionately based on age. This evidence is insufficient to support an inference of pretext.")

## IV. THE COURT SHOULD DEEM EACH OF TEVA'S MATERIAL FACTS AS ADMITTED AND TREAT TEVA'S MOTION AS UNOPPOSED.

This Court granted Plaintiff three extensions of time to file his Opposition to Defendants' Motion for Summary Judgement (ECF #54, #56, #58). The third extension set a deadline of August 15, 2022 for the filing. Despite being provided with this additional time, Plaintiff failed to submit a response on August 15, 2022. Instead, Counsel for Plaintiff submitted an email at 12:00 am on August 16, 2022 stating that he was experiencing technical difficulties that prevented counsel from completing the filing. The following day, on August 16, 2022 the Court sent an e-mail to the parties which stated in part, "Upon consideration, the Court is still expecting Plaintiff's MSJ filing no later than today, Tuesday, August 16, 2022." Again, despite the stated

9

deadline, Plaintiff failed to file any responsive documents on August 16, 2022. Instead, in the early morning hours of August 17, 2022 Plaintiff finally submitted a responsive filing. Notably, the Certificate of Service contained in that filing erroneously states that the filing was completed on August 16, 2022.

The Federal Rules of Civil Procedure and case law within this Circuit hold that if a party fails to timely dispute a moving party's statement of material facts, the court may deem these facts as undisputed. *See* Fed. R. Civ. P. 56(e)(2) (If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion"); *Robinson v. N.J. Mercer County Vicinage*—Family Div., 562 Fed.Appx. 145, 147, 149 (3d Cir. 2014) (holding that the district court did not err in treating the defendants' material facts as undisputed where the plaintiff failed to timely oppose the defendants' statement of material facts). Moreover, when a party fails to timely respond to a properly filed motion, the Court may treat that motion as uncontested. *See Stewart v. United States,* No. CV 17-3691, 2018 WL 899110, at *4 (E.D. Pa. Feb. 15, 2018) ("When a party fails to respond to a properly filed motion, absent circumstances not relevant here, we may grant the motion as uncontested. Thus, the crossclaims… will be dismissed.") (internal citations omitted); *Hung Nguyen v. Bosch Sec. Sys., Inc.*, No. 18-CV-1675, 2018 WL 5839701, at *2 (E.D. Pa. Nov. 8, 2018). Given Plaintiff's failure to comply with the Federal Rules of Civil Procedure and this Court's policies, procedures, and scheduling Orders this Court should deem Defendants' Statement of Undisputed Material Facts as undisputed and Defendant's Motion as uncontested.

## V. CONCLUSION

For the foregoing reasons and for the reasons set forth in Defendants' initial brief, Defendants respectfully request that the Court grant summary judgment for Defendants on each count of the Complaint.

|  |  |
|---|---|
|  | **STEVENS & LEE, P.C.** |
| Dated: August 24, 2022 | By: /s/ *Larry J. Rappoport* |
|  | Larry J. Rappoport, Esquire |
|  | Brandon S. Shemtob, Esquire |
|  | STEVENS & LEE |
|  | A PA Professional Corporation |
|  | 1500 Market Street, East Tower, St.1800 |
|  | Philadelphia, PA 19102 |
|  | Phone: (215) 496-3839 |
|  | Fax: (610) 371-7977 |
|  | larry.rappoport@stevenslee.com |
|  | brandon.shemtob@stevenslee.com |
|  | |
|  | *Attorneys for Defendants* |