**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | [ELECTRONICALLY FILED] |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| And TEVA PHARMACEUTICAL | : | |
| INDUSTRIES, Ltd., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COUNTERSTATEMENT
OF MATERIAL FACTS IN FURTHER SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") and Defendant Teva

Pharmaceutical Industries, Ltd. ("TPI" and together with TUSA the "Defendants" or "Teva"),

hereby submit the following Response to the Counterstatement of Material Facts ("CSMF") of

Plaintiff Randolph Keuch ("Plaintiff" or "Mr. Keuch") in Further Support of Defendant's Motion

for Summary Judgment.

1.  On March 15, 2021, Plaintiff Randolph W. Keuch ("Keuch" or "Plaintiff'") filed his

Amended Complaint against Teva Pharmaceuticals USA, Inc. ("TUSA") and Teva

Pharmaceuticals Industries, Ltd. ("TPI") (collectively "Teva" or "Defendants") pursuant to the

applicable provisions of the federal Age Discrimination in Employment Act ("ADEA"),

29 U.S.C. § 621, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 *et*

*seq.  See* generally the Docket Report, Joint Appendix ("JA"), 0360-0369; Amended Complaint,

¶ 1, (JA 0370) as admitted in ¶ 1 of the Answer of TUSA, (JA 0388) and in ¶ 1 of the Answer of

TPI, (JA 0404).

**RESPONSE:**  Admitted.

2.   Plaintiff brought this action with the intention of remedying past discrimination against him affected by and at the overall direction of TPI CEO Kare Schultz ("Schultz") and Marc Sabag ("Sabag") and affected specifically by TUSA Human Resources Director Daniel Lawler ("Lawler") and TPI Integrated Management head Tal Zorman ("Zorman") as it relates to the decision to select Keuch for termination and replace him with a substantially younger, far less credentialed and far less qualified individual who was previously Plaintiff's direct report. Amended Complaint, ¶ 3, (JA 0370) as admitted in ¶ 3 of the Answer of TUSA (JA 0388) and in ¶ 3 of the Answer of TPI, (JA 0405).

**RESPONSE:**  Admitted in part, denied in part.  Defendants admit that Plaintiff brought the action described in paragraph 2 of the CSMF against Defendants.  Defendants deny any discrimination by Mr. Schultz, Mr. Sabag, Mr. Lawlor, or Ms. Zorman as it relates to Mr. Keuch's separation of employment.

3.   Keuch has exhausted all administrative remedies and has taken all other steps necessary to bring this action before this Court, having filed a timely Charge of age-based discrimination in employment with the Equal Employment Opportunity Commission [EEOC Charge No. 530-20804759] which was cross-filed with the PHRC and having received the requisite Notice of Suit Rights within 90 days of the time the original Complaint was filed in this Court.  Amended Complaint, uncontested ¶ 6 (JA 0371).

**RESPONSE:**  Admitted.

4.   Plaintiff Randolph W. Keuch was born on May 27, 1954 and is currently 68 years of age.  Amended Complaint at 119 (JA 0372) as admitted in the Answer of TUSA at ¶ 9 (JA 0390) and in the Answer of TPI at ¶ 9 (JA 0406).

**RESPONSE:**  Admitted.

5.  Plaintiff and his wife Mary have raised eight children, of which seven are adopted and three have special needs.  (JA 1264).

**RESPONSE:**  Admitted upon information and belief.  Defendants, however, assert that this fact is entirely irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph.

6.  Plaintiff was employed by Teva as Senior Director of Total Rewards (compensation and benefits) for the Americas.  Amended Complaint at ¶ 10 as admitted in the Answer of TUSA at ¶ 10 (JA 390) and in the Answer of TPI, at ¶ 10 (JA 0406).

**RESPONSE:**  Admitted.

7.  Plaintiff was last employed by Teva as Senior Director of Total Rewards (compensation and benefits) for the Americas.  Sworn Affidavit of Plaintiff (Plaintiff's Aff.,) ¶ 5, (JA 1265).

**RESPONSE:**  Admitted that the last position held by Plaintiff at Teva was Senior Director of Total Rewards.

8.  From the inception of his employment in January 2014, Plaintiff worked at the Teva U.S. Headquarters in North Wales, Pennsylvania.  Plaintiff's Aff., at ¶ 6 (JA 1265).

**RESPONSE:**  Admitted.

9.  Plaintiff is a nationally recognized leader in the complex field of worker compensation and benefits.  Plaintiff's Aff., at ¶ 7 (JA 1265).

**RESPONSE:**  Denied as stated.  Defendants admit only that Mr. Keuch is an experienced professional in the field of compensation and benefits and contend that this is not a material fact.

10.  Prior to becoming employed by Teva in January 2014, Plaintiff was employed by: the H.J. Heinz Company (V.P. Total Rewards, 2005-2013); The Hartford (AVP, Compensation-P&C Division, 2004-2005); Pfizer, Inc. (Corporate Director, Strategic Rewards and Director, Pfizer Consumer Group Compensation, 1998-2004); and SmithKline Beecham (Corporate

Director, Compensation Strategy and Director, Human Resource Planning, Systems and Compensation,1994-1998). Plaintiff's Aff., at ¶ 8 (JA1265).

**RESPONSE:** Admitted upon information and belief.

11.   Plaintiff is the recipient of both a Bachelor of Science degree (BS, Industrial and Organizational Psychology, with Honors and Thesis) and a Masters of Science degree (MS, Applied Psychology) from the Stevens Institute of Technology and have also completed courses and programs in Human Resource Management (George Mason University) and Leadership (Harvard University School of Business).  Plaintiff's Aff., at ¶ 9 (JA 1265).

**RESPONSE:** Admitted upon information and belief.

12.   Plaintiff was hired at Teva by Leslie Billow, the head of North American Human Resources and Global Senior Vice President Yonit Landskroner in 2014.  Those decision makers were no longer employed when my employment was terminated years later.  Plaintiff's Aff., at ¶10 (JA 1266)

**RESPONSE:**  Admitted.

13.   While employed by Teva, Plaintiff led the Total Rewards Region for the Americas, providing subject matter expertise for and cutting-edge solutions to all facets of total rewards issues relating to all employees in the United States, Canada, and all South American countries. Plaintiff's Aff., at ¶ 11 (JA 1266)

**RESPONSE:** Admitted in part, denied in part.  Defendants admit that Plaintiff led the Total Rewards Center for the Americas.  Defendants deny that Plaintiff provided "cutting edge solutions to all facets" of issues experienced by Defendants. Defendants further contend that this is not a material fact in dispute.

14.  With the help of the team that Plaintiff led, he achieved notable results for Teva including the following:

- Secured recognition in 2016 and 2017 by NBGH (National Business Group on Health) and *Fortune Magazine* as one of Best Employers for Healthy Lifestyles

- Successfully integrated three (3) major acquisitions in the Americas Region (Rimsa-Mexico, Actavis-Global, and Anda-US)

- Developed and launched a global recognition program

- As a U.S. issuer, contributed to SEC proxy aspect for U.S. based NEOs

- Established a relationship with Amwell senior management to provide virtual medical care (telemedicine) and virtual behavioral care to all Teva employees at no cost to the employee and no cost to Teva for a period of 5 years

- Developed and launched an innovative Total Rewards Portal for all U.S. and Canadian Employees

- With responsibility for $1.2 billion in retirement fund assets and an annual spend of $220 million for health care, I developed and implemented a rolling three-year benefits strategy for the United States employees that saved over $30,000,000 in 2015, 2016 and 2017, while driving employee knowledge and positive perspective on their benefits to levels that are twenty percent (20%) above the norm for high performing companies

- Developed and implemented pay alignment strategies for the U.S. and Canada resulting in a significant decline in turnover and improved new hire acceptance ratios designed and approved all sales compensation programs and contests within North America

- Implemented the Willis Towers Watson Global Grading System and their REWARD tool throughout the region

Plaintiff's Aff., at ¶ 12 (JA 1266).

**RESPONSE:**  Admitted in part, denied in part.  Defendants admit that Plaintiff led the Total Rewards Center for the Americas and achieved many of the results listed in the bullet points listed in paragraph 14 of the CSMF.  Defendants deny Plaintiff's characterizations contained in each bullet point. Defendants further contend that this is not a material fact in dispute.

15.  Plaintiff's industry wide credentials include Certification as an Executive Compensation Professional, Honors including the American Compensation Association Lifetime

Achievement Award, Service on the Board of Directors for the National Business Group on

Health (2010- 2014), Service on the Customer Advisory Board for Fidelity Investments

(2009-2013), Chair of the Executive Compensation Advisory Board for WorldAtWork

(2008-2011), and an Adjunct Professorship at Trenton State University.  Plaintiff's Aff., at ¶ 13

(JA 1266-67)

     **RESPONSE:**  Admitted upon information and belief.

     16.  Defendant, TPI is an Israeli publicly held (NYSE) multinational pharmaceutical

company headquartered in Petah Tikva, Israel.  Incorporated in Israel in 1944, it is the successor

to a number of Israeli corporations, the oldest of which was established in 1901.  (JA 0782).

     **RESPONSE:**  Admitted in part, denied in part. Defendants admit only that TPI is an
Israeli publicly held (NYSE) multinational pharmaceutical company and that it was incorporated
in Israel in 1944. It denies that it is headquartered in Petah Tikva. Defendants further contend
that this is not a material fact in dispute.

     17.  It is a global pharmaceutical company that heralds a commitment to access to

healthcare around the world manufacturing world-leading genetic and specialty medicines.  It

specializes primarily in generic medicines, but its other business interests include active

pharmaceutical ingredients and proprietary pharmaceuticals.  (JA 0782)

     **RESPONSE:**  Admitted.

     18.  It is the largest generic drug manufacturer in the world, leveraging its portfolio of

more than 1800 molecules to produce a wide range of generic products in every therapeutic area;

it is one of the fifteen (15) largest pharmaceutical companies Global.  Amended Complaint at ¶ 8

(JA 0374) as admitted in the Answer of TPI at ¶ 8 (JA 0407); (JA 0782-83); (JA 0785).

     **RESPONSE:**  Admitted.

19.  At all times applicable to Plaintiff's employment, Teva employed over 57,000 people around the world, 10,000-14,000 of whom were employed in the United States.  (JA 1267).

**RESPONSE:**  Denied. Defendants further contend that this is not a material fact in dispute.

## Historical Events Leading to the Drastic Workforce Reductions

20.  In August 2016, TPI completed its $40.5 billion acquisition of Allergan's generic drug business Actavis, requiring Teva to take out extensive loans.  Further regulatory demands saw Teva sell some of Actavis' most profitable and low-competition products, reducing much of the acquired company's profitability.  (JA 0815); (JA 0878); (JA 1268).

**RESPONSE:**  Denied as stated.  Defendants admit that in 2016 TPI acquired Actavis for a substantial sum of money.  TPI further admits that the acquisition did not go as planned and that in 2017 Defendants were in a serious and precarious financial position.  SMF at ¶¶30-33. Defendants further assert that this allegation is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph.

21.  At the same time, consolidation of buyers and greater regulatory fast-tracking of generics for Teva's competitors hurt Teva's cash flow both by sending generic drug prices plummeting and by leading to approval of generic versions of Teva's two-decade-long main revenue producing, brand name multiple sclerosis drug, Copaxone.  (JA 0812); (JA 0922-23), Plaintiff's Aff., at ¶ 20 (JA 1267); (JA 0499).

**RESPONSE:**  Denied as stated.  Defendants admit that in 2016 TPI acquired Actavis for a substantial sum of money.  TPI further admits that the acquisition did not go as planned and that in 2017 Defendants were in a serious and precarious financial position.  SMF at ¶¶30-33. Defendants further assert that this allegation is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph.

22.  Resulting consecutive quarters of lowered financial outlook and diminished reported and forecasted revenues casted doubts in the marketplace of Teva's ability to adequately carry the debt load caused by the above circumstances, leading to lowered credit ratings, negative

views from investors and stocks spiraling down to a fifteen-year low.  Plaintiff's Aff., at ¶ 21

(JA 1268); (JA 0815); JA 0860).

**RESPONSE:**  Denied as stated.  Defendants admit that in 2016 TPI acquired Actavis for a substantial sum of money.  TPI further admits that the acquisition did not go as planned and that in 2017 Defendants were in a serious and precarious financial position.  SMF at ¶¶30-33. Defendants further contend that this is not a material fact in dispute and that this allegation is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph.

23.  Additionally, in early 2017, TPI was forced to pay fines to the United States

Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") totaling in

excess of $520 Million to resolve federal violations of the Foreign Corrupt Practices Act

("FCPA") (Amended Complaint at ¶ 32 (JA 0377) as admitted in Answer of TPI at ¶ 32

(JA 0409) arising from bribery charges relating to its operations in Russia, the Ukraine and

Mexico.  Plaintiff's Aff., at ¶ 22 (JA 1268).

**RESPONSE:**  Denied as stated.  Defendants admit TPI paid to the United States Department of Justice and the Securities and Exchange Commission an amount to settle certain charges against it.  Defendant TPI denies Plaintiff's characterization of same.  Def. TPI Answer to Amended Complaint, ECF 35 at ¶32. Defendants further assert that this allegation is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph. Defendants further contend that this is not a material fact in dispute.

24.  Other lawsuits compounded these issues that was of concern to the investment

community (JA 0814).

**RESPONSE:**  Denied as stated.  Defendants admit that as a large public pharmaceutical company, TPI is always concerned with various legal challenges.  However, these legal challenges largely relate to patents, intellectual property and regulatory issues.  By way of further response, in support of paragraph 24 of the CSMF Plaintiff cites to portions of TPI's 10-K filing for fiscal year ending December 31, 2017.  The cited testimony discusses legal disputes relating to patent and intellectual property issues. Joint Appx.-0814. Defendants further assert that this allegation is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph. Defendants further contend that this is not a material fact in dispute.

25.   These circumstances led to the hiring of Kare Schultz as the President and CEO of

TPI who was faced with creating an immediate strategy to bolster investor confidence and

thereby raise the price of Teva stock.  *See* generally comments to investment community of Kare

Schultz to investors (JA 0496-511).

**RESPONSE:**  Admitted in part, denied in part.  Defendants admit that Teva's dire
financial situation led to the hiring of Mr. Schultz.  Defendants deny Plaintiff's characterization
of same.  Defendants deny that Plaintiff's citation to the record supports his assertion in
paragraph 25 of the CSMF.

26.   Contrary to the Defendants' statement through the testimony of Eduardo Nasi that

the cuts were about avoiding bankruptcy, the actual impetus for the reduction of force and other

actions ordered by Kare Schultz and implemented through Human Resources Vice President

Mark Sabag, Human Resources head Daniel Lawler and newly promoted Tal Zorman were

raising stock price, soothing the investor community, and planning for the future.  *See* generally

comments to investment community of Kare Schultz to investors (JA 0496-511)

**RESPONSE:**  Denied as stated.  Defendants admit that they were in a serious and
precarious financial position in which bankruptcy was a legitimate concern.  SMF at ¶¶30-33.
Furthermore, Plaintiff concedes in his Response Brief that he has "not posited that the reduction
in force should not have been undertaken."  Pl. Resp. Br., p. 11.  Therefore, because Plaintiff
admits that the reduction in force was proper it is wholly irrelevant what the precise "impetus for
the reduction in force was."  The parties agree that Defendants had financial problems and that a
reduction in force was necessary. CSMF at ¶¶20-23.

27.   Kare Schultz became the President and CEO of TPI in 2017 [Amended Complaint,

¶ 25 (JA 0376) as admitted in the Answer of TPI at ¶ 25 (JA 0408); (JA 1008); (JA 0985).

**RESPONSE:**  Admitted.

28.   Schultz chose to implement dramatic actions that would sooth the investment community and meet those goals.  (JA 0500); (JA 9782-83); (JA 0985); Plaintiff's Aff., at ¶ 24 (JA 1268).

**RESPONSE:**  Denied as stated.  Defendants admit that Mr. Schultz implemented a large reduction in force in order to address Defendants dire financial circumstances.  SMF at ¶¶30-33. Defendants further contend that this is not a material fact in dispute.

29.   At Schultz's direction and with the approval of Teva's Board, TPI suspended dividends on its common stock, ordered that no annual bonus payments be made to employees for the year 2017 and announced a reduction in its employment force of 14,000 people, including 25% of the TUSA workforce.  (JA 0499); (JA 0782-83); (JA 0817-18); (JA 0834); Plaintiff's Aff., at ¶ 25 (JA 1268).

**RESPONSE:**  Admitted in part, denied in part.  Defendants admit only that TPI hired Schultz as President and CEO, that it suspended dividends for common stock, that it did not pay annual bonus payments for 2017, and announced a reduction in force.  Defendants deny Plaintiff's characterization of same.  By way of further response, the averments contained in paragraph 29 of the CSMF relating to the suspension of dividends and withholding of bonuses are wholly irrelevant to the matters at hand and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph. Defendants further contend that this is not a material fact in dispute.

30.   Despite the imposition of these Draconian measures to save the investment image of Teva on the backs of its employees, and evidencing that the reductions in head count were not really based on Teva's economic condition, Schultz received a five year contract promising tens of millions of dollars salary and benefits in part depending on his ability to raise the stock price, as well as a Twenty Million Dollar ($20,000,000) cash payment included in his contract and entitlement to a performance-based target incentive bonus of 140% of his annual base salary. (JA 1006-1009); Plaintiff's Aff., at ¶ 26 (JA 1268).

**RESPONSE:**  Denied as stated.  Defendants admit that Mr. Schultz is highly paid. Defendants deny that his compensation evidences that the reductions were not necessary. Furthermore, Plaintiff concedes in his Response Brief that he has "not posited that the reduction in force should not have been undertaken." Pl. Resp. Br., p. 11.  Therefore, because Plaintiff

10

admits that the reduction in force was proper it is wholly irrelevant what the precise compensation is or was for Mr. Schultz. The parties agree that Defendants had financial problems and that a reduction in force was necessary. CSMF at ¶¶20-23. Defendants further assert that this allegation is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph. Defendants further contend that this is not a material fact in dispute.

31. In fact, in 2017, the median annual pay of Teva's employees was $64,081 compared with Schultz's contractually obligated total yearly compensation and bonuses in amounts of tens of millions of dollars. Plaintiff's Aff., at ¶ 29 (JA 1269).

**RESPONSE:** Denied. There is no evidence in the record to support Plaintiff's assertion regarding the average compensation of Teva employees. Furthermore, the average compensation of Teva's employees is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph. Defendants further contend that this is not a material fact in dispute.

32. Compensation levels for the other executives that caused the problems for Teva that led to the decision to affect the reductions in the workforce also did not abate. Teva's senior management continued to receive inflated salaries and bonuses. The Actavis deal's engineer, Erez Vigodman who stepped down as CEO in February 2017, continued to receive a salary of One Million Four Hundred Fifty Thousand Dollars ($1,450,000) for the next several months and a bonus of Two Million Dollars ($2,000,000). Interim CEO Yitzhak Peterburg, who replaced Vigodman, received a salary of nearly ten million dollars for just the eight months he served in that capacity. (JA 1006-09); Plaintiff's Aff., at ¶¶ 31 and 32 (JA 1269).

**RESPONSE:** Denied as stated. Defendants admit that its executives are highly paid. Defendants deny Plaintiff's characterization of same. In addition, Defendants assert that this allegation is irrelevant and should this matter proceed to trial, Defendants anticipate filing a motion in limine to exclude the allegations contained in this paragraph. Defendants further contend that this is not a material fact in dispute.

33. Contrary to the newly hired leaders of Teva, Plaintiff was consistently honored as having added to the success of Teva: in 2015, prior to Schultz's hiring, he had over his entire career been rated as meeting and exceeded the expectations and goals set by his supervisors; he

received a significant increase in base salary and a $60,000 retention bonus in recognition of his

value to the Company and to prevent him from accepting employment elsewhere; and from the

time of his initial employment in 2014 until his discharge from Teva, the Americas Region

which he supervised successfully and seamlessly added approximately 6000 employees in the

United States, Canada, Puerto Rico and Latin America due to the acquisition of the large

pharmaceutical manufacturer Actavis, added seamlessly supervised another 600 from Teva's

acquiring the drug company Anda, and successfully welcomed another added approximately

1000 more in Mexico from the acquisition of Rimsa.  Plaintiff's Aff., at ¶ 35, (JA 1269-70).

**RESPONSE:**  Denied as stated.  Defendants admit that Plaintiff's job performance at
Teva was acceptable.  Defendants further admit that Plaintiff received positive performance
reviews, increases to his salary and a retention bonus.  Defendants note that all of these accolades
and rewards were provided to Plaintiff while Plaintiff was over the age of 60. Defendants further
contend that this is not a material fact in dispute.

34.  Plaintiff was always considered a valuable managerial asset and my leadership

permitted TUSA to experience properly planned and lawful long-range compensation and

benefits savings equaling tens of millions of dollars.  Plaintiff's Aff., at ¶ 36 (JA 1270).

**RESPONSE:**  Denied as stated.  Defendants admit that Plaintiff's performance was
acceptable. Defendants further contend that this is not a material fact in dispute.

35.  Important in the current allegations of discrimination in this action, during Plaintiff's

employment, he witnessed many actions that evidenced a clear age-related bias by the company

and its head of North American Human Resources, Daniel Lawler, whose proffered opinions of

Plaintiff were the guidance that led to Tal Zorman's promotional and termination decisions.  In

each of the following circumstances, Daniel Lawler was the driving force of the clear age-bias

that he witnessed:

- With Mr. Lawler's aid and direction, Teva frequently implemented compensation
  policies that disfavored older workers like Plaintiff who were reaching retirement
  age;

- That systemic, unlawful approach was reflected in unannounced changes in the Teva 2015 Stock Plan that revised the 2010 Plan by conditioning full vesting on ten years of service when the employee reaches 65 years (five years more than the earlier plan versions that previous set the bar at age 65 plus 5 years of service);

- Age bias was also evidenced in the raising of the age of retirement in the 2010 and 2015 equity plans to age 55 for those employees who had fifteen (15) or more years of service as compared to the previous policy of the rule of 70 that permitted retirement at any combination of age and service that equaled.  Moreover, that later policy-change also negatively impacted the equity compensation of older employees;

- In addition, Teva initiated a punitive severance plan in 2017 that reduced all severance paid to US employees by Teva by the amount of unemployment compensation benefits that they were lawfully entitled to, once again creating savings by taking income away from employees.

Plaintiff's Aff., at ¶¶ 37-42 (JA 1270-71).

**RESPONSE:**  Denied. Defendants categorically deny that Mr. Lawlor engaged in any discriminatory behavior. By way of further response, the Court should disregard paragraph 35 of the CSMF as the only citation supporting paragraph 35 of the CSMF is reference to a self-serving affidavit from Plaintiff filed contemporaneously with his Opposition to Summary Judgment.  This portion of Plaintiff's affidavit is inadmissible and cannot be relied upon.

Specifically, Rule 56(c)(4) of the Federal Rules of Civil Procedure sets forth three requirements that a submitted affidavit must meet.  It requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).  The Third Circuit has emphasized that "the affiant must ordinarily set forth facts, rather than opinions or conclusions.  An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden."  *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985) (internal citations omitted); *Fowler v. Tillman*, 97 F.Supp.2d 602, 607 (D.N.J.2000) ("Affidavits speculating as to motivations but containing no factual support do not conform to the rule, and statements prefaced by the phrases, 'I believe' or 'upon information and belief' are properly subject to a motion to strike.") (internal citations omitted).

Plaintiff's affidavit fails to demonstrate how Mr. Keuch has personal knowledge of any of the assertions contained in CSMF paragraph 35. For example, it does not explain how or when the stock or equity plans were allegedly altered. Most importantly, CSMF paragraph 35 fails to describe what, if any, role, Mr. Lawlor played in making these changes and how Mr. Keuch has personal knowledge of such. Moreover, paragraphs 37 to 42 of Plaintiff's affidavit—which is a copy and paste of CSMF paragraph 35—is  riddled with improper legal conclusions such as: (1) "Age bias was also evidenced in" and (2) "That systemic, unlawful approach." Overall, the assertions contained in CSMF paragraph 35 (purportedly supported by paragraphs 37 to 42 of Plaintiff's affidavit") are merely Plaintiff's opinions and legal arguments masquerading as an affidavit. *See Summy-Long v. Pennsylvania State Univ.*, No. CIV.A.1:06-CV-1117, 2009 WL 811616, at *3 (M.D. Pa. Mar. 26, 2009) (striking all references to the term "conceal" from a

13

Plaintiff's affidavit as conclusory).  Defendants further contend that this is not a material fact in dispute.

36.  At the same time, TUSA HR leader Daniel Lawler, openly demonstrated his discriminatory view of older employees.  Espousing the belief that those over age 62 would no longer be employable and therefore should not apply for unemployment compensation benefits, he incredulously elected to establish an exemption for those age 62 or older because he believed that they were no longer employable in the workforce.  This exemption prevented those terminated employees age 62 or older from applying for unemployment benefits and enjoying the tax savings provided younger employees.  Plaintiff's Aff., at ¶ 43 (JA 1271).

**RESPONSE:**  Denied. Defendants deny that Mr. Lawlor stated that employees 62 or older were no longer employable in the workforce. Lawlor Dep., 31:20-32:12 at Joint Appx-1191. Moreover, Plaintiff asserts in paragraph 36 of the CSMF that Mr. Lawlor was a proponent of exempting those over the age of 62 from having to apply for unemployment compensation benefits. Plaintiff further alleges that this exemption was economically harmful to employees over the age of 62. This assertion, which is also contained in paragraph 43 of Plaintiff's Affidavit is directly contradictory to Plaintiff's deposition testimony. Specifically, during his deposition Plaintiff conceded that providing this exemption to employees over the age of 62 would be beneficial to those individuals. Keuch Dep., 87:9-12 at Joint Appx-1225. Plaintiff's contradictory testimony in this regard renders this portion of his affidavit inadmissible pursuant to the "sham-affidavit" doctrine. Specifically, a district court may disregard an affidavit at the summary judgment stage when it "contradicts earlier deposition testimony without [a] satisfactory or plausible explanation." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017). Accordingly, because Plaintiff's only citation to support paragraph 36 of the CSMF is his own "sham" affidavit, the court should ignore paragraph 36 of the CSMF. Defendants further contend that this is not a material fact in dispute.

37.  Plaintiff also witnessed an age bias in the hiring of employees by Mr. Lawler.

**RESPONSE:**  Denied.  Defendants deny that Mr. Lawlor engaged in any age bias whatsoever.  By way of further response, Plaintiff has failed to cite to anything in the record to support this alleged material fact.  Given the lack of citation, Defendants respectfully request the Court disregard the statement. See Judge Gallagher's Policies and Procedures at p. 8-9. Defendants further contend that this is not a material fact in dispute.

38.  An example of his discriminatory animus was the rejection by him of a candidate working as a contractor on my team who had been fully approved for hire by the TUSA HR

team, based upon his clearly discriminatory view that at her more advanced age she did not have

"long term potential".  Plaintiff's Aff., at ¶¶ 44-45 (JA 1271).

     **RESPONSE:**  Denied.  By way of further response, Defendants deny that Mr. Lawlor displayed any discriminatory animus toward any candidate applying for employment at Teva. Lawlor Dep., 61-63:6 at Joint Appx-1197-98.  Rather, Teva admits that Mr. Lawlor expressed his concern that the contractor applicant did not have "long term potential." However, the record demonstrates that the statement was made with respect to the contractor's skill and ability and whether she would be able to go beyond the average performance she had displayed. Lawlor Dep., 61-63:6 at Joint Appx-1197-98. Furthermore, Plaintiff conceded in his deposition that Mr. Lawlor never inquired about or even knew the contractors age. Keuch Dep., 120:10-15 at Joint Appx.-0329. Defendants further contend that this is not a material fact in dispute.

     39.  Additionally, the promotion of Lauren Benner in her 20's replacing Daniela Shea

(then in her late 40's) as the Director of HR Services instead of Elaine McGee (then age 46) in

2017 ordered by Danial Lawler *(sic)* is further indicative of his age-based animus.  Plaintiff's

Aff., at ¶ 46 (JA 1271).

     **RESPONSE:**  Denied. By way of further response, the Court should disregard paragraph 39 of the CSMF as the only citation supporting paragraph 39 of the CSMF is reference to a self-serving affidavit from Plaintiff filed contemporaneously with his Opposition to Summary Judgment.  This portion of Plaintiff's affidavit is inadmissible and cannot be relied upon.[1]

     Plaintiff's affidavit fails to demonstrate how Mr. Keuch has personal knowledge of any of the assertions contained in CSMF paragraph 39. For example, it does not explain how Mr. Keuch is aware of Ms. Brenner's or Ms. Shea's age. Furthermore, it does not discuss how Mr. Keuch has personal knowledge of Mr. Lawlor's involvement in the purported selection of Ms. Shea over Ms. McGee. Lastly, it contains legal conclusions such as "further indicative of his age-based animus." Accordingly, because Plaintiff's only citation to support paragraph 39 of the CSMF is this inadmissible portion of his own affidavit, the court should ignore paragraph 39 of the CSMF. Defendants further contend that this is not a material fact in dispute.

     40.  In connection with the layoff process, Tal Zorman (mid 40's) was given a new

comprehensive job and title and was charged with the responsibility to affect the target 50%

---

[1] *See* relevant standard for admissibility of affidavits discussed in response to CSMF paragraph 35.

08/24/2022 SL1 1800657v3 030421.00713

downsizing of all senior worldwide Human Resources related cuts in headcount.  (Plaintiff's

Aff., at ¶ 49 (JA 1272).

    **RESPONSE:**  Admitted.

    41.  Plaintiff had no extensive work experience with Ms. Zorman prior to that time and

she had no supervisory responsibility for the Americas Total Rewards group, including Plaintiff

or Eduardo Nasi prior to the reduction in force.  Plaintiff's Aff., at ¶ 50 (JA 1272).

    **RESPONSE:**  Admitted.

    42.  Before making her decision regarding Plaintiff's continued employment,

Ms. Zorman had not reviewed Plaintiff's Job Position Statement or reviewed Eduardo's resume.

Plaintiff's Aff., at ¶51 (JA 1272).

    **RESPONSE:**  Denied. Zorman, Dep., 44:15-45:2 at Joint Appx-1175. Defendants further
contend that this is not a material fact in dispute.

    43.  Additionally, Ms. Zorman stated that she was not aware of Plaintiff's job history or

the honors, bonuses or accolades I had received as a Teva Senior Director of Total Rewards.

Plaintiff's Aff., at ¶ 52 (JA 1272).

    **RESPONSE:**  Denied. Zorman, Dep., 36:19-22 at Joint Appx.-1278. Defendants further
contend that this is not a material fact in dispute.

    44. As part of this investor relations effort to cut jobs in December 2017, Plaintiff

outlined several alternate proposals that would meet the expressed needs of Teva to affect the

reductions in force while not breaking the laws of the countries and states where Total Rewards

employees were employed.  Recognizing that all US terminated employees were eligible for

medical benefits under COBRA for 18 months following termination, it was apparent that

Plaintiff's Total Rewards team would be responsible for continuing to administer benefits for

over 22,000 participants.  Plaintiff's Aff., at ¶ 53 (JA 1272).

     **RESPONSE:**  Denied as stated.  It is admitted only that Plaintiff outlined several
proposals regarding the restructuring and reorganization of the Total Rewards Organization.
SMF at ¶55. Defendants further contend that this is not a material fact in dispute.

     45.  In that outline, Plaintiff even suggested the elimination of his Job Title and Teva's

moving him to a more elevated position in Total Rewards that he was well qualified to handle.

Plaintiff's Aff., at ¶53 (JA 1272).  Ms. Zorman merely thanked Plaintiff for his input, did not

respond to Plaintiff further and within days advised Eduardo that he would be taking on my

duties as the head of North American compensation and benefits.  Plaintiff's Aff., at ¶ 54

(JA 1272).

     **RESPONSE:**  Denied.  The assertions contained in paragraph 45 of the CSMF are
directly contradicted by Plaintiff's deposition testimony.  In Plaintiff's deposition he conceded
that one of the three proposals he communicated to Ms. Zorman resulted in the elimination of his
job and the termination of his employment, he stated:

> **Question**:  So there were at least three scenarios that you painted for
> Ms. Zorman to choose from?
>
> **Answer**:  That is correct.
>
> **Question**:  Okay.  And in all of the scenarios, Rohach stays on?
>
> **Answer**:  That is correct.
>
> **Question**:  And in one of the scenarios, you leave?
>
> **Answer**:  That is correct.

Joint Appx-0342. Plaintiff's contradictory testimony in this regard renders his affidavit
inadmissible pursuant to the "sham-affidavit" doctrine. Specifically, a district court may
disregard an affidavit at the summary judgment stage when it "contradicts earlier deposition
testimony without [a] satisfactory or plausible explanation." Daubert v. NRA Group, LLC, 861
F.3d 382, 391 (3d Cir. 2017). Accordingly, because Plaintiff's only citation to support paragraph
36 of the CSMF is his own "sham" affidavit, the court should ignore paragraph 45 of the CSMF.

     46.  Prior to any decisions being made, Plaintiff also advised Ms. Zorman, that Eduardo

had very little knowledge of compensation and benefits for persons employed by Teva in the

United States and Canada who comprised forty-three percent (43%) of all Teva employees

(JA 0858); Plaintiff's Aff., at ¶ 56 (JA 1273).

     **RESPONSE:**  Denied as stated. Defendants admit that Plaintiff claims to have shared his opinion of Mr. Nasi with Ms. Zorman. Defendants deny Plaintiff's characterization of Mr. Nasi's skill, ability or experience. Further, the reference to Joint Appx-0858 does not support Plaintiff's contention as that reference is to a page of TPI's filed 10-K report discussing the impact of currency fluctuations on results of operations.

     47.  Plaintiff was not aware that just days after he had communicated with her regarding

his retention or elevation, Ms. Zorman offered Plaintiff's job to Eduardo.  Plaintiff's Aff., at ¶ 57

(JA 1273).

     **RESPONSE:**  Denied.  Ms. Zorman did not offer Plaintiff's job to Mr. Nasi.  Plaintiff's job had been eliminated as a result of the RIF.  Following the RIF there no longer would be a Labor Grade 17, Head of Total Rewards Americas.  Instead, there would be a Head of Total Rewards North America, which would be a Labor Grade 15 position.  SMF at ¶¶64-70. Furthermore, Defendants do not have knowledge of Mr. Keuch's "awareness."

     48.  On January 2, 2018, Plaintiff was first advised that his employment would be

terminated without any opportunity to accept a demotion to carry on the job given to Eduardo

and carry on his North American compensation and benefits job duties that would be carried out

by Eduardo.  Plaintiff's Aff., at ¶ 58 (JA 1273).

     **RESPONSE:**  Admitted in part, denied in part.  Defendants admit that on January 2, 2018 Plaintiff was advised that his employment would be terminated.  Defendants deny that Mr. Nasi would carry out Plaintiff's North American compensation and benefits job duties. Mr. Keuch's previous job duties had been restructured and no longer existed.  SMF at ¶¶64-70.

     49.  Plaintiff's termination became effective March 18, 2018.  Plaintiff's Aff., at ¶59

(JA 1273).

     **RESPONSE:**  Admitted.

     50.  The Schedule C attached to the proffered Severance Agreement required in

accordance with the federal Older Workers Benefits Protect Act provided to Plaintiff at the end

of his employment (an Agreement that Plaintiff refused to sign on the basis of its insufficient and

restrictive terms) strongly suggests by the age distributions of terminated and retained employees in the relevant employment sector that age of the employees played a role in the termination and retention decisions that were targeted to be uniformly at 50% in the Human Resources areas:

### Terminated Employees

| Age Group | Number of Employees Not Retained | |
|---|---|---|
| Over the age of 60 | 2 | |
| Age 50-59 | 23 | |
| Age 40-49 | 9 | |
| **TOTAL OVER 40 YEARS** | | 34 |
| Age 30-39 | 19 | |
| Age 20-29 | 4 | |
| **TOTAL UNDER 40 YEARS** | | 23 |

### Retained Employees

| Age Group | Number of Employees Not Retained | |
|---|---|---|
| Over the age of 60 | 0 | |
| Age 50-59 | 18 | |
| Age 40-49 | 5 | |
| **TOTAL OVER 40 YEARS** | | 23 |
| Age 30-39 | 19 | |
| Age 20-29 | 4 | |
| **TOTAL UNDER 40 YEARS** | | 23 |

(¶ 61, JA 1274)

**RESPONSE:** Denied.  Schedule C is a written document which speaks for itself and Defendants deny Plaintiff's characterization of same. Joint Appx.-0263-0267.

51.  In addition to the apparent age-based imbalance, Plaintiff was not included in the schedule as an employee selected for termination, giving rise to a reasonable inference that the age-based imbalance in terminations further favored younger employees.  Plaintiff's Aff., at ¶ 60 (JA 1274).

**RESPONSE:** Denied.  Schedule C is a written document which speaks for itself and Defendants deny Plaintiff's characterization of same. Joint Appx.-0263-0267.

52. Demonstrating the ageist animus of TEVA, Mark Sabag, who set the goals for the company, stated that the guiding purpose for the restructuring was to "set ourselves what is the future . . . to move forward with our business".  Sabag Deposition, p 36:  6-12 (JA 1168).

**RESPONSE:**  Admitted in part, denied in part.  Defendants admit that Mr. Sabag stated "So it's very hard to generalize, but my direction to the entire organization was that we are following very basic principles.  First, we set for ourselves what is the future structure that we need to put in place in order for Teva to move forward in our business.  Sabag Dep., p. 36; Joint Appx.-1168.  Defendants deny that this demonstrates an ageist view.

53. Mr. Sabag also conceded that the total drop in US employees only went from 60% to 55% of worldwide employment, a reduction far less than the projection for a 50% reduction in force.  Sabag Deposition, p. 41:19-23 (JA 1689).

**RESPONSE:**  Denied.  The cited testimony refers to Teva's revenue not headcount. Sabag Dep., p. 41:19-23; Joint Appx.-1168.

54. High level Human Resources employee Elaine McGee contradicted the testimony of Eduardo Nasi of rumors of bankruptcy, stating that she and "everybody I know was surprised" by the corporate announce of downsizing.  McGee Deposition, p. 20:9-20 (JA 1200)

**RESPONSE:**  Defendants admit that Ms. McGee testified that she was surprised by the downsizing. Defendants deny that this contradicts Mr. Nasi's testimony regarding bankruptcy. Defendants were in a serious and precarious financial position in which bankruptcy was a legitimate concern.  SMF at ¶¶30-33.  Furthermore, Plaintiff concedes in his Response Brief that he has "not posited that the reduction in force should not have been undertaken."  Pl. Resp. Br., p. 11.  Therefore, because Plaintiff admits that the reduction in force was proper it is wholly irrelevant what the precise "impetus for the reduction in force was."  The parties agree that Defendants had financial problems and that a reduction in force was necessary. CSMF at ¶¶20-23.

55. Ms. McGee further confirmed that no skill-based analytics were provided to supervisors to guide them in making the termination decisions (McGee Deposition, p. 26:  8-13 (JA 1201)) and that the company did not engage in its usual analysis of whether there was an age impact from the reduction in force.  McGee Deposition, p. 23:4-19 (JA 1202).

**RESPONSE:**  Denied. The cited testimony of Ms. McGee states that she was not part of any discussion of a skill based assessment, it does not state that no such assessment was

20

completed. McGee Dep, 26:8-13 at Joint Appx.-1201) Furthermore, the additional cited testimony of Ms. McGee states that she has not personally completed or reviewed any documentation relating to analytics of the age impact of the RIF. The cited testimony does not state that no such analysis was performed. McGee Dep., 23:4-19 at Joint Appx-1202.

56.  Ms. McGee also confirmed the view that employees were usually allowed to remain during reductions in force and take a lower-level position.  McGee Deposition, pp. 23:18-28:  14 (JA 1202).

**RESPONSE:**  Denied.  The cited testimony of Ms. McGee states that she is aware of possibilities of demotions but that it does not apply in every situation.  McGee Dep., 28:4-14; Joint Appx-1202.  Additionally, Ms. Zorman testified that demotions of any kind were highly disfavored through the process.  Zorman Dep., 85:11-86:17 at Joint Appx.-0296-97.

57.  Plaintiff was replaced by Eduardo Nasi, a South American direct report of Plaintiff's who was and is 27 years younger (Date of Birth:  July 22, 1980) and who was 37 years old at the time.  Plaintiff's Aff., at ¶ 62 (JA 1274).

**RESPONSE:**  Denied.  Mr. Nasi did not replace Plaintiff.  Plaintiff's job had been eliminated as a result of the RIF.  Following the RIF there no longer was a Labor Grade 17, Head of Total Rewards Americas.  Instead, there was a Head of Total Rewards North America, which would be a Labor Grade 15 position.  SMF at ¶¶64-70.  Defendants admit that Mr. Nasi is South American with a date of birth of July 22, 1980.

58.  Eduardo had substantially less experience and less ability to lead a diverse Total Rewards workforce, especially during a time when complex severance benefit issues would be needed to be resolved. Plaintiff's Aff., at ¶ 63 (JA 1274).

**RESPONSE:**  Denied. By way of further response, the Court should disregard paragraph 58 of the CSMF as the only citation supporting paragraph 58 of the CSMF is reference to paragraph 63 of a self-serving affidavit from Plaintiff filed contemporaneously with his Opposition to Summary Judgment.  This portion of Plaintiff's affidavit is inadmissible and cannot be relied upon.[2]

Specifically, Plaintiff's assertion that Mr. Nasi has less "ability" to lead a Total Rewards workforce is his subjective and self-serving opinion.

---

[2] *See* relevant standard for admissibility of affidavits discussed in response to CSMF paragraph 35.

59. Eduardo had little or no experience with the complex controlling laws that govern employee compensation and benefits in the United States and Canada, nor had he ever guided the company through a large reduction in force relating to the severance payments due to persons employed in the United States and Canada and governed by the unique and complex laws in each of those countries.  In fact, his total professional experience before he joined Teva in 2014 dealt with the laws governing compensation and benefits in South American companies.  Plaintiff's Aff., at ¶ 64 (JA 1274).

**RESPONSE:**  Denied as stated. Defendants admit that Mr. Nasi's prior experience in compensation and benefits related to South American countries. Defendants deny Plaintiff's characterizations of same. Defendants further contend that this is not a material fact in dispute.

60. Eduardo also had never had any experience in handling closure matters relating to the WARN law in the United States and had no experience in dealing with claims of discrimination, equal pay or overtime under the laws of the United States.  Plaintiff's Aff., at ¶ 65 (JA 1274)

**RESPONSE:**  Denied as stated. Defendants admit that Mr. Nasi's prior experience in compensation and benefits related to South American countries. Defendants deny Plaintiff's characterizations of same. Defendants further contend that this is not a material fact in dispute.

61. Moreover, when he assumed Plaintiff's title of Senior Director and job responsibilities at the discretion of TPI, Israeli-based Tal Zorman (who also had little experience in Total Rewards for the United States and Canada), her decision to promote him into Plaintiff's position was apparently guided by only the input of Daniel Lawler.  She had not questioned Eduardo regarding his abilities, nor had she reviewed his resume reciting his lack of experience regarding issues that would confront him in his new role.  Plaintiff's Aff., at ¶ 66 (JA 1274).

**RESPONSE:**  Denied. By way of further response, the Court should disregard paragraph 61 of the CSMF as the only citation supporting paragraph 61 of the CSMF is reference to paragraph 66 of a self-serving affidavit from Plaintiff filed contemporaneously with his Opposition to Summary Judgment.  This portion of Plaintiff's affidavit is inadmissible and

cannot be relied upon.[3] For example, paragraph 66 of Plaintiff's affidavit demonstrates Plaintiff's lack of personal knowledge. Specifically, it states "[Ms. Zorman's] decision to promote [Mr. Nasi] into Plaintiff's position was ***apparently*** guided by only the input of Daniel Lawler." (emphasis added). Plaintiff thus concedes in his affidavit that he has no direct or personal knowledge of what Ms. Zorman considered and is instead providing his opinion and conjecture. This is precisely the type of second hand evidence that rule 56(c)(4) sought to prevent. Accordingly, the Court should disregard paragraph 61 of the CSMF.

62.   Demonstrating that he needed Plaintiff's help and that of others to handle the work, Plaintiff was asked to stay aboard for weeks after he was advised of his termination to help Eduardo with what would have been Plaintiff's job duties if he had been retained.  The usual policy is to have terminated employees leave the premises on the same day that they were informed of their termination.  Plaintiff's Aff., at ¶ 67 (JA 1274).

**RESPONSE:**  Denied as stated.  Defendants admit that Teva asked Plaintiff to remain in his role for a brief period of time to help with transition of responsibilities.  Defendants deny that such request was contrary to any stated policy or that it evidences that Mr. Nasi needed Plaintiff's help to handle the work. Defendants further contend that this is not a material fact in dispute.

63.   Following Plaintiff's departure, Teva legal was evidently concerned about Mr. Nasi's depth of knowledge regarding the laws of the United States related to compensation and insisted that he solicit Miriam Weinstein (who had voluntarily left Teva for another job in February because she was advised that she would be demoted as part of the reduction in force) to accompany him to a federal agency audit proceeding regarding compensation issues.  At the time Ms. Weinstein, who reported to Plaintiff as a labor grade 15 Director of Compensation for the Americas while she was employed by Teva, was not employed by Teva and was asked to volunteer her time to aid Mr. Nasi to assure that the matter would be handled properly. Plaintiff's Aff., at ¶ 68 (JA 1274).

**RESPONSE:**  Denied as stated.  Defendants admit that prior to Mr. Nasi becoming the Head of Total Rewards-North America, there was an Office of Federal Contract Compliance

---

[3] *See* relevant standard for admissibility of affidavits discussed in response to CSMF paragraph 35.

Programs ("OFCCP") audit occurring.  In July of 2018, the OFCCP auditor requested an interview with Teva.  Teva's legal department asked Ms. Weinstein to attend as she had knowledge relating to the audit.  Mr. Nasi, however, answered all of the auditor's questions and Ms. Weinstein did not participate in the interview.  Defendants deny that Ms. Weinstein's participation evidenced a "concern" regarding Mr. Nasi's depth of knowledge regarding the laws of the United States. Nasi Dep., 75:12-76:10 at Joint Appx.-1162. Defendants deny that Ms. Weinstein was advised that she would be demoted as part of the reduction in force. Defendants further contend that this is not a material fact in dispute.

64.  Despite his inexperience regarding Plaintiff's job duties that he inherited when

Plaintiff was fired, Eduardo has received raises and promotions.  Plaintiff's Aff., at ¶ 69

(JA 1274).

**RESPONSE:**  Denied as stated. Mr. Nasi did not "inherit" Plaintiff's job duties. Plaintiff's job had been eliminated as a result of the RIF.  Following the RIF there no longer was a Labor Grade 17, Head of Total Rewards Americas.  Instead, there was a Head of Total Rewards North America, which would be a Labor Grade 15 position.  SMF at ¶¶64-70 Defendants admit only that Mr. Nasi has done an acceptable job since becoming the Head of Total Rewards-North America and has received raises and promotions commensurate with his performance.

65.  The governing HR policy at Teva required Teva to offer an employee who was

advised that he or she would be terminated from their employment to be retained at a one-step

lower job level position.  Mr. Nasi was a job grade 15 when he accepted the position to

Plaintiff's position but was promptly promoted to job level 16 and became entitled to receive the

same bonuses and benefits as Plaintiff.  But for age discrimination guiding the process, the

company could have just allowed Plaintiff to remain in his position instead of giving his job

duties to Mr. Nasi who was promptly promoted to a job level 16, a position that Plaintiff would

have gladly accepted.  Plaintiff's Aff., at ¶ 70 (JA 1274).

**RESPONSE:**  Denied. Plaintiff's job prior to the RIF was a Labor Grade 17 position, titled Head of Total Rewards, Americas to which his base compensation was approximately $285,000.  At the time of the RIF, Mr. Nasi was a Labor Grade 15 employee and became the Head of Total Rewards, North America.  Even following Mr. Nasi's elevation to a Labor Grade 16 position, his base salary rose to only $195,000.  SMF at ¶¶9, 85, 97-98.  Defendants deny that there ever was a governing HR policy at Teva that required Teva to offer an employee who was advised that he or she would be terminated from their employment to be retained at a one-step lower job level position.

24

By way of further response, the Court should disregard paragraph 65 of the CSMF as the only citation supporting paragraph 65 of the CSMF is reference to paragraph 70 of a self-serving affidavit from Plaintiff filed contemporaneously with his Opposition to Summary Judgment. This portion of Plaintiff's affidavit is inadmissible and cannot be relied upon.[4] Specifically, Plaintiff's affidavit at paragraph 70 contains the legal conclusion "But for age discrimination guiding the process."

66.   Because of the substantial raise Eduardo received after he took over Plaintiff's job duties and title, the frequent travel requirements that caused him to travel to the company headquarters in Pennsylvania twice a month from his home in Florida so Plaintiff could train him and the costly relocation costs in having him move his residence and family from Southern Florida to a home near the company's headquarters, Eduardo's insertion in Plaintiff's position as the Senior Director of North American Total Reward and taking over all of Plaintiff's job duties was more costly to Teva than keeping Plaintiff in that same position.  Plaintiff's Aff., at ¶ 71 (JA 1274).

**RESPONSE:**  Denied. By way of further response, the Court should disregard paragraph 66 of the CSMF as the only citation supporting paragraph 66 of the CSMF is reference to paragraph 71 of a self-serving affidavit from Plaintiff filed contemporaneously with his Opposition to Summary Judgment.  This portion of Plaintiff's affidavit is inadmissible and cannot be relied upon.[5] Specifically, Plaintiff provides no facts to demonstrate what Mr. Nasi's travel expenses were, the frequency of those travel expenses or the amount of any relocation expenses. Similarly, Plaintiff provides the Court with no evidence to demonstrate how he would have personal knowledge of any of these items. Accordingly, the Court should disregard paragraph 66 of the CSMF. Furthermore, even if Plaintiff's assertion were to be accepted at face value and the travel costs and relocation costs equaled $90,000 that would simply mean that in year one Teva did not realize any savings from retaining Mr. Nasi.  Labor costs, however, are not stagnant.  Rather, that $90,000 difference is a per year figure that over the last five years has resulted in savings nearing a half a million dollars.

---

[4] *See* relevant standard for admissibility of affidavits discussed in response to CSMF paragraph 35.
[5] *See* relevant standard for admissibility of affidavits discussed in response to CSMF paragraph 35.

Respectfully submitted,

**STEVENS & LEE, P.C.**

Dated:  August 24, 2022

By: _/s/ Larry J. Rappoport_
Larry J. Rappoport, Esquire
Brandon S. Shemtob, Esquire
STEVENS & LEE
A PA Professional Corporation
1500 Market Street, East Tower, St.1800
Philadelphia, PA 19102
Phone:  (215) 496-3839
Fax:      (610) 371-7977
larry.rappoport@stevenslee.com
brandon.shemtob@stevenslee.com

_Attorneys for Defendants_

08/24/2022 SL1 1800657v3 030421.00713