**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (JUDGE JOHN M. GALLAGHER) |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| And TEVA PHARMACEUTICAL | : | (Electronically Filed) |
| INDUSTRIES, Ltd., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**PRETRIAL MEMORANDUM OF DEFENDANTS**
**TEVA PHARMACEUTICALS USA, INC.  AND**
**TEVA PHARMACEUTICAL INDUSTRIES, LTD.**

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") and Defendant Teva

Pharmaceutical Industries, Ltd. ("TPI" and collectively with TUSA the "Defendants" or "Teva"),

by and through its undersigned legal counsel, hereby submits this Pretrial Memorandum pursuant

to Local Rule of Civil Procedure 16.1(c) and this Court's Policies and Procedures, consistent

with the Scheduling Order dated September 21, 2022.  *See* Dkt. 68. Teva reserves the right to

amend and/or supplement this Pretrial Memorandum and all attachments thereto, including, but

not limited to, upon any motions *in limine* filed by the parties or if the court otherwise makes

substantive rulings in response to the Parties' Pretrial Memoranda.

**A.  Brief Statement of the Nature of the Action and Basis for Jurisdiction**

Plaintiff, Randolph Keuch ("Plaintiff" or "Mr. Keuch") claims that Teva, his former

employer severed his employment during a global reduction because of his age.

Plaintiff claims in his Amended Complaint are: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA").[1, 2]

This Court has federal question jurisdiction over Plaintiffs claims under the ADEA, pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs claims under the PHRA, pursuant to 28 U.S.C. § 1367.

## B.  Counterstatement of Facts

Despite the local rules clear text that the parties should omit "pejorative characterizations, hyperbole and conclusory generalizations," Plaintiff's statement of the facts is riddled with such language. Instead of focusing on the relevant issues of the case, Plaintiff's statement detours to discuss extraneous and irrelevant matters such as unrelated settlement amounts that Teva paid to the Department of Justice and Securities and Exchange Commission nearly a year prior to Plaintiff's separation. Because Plaintiff's recitation of the facts does not accurately portray the present dispute before the Court, Defendants provide a more fulsome description of the relevant facts.

---

[1]  Mr. Keuch filed an initial complaint (the "Initial Complaint") on November 19, 2019 (ECF #1). In his Initial Complaint, Mr. Keuch named Ron Yaniv and Kare Schultz as co-defendants. On August 21, 2020, Defendants filed a Partial Motion to Dismiss Ron Yaniv and Kare Schultz from the Action for lack of personal jurisdiction.(ECF #25). The Court agreed with Defendants' position and on November 23, 2020 dismissed Ron Yaniv and Kare Schultz from the case. (ECF #30). On March 15, 2021 Plaintiff filed the Amended Complaint (ECF #32).

[2]  During the course of discovery, Mr. Keuch agreed that there was insufficient evidence to support the class and collective based allegations alleged in the Amended Complaint. Accordingly, on November 17, 2021, the parties entered into a Stipulation, approved by the Court, in which Mr. Keuch voluntarily dismissed, with prejudice, all class or collective based claims against the Defendants arising out of the allegations made in the Amended Complaint. The parties thus agreed and stipulated that the matter would proceed as a single plaintiff case. (ECF #40).

Defendant, Teva Pharmaceutical Industries, Ltd. is a global pharmaceutical company, marketing products from a wide range of therapeutic areas including, but not limited to, analgesic, anti-infective, cardiovascular, oncology, dermatological and anti-inflammatory, both branded and generic.  Defendant, Teva Pharmaceuticals USA, Inc. is a wholly-owned subsidiary of Teva Pharmaceutical Industries, Ltd. located in Parsippany, New Jersey and previously headquartered in North Wales, Pennsylvania.  Together these two entities will be referred to as "Teva."

Plaintiff was born on May 27, 1954.  In January of 2014, Teva hired Plaintiff to become the Senior Director of Total Rewards for the Americas.  He was 59.5 years old when hired by Teva.  Total Rewards is part of Teva's Human Resources organization and responsible for making sure employees are properly compensated and provided various employee benefits such as medical, dental, and vision care, life insurance, and other similar offerings.

Teva utilizes a numerical grading scale to determine the salary range for each employee.  Teva's numerical job grading system effectively ranges from 1-20 in the United States (1 being the lowest job grade and 20 the highest in the United States).  When Plaintiff was hired as Senior Director and the Head of Total Rewards-Americas he was graded as a Labor Grade 17.  Plaintiff remained a Labor Grade 17 throughout his entire Teva employment.  His last base salary was approximately $285,000.

When Teva hired Plaintiff in 2014, he was offered a salary of $250,000 per year and was also provided a signing bonus of $50,000 paid to him one year after his start date.  In addition, Plaintiff was eligible to receive bonuses and to participate in other incentive plans.  On August 6, 2015, Teva provided Plaintiff with a base salary increase and retention bonus.

3

Specifically, Teva increased Plaintiff's salary to $280,000 and provided him with a $60,000 retention bonus.  He was 61 years old at this time.  The retention bonus was paid in two installments.  Each installment was $30,000 and contingent on Plaintiff remaining employed at Teva on the two benchmark dates.  The first benchmark date was August 6, 2016 and the second paid one year later on August 6, 2017.  Plaintiff was 63 years old when he received the second installment of the retention bonus.

During the relevant portions of Plaintiff's employment, the Total Rewards global function was managed by Ron Yaniv (Labor Grade 19 – Senior Vice President) whose offices were in Petah Tikvah, Israel.  Reporting to Mr. Yaniv were four different Senior Directors—each of whom were designated as a Labor Grade 17 with responsibility for the respective geographic areas—(1) Americas (Plaintiff); (2) Europe; (3) Asia-Pacific; and (4) Israel.

Kare Schultz became TPI's President and CEO in September 2017.  At that time, Teva was on the brink of bankruptcy.  Almost immediately after becoming President and CEO, Mr. Schultz announced that Teva would undergo a large scale reduction of its global workforce. Teva announced that the Company would be laying off at least 25% of its global workforce.  As a result, approximately 14,000 employees were laid off in 2018 and 2019.

Tal Zorman, who was brand new to her role as the Global Head of Total Rewards, having been retained as a Teva employee and placed in a new position as part of the consolidation of positions by the global restructuring, was responsible for selecting who would be included in the reduction as it relates to the Total Rewards Organization.  It is important to note that these were uncertain and hectic times at Teva and Ms. Zorman needed to make these decisions quickly. Bias could not enter her decision making process because frankly speaking she did not know the individuals well enough to be biased one way or the other.  Ms. Zorman was responsible for

reducing the headcount within the Total Rewards organization by at least 50%.  Ms. Zorman began her task of reaching the 50% reduction goal by first designing the structure of the now downsized organization.  As part of the restructuring, the geographic reporting structures were reorganized and Latin America was removed from the Americas and placed in the "Growth Markets" division.  Moving forward there would be three (rather than four) Regional Heads of Total Rewards.  There would be one head for North America, another for Europe, and one for "Growth Markets"—which now combined Asia (including India), Israel and Latin America.

In early December 2017, Ms. Zorman explained to Mr. Keuch that a 50% reduction to headcount would be necessary in the North America Total Rewards organization.  In furtherance of this goal, Ms. Zorman asked Mr. Keuch to prepare a report outlining the bare bones staffing recommendation for his team.  On December 14, 2017, Mr. Keuch sent Ms. Zorman an email in which he included options for the restructuring of his team.  Notably, one of these options included the elimination of his own role.  Ms. Zorman thanked Mr. Keuch for his proposals and began to evaluate her options.

Ultimately, Ms. Zorman decided that the new Head of Total Rewards for North America would have considerably less responsibility than what Mr. Keuch had responsibility for as Head of Total Rewards for the Americas.  First, the new organizational head would no longer be responsible for Latin America.  Second, the workforce in North America would become substantially smaller with and, after the RIF was completed, the Head of Total Rewards for the Americas would have far fewer direct reports than Mr. Keuch had pre-restructuring.  Finally, the position would become almost entirely operational as opposed to strategic or design- based, which was what Mr. Keuch had been largely responsible for at Teva.  Given Teva's poor financial footing, it was likely Teva would not be in a position to expand or design new benefit

5

programs in the near future.  Rather, the new leader's main objective would be to operationally maintain the benefits already offered and make sure employees get paid.  Accordingly, Ms. Zorman determined that the new Head of Total Rewards for North America should be at a Director level position and be graded as a Labor Grade 15.  As Mr. Keuch was a Senior Director, Labor Grade 17 and had requested that he be considered a Vice President Labor Grade 18, Ms. Zorman believed that it was obvious that Mr. Keuch was not the best candidate for this new, diminished role.  Bear in mind that Ms. Zorman was making lots of decisions in a roughly thirty day time period in order to meet the new CEO's time table and did not have the opportunity to analyze each and every decision as she might under more favorable circumstances.

Ms. Zorman began to consider who should fill this Director level, Labor Grade 15 role. She considered the professional experience, leadership, and management capabilities of various individuals who had been a part of the previous organization lead by Mr. Keuch.  Ms. Zorman identified Mr. Nasi to become the next Head of Total Rewards for North America.  Prior to making this decision, however, Ms. Zorman interviewed Mr. Nasi, spoke with Mr. Nasi's supervisor in Latin America, considered his prior performance reviews, and in so doing consistently received positive references regarding Mr. Nasi's professional and leadership maturity.  Ms. Zorman also discussed the matter with her colleague, Daniel Lawlor, who was the head of Human Resources for North America, and she received the required approval from Mark Sabag.  The age of Mr. Nasi, or for that matter Mr. Keuch, was not made known, nor discussed. Bear in mind that Ms. Zorman was new to her role.  She had never managed Total Rewards.  She knew, but barely knew, Plaintiff or Mr. Nasi.  Her responsibility rests more in managing North America.  She selected someone who was a director and who worked under a director.  He was viewed as being operational.  This was not a difficult business driven call and not age-biased.

On January 2, 2018, Teva informed Plaintiff that he would be included in the RIF. Plaintiff's last day of actual work at Teva was on or about February 18, 2018, although he continued to be paid by and receive full benefits from Teva through March 18, 2018.  At the time of his separation, Plaintiff was offered a severance package conditioned on his execution of a release (as were all U.S. Teva employees who were separated in connection with the global RIF). Plaintiff elected not to sign the separation agreement and accordingly did not receive severance payments from Teva.

Following Plaintiff's separation of employment, Defendants began a site consolidation in the United States as part of the need to reduce costs.  This resulted in the relocation of TUSA's headquarters from North Wales, Pennsylvania to Parsippany, New Jersey.  As part of this consolidation, Mr. Nasi took on additional responsibility which in part resulted in his position being upgraded to a Labor Grade 16.

## C.  **Monetary Damages Claimed**

Defendants do not seek any monetary damages in this matter.  Defendants, however, reserve the right to file a Bill of Costs and/or Fee Petition should the matter be resolved in Defendants favor.

## D.  **Defendants Witness List**

Defendants may call the following witnesses to testify at trial, depending on Plaintiff's case-in-chief.  Defendants expressly reserve the right to call any additional witnesses identified by Plaintiff in his Pretrial Memorandum (or identified to the satisfaction of this Court by any other means) and incorporates them by reference as if set forth fully herein:

1.  Plaintiff Randolph Keuch (In-Person)
    7 Summer Dunes Lane, Isle of Palms, South Carolina, 29451
    c/o Alan Epstein, Spector Gadon Rosen Vinci P.C.

2. Mark Sabag (Via Prerecorded Video Deposition Testimony)
c/o Larry J. Rappoport, Esq., Stevens & Lee

3. Eduardo Nasi (In-Person)
c/o Larry J. Rappoport, Esq., Stevens & Lee

4. Daniel Lawlor (In-Person)
c/o Larry J. Rappoport, Esq., Stevens & Lee

5. Tal Zorman (In-Person)
c/o Larry J. Rappoport, Esq., Stevens & Lee

**E.  <u>Schedule of Exhibits</u>**

Please see **<u>Appendix A</u>** for a schedule of Defendants Exhibits.

**F.  <u>Total Number of Days (Per Side) Required for Trial</u>**

The Parties anticipate that apart from jury selection, Plaintiff and Defendant will each require one (1) to two (2) days to present their respective claims and defenses, for an anticipated duration of two (2) to four (4) days at trial.

**G.  <u>Special Comments Regarding Legal Issues, Stipulations, Amendments of Pleadings, or Other Appropriate Matters</u>**

Defendants have no other special comments regarding legal issues, stipulations, amendments of pleadings, or other appropriate matters at this time.

**H.  <u>Stipulation of Counsel</u>**

Pursuant to Section III(f) of this Court's published policies and procedures, counsel for Defendants contacted Plaintiff's counsel and provided Plaintiff's counsel with proposed stipulations for Plaintiff's counsel's review and comment.  These stipulations included items that are entirely undisputed (i.e. "Plaintiff was born on May 27, 1954") as well as items that could be beneficial to Plaintiff's case (i.e. "Plaintiff exhausted his administrative remedies prior to the filing of this lawsuit with respect to the allegations made in his federal court complaint.") On October 20, 2022, counsel for the Plaintiff stated on a telephone call that he would not agree to

any of the stipulations proposed by Defendants because he did not have to stipulate to anything.

For the Court's reference, a copy of the proposed stipulations are included in **<u>Appendix B.</u>**

## I.  Statements of Objection:

### a.  To Admissibility of any exhibit based on authenticity; and (b) To Admissibility of any evidence expected to be offered for any reason (except relevancy).

| Exhibit # | Description | Objection & Authority |
|---|---|---|
| 1 | Amended Complaint | Hearsay.  Plaintiff's Exhibit 1 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Pleadings, while generally available to the public, are *not* evidence admitted at trial, nor are they given to the jury /fact finder for consideration.  The mere inclusion of facts or arguments in a pleading does not constitute or justify their admission into evidence.  *See Pittsburgh League of Young Voters Educ.  Fund v. Port Auth. of Allegheny Cnty.*, 2008 WL 5115043, at *3 (W.D. Pa. Dec. 4, 2008); *Bowers v. Garfield*, 382 F. Supp. 503, 509 n.8 (E.D. Pa. 1974) (under Pennsylvania practice, although pleadings determine the issues, they are primarily not evidence for any purpose unless made so by statute). |
| 2 | Defendant TEVA Pharmaceuticals USA, Inc.'s Answer to Plaintiff's Amended Complaint | Hearsay.  Plaintiff's Exhibit 2 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Pleadings, while generally available to the public, are *not* evidence admitted at trial, nor are they given to the jury /fact finder for consideration.  The mere inclusion of facts or arguments in a pleading does not constitute or justify their admission into evidence.  *See Pittsburgh League of Young Voters Educ.  Fund v. Port Auth. of Allegheny Cnty.*, 2008 WL 5115043, at *3 (W.D. Pa. Dec. 4, 2008); *Bowers v. Garfield*, 382 F. Supp. 503, 509 n.8 (E.D. Pa. 1974) (under Pennsylvania practice, although pleadings determine the issues, they are primarily not evidence for any purpose unless made so by statute). |

| 3 | Defendant TEVA Pharmaceuticals Industries, LTD's Answer to Plaintiff's Amended Complaint | Hearsay.  Plaintiff's Exhibit 3 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Pleadings, while generally available to the public, are *not* evidence admitted at trial, nor are they given to the jury /fact finder for consideration. The mere inclusion of facts or arguments in a pleading does not constitute or justify their admission into evidence.  *See Pittsburgh League of Young Voters Educ.  Fund v. Port Auth. of Allegheny Cnty.*, 2008 WL 5115043, at *3 (W.D. Pa. Dec. 4, 2008); *Bowers v. Garfield*, 382 F. Supp. 503, 509 n.8 (E.D. Pa. 1974) (under Pennsylvania practice, although pleadings determine the issues, they are primarily not evidence for any purpose unless made so by statute). |
| 4 | Notice of Right to Sue | Hearsay.  Plaintiff's Exhibit 4 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Pleadings, while generally available to the public, are *not* evidence admitted at trial, nor are they given to the jury /fact finder for consideration. The mere inclusion of facts or arguments in a pleading does not constitute or justify their admission into evidence.  *See Pittsburgh League of Young Voters Educ.  Fund v. Port Auth. of Allegheny Cnty.*, 2008 WL 5115043, at *3 (W.D. Pa. Dec. 4, 2008); *Bowers v. Garfield*, 382 F. Supp. 503, 509 n.8 (E.D. Pa. 1974) (under Pennsylvania practice, although pleadings determine the issues, they are primarily not evidence for any purpose unless made so by statute). |
| 5 | Plaintiff's Answers to Defendant's First Set of Interrogatories | Hearsay.  Plaintiff's Exhibit 5 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  *See Bland v. PNC Bank, N.A.*, 2016 WL 10520048, at *6-8 (W.D. Pa. Dec. 30, 2016) *and companion Order at Bland v. PNC Bank, N.A.*, 2016 WL 10536026, at *3-4 (W.D. Pa. Dec. 30, 2016).  Pursuant to Federal Rule of Civil Procedure 33, answers to interrogatories may be used at trial to the extent allowed by the federal rules of evidence.  Here, the hearsay rules would apply to preclude the admission Plaintiff's Exhibit 5. *Id*. Moreover, while the answers to |

| | | |
|---|---|---|
| | | interrogatories may be used at trial for varying purposes subject to the rules of evidence, there is no basis for admitting the answers as exhibits nor providing the entirety of such answers to the jury. |
| 6 | Plaintiff's Counterstatement of Material Facts in Support of His Response in Opposition to Defendant's Motion for Summary Judgment | Hearsay.  Plaintiff's Exhibit 6 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Pleadings, while generally available to the public, are *not* evidence admitted at trial, nor are they given to the jury /fact finder for consideration. The mere inclusion of facts or arguments in a pleading does not constitute or justify their admission into evidence.  *See Pittsburgh League of Young Voters Educ.  Fund v. Port Auth. of Allegheny Cnty.*, 2008 WL 5115043, at *3 (W.D. Pa. Dec. 4, 2008); *Bowers v. Garfield*, 382 F. Supp. 503, 509 n.8 (E.D. Pa. 1974) (under Pennsylvania practice, although pleadings determine the issues, they are primarily not evidence for any purpose unless made so by statute). |
| 7 | Defendant's Response to Plaintiff's Counterstatement of Material Facts in Further Support of Defendant's Motion for Summary Judgement | Hearsay.  Plaintiff's Exhibit 7 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Pleadings, while generally available to the public, are *not* evidence admitted at trial, nor are they given to the jury /fact finder for consideration. The mere inclusion of facts or arguments in a pleading does not constitute or justify their admission into evidence.  *See Pittsburgh League of Young Voters Educ.  Fund v. Port Auth. of Allegheny Cnty.*, 2008 WL 5115043, at *3 (W.D. Pa. Dec. 4, 2008); *Bowers v. Garfield*, 382 F. Supp. 503, 509 n.8 (E.D. Pa. 1974) (under Pennsylvania practice, although pleadings determine the issues, they are primarily not evidence for any purpose unless made so by statute). |
| 8 | Plaintiff's Response to Defendants' Statement of Material Facts in Support of its Response to defendant's Motion for Summary Judgment on all Counts of Plaintiff's Complaint | Hearsay.  Plaintiff's Exhibit 8 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Pleadings, while generally available to the public, are *not* evidence admitted at trial, nor are they given to the jury /fact finder for consideration. The mere inclusion of facts or arguments in a pleading does not constitute or justify their |

| | | |
|---|---|---|
| | | admission into evidence. *See Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 2008 WL 5115043, at *3 (W.D. Pa. Dec. 4, 2008); *Bowers v. Garfield*, 382 F. Supp. 503, 509 n.8 (E.D. Pa. 1974) (under Pennsylvania practice, although pleadings determine the issues, they are primarily not evidence for any purpose unless made so by statute). |
| 9 | Deposition of Eduardo Nasi | Hearsay.  Plaintiff's Exhibit 9 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Plaintiff's Exhibit 9 also violates the Court's Order regarding the Pretrial Memorandum.  That Order states, with regard to the identification of deposition testimony, that only specific citations to the deposition transcript be identified for use during each respective party's case-in-chief.  This is to enable the opposing party to identify counter-designations.  Identification of the entire deposition transcript is violative of the Court's Order and is improper under the rules of evidence which, pursuant to Rule 32, provide only for the use of deposition transcripts at trial, not the admittance of such transcripts as trial exhibits to be provided to jury/fact finder. |
| 10 | Deposition of Randolph W. Keuch | Hearsay.  Plaintiff's Exhibit 10 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Plaintiff's Exhibit 10 also violates the Court's Order regarding the Pretrial Memorandum.  That Order states, with regard to the identification of deposition testimony, that only specific citations to the deposition transcript be identified for use during each respective party's case-in-chief.  This is to enable the opposing party to identify counter-designations.  Identification of the entire deposition transcript is violative of the Court's Order and is improper under the rules of evidence which, pursuant to Rule 32, provide only for the use of deposition transcripts at trial, not the admittance of such transcripts as trial exhibits to be provided to jury/fact finder. |

| 11 | Deposition of Daniel Lawler | Hearsay.  Plaintiff's Exhibit 11 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Plaintiff's Exhibit 11 also violates the Court's Order regarding the Pretrial Memorandum. That Order states, with regard to the identification of deposition testimony, that only specific citations to the deposition transcript be identified for use during each respective party's case-in-chief.  This is to enable the opposing party to identify counter-designations.  Identification of the entire deposition transcript is violative of the Court's Order and is improper under the rules of evidence which, pursuant to Rule 32, provide only for the use of deposition transcripts at trial, not the admittance of such transcripts as trial exhibits to be provided to jury/fact finder. |
| 12 | Deposition of Tal Zorman | Hearsay.  Plaintiff's Exhibit 12 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Plaintiff's Exhibit 12 also violates the Court's Order regarding the Pretrial Memorandum. That Order states, with regard to the identification of deposition testimony, that only specific citations to the deposition transcript be identified for use during each respective party's case-in-chief.  This is to enable the opposing party to identify counter-designations.  Identification of the entire deposition transcript is violative of the Court's Order and is improper under the rules of evidence which, pursuant to Rule 32, provide only for the use of deposition transcripts at trial, not the admittance of such transcripts as trial exhibits to be provided to jury/fact finder. |
| 13 | Deposition of Elaine Mcgee | Hearsay.  Plaintiff's Exhibit 13 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Plaintiff's Exhibit 13 also violates the Court's Order regarding the Pretrial Memorandum. That Order states, with regard to the identification of deposition testimony, that only specific citations to the deposition transcript be identified for use during each respective party's case-in-chief.  This is to enable the opposing party to identify counter-designations.  Identification of the entire deposition transcript is violative of the Court's Order and is improper under the rules of evidence which, |

| | | pursuant to Rule 32, provide only for the use of deposition transcripts at trial, not the admittance of such transcripts as trial exhibits to be provided to jury/fact finder. |
|---|---|---|
| 14 | Deposition of Mark Sabag | Hearsay.  Plaintiff's Exhibit 14 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  Plaintiff's Exhibit 14 also violates the Court's Order regarding the Pretrial Memorandum. That Order states, with regard to the identification of deposition testimony, that only specific citations to the deposition transcript be identified for use during each respective party's case-in-chief.  This is to enable the opposing party to identify counter-designations.  Identification of the entire deposition transcript is violative of the Court's Order and is improper under the rules of evidence which, pursuant to Rule 32, provide only for the use of deposition transcripts at trial, not the admittance of such transcripts as trial exhibits to be provided to jury/fact finder. |
| 16 | TSUA Employee Proprietary Information and Inventions Agreement | Authenticity.  Plaintiff's Exhibit 16 includes other unrelated additional documents unrelated to the stated exhibit. |
| 18 | August 23, 2017 Congratulatory Letter from TEVA CPA re:  IRS Adjustment Finding | Hearsay.  Plaintiff's Exhibit 18 violates Federal Rule of Evidence 802 in that it includes Hearsay statements. |
| 20 | Sworn Affidavit of Plaintiff Randolph W. Keuch | Hearsay.  Plaintiff's Exhibit 18 violates Federal Rule of Evidence 802 in that it includes Hearsay statements. |
| 22 | Letter from Keuch to Employee re:  Qualified Retirement Treatment for Unvested Equity Award Taxation | Defendants intend to file a motion in limine regarding some of the subjects contained in Plaintiff's Exhibit 22. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |

| 23 | August 2017 Email Chain re: Retirement Vesting rule | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 23. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 24 | March 2017 Email Chain re: Equity Treatment at Qualifying Retirement- Update | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 24. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 26 | March 2017 Email Chain re: Equality Treatment on Retirement | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 26. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 27 | Email Chain, March 26, 2016 re:  409A Considerations | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 27. Specifically and as will be addressed in more detail in Defendants anticipated October 28 |

| | | filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
|---|---|---|
| 28 | Stock Plans Management re: Equity Incentive Awards upon Retirement | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 28. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to<br>Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 29 | November-December 2016 Email Chain re:  409A Retirement Eligibility | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 29. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 30 | TEVA Qualifying Retirement Rules for Equality Treatment | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 30. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair |

| | | prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
|---|---|---|
| 37 | Keuch Retention Bonus | Authenticity-Plaintiff's Exhibit 37 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 39 | TEVA Pharmaceuticals USA, Inc.  Supplemental Unemployment Benefit Plan, February 12, 2018 | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 39. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 40 | TEVA Pharmaceuticals USA, Inc.  Employment Transition Plan, February 12, 2018 | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 40. Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 44 | Separation Agreement and General Release | Authenticity.  Plaintiff's Exhibit 44 includes additional documents unrelated to the stated exhibit. |
| 46 | Keuch Email with L. Billow | Authenticity.  Plaintiff's Exhibit 46 fails to include all pages of the purported email chain. |
| 56 | Keuch Email re:  Minimal TR Organization for North America | Authenticity.  Plaintiff's Exhibit 56 includes additional documents unrelated to the stated exhibit. |

| 63 | Mark Sabag Email re:  Update on year – end compensation process | Authenticity-Plaintiff's Exhibit 63 is duplicative of one or more of Plaintiff's other proposed exhibits. |
|----|----|----|
| 70 | Lawlor Email with attachment | Authenticity.  Plaintiff's Exhibit 70 includes additional documents unrelated to the stated exhibit. |
| 73 | Keuch Dec 20, 2017 Email Chain | Authenticity-Plaintiff's Exhibit 73 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 78 | Vitman Email re:  Salary Recommendation | Authenticity-Plaintiff's Exhibit 78 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 84 | Americas Total Rewards Team Operational Review – June, 2017 (3) | Authenticity.  Plaintiff's Exhibit 84 includes additional documents unrelated to the stated exhibit. |
| 86 | Americas Total Rewards Team Operational Review – June, 2017 (4) | Authenticity.  Plaintiff's Exhibit 86 fails to include all pages of the purported presentation. |
| 89 | Dec 15, 2017 Proposed Headcount Reduction for the North American TR Team | Authenticity-Plaintiff's Exhibit 89 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 91 | Dec 2017 Job Changes During Restructuring | Authenticity-Plaintiff's Exhibit 91 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 92 | Phillips Email and attachment re:  Upcoming America's HR Town Hall | Authenticity.  Plaintiff's Exhibit 92 includes additional documents unrelated to the stated exhibit. |
| 93 | Larry Rappoport Email and attachment re:  Minimal TR Organization for North America | Authenticity-Plaintiff's Exhibit 93 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 94 | Proposed Headcount Reduction for the North American TR Team Dec 27, 2107 | Authenticity-Plaintiff's Exhibit 94 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 96 | Email re:  Topics for Ron 10/26/2017 | Authenticity-Plaintiff's Exhibit 96 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 97 | Global Talent CoE L3 structure and nominations Dec 20, 2017 (1) | Authenticity-Plaintiff's Exhibit 97 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 98 | Global Talent CoE L3 structure and nominations Dec 20, 2017 (2) | Authenticity-Plaintiff's Exhibit 98 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 99 | Global Talent CoE L3 structure and nominations Dec 29, 2017 | Authenticity-Plaintiff's Exhibit 99 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 100 | Restructuring Org. & People Implications BOD, Feb 6, 2018 | Authenticity-Plaintiff's Exhibit 100 is duplicative of one or more of Plaintiff's other proposed exhibits. |

| 103 | L3 Structure – Org structure | Authenticity.  Plaintiff's Exhibit 103 fails to include all pages of the purported email chain. |
| 104 | Anat Markus SVP, Global HR Operations and Services Chart | Authenticity.  This document was not produced in discovery and Defendants are unaware as to where it originated or who authored the document. |
| 105 | Pay Letter Eduardo Nasi Performance year January 1 to December 31, 2017 | Authenticity-Plaintiff's Exhibit 105 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 106 | Edu Nasi – 2017 Performance feedback | Authenticity-Plaintiff's Exhibit 106 is duplicative of one or more of Plaintiff's other proposed exhibits. |
| 107 | Memorandum Middlebrooks v. TEVA | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 107.  Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.  Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 108 | TEVA Pharmaceutical Industries Ltd.  Form 10-K | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 108.  Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.  Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 109 | Form 10-Q | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 109.  Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair |

| | | prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
|---|---|---|
| 110 | Former Teva Exec Nabs $6.2M Bias Verdict After Firing | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 110.  Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 111 | Memorandum McManus v. TEVA | Defendants intend to file a motion in limine regarding the topics contained in Plaintiff's Exhibit 111.  Specifically and as will be addressed in more detail in Defendants anticipated October 28 filing, pursuant to<br>Fed. R. Evid. 403 this exhibit's limited probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.<br><br>Defendants incorporate by reference all arguments made in such anticipated filing as if fully set forth herein. |
| 112 | AT A Glance Instructions To Receive Severance Payment Benefits | Authenticity.  Plaintiff's Exhibit 112 includes additional documents unrelated to the stated exhibit. |

| 115 | TEVA Lost Pay Analysis – Calculations | Authenticity and Hearsay.  Plaintiff's Exhibit 18 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  In addition, Defendants do not know who authored this document or how it was prepared. |
|-----|----------------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 117 | Keuch Lost Compensation Analysis | Authenticity and Hearsay.  Plaintiff's Exhibit 18 violates Federal Rule of Evidence 802 in that it includes Hearsay statements.  In addition, Defendants do not know who authored this document or how it was prepared. |

In addition to the objections listed above to Plaintiff's exhibits, Defendants anticipate filing motions in limine regarding the below topics:

- Requesting the exclusion of evidence relating to Plaintiff being a father to six adopted children.  Such evidence is of no probative value in this case and is substantially outweighed by a danger of unfair prejudice, misleading the jury and undue delay.

- Requesting the exclusion of evidence relating to accolades, achievements and educational accomplishments received by Plaintiff prior to his employment at Teva.  Such evidence is of no probative value in this case and is substantially outweighed by a danger of unfair prejudice, misleading the jury and undue delay

- Requesting the exclusion of evidence relating to Teva being subject to fines from the United States Department of Justice and the Securities and Exchange Committee.  Such evidence is of no probative value in this case and is substantially outweighed by a danger of unfair prejudice, misleading the jury and undue delay.

- Requesting the exclusion of evidence relating to Teva's asset levels, profit levels, or compensation amounts of Teva's senior executives.  Such evidence is of limited probative value in this case and is substantially outweighed by a danger of unfair prejudice, misleading the jury and undue delay.

-  Requesting the exclusion of evidence relating to Teva's company-wide changes to employee stock plans, equity plans or severance plans.  Such evidence is of limited probative value in this case and is substantially outweighed by a danger of unfair prejudice, misleading the jury and undue delay.

- Requesting the exclusion of evidence relating to prior lawsuits against Teva involving former employees Stephen Middlebrooks and Brian McManus.  Such evidence is of no

probative value in this case and is substantially outweighed by a danger of unfair prejudice, misleading the jury and undue delay.

- Defendants further reserve their right to file a Motion in Limine regarding additional topics prior to the October 28, 2022 deadline for the filing of Motions in Limine.

**b. To the adequacy of the qualifications of an expert witness expected to testify.**

Plaintiff has represented that he will not be calling any expert witnesses.

**c. To the admissibility of any opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701.**

None at this time.

**J. Designation of Deposition Testimony That the Party Intends to offer During Its Case-In-Chief**

Defendants have noticed the trial deposition of Mark Sabag for December 6, 2022, to be conducted via Microsoft Teams.  Mr. Sabag lives and works in Israel and as such meets the Federal Rules' definition of an unavailable witness.  Defendants anticipate that objections relating to Mr. Sabag's testimony may arise during his trial deposition.  Defendants respectfully reserve the right to request the Court's ruling on any such objections that may arise.

**K. Statement of any anticipated important legal issues on which the Court will be required to rule.**

None at this time.

Dated:  October 21, 2022                    Respectfully submitted,

                                            /s/ Larry J. Rappoport
                                            Larry J. Rappoport, Esquire
                                            Attorney ID:  26922
                                            Brandon S. Shemtob, Esquire
                                            Attorney ID:  319246
                                            STEVENS & LEE
                                            1500 Market Street, East Tower, Suite 1800
                                            Philadelphia, PA 19102
                                            Telephone:  610-205-6039
                                            Email:  larry.rappoport@stevenslee.com
                                            Counsel for Defendants

# <u>APPENDIX A</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| And TEVA PHARMACEUTICAL | : | |
| INDUSTRIES, Ltd., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' TRIAL EXHIBIT LIST

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") and Defendant Teva
Pharmaceutical Industries, Ltd. ("TPI" and together with TUSA the "Defendants" or "Teva")
identify the following exhibits they expect to utilize and/or offer into evidence at trial.
Defendants reserve all rights and remedies with regard to its identification and disclosure of
these exhibits and the exhibits identified and disclosed by Plaintiff.  For the avoidance of doubt,
Defendants reserve the right not to introduce any of the below exhibits.  Subject to these
reservation of rights, Defendants identify the following exhibits:

- Exhibit 1:  TEVA 192-195……. Separation Benefits Policy

- Exhibit 2:  TEVA 509-510……. Equal Opportunity and Affirmative Action Policy

- Exhibit 3:  KEUCH 135-150; 159-163…….Separation and General Release with all
  Exhibits

- Exhibit 4:  TEVA 312-317……."Global Talent CoE" PPT

- Exhibit 5:  TEVA 491…….Letter to Keuch re Worker Adjustment and Retraining

- Exhibit 6:  TEVA 588…….Separation Chart

- Exhibit 7:  KEUCH 797…….Total Rewards Terminations with Age

- Exhibit 8:  KEUCH 226-237…….FAQs about Separation Process

- Exhibit 9:  TEVA 636-642……."Global Talent Management – L3 Structure" PPT

- Exhibit 10:  TEVA 35-42…….Keuch Employment Application

- Exhibit 11:  TEVA 47-49…….Keuch Offer Letter, December 20, 2013

- Exhibit 12:  KEUCH 132-133…….Offer Letter from Air Products-July 27, 2015

- Exhibit 13:KEUCH 28-29…….Salary Increase and Retention Bonus Letter August 6, 2015

- Exhibit 14:  KEUCH 24…….Keuch Salary Increase Letter-May 26, 2016

- Exhibit 15:  KEUCH 25…….Actavis Generics Bonus, September 2016

- Exhibit 16:  TEVA 120- 143……."Working Together to Achieve our 2017 Goals" PPT – June 2017

- Exhibit 17:  TEVA 748…….Daniel Lawlor Notes, Topics for Ron, October 26, 2017

- Exhibit 18:  TEVA 237-241…….Teva Announces New Organization Structure and Leadership Changes, Nov. 27, 2017

- Exhibit 19:  TEVA 116…….Email Transmittal of Keuch CV

- Exhibit 20:  TEVA 716…….Email re employee mapping process, December 13, 2017

- Exhibit 21:  TEVA 211…….Restructuring Work Plan (as of Dec 13)

- Exhibit 22:  TEVA 242-245……."Teva Announces Restructuring Plan and Additional Measures to Improve its Business and Financial Performance, Dec. 14, 2017

- Exhibit 23:  TEVA 196-205……."Americas Town Hall" PPT – Dec 14, 2017

- Exhibit 24:  TEVA 144…….Email Transmittal of Keuch's Organization Change Suggestions, Dec. 14, 2017

- Exhibit 25:  TEVA 643-644…….Emails between Daniel Lawlor and Earl Major, December 14, 2017

- Exhibit 26:  TEVA 246-258…….“Teva Announces Restructuring Plan and Additional Measures to Improve its Business and Financial Performance” PPT – Dec 14, 2017

- Exhibit 27:  TEVA 259-273…….Edited Transcript of Teva Restructuring meeting – Dec 14, 2017

- Exhibit 28:  TEVA 145-170…….“Proposed Headcount Reduction for NA TR Team” PPT – Dec 15, 2017

- Exhibit 29:  TEVA 781-782…….Email exchange about Randy’s restructuring inputs, December 15, 2017

- Exhibit 30:  TEVA 784…….Email from Tal Zorman to Daniel Lawlor re:  Restructuring, December 15, 2017

- Exhibit 31:  TEVA 608-609…….Discussion between Keuch and Nasi about TR leadership, December 21, 2017

- Exhibit 32:  TEVA 785…..Emails between re:  Decision on Structure, December 22, 2017

- Exhibit 33:  TEVA 562-565…….“Proposed Headcount Reduction for NA TR Team” PPT – Dec 27, 2017

- Exhibit 34:  TEVA 737-738…….Email from Daniel Lawlor re:  Process for HR Notifications, December 28, 2017

- Exhibit 35:  TEVA 570-574…….Email chain regarding Keuch’s departure and transition to Nasi, November 2017-January 2018

10/21/2022 SL1 1809738v4 030421.00713

- Exhibit 36:  TEVA 579-581…….Email with Nasi's comments on restructuring, December 28, 2017

- Exhibit 37:  TEVA 852…….Nasi 2017 Performance Feedback

- Exhibit 38:  TEVA 736…….Emails between Daniel Lawlor and Tal Zorman, January 2, 2018

- Exhibit 39:  TEVA 786…….Email re Notification to Keuch, January 2, 2018

- Exhibit 40:  KEUCH 009-10…….Leadership Structure Update from Tal Zorman

- Exhibit 41:  TEVA 876-877…….Marc Freedman's response to Randy's resignation Email, January 2, 2018

- Exhibit 42:  TEVA 585…….Email exchange between Dan and Nasi about potential promotion, January 3, 2018

- Exhibit 43:  KEUCH 14-16…….Randy Keuch Employee Profile as of January 3, 2018

- Exhibit 44:  KEUCH 519-520…….Eduardo Nasi Employment Profile as of January 4, 2018

- Exhibit 45:  TEVA 231-236……."NA Human Resources Final L3 Org Structure" PPT – Jan 4, 2018

- Exhibit 46:  TEVA 275-285……."HRGLT, HR L3 Discussion" PPT – Jan 8, 2018

- Exhibit 47:  TEVA 489-490…….Keuch's Separation Notification and Benefit Summary – Jan 9, 2018

- Exhibit 48:  TEVA 871…….Jayne Lux' response to Randy's resignation, January 29, 2018

- Exhibit 49:  TEVA 582-583…….Transmittal email of separation policies to Nasi, January 2018

- Exhibit 50:  TEVA 630-633…….Email chain about promotion budgets, February 2018

- Exhibit 51:  TEVA 749-767…….“Restructuring Org. & People Implications” PPT, February 6, 2018

- Exhibit 52:  TEVA 769-770…….Keuch's review of Nasi's performance, February 8, 2018

- Exhibit 53:  TEVA 776…….Email to Jane Hoopes re:  Nasi's promotion to grade 16, February 27, 2018

- Exhibit 54:  TEVA 595-596…….Email exchange about Nasi's relocation package, March 9, 2018

- Exhibit 55:  TEVA 850-851…….Email exchange re:  Nasi's relocation, March 10, 2018

- Exhibit 56:  TEVA 589-592…….Email chain about Nasi's relocation, March 12, 2018

- Exhibit 57:  TEVA 566-567…….Email exchange between Diane Rohach and Edu Nasi, March 15, 2018

- Exhibit 58:  TEVA 853…….Nasi pay increase letter, March 26, 2018

- Exhibit 59:  KEUCH 385-389…….Emails with Leslie Billow from November 2019

- Exhibit 60:  KEUCH 799-811…….EEOC Responsive Statement From Keuch, November 19, 2018

- Exhibit 61:  KEUCH 505…….1099 From Hayward Industries

- Exhibit 62:  KEUCH 506…….1099 Gamestop

- Exhibit 63:  News Articles

  - A- TEVA 953…..2017-12-14 Teva Pharmaceuticals to Cut 25% of Jobs in Huge Reshaping – The New York Times

- B- TEVA 954-957…..2017-12-15 Teva Pharmaceuticals to lay off 14,000 employees worldwide, 1,750 in Israel – The Jerusalem Post

- C- TEVA 958-961…..2017-12-27 Nobody Thought It Would Come to This- Drug Maker Teva Faces a Crisis – The New York Times

- Exhibit 64:  Job Postings

  - A- TEVA 879-883…..2018 – Director of Total Rewards at Yelp

  - B- TEVA 884-885…..2018 – Rosenthal Recruiting Director of Total Rewards, Compensation & Benefits _ SmartRecruiters.

  - C- TEVA 886-888…..2019 – Senior Vice President Total Rewards (or VP Total Rewards) Job in Broomfield, CO – Page View.

  - D- TEVA 889-892…..2019- Head of Compensation & Benefits job in Pembroke Pines at Generali Global Assistance _ Lensa

  - E- TEVA 893-894…..2019-Sr Manager, Total Rewards – HR Colorado

  - F-2020- TEVA 895-909…..Senior Director, Total Rewards – Conduent

  - G-2020- TEVA 910-925…..Vice President, Total Rewards – Chicago, IL – VillageMD _ Built In Chicago

  - H- TEVA 926-929…..2021 – Indeed – Accenture – Full Text

  - I- TEVA 930-952….. 2021-Director of Total Rewards job in Charlotte at Elior North America _ Lensa

- Exhibit 65:  TEVA0015-24….Keuch 2016 Year End Review

- Exhibit 66:  TEVA0768….Vitman Email to Zorman, February 21, 2018

- Exhibit 67:  TEVA0879-882….Email Chain re:  Changes in Global Grades, December 18, 2017

- Exhibit 68:  TEVA0883-884….Email Chain re:  Promo to EN, February 21, 2018

# <u>APPENDIX B</u>

10/21/2022 SL1 1809738v4 030421.00713

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| And TEVA PHARMACEUTICAL | : | |
| INDUSTRIES, Ltd., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## PROPOSED BY DEFENDANTS & REJECTED BY PLAINTIFF FACTUAL STIPULATIONS

Plaintiff, Randolph Keuch ("Plaintiff") and Defendant Teva Pharmaceuticals USA, Inc.

("TUSA") and Defendant Teva Pharmaceutical Industries, Ltd. ("TPI" and together with TUSA

the "Defendants" or "Teva"), submit the following Proposed Joint Factual Stipulations, to be

read by the Court to the jury at trial.

1.  Defendant, Teva Pharmaceutical Industries, Ltd. is a global pharmaceutical company, marketing products from a wide range of therapeutic areas including, but not limited to, analgesic, anti-infective, cardiovascular, oncology, dermatological and anti-inflammatory, both branded and generic.

2.  Defendant, Teva Pharmaceuticals USA, Inc. is a wholly-owned subsidiary of Teva Pharmaceutical Industries, Ltd. located in Parsippany, New Jersey and previously headquartered in Horsham, Pennsylvania.  Together these two entities will be referred to as "Teva."

3.  Plaintiff was born on May 27, 1954.

4.  Plaintiff is the recipient of both a Bachelor of Science degree (BS, Industrial and Organizational Psychology, with Honors and Thesis) and a Master's of Science degree (MS, Applied Psychology) from the Stevens Institute of Technology and has also completed courses and programs in Human Resource Management (George Mason University) and Leadership (Harvard University School of Business).

5.  In January of 2014, Teva hired Plaintiff to become the Senior Director of Total Rewards for the Americas.  He was 59.5 years old when hired by Teva.

6.  Total Rewards is part of Teva's Human Resources organization and responsible for making sure employees are properly compensated and provided their benefits.

7.  Teva utilizes a numerical grading scale to determine the salary range for each employee. Teva maintains a numerical job grading system effectively ranging from 1-20 in the United States (1 being the lowest job grade and 20 the highest in the United States).

8.  When Plaintiff was hired as Senior Director and the Head of Total Rewards-Americas he was graded as a Labor Grade 17.  Plaintiff retained this Labor Grade designation as a Grade 17 throughout his entire Teva employment.  His last base salary was approximately $285,000.

9.  In addition to the numerical Labor Grade designations, Defendants also associates titles with each position.  For example, Labor Grade 15 is a "Director" level position, Labor Grades 16 and 17 are each "Senior Director" level positions, Labor Grade 18 is a "Vice President" level positions and Labor Grade 19 and 20 are "Senior Vice President" positions.

10. As Plaintiff was a Labor Grade 17, Plaintiff held the "Senior Director" title.

11. Plaintiff last worked at Teva U.S. Headquarters in Horsham, Pennsylvania.

12. When Teva hired Plaintiff in 2014, he was offered a salary of $250,000 per year and was also provided a signing bonus of $50,000 paid to him one year after his start date.  In addition, Plaintiff was eligible to receive bonuses and to participate in other incentive plans.

13. On August 6, 2015, Teva provided Plaintiff with a base salary increase and retention bonus.

14. Specifically, Teva increased Plaintiff's salary to $280,000 and provided him with a $60,000 retention bonus.  He was 61 years old at the time.

15. The retention bonus was paid in two installments.  Each installment was $30,000 and contingent on Plaintiff remaining employed at Teva on the two benchmark dates.  The first benchmark date was August 6, 2016 and the second was paid one year later on August 6, 2017.

16. Plaintiff was 63 years old when he received the second installment of the retention bonus.

17. During the relevant portions of Plaintiff's employment, the Total Rewards global function was managed by Ron Yaniv (Labor Grade 19 – Senior Vice President) whose offices were in Petch Tikvah, Israel.

18. Reporting to Mr. Yaniv were four different Senior Directors—each of whom were designated as a Labor Grade 17 with responsibility for the following four geographic areas—(1) Americas (Plaintiff); (2) Europe; (3) Asia-Pacific; and (4) Israel.

19. In turn, Plaintiff had three direct reports:  (1) Eduardo Nasi (Director—Labor Grade 15), the Head of Total Rewards for Latin America; (2) Miriam Weinstein, the Head of

Compensation, North America (Labor Grade 15); and (3) Diane Rohach, the Head of Benefits, Americas (Labor Grade 15).  The Total Rewards organization had approximately 10 to 12 employees.

20. Kare Schultz became the President and CEO of TPI in September 2017.

21. Almost immediately after becoming President and CEO, Mr. Schultz announced that Teva would be undergoing a large scale reduction of its global workforce.  Teva announced that the Company would be laying off 25% or more of its global workforce.  Approximately 14,000 employees were laid off in 2018 and 2019.

22. Mark Sabag, Executive Vice President and Chief Human Resources Officer, was responsible for selecting who would be eliminated at the Vice President level in Human Resources.  In doing so, Mr. Sabag eliminated the roles of Moshe Netzer (Senior Vice President, HRBP Growth Markets, 27 years of experience with the Company), Raffi Hirsch (Senior Vice President, HRBP Global Specialty Medicines, 21 years of experience with the Company) and Simon Kelner (Vice President Global Talent Acquisition and Mobility).

23. Tal Zorman was responsible for selecting who would be included in the reduction as it relates to the Total Rewards Organization.

24. Ms. Zorman was responsible for reducing the headcount within the Total Rewards organization by at least 50%.  Ms. Zorman began her task of reaching the 50% reduction goal by first designing the structure of the organization.

25. As part of the restructuring, the geographic reporting structures were reorganized and Latin America was removed from the Americas and placed in the "Growth Markets" division.

26. Moving forward there would be three (rather than four) Regional Heads of Total Rewards.  There would be one head for North America, another for Europe, and one for "Growth Markets"—which now combined Asia (including India), Israel and Latin America.

27. Ms. Zorman identified Mr. Nasi to become the Head of Total Rewards for North America.

28. On January 2, 2018 Teva informed Plaintiff that he would be included in the reduction in force.

29. Plaintiff's last day of work at Teva was on or about February 18, 2018.  Plaintiff continued to be paid by Teva through March 18, 2018.

30. At the time of his separation, Plaintiff was offered a severance package conditioned on his execution of a release (as were all the Teva separation agreements).

31. Plaintiff declined to sign the separation agreement and accordingly did not receive any severance payments.

32. Following Mr. Plaintiff's separation of employment, Defendants began a site consolidation in the United States as part of the need to reduce costs.

33. This resulted in the relocation of TUSA's headquarters from Horsham, Pennsylvania to Parsippany, New Jersey.

34. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission.

35. Plaintiff exhausted his administrative remedies prior to the filing of this lawsuit with respect to the allegations made in his federal court complaint.

10/21/2022 SL1 1809738v4 030421.00713