**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDOLPH W. KEUCH, | : | |
| | : | CASE NO. 2:19-CV-05488 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (JUDGE JOHN M. GALLAGHER) |
| TEVA PHARMACEUTICALS USA, INC., | : | |
| And TEVA PHARMACEUTICAL | : | (Electronically Filed) |
| INDUSTRIES, Ltd., | : | |
| | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF DEFENDANTS' OMNIBUS**
**MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE AT TRIAL**

Dated: <u>October 28, 2022</u>

Respectfully submitted,

*/s/ Larry J. Rappoport*
Larry J. Rappoport, Esquire
Attorney ID:  26922
Brandon S. Shemtob, Esquire
Attorney ID:  319246
STEVENS & LEE
1500 Market Street, East Tower, Suite 1800
Philadelphia, PA 19102
Telephone:  610-205-6039
Email:  larry.rappoport@stevenslee.com
Counsel for Defendants

# **TABLE OF CONTENTS**

**Page**

I.      RELEVANT PROCEDURAL HISTORY ..........................................................................5

II.     Legal Standards.......................................................................................................5

   A.   Federal Rules of Evidence and Civil Procedure Applicable to Defendant's
        Motion..........................................................................................................5

        1.   General Relevance and Admissibility of Evidence ...........................5

        2.   Excluding Relevant Evidence for Prejudice or Other Reasons .......6

III.    ARGUMENT ..........................................................................................................6

   A.   Motion in Limine #1 –This Court Should Exclude Evidence of Plaintiff
        Being A Father to Seven Adopted Children Because Plaintiff's Family Life
        is Unrelated to his Termination from Employment and Thus is Irrelevant
        Under Fed. R. Evid. 401 and 402...................................................................6

   B.   Motion in Limine #2 –Evidence of Educational Accolades, Achievements
        and Other Accomplishments of Plaintiff that Occurred Prior to his
        Employment at Teva Should be Excluded from Trial. .................................8

   C.   Motion in Limine #3 – Evidence that Teva was Subjected to Fines from
        United Sates Department of Justice and the Security and Exchange
        Commission Should be Excluded from Trial  Because Such Fines are
        Irrelevant to Whether Plaintiff's Inclusion in the RIF was Discriminatory..............10

   D.   Motion in Limine #4 – Evidence Relating to the Compensation Level of
        Various Senior Executives at Teva and Teva's Financial Reports Should be
        Excluded from Trial they are Irrelevant to Whether Plaintiff's Inclusion in
        the RIF was Discriminatory. ....................................................................13

   E.   Motion in Limine #5 – Evidence Relating to Global Changes to the
        Company's Retirement Plan, Stock Plan, Equity Plan and Severance Plan
        Should be Excluded from Trial Because They are Irrelevant to Whether
        Plaintiff's inclusion in the RIF was Discriminatory ................................16

   F.   Motion in Limine #6 – Evidence Relating to Prior Lawsuits Against Teva
        Should be Excluded from Trial because Such Lawsuits are Irrelevant to
        Whether Plaintiff's Inclusion in the RIF was Discriminatory. ................19

IV.     CONCLUSION........................................................................................................20

SL1 1811066v3 030421.00713

Defendant Teva Pharmaceuticals USA, Inc. ("TUSA") and Defendant Teva Pharmaceutical Industries, Ltd. ("TPI" and collectively with TUSA the "Defendants" or "Teva"), by and through its undersigned legal counsel, hereby submit this Brief in Support of its Omnibus Motion *in Limine* to Exclude Certain Evidence at Trial, pursuant to Federal Rules of Evidence ("Fed. R. Evid.") 401, 402, 403, 404 and 408.[1]   This is an age discrimination lawsuit in which Plaintiff alleges that his inclusion in a global workforce reduction in force ("RIF") was discriminatorily motivated.   Despite the relative straightforward nature of the issues, Plaintiff has signaled his intention to submit evidence relating to a wide range of items that have no bearing on the ultimate question.   For example, and as discussed in great detail herein, Plaintiff seeks to introduce evidence relating to his status as a father to adopted children, the compensation levels of Teva's current and  former CEO's, and prior lawsuits filed against Teva.   These items, and the others discussed herein should be excluded.

Motion in Limine #1 requests that this Court preclude Plaintiff Randolph Keuch ("Plaintiff" or "Mr. Keuch") from introducing evidence and testimony relating to Plaintiff being a father to seven adopted children—three of whom have special needs.   This case is about whether or not Teva's decision to include Plaintiff in a 14,000 employee global RIF was because of Plaintiff's age.   His status as a father of seven adopted children has absolutely no relevance to that question.   Instead, it serves only as a transparent attempt for Plaintiff to garner sympathy from the jury and in turn confuse the true issues of the case.

Motion in Limine #2 requests that this Court preclude evidence and testimony relating to accolades, achievements and educational accomplishments received by Plaintiff prior to his

---

[1] Before filing this Motion in Limine, we conferred with counsel for Plaintiff.  Counsel for Plaintiff did not agree to any of the items discussed herein, requiring us to file this Omnibus Motion.

SL1 1811066v3 030421.00713

employment at Teva.  At no point in this case have Defendants asserted that Mr. Keuch's inclusion in the RIF was due to subpar performance or a lack of qualifications.  Moreover, Defendants do not assert that Mr. Keuch was "unqualified" for his role.  Instead, Defendants have consistently explained that during a RIF, even highly qualified, competent and capable employees must be eliminated.

Motion in Limine #3 requests that this Court preclude evidence and testimony relating to Teva being subject to fines from the United States Department of Justice and the Securities and Exchange Commission.  Plaintiff includes in his Amended Complaint the amount of these fines (under statutes unrelated to this case), what countries the fines related to and how these fines compared to the settlements paid by other pharmaceutical companies.  Plaintiff asserts that he references these fines to argue that the fines contributed to the decision to engage in the global RIF. However, there is no evidence to support this wild notion. Instead, Plaintiff only intends to raise these issues in front of the jury at trial in an attempt to paint Teva in a poor light.

Motion in Limine #4 requests that this Court preclude evidence and testimony relating to Teva's asset levels, profit levels, and the compensation paid to Teva's senior executives—in particular Mr. Schultz, the CEO who joined Teva in late 2017 and immediately initiated the global restructuring eliminating 14,000 jobs.  Plaintiff's proposed exhibits include the 10-K and 10-Q reports for Teva.  In addition, Plaintiff's Amended Complaint makes multiple references to the compensation levels of senior Teva executives in an effort to misguidedly connect executive salary to specific workforce reduction decisions.  Simply put, the compensation paid to various Teva CEOs has absolutely no relevance to whether or not Plaintiff's termination was because of his age.  Instead, Plaintiff included these references to confuse the issues and engender anger and ill will towards Teva and its management, while also attempting to paint Mr. Schultz and other

executives as having inflated salary and compensation packages, as if their compensation caused the need for Mr. Keuch's termination.  Moreover, punitive damages are not available under the PHRA or the ADEA and thus Teva's net worth is not a proper piece of evidence for this jury.

Motion in Limine #5 requests that this Court preclude evidence and testimony relating to companywide changes to employee retirement plans, stock plans, equity or severance plans which preceded Plaintiff's employment termination.  Plaintiff intends to introduce evidence to show that changes to employee benefit plans evidence an age bias on behalf of Teva.  However, Plaintiff has failed to establish who made the decisions to modify these plans, how the decisions were made and precisely when these decisions were made.  Furthermore, the changes to these plans occurred at a corporate level and impacted all employees—young and old and were not specific to Mr. Keuch.  Lastly, the changes to these plans are complex and to understand why these alterations were made will require a detailed and laborious explanation of the Employee Retirement Income Security Act ("ERISA") as well as Internal Revenue Code ("IRC").  This will likely confuse the jury and substantially prolong the trial.

Motion in Limine #6 requests that this Court preclude evidence and testimony relating to prior lawsuits filed against Teva specifically involving former employees Stephen Middlebrooks and Brian McManus.  Plaintiff has referred to these cases in his response in opposition to summary judgment and included references to these cases in his pre-trial exhibits including decisions denying summary judgment.  This proffered evidence is irrelevant to this case.  Neither Mr. Middlebrooks nor Mr. McManus' claims related to the global RIF wherein Plaintiff was laid-off.  Moreover, these are different business operations with entirely different decision makers involved in both of those cases.  Plainly put, Plaintiff wants to introduce these two cases only to prejudice the jury against Teva by asking them to consider that Teva is a consistently bad

actor who is sued by former employees for age discrimination.  This evidence is both irrelevant

and highly prejudicial.  Moreover, it is misleading given that the jury in the McManus case

rendered a defense verdict clearing Teva of wrongdoing.

## I.      RELEVANT PROCEDURAL HISTORY[2]

Mr. Keuch filed his two-count Amended Complaint (the "Complaint") on March 15,

2021. (ECF #32).  In his Amended Complaint, Mr. Keuch alleges that Defendants committed age

discrimination when they included Mr. Keuch in a large scale RIF in 2017-2018.

On June 21, 2022 Defendants filed a Motion for Summary Judgment. (ECF #51). On

August 17, 2022, Plaintiff filed a response opposing Defendants Motion. (ECF #59).  On

September 1, 2022, the Court denied Defendants' Motion for Summary Judgment. (ECF #63).

## II.     LEGAL STANDARDS[3]

### A.      Federal Rules of Evidence and Civil Procedure Applicable to Defendant's Motion

#### 1.      General Relevance and Admissibility of Evidence

Fed. R. Evid. 401 defines evidence as "relevant" if "it has any tendency to make a fact

more or less probable than it would be without the evidence; and the fact is of consequence in

determining the action."  Fed. R. Evid. 401(a-b).  Therefore, in order for evidence to be relevant

for the purposes of admissibility at trial, the evidence must have a "tendency to prove a

consequential fact."  *Blanch v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992) (citation and

quotation marks omitted).  Any evidence that fails to satisfy this test is irrelevant, and therefore

inadmissible.  *See* Fed. R. Evid. 402.  Irrelevant evidence "denotes evidence that does not

---

[2] Please refer to Defendants' Pre-Trial Memorandum for a fulsome discussion regarding the relevant factual background of the case.

[3] Defendants presume the Court is familiar with the standards utilized for analyzing age discrimination claims under the ADEA and PHRA and omits it from this brief.

SL1 1811066v3 030421.00713

logically tend to prove or disprove any material fact or proposition that has been placed at issue."
29 AM. JUR. 2D EVIDENCE § 295 (2d ed. updated May 2022).

### 2.   Excluding Relevant Evidence for Prejudice or Other Reasons

Even when evidence has some relevance, it is not automatically admissible.  Fed. R.
Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is
substantially outweighed by a danger of one or more of the following:  unfair prejudice,
confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting
cumulative evidence." Fed. R. Evid. 403.  Unfairly prejudicial evidence, in particular, "appeals
to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise
may cause a jury to base its decision on something other than the established propositions in the
case." *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (citation and quotation marks omitted).

## III.   ARGUMENT

### A.   Motion in Limine #1 –This Court Should Exclude Evidence of Plaintiff Being A Father to Seven Adopted Children Because Plaintiff's Family Life is Unrelated to his Termination from Employment and Thus is Irrelevant Under Fed. R. Evid. 401 and 402.

In his Complaint and during his deposition testimony, Plaintiff testified about his own
family.  During Plaintiff's deposition, Plaintiff testified that he is married and that he and his
wife are parents to seven adopted children—three of whom have special needs.  Defendants
believe that Plaintiff expects to elicit testimony relating to his family situation at trial only to
garner sympathy or good-will from the jury because this family situation clearly is not relevant
to his claims and there is no evidence that the decision maker in this case, Tal Zorman, even had
knowledge that Plaintiff opened his home to these children.  While Defendants commend
Plaintiff on providing a caring home for his children, his status as a father let alone a father to
adopted special needs children has absolutely no bearing on the question of whether Teva's

6

decision to include him in the RIF was because of his age.  In fact, there is not a scintilla of evidence in the record that any of the decision makers in the case had knowledge of Plaintiff's status as a father to adopted children.  Rather, Plaintiff acknowledges that the decision maker in this case, Tal Zorman, barely knew him when she made the decision to include him in the RIF. Courts have routinely held that personal matters unrelated to the litigation are irrelevant.  *See Smith v. Specialty Pool Contractors*, No. 02:07-CV-1464, 2009 WL 799748, at *5 (W.D. Pa. Mar. 25, 2009), on reconsideration, No. 02:07-CV-1464, 2009 WL 909246 (W.D. Pa. Mar. 27, 2009) (the Court finds that the fact that Plaintiff is an unwed father and has delinquent child support obligations has no relevance or probative value to any material issue properly before the jury"); *Garvey v. Dickinson Coll*., 763 F. Supp. 799, 802 (M.D. Pa. 1991) ("many details relating to the personal lives of Dickinson employees will have no bearing on issues before the court and will, therefore be excluded").

If the Court were to determine that Plaintiff's status as an adoptive father of seven children is relevant to the claims of age discrimination, it is substantially outweighed by the dangers of unfair prejudice.  Specifically, the sole purpose that Plaintiff would have in introducing this evidence would be for the jury to sympathize with him and view him as a good person who should not have been dismissed in this global workforce reduction.  Moreover, such evidence would likely cause the jury to vilify Teva for eliminating the job of an employee who has chosen to adopt special needs children.  These are highly prejudicial considerations that have no bearing on the allegations in the Amended Complaint.  Moreover, courts within this circuit have held that such considerations are not proper.  *See Hurley v. Atl. City Police Dep't*., 933 F. Supp. 396, (D.N.J. 1996) (aff'd 174 F.3d 95 (3d Cir. 1999)) (remitting compensatory damages award substantially where "the jury allowed its . . . sympathy for [the plaintiff's] psychological

7

and emotional trauma—much of which is probably unrelated to her work environment—to overcome cool reason in setting compensatory damages."); *Ford v. Marion Cnty Sheriff's Dep't.*, No. 1:15-CV-1989-WTL-DML, 2018 WL 5282949, at *3 (S.D. Ind.  Sept. 5, 2018) (noting that "[t]he motion in limine ruling was meant to eliminate the prejudice to the Defendant that would arise if the fact that the Plaintiff was injured in the line of duty as a law enforcement officer was emphasized by the Plaintiff in order to garner sympathy from the jury when the fact is not relevant to the Plaintiff's claims."); *Davies By & Through Davies v. Lackawanna County*, No. 3:15-CV-1183, 2018 WL 924205, at *5 (M.D. Pa. Feb. 14, 2018) (finding, where the subsequently deceased plaintiff was replaced by his spouse, the administrator of his estate, that "evidence relating solely to [the decedent's] funeral or [his widow's] grief are not relevant to this case.").  Accordingly, the Court should exclude any mention or other evidence that Mr. Keuch is a father to seven adopted children—including some with special needs.

> **B.**     **Motion in Limine #2 –Evidence of Educational Accolades, Achievements and Other Accomplishments of Plaintiff that Occurred Prior to his Employment at Teva Should be Excluded from Trial.**

Even in the majority of employment discrimination cases, where the plaintiff's job performance *is* a matter of dispute, the full panoply of evidence and testimony pertaining to this topic is not automatically rendered relevant and admissible.  *See, e.g.*, *Scanlon v. Honeywell, Inc.*, No. 2:03CV869, 2005 WL 8174346, at *3 (W.D. Pa. Oct. 18, 2005) ("The attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law.") (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 474 (3d Cir. 2005)); *see also Ewell v. NBA Properties, Inc.*, 94 F. Supp. 3d 612, 629 (D.N.J. 2015) ("Where the employer has given a non-discriminatory reason for firing, the employee's positive performance in another category is not relevant.") (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998)) (quotation marks omitted).

8

Here, Defendants do not argue that Plaintiff was not qualified; if anything he was perhaps overqualified for what Teva needed going forward as Total Rewards would become less strategic and more operational.  However, 50% of the employees in Teva's Human Resources department needed to be included in the RIF which necessarily included qualified employees—like Plaintiff. Therefore, evidence of Plaintiff's educational or professional achievements are entirely irrelevant.  Notwithstanding this, Defendants do not seek to exclude all such evidence.[4]  Rather, Defendants only seek to exclude evidence that relates to Plaintiff's professional or educational accomplishments ***prior*** to and ***outside*** of his employment at Teva.  For example, Plaintiff includes in the Amended Complaint excerpts from his resume dating back to 1994.  In addition, the Amended Complaint and Plaintiff Exhibit 17 discuss Plaintiff's receipt of lifetime achievement awards and his service on various boards.  None of this purported evidence is relevant to whether Teva included Plaintiff in the RIF because of his age.  Accordingly, evidence related to Plaintiff's educational or professional achievements outside of his employment at Teva should be excluded from trial under Fed. R. Evid. 401 and 402.

If the Court were to determine that Plaintiff's educational accolades, professional achievements and other accomplishments, all of which occurred prior to him accepting employment at Teva in 2014, carry some probative value, it is substantially outweighed by the dangers of unfair prejudice, undue delay and wasting time, and needlessly presenting cumulative evidence.  Again, Plaintiff's inclusion in the RIF was not because he was unqualified or a poor performer in his role as Head of Total Rewards.  His inclusion in the RIF was because Teva needed to reduce headcount by 50%, the new role in Total Rewards would be substantially

---

[4] Defendants do not object to the introduction of evidence relating to Plaintiff's job performance while at Teva, including but not limited to performance reviews of Plaintiff's work at Teva.

reduced in scope, and Teva did not need someone at his level or pay scale performing in this new reduced role.  For this reason alone, allowing additional evidence and testimony on the subject— for example Plaintiff's Exhibit 17 "American Compensation Association Lifetime Achievement Award"—would be "highly cumulative" and incur "unnecessary time and expense" in violation of Fed. R. Evid. 403.  *Sanzo v. Nextel Commc'ns, Inc.*, No. CV 04-13464, 2005 WL 8175958, at *2 (D.N.J. Nov. 28, 2005) ("Job performance, having been stipulated, shall not be the subject of testimony.").

In addition, allowing Plaintiff to stage a mini-trial on the subject of his prior achievements before he even joined Teva could divert the attention of the jury to the unfair prejudice of Defendant.  This raises the legitimate risk of confusing and misleading the jury into making their decision based not on whether Plaintiff experienced unlawful *discrimination*, but whether Plaintiff was too qualified to dismiss which is not the proper inquiry.  It is well-established that during employment discrimination trials, "the jury [cannot] sit as a super-personnel department that examines an entity's business decisions."  *Ruff v. Temple Univ.*, 122 F. Supp. 3d 212, 220 (E.D. Pa. 2015) (citing *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995)) (quotation marks omitted).

As a result, all evidence and testimony pertaining to Plaintiff's educational accolades, professional achievements and other accomplishments which occurred prior to or outside his employment at Teva, should be excluded from trial pursuant to Fed. R. Evid. 403.

C.    **Motion in Limine #3 – Evidence that Teva was Subjected to Fines from United Sates Department of Justice and the Security and Exchange**

**Commission Should be Excluded from Trial  Because Such Fines are Irrelevant to Whether Plaintiff's Inclusion in the RIF was Discriminatory.**

In addition to pleading facts supporting Plaintiff's theory of discrimination and in a misguided attempt to paint Teva in the most negative possible light, Plaintiff alleges completely irrelevant, impertinent and scandalous material.  Specifically, Plaintiff asserts:

> 32. Additionally, in early 2017, Teva Global was forced to pay fines to the United States Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") totaling in excess of $520 Million to resolve federal violations of the Foreign Corrupt Practices Act ("FCPA") arising from bribery charges relating to its operations in Russia, the Ukraine and Mexico.  Teva's settlement was the largest fine ever paid by a pharmaceutical company over FPCA violations.

(Amended Compl. at ¶32).  Defendants expect that Plaintiff, unless restricted, will testify that large fines were imposed on Teva to the jury.  These fines, however, are entirely irrelevant to Plaintiff's assertion that age was the but-for reason that he was included in the RIF.  Presumably Plaintiff will argue that such information is "necessary" to establish the reasons that led to the RIF.  However, this will only confuse the real issue in this case.  This case is not about what factors led to the RIF, but instead the decisions made when implementing it and specifically who was selected for lay-off.  In fact, Plaintiff does not even argue nor could he that the decision itself to engage in a RIF was discriminatory.  Rather, Plaintiff's claims focus on a point later in the process—after the decision to engage in a RIF occurred.  Plaintiff's allegations are that Teva's decision to choose him *__as part of__* the RIF was discriminatory.  Certainly, if what led to the decision to engage in the RIF is not relevant, it follows that any fine that TPI was issued over a year before Plaintiff's termination is **entirely** irrelevant.  Rather, reference to this fine is only included due to its scandalous nature.  The allegation has no place in a case involving claims of age discrimination, and this Court should exclude it from the jury.

11

Even if the Court were to find that there is some relevance to the introduction of evidence relating to these fines assessed against Teva for violation of an unrelated statute in unrelated countries, the undue prejudice that would result from the introduction of this evidence substantially outweighs any limited probative value. First and foremost, the allegations relate to a "settlement" Teva reached in connection with allegations from these various governmental agencies. Settlements by their very nature are compromises of disputed claims. Nowhere in Plaintiff's Amended Complaint does it even allege that Teva admitted wrongdoing in connection with these settlements. Under Fed. R. Evid. 408, evidence of a settlement is inadmissible to show the validity of the claim. Courts have held that this rule "applies equally to settlement agreements between a defendant and a third party." *Velazquez ex rel. J.A.V. v. UHS of Puerto Rico, Inc.*, 2015 WL 477198, at *1 (D.P.R. Feb. 5, 2015) (quoting *Portugués-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 63 (1st Cir. 2011)).

Next, a jury would almost certainly be misled into believing that if Teva paid these large fines they necessarily must have done something wrong because when there is smoke, there must also be fire. This propensity evidence has routinely been found to be improper by courts. *See Hamilton v. Vanguard Grp., Inc.*, No. 11-3514, 2012 WL 13014106, at *1 (E.D. Pa. Apr. 27, 2012) (excluding any evidence that the plaintiff reported a subordinate's alleged SEC and FINRA Code of Conduct violations to her superiors because "[such evidence] would confuse the jury and distract it from the issue it must decide: whether [the defendant] discriminated against [the plaintiff] based on her disability."). *See Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 547 (S.D.N.Y. 2005) (finding, in gender discrimination case, that any testimony about one defendant's compliance with SEC Rule 17a-4 should be excluded because "[it] would only serve to unfairly prejudice the jury against [that defendant]."); *Cf. LeBlanc v Nortel Networks*

*Corp.*, No. 3:03-CV-65, 2006 WL 8445961, at *3 (M.D. Ga. June 30, 2006) (finding, in case involving an alleged breach of contract in failing to timely exchange share certificates for vested stock, that "evidence of subsequent SEC investigations is irrelevant and unduly prejudicial.").

Third and finally, there exists the possibility that a jury could view Teva's ability to pay over $500 million dollars in fines as evidence that it could "easily afford" to pay Plaintiff's alleged damages (which are notably smaller) in this case.  Because of these reasons, the court should exclude all evidence relating to these fines.

D.      **Motion in Limine #4 – Evidence Relating to the Compensation Level of Various Senior Executives at Teva and Teva's Financial Reports Should be Excluded from Trial they are Irrelevant to Whether Plaintiff's Inclusion in the RIF was Discriminatory.**

Plaintiff's Amended Complaint and pre-trial memorandum are littered with references to the compensation levels of various Teva senior executives.  Most prominently, in his Pre-Trial Memorandum, Plaintiff references a $20,000,000 cash sign-on payment allegedly made to Teva's new CEO Kare Schultz.  Additionally, in his Amended Complaint Plaintiff cites the salaries of other Teva CEOs, Erez Vigodman ($1,450,000) and Yitzhak Peterburg ($9,200,000).  Similarly, in Plaintiff's Pre-Trial Memorandum he states "Teva's total revenue in 2018 was nearly nineteen billion dollars." (ECF #72).

These amounts are not in any way related to the decision to include Plaintiff in the RIF.  The only reason for including this irrelevant and highly prejudicial evidence is to suggest that Teva's financial condition could not be as bad as it contends to justify the massive global workforce reduction if Teva could at or around the same time afford to provide Mr. Schultz and his predecessors multimillion dollar compensation packages.  However, these are not even compensation packages of the alleged decision makers in this case.  Rather, these are simply the

salaries (and bonuses) awarded to the highest level of management of a multi-billion dollar company.  They have no bearing whatsoever on Plaintiff's own separation from employment.

Despite this reality, Plaintiff will likely argue that these salaries are relevant because they demonstrate that Defendants reason for engaging in the RIF was not based on Teva's actual economic condition.  According to Plaintiff, a multibillion dollar company cannot simultaneously pay million dollar bonuses and salaries and experience  financial distress.

Of course, this argument is baseless.  In 2017 Teva's financial problems were in the **billions**.  The salaries and bonuses we are discussing are in the low **millions**.  To save the hand Teva needed to sacrifice a finger and Teva needed to attract and hire the best and most experienced CEO with the skills and ability to rectify the financial distress the company was experiencing.  Such a qualified CEO will not work for anything less than what the market dictates in those circumstances and Teva should not be expected or required to justify his or others' salary and basis for providing it.  Evidence that Teva paid these market rate amounts to its executives is simply not relevant to Plaintiff's age discrimination claim—especially given that each of these executives are likewise over the age of 60 (Mr. Schultz is currently 61 years old; Mr. Vigodman is currently 63 years old; Mr. Peterburg is currently 71 years old).

Next, Teva's financial reports (see Plaintiff's Exhibits 108 and 109) and other references to Defendants total revenue, are similarly irrelevant to this case.  Punitive damages are not recoverable under either the PHRA or the ADEA.  *See Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 748 (Pa. 1998); 43 Pa. Stat. Ann. § 962 (West); *see also, Ellis v. Harrisburg Area Community Coll.,* No. CIV. A. 1:05-CV-2466, 2007 WL 1152935 (M.D. Pa. Feb. 6, 2007) (granting defendant's motion in limine to exclude introduction of punitive damages under the PHRA); *Kelly v. U.S.  Steel Corp*., No. 2:11-CV-00193, 2011 U.S. Dist.  LEXIS 91123 at *8-9,

2011 WL 3607458 at *3 (W.D. Pa. Aug. 16, 2011) (collecting cases and noting that all the

Courts of Appeal having analyzed this issue "have denied claims for punitive damages in ADEA

cases"). Given that punitive damages are unavailable, evidence relating to the net worth of

Defendants is irrelevant and should be excluded.  *See Johnson v. Fed. Exp. Corp*.,

No. 1:12-CV-444, 2014 WL 805995, at *12 (M.D. Pa. Feb. 28, 2014) ("In short, evidence of

defendant's financial condition is not relevant until the factfinder concludes that the defendant's

intentional conduct warrants an award of punitive damages").

If the Court finds that the compensation level for various senior Teva executives and/or

Teva's financial reports carry some probative value, it remains substantially outweighed by the

dangers of unfair prejudice, confusing and misleading the jury and leading to undue delay.  A

review of caselaw within this Circuit helps to illustrate this very point.  In *Finch v. Hercules Inc*.,

the plaintiff alleged that his inclusion in a reduction in force was due to his age.  No. CIV. A.

92-251 MMS, 1995 WL 785100, at *10 (D. Del. Dec. 22, 1995).  In support of his claims, the

plaintiff sought to introduce evidence of the earnings of the company as well as the salaries of

several of the company's top officers.  The court summarized the plaintiffs position as:

"[plaintiff] argue[d] that there are substantial reasons to dispute whether [the company's] fiscal

health was in serious jeopardy and whether [the company's] proffered economic justification for

the RIF [was] worthy of credence."  The Court, however, excluded the evidence and explained

"These figures would seem staggering to those uninformed about the operation of a large,

Fortune 500 corporation such as defendants.  Were plaintiff allowed to introduce such evidence,

defendant would no doubt find itself required to define in great detail the meaning of these

numbers and how they compare with other similarly situated businesses and top executives."  In

addition, the Court recognized that "there is no requirement for a corporation to be in financial

distress before embarking on such a RIF."  Accordingly, the Court concluded "the prejudice to defendant resulting from admission of evidence of earnings of [the company] and its senior executives…would substantially outweigh any probative value this evidence would have."  See also, McTaggart v. Cath. Health Initiatives, No. 1:19-CV-00088-DCLC, 2021 WL 3291963, at *3 (E.D. Tenn.  Aug. 2, 2021) (precluding "evidence of Defendants' wealth or size of operations for its own sake" as irrelevant and likely to garner sympathy for the plaintiff and encourage the jury to issue a verdict based on the financial state of the defendants rather than the merits of the case); Draper v. Airco, Inc., 580 F.2d 91, 95 (3d Cir. 1978) ("Appealing to the sympathy of jurors through references to financial disparity is improper.").

The same considerations present in Finch are present here.  Inclusion of this evidence would require Teva to demonstrate that the salaries and bonuses are not disproportionately high as compared to the executive compensation of other multi-billion dollar companies.  This would require a trial within a trial on relevant executive compensation that would distract the jury from the ultimate issue—whether Mr. Keuch's inclusion in the RIF was because of his age.  Accordingly, this evidence should be excluded.

E.      **Motion in Limine #5 – Evidence Relating to Global Changes to the Company's Retirement Plan, Stock Plan, Equity Plan and Severance Plan Should be Excluded from Trial Because They are Irrelevant to Whether Plaintiff's inclusion in the RIF was Discriminatory**

Plaintiff's Amended Complaint includes the following allegations:

> 41. However, evidencing a clear age-related bias, Teva implemented compensation policies that disfavored older workers like Plaintiff who were reaching retirement age.  That systemic unlawful approach was reflected in unannounced changes in the Teva 2015 Stock Plan that also revised the 2010 Plan by conditioning full vesting on ten years of service when the employee reaches 65 years (five years more than the earlier plan versions that previous set the bar at age 65 plus 5 years of service).

42. Age bias was also evidenced in the raising of the age of retirement in the 2010 and 2015 equity plans to age 55 for those employees who had fifteen (15) or more years of service as compared to the previous policy of the rule of 70 that permitted retirement at any combination of age and service that equaled 70. Moreover, that policy-change also negatively impacted the equity compensation of older employees.

43. In addition, Teva initiated a punitive severance plan in 2017 that reduced all severance paid to US employees by Teva by the amount of unemployment compensation benefits that they were lawfully entitled to, once again creating savings by taking income away from employees.  While employees who were age 62 or older were exempt from this deduction, US Teva leadership espoused the belief that those over age 62 would no longer be employable and could not properly apply for unemployment compensation benefits, and therefore, the exemption should not be honored.

(Amended Coml. at ¶¶41-43).  Plaintiff identifies numerous exhibits relating to these issues (see Plaintiff's Exs. 22, 23, 24, 26, 27, 28, 29, 30, 39 & 40).  However, Plaintiff fails to establish how the changes made to these plans are relevant to his claims of discrimination.  For example, Plaintiff has not established that the decision makers for the changes in these benefit plans are the same as the decision maker(s) who included him in the RIF.  Next, Plaintiff has failed to establish precisely when these changes were made and how they connect to Teva's decision to include him in the RIF.  Finally, Plaintiff concedes that these changes were not specific to him. Rather, these were corporate changes affecting all U.S.-based Teva employees.  Plaintiff must show that Teva discriminated against him based on age.  Changes to a corporate benefit plan, some of which occurred over a year prior to Plaintiff's separation, simply are irrelevant to the ultimate question and if permitted, would unnecessarily lead to witnesses having to testify and explain how and why the plans changed and how these changes were implemented, all matters far afield from Plaintiff's inclusion in a global workforce reduction.

The probative value of changes to Teva's benefit plans is substantially outweighed by the risk of confusing the issues and other dangers proscribed under Fed. R. Evid. 403. All of Teva's benefit plans are qualified plans under ERISA. This means that Teva cannot simply make whatever changes it would like to these plans. Instead, these plans and changes to them must meet ERISA guidelines. Furthermore, given the massive size and scope of Teva's benefit plans, these changes are analyzed by legal and financial professional to ensure compliance with ERISA, tax and actuarial standards in many countries. Therefore, if Plaintiff were to elicit evidence relating to changes to these benefit plans, Teva would need to supplement the evidentiary record with detailed explanations as to why certain changes needed to be made in accordance with ERISA or tax guidelines. This has the potential to be extraordinarily confusing to the jury and may devolve into a mini-trial regarding the wisdom of the changes to the plans. In addition, there is no evidence that Plaintiff or any other employee challenged these changes to benefit plans as being discriminatory. This lawsuit should not become the vehicle for such a challenge. For example, Plaintiff's Exhibit 29 is a 13 page email chain among members of Teva's benefit team, Teva's legal team, Teva's human resources team and outside tax consultants from Ernst and Young, LLP. This email chain discusses complex concepts such as the interplay of FICA tax withholdings, court interpretation of IRS Code Section 3121(v)(2), Restrictive Stock Units, and forfeiture of benefits. Notably, this email chain is from the year prior to Plaintiff's termination—thus further limiting its probative value.[5] Accordingly, the Court should exclude evidence related to changes to Teva's benefit plans.

---

[5] Separate from the changes to the plans themselves, Plaintiff has alleged that Daniel Lawlor, an alleged decision maker in this case, made comments regarding age in the context of discussing changes to these plans. For the avoidance of any doubt, Defendants do not seek to exclude testimony relating to any alleged comments made by Mr. Lawlor. While Defendants deny that

**F.**      **Motion in Limine #6 – Evidence Relating to Prior Lawsuits Against Teva Should be Excluded from Trial because Such Lawsuits are Irrelevant to Whether Plaintiff's Inclusion in the RIF was Discriminatory.**

Plaintiff has identified exhibits 110 and 111 which relate to lawsuits alleging age discrimination filed by two former employees against Teva.  Specifically, Plaintiff's exhibit 110 is a newspaper article discussing a jury verdict awarded to former Teva employee Stephen Middlebrooks in 2018.  Plaintiff's exhibit 111 is a copy of an Eastern District of Pennsylvania Court decision denying, in part, Teva's motion for summary judgment in an age discrimination case brought by former Teva employee Brian McManus.[6]  Defendants anticipate that Plaintiff will either attempt to introduce these exhibits as evidence at trial or otherwise elicit testimony relating to these prior lawsuits.

Neither of these lawsuits have relevance to the instant dispute.  First, neither of the employees in question were terminated as a result of the RIF.  Rather, Mr. Middlebrooks' termination occurred in 2016, well over a year prior to the global RIF, and Mr. McManus's termination occurred in 2018 and was wholly separate and distinct from the global RIF. Next, neither Ms. Zorman, Mr. Sabag or Mr. Lawlor—the alleged decision makers in the instant matter—had any involvement in the terminations of Mr. Middlebrooks or Mr. McManus.  Third, Mr. Keuch worked in the Human Resources department, whereas neither Mr. Middlebrooks nor Mr. McManus worked in that department.  Plainly put, the Teva family of companies employ tens of thousands of individuals across the globe.  The termination of an employee in a different

---

the comments were made, Defendants understand that this could be an issue for the jury. Defendants do, however, seek to exclude discussion of the underlying changes themselves.

[6] Notably, the jury returned a verdict in favor of and clearing Teva of any discriminatory wrongdoing in the McManus trial.

year by a different decision maker in a different department has no relevance to other terminations.

If the Court determines that the existence of these prior lawsuits is relevant, the evidence should still be excluded as its slight probative value is substantially outweighed by its likelihood to prejudice the jury. This is not a novel issue of law. Rather, courts in this Circuit have consistently had many occasions to evaluate the admissibility of prior litigation in the context of discrimination lawsuits. *See Blanca v. Raymark Indus.,* 972 F.2d 507, 516 (3d Cir. 1992) (noting that "[w]hile it is difficult to set forth any exclusive list of factors favoring Rule 403 exclusion, certain types of evidence are routinely excluded under the rule[,]" including "[e]vidence relating to previous litigation involving the parties"); *Dienno v. RevSpring, Inc.,* No. CV 13-1919, 2014 WL 12607851, at **3-4 (E.D. Pa. Mar. 27, 2014) (precluding, in retaliation case, evidence of prior unlawful retaliation lawsuit involving the same company and alleged retaliator because such facts "do not relate to an element of [the plaintiff's instant retaliatory] discrimination claims[.]"); *Karlo v. Pittsburgh Glass Works LLC,* No. 2:10_CV-1283, 2016 WL 69651, at *7 (W.D. Pa. Jan. 6, 2016) (precluding evidence related to "whether others perceived age discrimination or retaliation" and "whether other former employees have filed charges of discrimination against [the defendant] or its predecessor with the EEOC and in the courts would . . . turn the trials into a series of 'mini-trials' regarding same amounting to a substantial waste of the jury's time and confusion of the issues."). Accordingly, the Court should exclude all references to these prior and unrelated lawsuits against Teva.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant their Omnibus Motion *in Limine* to Exclude the evidence discussed herein at Trial.